Get a Document - by Citation - 1993 U.S. Dist. LEXIS 14413

Case 1:04-cv-00285-KAJ    Document 38-3    Filed 05/03/2005    Page 1 of 26

Page 10 of 21

The Defendants further assert that Duvall was not qualified to fill any suitable position available subsequent to the corporation's restructuring. Defendants allege that the only position which became available after Duvall's termination and was at a level comparable to Duvall's former positions was that of Director of Manufacturing at Polymer. Mr. Thurston maintains that in considering Duvall he concluded that this position required a manager with a technical degree. Duvall had no such technical background. In addition, Thurston contends that he felt the Plaintiff's interpersonal skills were still somewhat lacking and rendered Duvall unsuitable for this position. Accordingly, Polymer hired Dick Sakolich, who has a degree in chemical engineering, to fill the position.

We conclude that the Defendants have met their burden of production by articulating a legitimate reason for discharging Plaintiff, i.e. downsizing of the corporation which essentially eliminated any position for which Duvall was qualified. **[*25]** As stated previously, Defendant's burden is a not a heavy one and the burden of proving intentional discrimination always rest with the plaintiff. See Fuentes, 32 F.3d at 763. Thus, the presumption of age discrimination is removed. The burden now shifts back to Plaintiff to show why Defendants' reasons are not worthy of credence.

C. Analysis of Plaintiff's Evidence of Pretext

Since Defendants have offered a legitimate reason for terminating the Plaintiff and, therefore, met its burden of production, Plaintiff, in order to survive summary judgment, must either (i) discredit the proffered reasons, either circumstantially or directly, or (ii) adduce evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. See Fuentes, 32 F.3d at 764. As the following discussion will show, Plaintiff has neither offered sufficient evidence to cast doubt on defendants' legitimate stated reasons for his termination, nor offered any evidence which proves that discrimination was more likely than not a determinative factor.

Our initial inquiry is whether Duvall has offered any evidence to cast doubt **[*26]** on Defendants' first articulated reason, that the restructuring/downsizing of the corporation virtually eliminated Duvall's job functions. Duvall does not dispute that the company underwent major structural changes between 1991 and 1993. However, Duvall disputes Defendants' claim that all of his job functions had been eliminated following restructuring, contending that his job functions had not been eliminated, but rather that the duties he had performed were delegated to Ken Carlson. Thus, according to Duvall, Carlson replaced Duvall in the Finance Department.

Duvall's contention that Carlson took over his job functions in Finance is lacking in evidentiary support. Mr. Carlson testified that Duvall had supervised many of the tasks that Carlson presently performed. (Deposition of Ken Carlson, "Carlson Dep." at 76). This not the same as saying that Carlson took over Duvall's old duties.

Moreover, Duvall points to no evidence that contradicts Mr. Thurston's testimony that corporate downsizing had eliminated many of the major financial functions formerly allocated to Duvall. (See F.N. 15, supra). Furthermore, when questioned during his deposition, Duvall concedes that he **[*27]** does not know whether Defendants' claim, regarding the elimination of his job functions, is true or not. (Duvall Dep. at 62). Thus, Duvall has failed to prove that Defendants' first articulated reason is unworthy of credence.

Turning now to Duvall's arguments contesting Defendants' second articulated reason, that Duvall was not qualified for any management level positions available following his termination, Duvall offers the testimony of former Chief Executive Officer, Len de Romph. It is his opinion that Mr. Duvall would have been qualified for most positions at Polymer following the reorganization. (Dep. of de Romph at 11-12).

This Court concludes that such evidence is entirely irrelevant because Mr. de Romph was no longer employed by DSM at the time of the reorganization and therefore would have no real insight in to whether the Plaintiff was truly qualified for any available positions within the company at that time. Furthermore, the Plaintiff admits that he knows of no one position available for which he was qualified following his termination. (Duvall Dep. at 210).

As a further attempt to illustrate inconsistencies and implausibilities in the Defendants' proffered reasons, **[*28]** the Plaintiff disputes the Defendants' allegations regarding his lack of interpersonal skills. Plaintiff contends that a genuine issue exists as to whether interpersonal skills were a pretextual reason to remove Mr. Duvall from his duties and later terminate him. The Plaintiff argues that there is insufficient evidence in the record to support Defendants' contentions in this regard.

Plaintiff's argument has questionable relevance because Defendants do not assert Plaintiff's lack of personal skills as one of their reasons for terminating Mr. Duvall. Nonetheless, to the extent that Plaintiff's record of poor interpersonal relationships played a role in Polymer's decision to limit his job functions in the Finance Department prior to his termination, we will address this argument.

There is concrete evidence to suggest Mr. Duvall had difficulties in his relationship with co-workers. Mr. Duvall himself testified that he had been aware of this problem and had contacted William Carothers, the acting Human Resource Manager. n17 Carothers conducted an informal survey of Duvall's co-workers, confirming that all of them found Duvall to be difficult. n18 Thus, it is apparent that Mr. Thurston's **[*29]** decision to curtail Duvall's duties due to Duvall's lack of interpersonal skills was a legitimate business decision that was validly based. Mr. Duvall may feel that this decision was wrong, but that does not mean the decision was a pretext for discrimination. See Fuentes, 32 F.3d at 765. Moreover, Duvall's own opinion of himself is not entirely indicative of the issue. As the Third Circuit stated in the Billet case, an employee's own view of his performance is not at issue; what matters is the perception of the decision maker. Billet v. Cigna Corp., 940 F.2d 812, 825 (3d Cir. 1991); See also Burdine, 450 U.S. at 259, 101 S.ct at 1097 ("The fact that a court may think that the employer misjudged the qualifications of the applicant does not in itself expose him to Title VII liability"). Thurston's decision was a legitimate business decision. "Barring discrimination, a company has the right to make business judgments on employee status, particularly when the decision involves subjective factors deemed essential to certain positions." Billet, 940 F.2d at 825. (citing, Healy v. New York Life Ins. Co., 860 F.2d 1209 (3d Cir. 1988).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n17 Duvall testified that, " He [Carothers] said that he felt my intensity came across too strong, the fact that I was trying so hard, and that I needed to back off a bit." (Duvall Dep. at 156). **[*30]**

n18 Carothers testified that the general consensus on Duvall was that he was overbearing, domineering, and did not take time to listen to others. (Carothers Dep. at 28).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

Additionally, as evidence that age discrimination was a motivating factor in the termination decision, the plaintiff submits there is statistical evidence which raises an inference that the Defendants had a preference for retaining younger employees and treating them more favorably. n19

Get a Document by Citation 1993 U.S. Dist. LEXIS 8441    Page 3 of 26

Case 1:04-cv-00285-JJF    Document 38-4    Filed 05/03/2005    Page 12 of 21

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n19 Plaintiff states that evidence exists which proves that from the period of January 1, 1990, through March 31, 1993, involuntary terminations of Polymer salaried employees over forty years of age exceeded the number of voluntary terminations of employees under the age of forty. Also, Plaintiff submits evidence which demonstrates while in 1990 the number of Polymer salaried employees over forty exceeded the number of salaried employees under forty, in 1993 the number of salaried employees over forty years of age was less than the number of employees under the age of forty.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*31]**

Statistics are most often used as evidence of age discrimination in a disparate impact case under Title VII <u>42 U.S.C § 2000e.</u> n20 Here, Duvall is alleging an individual treatment case, not a disparate impact one. However, the Third Circuit recently held that employment discrimination plaintiffs are not precluded from introducing statistical evidence as circumstantial evidence of discrimination in a disparate treatment case. <u>Abrams v. Lightolier, Inc., 50 F.3d 1204 (3d Cir. 1995).</u> In Abrams, the Court approved the use of statistical evidence as collateral evidence by plaintiff to support his claim of disparate treatment. <u>Abrams, 50 F.3d at 1217.</u>

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n20 To demonstrate disparate impact, plaintiff must show that Employer's facially neutral policy had a "significantly discriminatory impact" upon members of plaintiff's protected class.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Nevertheless, the numbers offered by Duvall do not reflect any significant statistical disparity. Over a four year period, Polymer terminated only six more "over forty" employees **[*32]** than "under forty" employees. Out of a total of 54 terminations over a four year period, that represents an average difference of only 1.5 terminations per year. (Carouther's Deposition Ex. 1). This is statistically insufficient to raise an inference of discriminatory intent. See <u>Kittredge v. Parker Harrifin Corp., 597 F. Supp. 605, 610 (W.D. Mich. 1984)</u> ("large statistical discrepancies are required before the courts will attach any real significance to statistical evidence").

Moreover, the method of the statistical analysis is somewhat questionable. Duvall offers corporate-wide statistics on terminations, rather than limiting the statistics to terminations at Duvall's executive level. The Supreme Court has held that "it is clear that 'where special qualifications are required to fill particular jobs, comparisons to the general population may have little probative value." <u>City of Richmond v. J.A. Croson Co., 488 U.S. 469, 501, 109 S. Ct. 706, 726, 102 L. Ed. 2d 854 (1989).</u>

Additionally, as evidence that discrimination played a determinative role in the termination decision, Duvall argues that evidence exists on the record that Defendant Jerry Thurston repeatedly referred **[*33]** to a group of younger salaried employees as "young turks". n21 Plaintiff argues that in context, the term favorably connoted a hard-working group of energetic young executives. However, there is no evidence to establish any sort of nexus between the comment and Mr. Duvall's termination. The usage of this terminology alone is not sufficient to infer age discrimination. See <u>Tenthoff v. McGraw-Hill, Inc., 808 F. Supp. 403, 407 (E.D. Pa. 1992)</u> aff'd, <u>981 F.2d 1248 (3d Cir. 1992)</u> (employer's comments that a certain employee was "acting like an old man" and another was "acting like an old woman" were insufficient evidence



of discrimination to withstand summary judgment motion where the comments did not relate to terminated employee); Turner v. North American Rubber, Inc., 979 F.2d 55, 59 (5th Cir. 1992) (manager's references to younger employees as "three young tigers" is insufficient evidence of age to state a prima facie case).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n21 Thurston described the connotation behind the term as, " It was more behavioral of the way these people behaved than it was anything else. They were challenging everything. They were breaking down the traditions of the company. They asking why we did things in a certain way and they were basically challenging us to change. ... But sometimes their mannerisms of doing that came across as difficult to deal with." (Thurston Dep at 229, 231).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*34]**

Plaintiff has failed to offer any legitimate evidence which either serves to discredit Defendants' proffered reasons or raise an inference that age discrimination played a determinative role in the termination decision. He offers nothing which undermines Defendants' contention that after the downsizing, his job functions were eliminated. Furthermore, nothing in this record indicates that Defendants' perception that the Plaintiff was unqualified for any positions following the reorganization, was not a legitimately based business decision and therefore was pretextual. Duvall, himself, cannot point to a specific position he was qualified for following the reorganization. Moreover, as stated previously, a company has the right to make business judgments on employee status. Billet, 940 F.2d at 825. (citing Healy v. New York Life Ins. Co., 860 F.2d 1209 (3d Cir. 1988).

It appears we are left only with Duvall's subjective belief that age and salary are connected and that he was terminated because Defendants did not want to pay his salary. n22 However, this contention does not create an inference that age was a determinative factor in his termination. See Hazen Paper Co. v. Biggins, **[*35]** 507 U.S. 604, 113 S. Ct. 1701, 1705-06, 123 L. Ed. 2d 338 (1993). In Hazen Paper, the Supreme Court held that there is no ADEA violation when the factor motivating that termination is any reason other than age. Id. at 1706. The Supreme Court, concluded, as a matter of law, that Plaintiff's termination in order to prevent his pension benefits from vesting did not state a claim under the ADEA. Id. This is true despite the fact that pension status and age are often positively correlated. Id. In addition, in the present case, Duvall's high salary was not so much a reflection of his age, but a result of Defendants' efforts to retain him when he decided to accept the Dell offer.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n22 As your experience grows, so grows your salary. I believe it was my experience that they needed the two and a half years before when they made all the promises to me. At that point in time the experience had a relationship to age. They were the ones that paid me the money, gave me the additional monies and so forth and so on, which was also relative to experience and age. So in that respect, I would tend to think that since the money and the age and the experience are all rolled into one, when you basically tell me that you're making too much money and it's the same person that gave you the money, he;s basically saying in some way that your age is a factor, I guess. (Duvall Dep. at 64).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*36]**

Finally, as stated by the Third Circuit, "merely citing that age was the reason for the decision

does not make it so." Billet v. Cigna Corp., 940 F.2d 812, 827 (3d Cir. 1991) Conclusory allegations, insinuation or innuendo do not satisfy the Plaintiff's burden of presenting rebuttal evidence. Solt v. Alpo Pet Foods, Inc., 837 F. Supp. 681 (E.D. Pa. 1993), aff'd 30 F.3d 1488 (1994); Naas v. Westinghouse Elec. Corp., 818 F. Supp. 874, 877 (W.D. Pa. 1993). Plaintiff's evidence, viewed in a light most favorable to him, is wholly insufficient to establish a genuine issue of material fact as to the credibility of defendants' legitimate, nondiscriminatory reasons for terminating Duvall. Consequently, plaintiff has not met his burden under the ADEA and defendants' motion for summary judgment on this claim will be granted.

## IV. The ERISA Claim

ERISA section 510 prohibits employers from making adverse employment decisions with specific intent to interfere with an employee's attainment of rights under an ERISA plan. n23 29 U.S.C. § 1140; Turner v. Schering-Plough Corp., 901 F.2d at 347; Gavalik v. Continental Can Co., 812 F.2d 834, 851 (3d Cir.) cert. denied **[*37]** 484 U.S. 979, 108 S. Ct. 495, 98 L. Ed. 2d 492 (1987). Section 510 was designed primarily to prevent "unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights. West v. Butler, 621 F.2d 240, 245 (6th Cir. 1980). The discharged employee must demonstrate that the desire to reduce pension benefits was a "determinative factor" in the employer's decision. Turner, 901 F.2d at 347. Where proof exists of a loss of pension benefits as a consequence of termination, and not a motivating factor behind termination, there is no ERISA cause of action under § 510. Gavalik, 812 F.2d at 851.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n23 Section 510 provides in pertinent part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled to under the plan... 29 U.S.C. § 140

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*38]**

Where the specific intent to discriminate against those nearing pension eligibility can be proved only circumstantially, the shifting of the burdens analysis developed in the Title VII cases is utilized. Gavalik, 812 F.2d at 852; see also Dillon v. Coles, 746 F.2d 998, 1003 (3d Cir. 1984) ("In most employment discrimination cases direct evidence of the employer's motivation is unavailable or difficult to acquire...."). As in the context of employment discrimination under Title 7, employees alleging discrimination under ERISA bear the burden of making out a prima facie case of discrimination. See Gavalik, 812 F.2d at 852 citing McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The nature of the plaintiff's burden of proof at the prima facie stage is de minimis. Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2nd Cir. 1988). The Plaintiff meets his burden by showing that (1) he belonged to a protected class, (2) he was qualified for the position involved, and (3) was discharged under circumstances that provide **[*39]** some basis for believing that the prohibited intent was present. Turner, 901 F.2d at 347.

Once Plaintiff has established his prima facie case by a preponderance of the evidence, the

burden of production shifts to defendants to show a legitimate nondiscriminatory purpose for their actions. Hendricks v. Edgewater Steel Company, 898 F.2d 385 (3d Cir. 1990); Gavalik, 812 F.2d at 853. If the company articulates a legitimate reason, the burden is on the employee to show that the reason was pretextual. Id.

Applying these standards in the ERISA context, it appears that Duvall has established a prima facie case sufficient to withstand summary judgment. Duvall, as a potential recipient of a pension, was in the protected class. We have previously found that he was qualified for position from which he was terminated. (See ADEA discussion, supra) Accordingly, it is necessary to see if Duvall has offered any evidence concerning the circumstances of his termination which "make the likelihood of pension-based animus greater in this case than in every case in which an employee is discharged by an employer with an ERISA plan." See Turner, 901 F.2d at 347.

Duvall alleges that **[*40]** evidence exists on the record that shows he was discharged under circumstances that provide some basis for believing that the requisite prohibited intent was present. He points to the fact that Defendants terminated him within one year of his pension vesting. (Duvall Dep. at 191-193). Additionally, Duvall alleges that Polymer terminated a greater percentage of salaried employees over forty years than those under forty years. Plaintiff also alleges his friend Larry Shoe, former Director of Human Resources, told him that Polymer terminated 30 to 40 people 40 years or older, "a lot just before they vested." (Duvall Dep. at 144).

This evidence is sufficient to create an inference that the prohibited intent was in fact present. (See Dister v. Continental Group, Inc., 859 F.2d 1108 (2nd Cir. 1988) (Court concluded that Plaintiff established an inference of discrimination under § 510 where employee was discharged four months and seven days before vesting of his pension). See also, Turner, 901 F.2d at 348. (We do not rule out the possibility that an employee with a vested pension can establish a prima facie case by showing a pension reduction of such size that it might reasonably **[*41]** be considered to have motivated the discharge..."). Hence, Duvall has established a prima facie case.

The burden of production now shifts to Defendants to articulate a legitimate nondiscriminatory reason for the discharge. See Burdine, 450 U.S. at 254-56, 101 S. Ct. at 1094-95. As discussed in the ADEA section, the Defendants submit that Mr. Duvall was terminated because 1) corporate downsizing eliminated substantially all his job functions, and 2) there were no positions for which Mr. Duvall was qualified following the downsizing. This Court has concluded that these are legitimate nondiscriminatory reasons and any inference of age discrimination drops from the case.

Once the employer has articulated a legitimate nondiscriminatory reason for the adverse employment action, the employee has the burden of persuasion on the issue of whether an intent to interfere with rights secured under ERISA played a determinative role in the decision to take the action. See Turner, 901 F.2d at 347. Having carefully reviewed the record, we find insufficient evidence to establish the prohibited intent. There is no evidence which supports a reasonable inference that Defendants' reason for discharging **[*42]** Duvall was unworthy of credence or that Defendant was otherwise motivated by a discriminatory purpose.

In an attempt to demonstrate the presence of the prohibited intent, Duvall first offers the same arguments and evidence used to challenge Defendants' proffered reasons for his termination in connection with the ADEA claim. We have previously concluded that such arguments are not persuasive. (See ADEA discussion, supra). In addition to these arguments, Duvall offers the evidence used in his prima facie case under ERISA § 510 claim, which was discussed above and which we will now address.

Focusing initially on Duvall's contention that he was only one year from the vesting of his pension, this Court concludes that although such evidence was sufficient to create an inference

of discrimination for the prima facie case, it is wholly insufficient alone to establish the existence of a prohibited specific intent. As such this contention alone cannot defeat summary judgment. See, Hendricks, 898 F.2d 385 (The Third Circuit held that employee terminated 11 months prior to vesting of his pension failed to make out a prima facie case under § 510).

Turning our focus to Duvall's [*43] allegations that Polymer terminated a large number of employees over forty years of age, just prior to vesting of their benefits, we find that this contention lacks evidentiary support. It is unclear from the record when any of these employees' pensions were supposed to vest. Furthermore, Mr. Shoe, himself, testified that to his knowledge Polymer had never considered an employee's vesting when making a termination decision. (Shoe Dep. at 30). n24 Moreover, age and vesting of pension benefits do not correlate in this case since Polymer's pension plan provided for vesting after five years of employment.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n24 Counsel for Defendants- "Were there any terminations that you signed off during 1990 or 1991 in which you thought the company was motivated by a desire to keep someone from vesting in the pension plan?"

    Mr. Shoe- "No." (Shoe Dep. at 30).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Duvall has failed to offer any additional substantial evidence in his prima facie case which establishes the existence of a specific intent by Defendants to [*44] interfere with pension benefits. Duvall simply argues that he believes Polymer terminated him one year prior to vesting in order to save money. n25 but admits that this belief is a result of his own speculative search for a reason for his termination.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n25 Duvall testified as follows,

    My feelings were very strong that when they were trying to cut costs, they were looking at things like pensions, they were looking at things like salaries, they were looking at these things, and that most definitely the ability to sever me before my pension hit was advantageous to them. (Duvall Dep. at 192).

    I've given this a great, great deal of thought. I had been made some really wonderful promises two and a half years before, and I felt like I had performed very well. And I guess when you go through a situation like this, you constantly find yourself asking, why did this happen. I don't know. (Duvall Dep. at 61).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Duvall's own speculation, however, is not enough to establish the existence of the prohibited intent. [*45] See, Beckwith v. International Mill Services, Inc., 617 F. Supp. 187, 190 (E.D.

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 14413    Page 8 of 26

Case 1:04-cv-00285-JJJ   Document 38-3   Filed 05/03/2005   Page 17 of 21

Pa. 1985) (court held that discharged employees, who stated during their deposition that they had no proof other than their own beliefs that they were terminated to save money vis-a-vis the vesting of their pension benefits, failed to state a claim under 29 U.S.C.A. § 1140). Moreover, the mere fact that Defendants did in fact save money because Duvall's pension did not vest, in and of itself, does not establish specific intent. See, Conkwright v. Westinghouse Electric Corp., 933 F.2d 231, 239 (4th Cir. 1991). (Standing alone, Plaintiff's allegation that the Defendants save pension costs cannot survive summary judgment). Any time an employee is discharged, there is the possibility that a company will save money if the employee's pension has not yet vested. As stated previously, the plaintiff must offer evidence which "makes the likelihood of pension-based animus greater in this case than in every case in which an employee is discharged by an employer with an ERISA plan. Turner, 901 F.2d at 347. In the present case, Duvall has failed to point to any evidence on the record to support **[*46]** the contention that Polymer had the specific intent of terminating him in order to deny him his pension. Accordingly, Defendants' motion for summary judgment on the ERISA § 510 claim is granted.

## V. The Breach of Implied Employment Contract Claim

Duvall next alleges that Defendants promised him employment until his retirement and that his termination constituted a breach on an implied employment contract. (See Complaint para. 30-32, 64-68).

The law in Pennsylvania is clear that, as a general rule, employees are at-will, absent a contract, and may be terminated at any time, for any reason or for no reason. See Stumpp v. Stroudsburg Municipal Authority, 540 Pa. 391, 1995 WL 297093 (PA.); Geary v. United States Steel Corp., 456 Pa. 171, 319 A.2d 174 (1974); Fawcett v. Monongahela Ry. Co., 391 Pa. 134, 137 A.2d 768 (1958); Krajsa v. Keypunch, Inc., 424 Pa. Super. 230, 622 A.2d 355 (1993). In Pennsylvania, a contract of employment which does not specify a definite duration of employment is presumed to be terminable at the will of either party. Chadwick v. Capital Advisors, Inc., 1992 U.S. Dist. LEXIS 8842, 1992 WL 121616, * 6 (E.D. Pa. 1992) (citing, Monkelis v. Scientific Systems Services **[*47]** Inc., 677 F. Supp. 378, 381 (W.D. Pa. 1988) (citing Geary v. United States Steel Corp., 456 Pa. 171, 175, 319 A.2d 174, 176 (1974). The rationale underlying the employment at-will doctrine is that the decision to dismiss an employee is best left to management, without intrusive judicial scrutiny of the decision. Veno v. Meredith, 357 Pa. Super. 85, 96, 515 A.2d 571, 577 (1986).

The clearest exception to the rule of employment-at-will is where the employer and employee have entered into a valid contract which expresses or implies a definite term of employment and forbids discharge in the absence of just cause. Dutka v. Coopers & Lybrand, 1992 U.S. Dist. LEXIS 8842, 1993 WL 142902 (E.D. Pa.); Rutherford v. Presbyterian-University Hospital, 417 Pa. Super. 316, 612 A.2d 500, 503 (1992). The intention to overcome the at-will presumption must be very apparent. Veno, 357 Pa. at 99 and 515 A.2d at 578; Martin v. Capital Cities Media, Inc., 354 Pa. Super. 199, 511 A.2d 830 (1986) (The court held that the modification of an "at-will" relationship to one that can never be severed without "just cause" is such a substantial modification that a very clear statement of an intention to **[*48]** modify is required).

The at-will presumption can only be overcome by clear and specific evidence showing the parties intended their contract to extend a certain period or by evidence showing the employee gave the employer additional consideration other than the services for which he was hired. Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 660 (3d Cir. 1990); Scott v. Extracorporeal, Inc., 376 Pa. Super. 90, 545 A.2d 334, 338-339 (1988); Gorwara v. AEL Industries, Inc., 784 F. Supp. 239, 243 (E.D. Pa. 1992).

The burden of overcoming the at-will presumption is on the employee, Nix, 408 Pa. Super. 369, 596 A.2d 1132, 1135, and the burden of proof for establishing an implied contract is just as weighty for the Plaintiff as the burden for establishing an express contract. Schleig v. Communications Satellite Corp., 698 F. Supp. 1241, 1246 (M.D. Pa. 1988); DiBonaventura v.

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 14413    Page 9 of 26

Case 1:04-cv-00285-KAJ    Document 38-3    Filed 05/03/2005    Page 18 of 21

Consolidated Rail Corp., 372 Pa. Super. 420, 539 A.2d 865, 867 (1988). In cases involving implied contracts of employment, the case will not reach the jury unless it can be clearly shown that the plaintiff and the employer intended to form a contract. DiBonaventura, 539 A.2d at 868 [*49] (Citing Greene v. Oliver Realty, Inc., 363 Pa. Super. 534, 526 A.2d 1192, 1200 (1987)).

In the present case, Duvall alleges that a contract of employment existed between him and Defendants because they had made him "repeated and extensive promises. . . regarding long-term employment security and employment at Polymer or within the DSM organization." (Plaintiff's brief p. 47). In his complaint Duvall alleges that Defendants expressly promised that his employment would be secure until retirement and that his pension would be secure. (Complaint para.31, 64-70). He also alleges in his complaint that Defendants promised him that other career opportunities would be made available to him near Texas, close to his children. (Complaint, para. 33). Duvall asserts that Defendants made these promises in March of 1990 in order to entice him to remain at Polymer after he accepted the offer from Dell Computers. n26

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n26 In the Plaintiff's complaint, Duvall alleges that he informed Polymer in order for him to revoke his acceptance of the Dell Computer offer and remain with Defendant Polymer, he would expect to be employed by Defendant Polymer through the vesting of his pension benefits and his projected retirement in May 2004. (Complaint 27-29).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*50]

Notwithstanding the allegations in his complaint, Duvall concedes in his deposition testimony, that despite all the incentives and vague allusions of future security that Defendants offered him, they never actually made any promises which guaranteed him long term security at Polymer. (See F.N. 5 supra).

Duvall fails to show by "clear and precise evidence" that both parties intended to be bound for a specific duration. Chadwick v. Capital Advisors, Inc., 1992 U.S. Dist. LEXIS 8842, 1992 WL 121616 at *6; see also Shriver v. Cichelli, 1992 U.S. Dist. LEXIS 19511, 1992 WL 350226 at *3. Vague promises and aspirational representations made by an employer have no legal significance. Schleig, 698 F. Supp. at 1246; see also Clay v. Advanced Computer Applications, 370 Pa. Super. 497, 511, 536 A.2d 1375 (1986) rev'd in part on other grounds 522 Pa. 86, 559 A.2d 917 (1989). Duvall cites no evidence to suggest that Defendants offered him anything other than vague hopes of a long future together. This is not enough to establish a clear intention that both parties expected to be bound for a specific duration. See Borell v. Weinstein Supply Corp., 1994 WL 530102, *5 (E.D. Pa. 1994) ("a promise of employment until [*51] retirement does not state a sufficiently definite term to overcome the at-will presumption"). In Veno v. Davies, the Pennsylvania Superior Court refused to find a binding employment contract based upon defendant's representation that:

We are both the same age, we are both going to retire together, we are not making a lot now, but we'll make it later on. I want you to raise your children here. I want them to go the school. I want to retire together.

_Veno v. Meredith, 357 Pa. Super. at 100._ The court concluded this representation was "broad" and "vague" and did not suggest the parties contemplated a definite duration for the employment. _Id. at 101._ Moreover, the court found the statements to have an aspirational quality to them, which merely manifested an employer's hope that the employee will remain until his retirement. Id.

In the present case, Duvall offers nothing more than vague promises. There was no express contract which restricted Defendants' ability to discharge. Furthermore, there was not a reasonable understanding to that effect.

Duvall also contends that he gave Defendants sufficient additional consideration in that he underwent a substantial [*52] hardship for reasons other than the mere performance of services for which he was hired. He asserts specifically that he gave up his employment with Dell Computer Company in Austin, Texas, where he and his wife had resided for many years and where his children lived. Duvall further maintains that Defendants knew and understood the substantial hardship that Duvall underwent by foregoing the Dell Computer offer in Texas and remaining in Texas.

When there is sufficient additional consideration, an employee should not be subject to discharge without just cause for a reasonable time period. _Darlington, 350 Pa. Super. at 199-200, 504 A.2d at 314._ A reasonable time period should be commensurate with the hardship the employee has endured or the benefit he has conferred. _Veno, 357 Pa. Super. at 102, 515 A.2d at 580._

Additional consideration is narrowly defined. See, _Gorwara v. AEL Industries, Inc., 784 F. Supp. 239 (E.D. Pa. 1992)._ In _Darlington v. General Electric, 350 Pa. Super. at 201. 504 A.2d at 315,_ the court stated:

> Additional consideration exists when an employee affords his employer a substantial benefit other than the services which the employee is [*53] hired to perform, or when the employee undergoes a substantial hardship other than the services which he is hired to perform.
> 'If the circumstances are such that a termination of the relation by one party will result in great hardship or loss to the other, as they must have known it would when they made the contract, this is a factor of great weight in inducing a holding that the parties agreed upon a specific period.' A. Corbin, Corbin on Contracts § 684 (1960).

Generally, an employee undergoes a substantial hardship when he must move his family to take the new position. _Darlington, 350 Pa. Super. 183, 504 A.2d 306, 315 (1986); Cashdollar v. Mercy Hospital of Pittsburgh, 406 Pa. Super. 606, 595 A.2d 662, 665 (1991)_ (court found the existence of a substantial hardship where plaintiff gave up a $ 82,000 per year job and uprooted his pregnant wife and child, only to be terminated after 16 working days).

Duvall alleges that foregoing the employment opportunities at Dell, along with not returning to Texas with his children constituted a substantial hardship. However, the instant case is distinguishable from cases in which courts have found the existence of substantial [*54] hardship. When Duvall chose to remain at Polymer and forego the Dell offer, he did not have to move and uproot his family. Nor was he terminated within a few days or months after he decided to stay.

Moreover, the facts of the instant case are analogous to the facts of Borell v. Weinstein Supply Corp., 1994 WL 530102 (E.D. Pa.), in which the court granted summary judgment for the

defendant. In Borell, the plaintiff, after holding several positions with the defendant, left to work for another employer. Id. at *1. Shortly thereafter, the defendant successfully enticed the plaintiff to return with promises to pay plaintiff an increased salary "until plaintiff retired." Id. Less than six years later, the defendant fired the plaintiff at age 55.

In Borell, the court granted summary judgment against the plaintiff. First, the court concluded that the employer's promise of employment till retirement was too broad to create an express or implied employment contract for a specific duration. Moreover, the fact that the plaintiff left his new job in order to return to the old one did not constitute sufficient additional consideration. Similar to Duvall, the plaintiff in **[*55]** Borell simply chose to forego a new career opportunity in exchange for the defendant's promises of increased compensation. Id. See also Moore v. Bally Block Company, 1994 WL 248138 (Momtg. Co. Ct. Com. Pl. 1994) aff'd 1994 WI 547684 (Pa. Super. 1994) (The court held that plaintiff's decision to sell his home in Maine at a loss, reject the offer from the other potential employer, and move to Pennsylvania and build a home, were simply career choices similar to those "employees make everyday notwithstanding a volatile employment market").

Additionally, numerous other courts have held that rejection of specific offers from other employers in order to remain with the defendant employer does not constitute additional consideration. See Schleig, 698 F. Supp. at 1246 (court held that plaintiff's rejection of job offers from other employers in order to remain with defendant employer did not make his case "any more compelling"); Veno, 357 Pa. Super. at 101 (fact that he refused other jobs in order to remain with defendant is merely a manifestation of his preference to remain with defendant and in no way suggests he had a reasonable belief that he could be fired only for cause **[*56]** - - employee did not provide additional consideration.)

It is apparent that Duvall simply made a reasoned career choice of accepting the financial incentives with Polymer, rather than going with Dell. This decision does not reflect any sort of additional consideration. Duvall has failed to adduce sufficient evidence that he was anything other than a typical at-will employee.

Based on the foregoing discussion, we conclude that Duvall was merely an at-will employee, had no employment contract with Defendants, either express or implied, for a term of years or otherwise, and he was therefore terminable at the will of Defendants. Accordingly, summary judgment will be granted on this claim.

## VI. The Promissory Estoppel Claim

Finally, we consider Duvall's contention that he is entitled to relief against Defendants under the equitable doctrine of promissory estoppel.

It is settled law in Pennsylvania that equitable estoppel has been affirmatively rejected as an exception to the at-will employment rule. See Stummp, 1995 WL 297093, *2 (Pa.); Paul v. Lankenau Hospital, 524 Pa. 90, 569 A.2d 346 (1990). An employee may be discharged with or without cause, and Pennsylvania law **[*57]** does not prohibit firing an employee for relying on an employer's promise. Paul, 524 Pa. at 95, 569 A.2d at 348.

Thus, all actions based upon a theory of estoppel as an exception to the at-will doctrine are precluded. Therefore, the Court will grant Defendants' motion for summary judgment on the promissory estoppel count of the complaint.

## VII. Conclusion

For the reasons discussed above, this Court concludes that Defendants' motions for summary judgment should be granted on all four counts.

Case 1:04-cv-00285-KAJ    Document 38-3    Filed 05/03/2005    Page 12 of 26

## ORDER

**AND NOW**, this 28th day of September, 1995, upon consideration of defendants' motion for summary judgment on all counts of plaintiff's complaint (Doc. #20), defendants' memorandum of law in support thereof, plaintiff's response thereto, and all other relevant matters of record, it is hereby ordered, adjudged and decreed that the motion is **GRANTED.**

**IT IS FURTHER ORDERED** judgment is entered in favor of all defendants and against plaintiff on all counts of the complaint.

E. Mac Troutman, J.S.

Service: **Get by LEXSEE®**
Citation: **1995 us dist lexis 14413**
View: Full
Date/Time: Monday, May 2, 2005 - 8:14 PM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
✦ - Positive treatment is indicated
ⓐ - Citing Refs  With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc  All rights reserved

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 9100

Case 1:04-cv-00285-KAJ   Document 38-3   Filed 05/03/2005   Page 13 of 26   Page 1 of 16

Service: **Get by LEXSEE®**
Citation: **1998 U.S. Dist. LEXIS 9100**

*1998 U.S. Dist. LEXIS 9100, \**

CHRISTINE A. EBERT, Plaintiff, v. OFFICE OF INFORMATION SYSTEMS, an Agency of the State of Delaware, Defendant.

C.A. No. 97-530-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

1998 U.S. Dist. LEXIS 9100

June 12, 1998, Decided

**NOTICE: [\*1]**  FOR ELECTRONIC PUBLICATION ONLY

**DISPOSITION:** Defendant's motion to dismiss denied in part and granted in part.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff employee asserted a claim against defendant Office of Information Systems (OIS) under the Civil Rights Act of 1964, 42 U.S.C.S. § 2000(e) et seq. for sexual harassment, failure to promote, and retaliation. OIS moved for summary judgment claiming that employee failed to exhaust her administrative remedies by presenting her claims to the Equal Employment Opportunity Commission and that the 300-day filing requirement had passed.

**OVERVIEW:** The employee asserted that she was the victim of sexual harassment, failure to promote, and retaliation during the course of her employment at OIS. The court addressed OIS's claim that the employee failed to exhaust her administrative remedies via the EEOC when she failed to present some of her specific claims to the commission. The court declined to dismiss the employee's hostile work environment claim on this basis because it had a close factual nexus with her other claims, an EEOC investigation would have disclosed this claim, and the employees allegations to the EEOC encompassed the basis of this claim. The court found that the employee's failure to promote claim did not fall within her EEOC complaint or a reasonable investigation thereof. The court dismissed the employee's failure to promote claim but permitted her hostile work environment claim to go forward. The court determined that the hostile work environment claim constituted a continuing violation that was exempt from the 300-day filing requirement contained in 42 U.S.C.S. § 2000e-5(e). The employee adduced sufficient evidence for this claim and respondeat superior liability.

**OUTCOME:** The court granted OIS's motion to dismiss the employee's failure to promote claim because it did not fall within her EEOC complaint or a reasonable investigation thereof but permitted the employee's hostile work environment claim to go forward. Additionally, the court held that the hostile environment claim constituted a continuing violation which was exempt from the 300-day filing period.

**CORE TERMS:** hostile work environment, hostile, gender discrimination, sexual harassment, discriminatory, harassment, continuing violation, retaliation, advancement, sex, discriminatory conduct, work performance, promotion, insubordination, sexually, sufficient evidence, summary judgment, nonmoving party, filing period, moving party, contributed, favorable, abusive, manager, respondeat superior liability, administrative remedies, reclassification, supervisor,

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 9100    Page 2 of 16

Case 1:04-cv-00285-KAJ    Document 38-3    Filed 05/03/2005    Page 14 of 26

insulting, offensive

## LexisNexis(R) Headnotes ◆ Hide Headnotes

Civil Procedure > Summary Judgment > Summary Judgment Standard 🔍
HN1⬧ Summary judgment should be granted only if the court concludes that there is no
    genuine issue as to any material fact and that the moving party is entitled to judgment
    as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of
    proving that no genuine issue of material fact is in dispute. Once the moving party has
    carried its initial burden, the nonmoving party must come forward with specific facts
    showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). Facts that could
    alter the outcome are material, and disputes are genuine if evidence exists from which
    a rational person could conclude that the position of the person with the burden of
    proof on the disputed issue is correct. If the nonmoving party fails to make a sufficient
    showing on an essential element of his case with respect to which he has the burden
    of proof, the moving party is entitled to judgment as a matter of law. The mere
    existence of some evidence in support of the nonmoving party will not be sufficient for
    denial of a motion for summary judgment; there must be enough evidence to enable a
    jury reasonably to find for the nonmoving party on that factual issue. The court,
    however, must view the underlying facts and all reasonable inferences therefrom in
    the light most favorable to the party opposing the motion.  More Like This Headnote

Labor & Employment Law > Discrimination > Actionable Discrimination 🔍
Civil Procedure > Summary Judgment > Summary Judgment Standard 🔍
HN2⬧ With respect to summary judgment in discrimination cases, the court's role is to
    determine whether, upon reviewing all the facts and inferences to be drawn therefrom
    in the light most favorable to the plaintiff, there exists sufficient evidence to create a
    genuine issue of material fact as to whether the employer intentionally discriminated
    against the plaintiff.  More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss 🔍
HN3⬧ Fed. R. Civ. P. 12(b) provides that if, on a motion to dismiss for failure of the pleading
    to state a claim upon which relief can be granted, matters outside the pleading are
    presented to and not excluded by the court, the motion shall be treated as one for
    summary judgment and disposed of as provided by Fed. R. Civ. P. 56, and all parties
    shall be given reasonable opportunity to present all material made pertinent to such a
    motion by Rule 56.  More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1964 🔍
Labor & Employment Law > Discrimination > Title VII 🔍
HN4⬧ 42 U.S.C.S. § 2000e-2(a) provides: (a) Employer practices. It shall be an unlawful
    employment practice for an employer--(1) to fail or refuse to hire or to discharge any
    individual, or otherwise discriminate against any individual with respect to his
    compensation, terms, conditions, or privileges of employment, because of such
    individual's race, color, religion, sex, or national origin; or (2) to limit, segregate or
    classify his employees or applicants for employment in any way which would deprive
    or tend to deprive any individual of employment opportunities or otherwise adversely
    affect his status as an employee, because of such individual's race, color, religion, sex,
    or national origin.  More Like This Headnote

Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Enforcement 🔍
HN5⬧ The preconditions, exhaustion requirements, to a suit under Title VII are the filing of a
    charge with the Equal Employment Opportunity Commission (EEOC) and the receipt of
    the EEOC's notice of the right to sue. 42 U.S.C.S. §§ 2000e-5(e), 2000(e)-5(f).

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 9100    Page 3 of 16

Case 1:04-cv-00285-KAJ    Document 38-3    Filed 05/03/2005    Page 15 of 26

Because the statutory scheme of Title VII emphasizes informal means of achieving settlement over formal adjudication, a potential plaintiff normally is required to set forth in the charge to the EEOC those allegations subsequently raised in the district court.  More Like This Headnote

Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Enforcement 📑
Labor & Employment Law > Discrimination > Actionable Discrimination 📑
HN6⚓In accordance with the exhaustion requirement, there are limitations on the presentation of new claims in the trial court. The parameters of the resulting civil complaint that may follow a notice of a right to sue from the Equal Employment Opportunity Commission (EEOC) are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, regardless of the actual scope of the EEOC investigation. Therefore, a trial court may assume jurisdiction over additional charges only if the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom. This standard must be applied in accord with the sound and established policy that procedural technicalities should not be used to prevent Title VII claims from being decided on the merits.  More Like This Headnote

Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Enforcement 📑
Labor & Employment Law > Discrimination > Actionable Discrimination 📑
HN7⚓Where the allegations in the complaint were sufficiently distinct from those presented in the Equal Employment Opportunity Commission (EEOC) charge and were not part of the EEOC investigation, courts have refused to entertain the expanded claims until administrative procedures have been exhausted. However, courts have heard claims not specifically mentioned in the prior EEOC charge where there was a close nexus between the facts supporting the claims raised in the charge and those in the complaint.  More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1964 📑
Labor & Employment Law > Discrimination > Actionable Discrimination 📑
HN8⚓According to 42 U.S.C.S. § 2000e-5(e), a charge of employment discrimination must be filed within 300 days after the alleged unlawful employment practice occurred. This filing requirement, however, is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.  More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1964 📑
Labor & Employment Law > Discrimination > Actionable Discrimination 📑
HN9⚓The Third Circuit determined the continuing violation theory to be one equitable exception to the timely filing requirement. Under this theory, a plaintiff may pursue a Title VII claim for discriminatory conduct that began prior to the filing period if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant. To establish a continuing violation, a plaintiff must demonstrate (1) that at least one discriminatory act occurred within the filing period and (2) that the harassment is more than the occurrence of isolated or sporadic acts of intentional discrimination but is a persistent, on-going pattern.  More Like This Headnote

Labor & Employment Law > Discrimination > Actionable Discrimination 📑
HN10⚓In determining whether a continuing violation exists, the court must consider: (i) subject matter--whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence--whether the nature of the violations would trigger the employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 9100

Case 1:04-cv-00285-KAJ    Document 98-8    Filed 05/03/2005    Page 16 of 26    Page 4 of 16

discriminate.  More Like This Headnote

Labor & Employment Law > Discrimination > Gender & Sex Discrimination > Enforcement 🔍
Labor & Employment Law > Discrimination > Racial Discrimination > Enforcement 🔍

HN11⬆ There is a natural affinity between hostile work environment and continuing violation claims. In the arena of sexual or racial harassment, particularly that which is based on the existence of a hostile environment, it is reasonable to expect that violations are continuing in nature: a hostile environment results from acts of sexual or racial harassment which are pervasive and continue over time, whereas isolated or single incidents of harassment are insufficient to constitute a hostile environment. Accordingly, claims based on hostile environment sexual or racial harassment often straddle both sides of an artificial statutory cut-off date.  More Like This Headnote

Labor & Employment Law > Discrimination > Sexual Harassment > Hostile Work Environment 🔍

HN12⬆ Title VII is violated by a work environment abusive to employees because of their race, gender, religion, or national origin. A plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment. To be cognizable within the meaning of Title VII, the harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. In order to establish a hostile work environment, a plaintiff must establish by the totality of the circumstances, the existence of a hostile or abusive working environment which is severe enough to affect the psychological stability of a minority employee.  More Like This Headnote

Labor & Employment Law > Discrimination > Sexual Harassment > Hostile Work Environment 🔍

HN13⬆ A plaintiff must demonstrate that: (1) the employees suffered intentional discrimination because of their sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability.  More Like This Headnote

Labor & Employment Law > Discrimination > Sexual Harassment > Hostile Work Environment 🔍

HN14⬆ To make out a case under Title VII it is only necessary to show that gender is a substantial factor in the discrimination, and that if the plaintiff had been a man she would not have been treated in the same manner. The pervasive use of derogatory and insulting terms relating to women generally and addressed to female employees personally may serve as evidence of a hostile environment.  More Like This Headnote

Labor & Employment Law > Discrimination > Sexual Harassment > Hostile Work Environment 🔍

HN15⬆ To establish respondeat superior liability as required by the fifth factor, a plaintiff must demonstrate that management-level employees had actual or constructive knowledge about the existence of a sexually hostile environment and failed to take prompt and adequate remedial action.  More Like This Headnote

Labor & Employment Law > Discrimination > Sexual Harassment > Hostile Work Environment 🔍

HN16⬆ Under Title VII, the act of a supervisory employee or agent is imputed to the employer.  More Like This Headnote

**COUNSEL:** For plaintiff: Roy S. Shiels, Esquire, Brown, Shiels & Chasanov, Dover, Delaware.

For defendant: Elizabeth D. Maron, Esquire, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.

**JUDGES:** Sue L. Robinson, District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION: MEMORANDUM OPINION**

Dated: June 12, 1998
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

Plaintiff Christine A. Ebert filed this action on September 18, 1997 against defendant Office of Information Systems ("OIS"), an Agency of the State of Delaware, asserting a claim under the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq. for sexual harassment, failure to promote, and retaliation. (D.I. 1) Plaintiff alleges that the actions of her manager and OIS, which were willful and intentional acts based on discriminatory animus, resulted in physical and mental abuse, including a mental breakdown disabling her from work. (D.I. 1) Currently before the court is defendant's motion to dismiss. (D.I. 5) This court has jurisdiction pursuant to 28 U.S.C. § 1331.

For **[*2]** the reasons stated below, defendant's motion to dismiss will be denied in part and granted in part.

## II. BACKGROUND

Beginning on or about October 16, 1980, plaintiff began employment with OIS as an Application Support Specialist. (D.I. 10 at A4) Plaintiff subsequently rose to the position of Management Information Specialist. (D.I. 10 at A4)

On October 28, 1994, plaintiff completed, as part of her employment, a Position Classification Questionnaire ("PCQ"). (D.I. 7 at A19-A24) In the general comments section of the questionnaire, plaintiff wrote the following:

> To be successful in this position, an incumbent must have an extremely large amount of endurance, resolve, persistence, resignation, stamina, backbone, guts, moxie, resilience, spirit, backbone, spunk, strength, pluck, chutzpa[] and determination to deal with items such as Attachment A. This item was given to me at the beginning of the first interview I had in this building with OIS-ASG.

(D.I. 7 at A23) Attachment A was a "puzzle" containing a sexually offensive suggestion. (D.I. 7 at A24)

In November 1994, Assistant Manager of OIS, Thomas Burn, brought plaintiff's PCQ to the attention of Richard **[*3]** Iovino, Manager of OIS. After reviewing the PCQ, Iovino had Burn bring plaintiff to his office to discuss her allegations. (D.I. 7 at A4; A26-A27; A29-A30; A36) Plaintiff refused to cooperate in Iovino's investigation, denying that the conduct was sexual harassment (although admitting it was inappropriate) and refusing to identify the individual(s) who gave her the document in question. (D.I. 7 at A4; A26-A27; A29-A30; A36) As a result of her refusal to cooperate, Iovino reprimanded plaintiff, informing her that he would proceed with a "formal contact" for insubordination should she refuse to identify the individual(s) involved and that she was free to check the Merit Rules if she were in doubt as to his authority to do so. (D.I.

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 9100

Case 1:04-cv-00285-KAJ    Document 38-3    Filed 05/03/2005    Page 18 of 26    Page 6 of 16

7 at A4; A26-A27; A29-A30; A36) Plaintiff left the room, returning a short while later with John Nold, Executive Director of OIS, whom she had asked to join the meeting. (D.I. 7 at A4; A26-A27; A29-30; A36) Iovino again asked plaintiff to identify the individual(s) involved and again she refused, indicating that Iovino was aware of the individuals' identities. (D.I. 7 at A4; A26-A27; A29-A30; A36) At no point during the meeting did Nold direct plaintiff to **[\*4]** answer Iovino's questions. (D.I. 7 at A36)

On November 10, 1994, Iovino filed a "formal contact," charging plaintiff with insubordination, falsification of records, and insulting words toward the public or any state employee. (D.I. 7 at A4; A26-A27; A29-A30; A31-A32) Nold, acting as Hearing Officer for the "Third Step Grievance Proceeding" held on December 9, 1994, found that there existed insufficient testimony to substantiate the charges of falsification and insulting words; however, he found the charge of insubordination to be supported by the record. (D.I. 7 at A33-A34)

On September 5, 1995, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Delaware Department of Labor against defendant, alleging continuing acts of sexual discrimination and retaliation beginning in November 1981 and continuing until November 10, 1994. (D.I. 7 at A2) Specifically, the charge alleged (1) an on-going course of sexually offensive behavior on the part of management; and (2) retaliation on the part of defendant and Iovino after plaintiff complained to management about a sexually offensive item she had been given during her initial interview **[\*5]** in 1980. (D.I. 7 at A2) In the charge, plaintiff stated:

> Mr. Iovino treats the women he supervises in a demeaning and insulting manner. In February, 1995, during a meeting of the entire office (approximately sixty people), Mr. Iovino criticized the women in the office. He said: "You women, you want to be treated equal but you're not willing to work equal." He accused the women employees of abusing the flex time policy to care for their children. He also criticized the women for using their accumulated sick leave to stay home and care for their sick children. . . . During the February, 1995, meeting Mr. Iovino criticized the women in the office but did not criticize the men who used flex time or sick leave.

(D.I. 10 at A4)

On September 18, 1995, as part of the Fourth Step Grievance Decision, plaintiff's written reprimand for insubordination was upheld while all other references to her alleged misconduct were purged from her file. (D.I. 7 at A35-A38)

On April 12, 1996, the State responded to the EEOC Charge of Discrimination, denying all the allegations made therein. (D.I. 7 at A3-A39)

Plaintiff appealed the insubordination disciplinary action to the Merit Employee **[\*6]** Relations Board ("MERB"). (D.I. 7 at A5; A39) On September 4, 1996, defendant agreed to void the written reprimand and remove it from plaintiff's personnel file, thereby mooting the MERB grievance. (D.I. 7 at A40-A41) Consequently, the grievance was dismissed on September 6, 1996. (D.I. 7 at A42)

On August 28, 1996, after the EEOC's settlement efforts had failed, Marjorie McLean, the EEOC investigator assigned to plaintiff's charge, wrote to plaintiff asking her to reply to defendant's answer to the charge. (D.I. 10 at A9-A12; A16-A17) On September 12, 1996, plaintiff responded with a four-page letter supplementing her charge. (D.I. 10 at A9-A12) In the letter, plaintiff emphasized that her complaint was one of "'CONTINUING ACTION' with the earliest date of '11/81' with the last[] being '11/10/94.'" (D.I. 10 at A10) She further indicated that her

complaint was "not about one incident of sexual harassment," citing to a number of other incidents of "sexual harassment." (D.I. 10 at A11)

On June 20, 1997, the EEOC issued a 90-day "Right to Sue" letter and dismissed plaintiff's charge, stating that

> based upon its investigation, the EEOC is unable to conclude that the information **[*7]** obtained established violations of the statutes. This does not certify that the respondent is in compliance with the statutes.

(D.I. 7 at A43)

Plaintiff filed this action on September 19, 1997 alleging generally that "continuous discriminatory acts of defendant, and Manager Richard Iovino in particular, have over a period of years deprived plaintiff of rights granted her by, and protected by 42 USC Section 2000(e) et. [] seq., known as Title VII." (D.I. 1) Specifically, plaintiff alleges that (1) she has been denied advancement in status and pay because of her gender; (2) the behavior and statements of Iovino have resulted in a hostile work environment; (3) she has been retaliated against because of her complaints; (4) the discriminatory actions of Iovino and defendant "were willful and intentional acts based on discriminatory animus"; and (5) intentional misrepresentation of her work performance and interpersonal relationships caused or contributed to her lack of advancement in status and pay. n1 (D.I. 1)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 In a sworn affidavit dated January 1998 submitted as an attachment to her answering brief, plaintiff clarified an unspecified count in the complaint as follows:

> 2. That one count of the Complaint in [the case at bar] deals with impeding the upward reclassification of her position by administrative superiors, including a Richard Iovino.
>
> 3. That impeding consisted of inaction and the giving of incorrect information over an extended period of time, and no reclassification of the position of any male employee of the agency was treated in the same fashion.
>
> 4. She believes the impeding of the reclassification of her position occurred because of discrimination, and because she was retaliated against for raising complaints of discrimination.

(D.I. 10 at A27)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**[*8]**

### III. STANDARD OF REVIEW

Since the parties have referred to matters outside the pleadings, defendant's motion shall be

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 9100

Case 1:04-cv-00285-KAJ   Document 38-3   Filed 05/03/2005   Page 20 of 26

Page 8 of 16

treated as one for summary judgment. n2 See Fed.R.Civ.P. 12(b). *HN1* Summary judgment should be granted only if the court concludes that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact is in dispute. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). Once the moving party has carried its initial burden, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Id. at 587 (quoting Fed.R.Civ.P. 56(e)). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (citations omitted). If the nonmoving **[*9]** party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that factual issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). This court, however, must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995) (citation omitted). *HN2* With respect to summary judgment in discrimination cases, the court's role is "'to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer **[*10]** intentionally discriminated against the plaintiff.'" Revis v. Slocomb Industries, Inc., 814 F. Supp. 1209, 1215 (D. Del. 1993) (quoting Hankins v. Temple Univ., 829 F.2d 437, 440 (3d Cir. 1987)).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n2 *HN3* Rule 12(b) provides that

> if, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.


Fed.R.Civ.P. 12(b).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -


# IV. DISCUSSION

## A. Exhaustion of Administrative Remedies

In the instant action, defendant maintains that plaintiff's Title VII n3 claims for hostile work environment and failure to promote are precluded because she failed to exhaust her administrative remedies by not including these claims in the charge filed with the EEOC.

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 9100

Case 1:04-cv-00285-KAJ    Document 38-3    Filed 05/03/2005    Page 21 of 26    Page 9 of 16

Defendant, **[*11]** thus, asserts that plaintiff's complaint should be dismissed. Alternatively, defendant requests that the court require plaintiff file a more definite statement of her claims.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Title VII of the 1964 Civil Rights Act provides in pertinent part:

> *HN4*
> (a) Employer practices. It shall be an unlawful employment practice for an employer-
> -(1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate
> against any individual with respect to his compensation, terms, conditions, or
> privileges of employment, because of such individual's race, color, religion, sex, or
> national origin; or (2) to limit, segregate or classify his employees or applicants for
> employment in any way which would deprive or tend to deprive any individual of
> employment opportunities or otherwise adversely affect his status as an employee,
> because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

*HN5* The preconditions (exhaustion requirements) to a suit under Title VII are **[*12]** the filing of a charge with the EEOC and the receipt of the EEOC's notice of the right to sue. See 42 U.S.C. §§ 2000e-5(e), 2000(e)-5(f). Because the statutory scheme of Title VII emphasizes informal means of achieving settlement over formal adjudication, a potential plaintiff normally is required to set forth in the charge to the EEOC those allegations subsequently raised in the district court. See Schanzer v. Rutgers University, 934 F. Supp. 669, 673 (D.N.J. 1996).

*HN6* In accordance with the exhaustion requirement, there are limitations on the presentation of new claims in the trial court. See Howze v. Jones & Laughlin Steel, Corp., 750 F.2d 1208, 1212 (3d Cir. 1984). The parameters of the resulting civil complaint that may follow a notice of a right to sue from the EEOC are "'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination,'" regardless of the actual scope of the EEOC investigation. Hicks v. ABT Assocs., Inc., 572 F.2d 960, 966 (3d Cir. 1978) (quoting Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976), cert. denied, 429 U.S. 1041, 50 L. Ed. 2d 753, 97 S. Ct. 741 (1977)). **[*13]** Therefore, a trial court may assume jurisdiction over additional charges only if "the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996) (quoting Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984)). However, this standard must be applied in accord with the "sound and established policy that procedural technicalities should not be used to prevent Title VII claims from being decided on the merits." Revis, 814 F. Supp. at 1216 (quoting Gooding v. Warner-Lambert Co., 744 F.2d 354, 358-59 (3d Cir. 1984)).

*HN7* Where the allegations in the complaint were sufficiently distinct from those presented in the EEOC charge and were not part of the EEOC investigation, courts have refused to entertain the expanded claims until administrative procedures have been exhausted. See e.g., Zalewski v. M.A.R.S. Enterprises, Ltd., 561 F. Supp. 601, 604-05 (D. Del. 1982) (finding the charge of gender discrimination presented to the EEOC and the claim of sexual harassment in the civil suit to be unrelated and independent charges since the facts alleged **[*14]** in the complaint were wholly different from those set forth in the charge); Sandom v. Travelers Mortgage Services,

Inc., 752 F. Supp. 1240, 1246-48 (D.N.J. 1990), aff'd without op., 998 F.2d 1005 (3d Cir. 1993) (dismissing a sexual harassment claim that was not raised in the EEOC charge because it arose from a set of wholly distinct facts and thus would not have been discovered by a reasonable EEOC investigation of the filed charge of sexual discrimination). However, courts have heard claims not specifically mentioned in the prior EEOC charge where there was a close nexus between the facts supporting the claims raised in the charge and those in the complaint. See e.g., Howze, 750 F.2d at 1212 (finding the claim in the civil suit that plaintiff was discriminated against because of her involvement with a "Black Caucus" explained the original EEOC charge, which alleged racial discrimination in job promotion); Ostapowicz, 541 F.2d at 398-99 (finding that additional charges of gender discrimination filed during the pendency of the administrative proceedings may be considered "explanations of the original charge and growing out of it").

In the instant action, the charge [*15] filed with the EEOC alleged an on-going course of gender discrimination and retaliation. (D.I. 33 at A8) The question is whether or not a reasonable investigation would have led to the facts surrounding plaintiff's claims of hostile work environment and failure to promote. See Zalewski, 561 F. Supp. at 604.

Reviewing the EEOC complaint filed by plaintiff and her September 12, 1995 response to the EEOC inquiry, the court finds, as a matter of law, that plaintiff's hostile work environment claim qualifies under the above standard. First, there is a close nexus between the facts supporting plaintiff's charge of gender discrimination and those supporting the complaint's claim of hostile work environment. Second, an EEOC investigation of retaliation and gender discrimination based on the original charge would have disclosed the hostile work environment claim. Cf. Zalewski, 561 F. Supp. at 605 (finding "the sole common denominator of the two charges [a male-female sexual discrimination claim and a sexual harassment claim based on termination for refusal to accept offer for homosexual favors] is the fact that the discrimination allegedly involved sex, yet the two sex discrimination [*16] claims were in no way 'alike or related.'") (citations omitted)). Third, in the instant action, the activity alleged by plaintiff in her charge to the EEOC and her supplemental letter could give rise to both gender discrimination and hostile work environment claims. See Ostapowicz, 541 F.2d at 399 ("The additional charges filed during the pendency of the administrative proceedings may fairly be considered explanations of the original charge and growing out of it."); accord Schanzer, 934 F. Supp. at 674. Accordingly, the court finds that a reasonable investigation by the EEOC of plaintiff's charge would have encompassed the allegations raised in her complaint with regard to the hostile work environment claim.

Unlike the hostile work environment claim, however, plaintiff's failure to promote or advance claim does not fall within the scope of the EEOC complaint or a reasonable investigation thereof. First, there is nothing in the record to indicate that the EEOC investigated or had any reason to investigate whether plaintiff had been discriminated against by defendant's failure to promote or advance her. Plaintiff's charge alleged continuing discriminatory and retaliatory conduct; [*17] there was no mention of or allegation of any facts to support a claim of failure to promote or advance in the charge or in her September 12, 1996 letter to the EEOC. See Antol, 82 F.3d at 1295-96 (finding that a disability discrimination charge did not encompass a claim for gender discrimination even though investigation would have revealed that the position plaintiff (a man) was denied was filled by two female employees); Parsons v. City of Philadelphia Coordinating Office of Drug & Abuse Programs, 822 F. Supp. 1181 (E.D. Pa. 1993) (finding that claims of retaliation and race discrimination for failure to compensate "out-of-class" for additional duties did not encompass a claim for failure to promote despite the fact that the EEOC investigation considered whether plaintiff was qualified for the position). Second, a claim of failure to promote does not flow logically from, and would have required investigation of events not raised by, claims of gender discrimination or retaliation. See Parsons, 822 F. Supp. at 1183-84; cf. Foust v. FMC Corp., 962 F. Supp. 650 (E.D. Pa. 1997) (finding that the additional allegation raised in the complaint was within the scope of the [*18] EEOC investigation since it "merely added other improper motives" for the same event raised in the charge). The record indicates that the occurrences of alleged failure to promote were distinct incidents from those of alleged gender discrimination and retaliation. Third, under the circumstances, neither the EEOC nor defendant

were put on notice of plaintiff's failure to promote claim; thus the EEOC was not "afforded . . . the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." Antol, 82 F.3d at 1296; see also, Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 485 (3d Cir. 1997) ("To allow a stale claim to proceed would be inconsistent with the administrative procedure established by Title VII which contemplates prompt filing of charges so that discrimination controversies may be resolved promptly."). Accordingly, the court concludes that plaintiff's failure to promote or advance claim is a distinct claim not within the scope of the EEOC charge. See Rush, 113 F.3d at 483-85 (finding plaintiff's failure to promote and train claim distinct from her sexual harassment claim because, inter alia, the claims [*19] address different types of conduct). Consequently, to the extent that Counts I, n4 III, n5 and V n6 of the complaint allege failure to promote or advance claims, they shall be dismissed for failure to exhaust administrative remedies. n7

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Count I provides in relevant part:

> 10. By constant belittling of the work performance and contributions to the agency of women in general, and plaintiff in particular, Iovino made it clear to plaintiff as well as to subordinate supervisors that he did not believe females sufficiently contributed to be given advancements in status and pay equal to males.

> 11. Despite satisfactory or better than satisfactory work performance plaintiff has consistently been, over a period of years, denied advancement in status and pay within the agency because of her sex leading to severe frustration and mental distress, including a mental breakdown disabling plaintiff from work.

(D.I. 1)

n5 Count III provides in relevant part:

> 16. Plaintiff on a number of occasions complained to her supervisor or to Manager Iovino of the discriminatory treatment, and hostile work atmosphere, based on specific events which had occurred.

> 17. Defendant and Iovino took little or no action to effectively address plaintiff's complaints but instead retaliated against plaintiff because of those complaints.

(D.I. 1) [*20]

n6 Count V provides in relevant part;

> 21. The actions of Iovino were intended to, and did, cause higher level administrative superiors within the agency to have a false impression of plaintiff's work performance and interpersonal relationships within [the] agency.

> 22. The intentional misrepresentations of plaintiff's work performance and

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 9100

Case 1:04-cv-00285-KAJ    Document 38-3    Filed 05/03/2005    Page 24 of 26    Page 12 of 16

interpersonal relationships caused or contributed to plaintiff's lack of advancement in status and pay, and the mental frustration and stress thereby caused plaintiff.

(D.I. 1)

n7 Even assuming arguendo that plaintiff exhausted administrative remedies with respect to the failure to promote or advance claim, she has failed to present sufficient evidence to establish a prima facie case under Title VII. In order to establish a prima facie case of failure to promote or advance a plaintiff must show:

> (a) she belongs to a protected category; (b) she applied and was qualified for a promotion; (c) despite her qualifications, she was denied the promotion; and (d) other employees of similar qualifications who were not members of the protected group were promoted at the time the plaintiff's request for promotion was denied.

Lewis v. State of Delaware Dept. of Public Instruction, 948 F. Supp. 352, 358 (D. Del. 1996). In the instant action, even accepting her allegations as true, plaintiff has not made such a showing. Specifically, although plaintiff alleges that Iovino impeded reclassification of her position (D.I. 1 at P 6A) and indicated that women did not deserve advancements in status and pay equal to that of men (D.I. 1 at P 10), plaintiff has failed to allege, much less establish, that she was qualified for a promotion or advancement and that male employees of similar qualifications were promoted or advanced while she was not.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*21]**

**B. The EEOC 300-Day Filing Requirement**

Defendant contends that only those discriminatory acts which occurred during the 300 days prior to the filing of the EEOC charge are actionable. Consequently, defendant argues that to the extent plaintiff's allegations are based on events occurring prior to November 9, 1994 the charge is untimely and that plaintiff failed to preserve her claims. Defendant contends that the EEOC charge relates solely to the 1994 discipline, which it argues was not raised in plaintiff's complaint.

*HN8* According to 42 U.S.C. § 2000e-5(e), a charge of employment discrimination must be filed within 300 days "after the alleged unlawful employment practice occurred." This filing requirement, however, "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 71 L. Ed. 2d 234, 102 S. Ct. 1127 (1982). In West v. Philadelphia Electric Co., 45 F.3d 744 (3d Cir. 1995), *HN9* the Third Circuit determined the continuing violation theory to be one such equitable exception to the timely filing requirement. **[*22]**  See id. at 754. Under this theory, a "plaintiff may pursue a Title VII claim for discriminatory conduct that began prior to the filing period if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant." Id. To establish a continuing violation, a plaintiff must demonstrate (1) that at least one discriminatory act occurred within the filing period and (2) that the harassment is "'more than the occurrence of

isolated or sporadic acts of intentional discrimination'" but is a "persistent, on-going pattern." Id. at 754-55 (quoting Jewett v. Int'l Tel. & Tel. Corp., 653 F.2d 89, 91 (3d Cir. 1981)); accord Rush, 113 F.3d at 481 (3d Cir. 1997). *HN10* In determining whether a continuing violation exists, the court must consider:

> (i) subject matter--whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence--whether the nature of the violations would trigger the employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

West, 45 F.3d at 755 n.9 (adopting **[*23]** the approach taken by the Fifth Circuit in Berry v. Bd. of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir. 1983)); accord Rush, 113 F.3d at 481-82. "Once the plaintiff has alleged sufficient facts to support use of the continuing violation theory, however, the 300-day filing period becomes irrelevant--as long as at least one violation has occurred within that 300 days." West, 45 F.3d at 755.

As the Third Circuit in West noted, "*HN11* there is a natural affinity between" hostile work environment and continuing violation claims. Id. at 755.

> "In the arena of sexual [or racial] harassment, particularly that which is based on the existence of a hostile environment, it is reasonable to expect that violations are continuing in nature: a hostile environment results from acts of sexual [or racial] harassment which are pervasive and continue over time, whereas isolated or single incidents of harassment are insufficient to constitute a hostile environment. Accordingly, claims based on hostile environment sexual [or racial] harassment often straddle both sides of an artificial statutory cut-off date."

Id. (quoting Jenson v. Eveleth Taconite **[*24]** Co., 824 F. Supp. 847, 877 (D. Minn. 1993)) (alterations in original).

In the case at bar, a reasonable jury could conclude that plaintiff has alleged sufficient facts to support application of the continuing violation theory to her hostile environment claim. n8 First, the record indicates that there were episodes of alleged harassment after the 300-day period began to run on November 9, 1994. n9 Specifically, plaintiff cited the "formal contact" she received on November 10, 1994 and a February 1995 office meeting during which Iovino allegedly criticized the women, but not the men, in the office. Second, the record supports a finding that plaintiff experienced continuous sexual harassment, including intensified harassment after the filing of the EEOC charge. Plaintiff has cited a series of allegedly discriminatory incidents occurring consistently over the period of her employment. n10 These purported incidents all involved sexual harassment in some form, either demeaning comments, rude behavior, inappropriate touching, or discriminatory conduct. The alleged harassment, i.e., impeding the classification of her position, grabbing by a co-worker, Iovino's derogatory statements, was **[*25]** not of such a nature as to "trigger a duty of the plaintiff to assert [her] rights arising from the deprivation." 45 F.3d at 756. Since plaintiff has alleged sufficient facts to

support use of the continuing violation theory, the 300-day filing period is irrelevant. See id. Consequently, plaintiff may present evidence of the entire continuing violation. n11 See id.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -


n8 Although in the charge, plaintiff alleged the first and last dates of discrimination as being November 1981 and November 10, 1994, respectively, she also indicated that the discriminatory activity was continuing.


n9 Plaintiff filed the requisite EEOC charge on September 25, 1995. Consequently, the 300-day retrospective limitations period began to run on November 9, 1994.


n10 In many, if not most, of her allegations, plaintiff fails to specify the date of the purported discriminatory conduct. However, viewing the facts and all reasonable inferences therefrom in the light most favorable to the plaintiff, sufficient indicia exist for the court to discern a continuous pattern of allegedly discriminatory conduct.


n11 Since the court has already concluded that plaintiff's hostile work environment claim falls within the scope of the EEOC investigation, plaintiff also may present evidence of incidents of sexual harassment occurring subsequent to the filing of the charge. See Robinson v. Dalton,, 107 F.3d 1018 at 1025; Waiters, 729 F.2d at 235.


- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*26]

## C. Plaintiff's Hostile Environment Claim

Defendant next contends that plaintiff has failed to produce sufficient evidence to establish a prima facie case of hostile work environment under Title VII. The Supreme Court has recognized that *HN12* Title VII is violated by a "work environment abusive to employees because of their race, gender, religion, or national origin." Harris v. Forklift Systems, Inc., 510 U.S. 17, 22, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993); see also Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66, 91 L. Ed. 2d 49, 106 S. Ct. 2399 (1986) ("[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment."). To be cognizable within the meaning of Title VII, the harassment "must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" Meritor Sav. Bank, FSB, 477 U.S. at 67 (quoting Henson v. Dundee, 682 F.2d 897, 904 (11th Cir. 1982). In order to establish a hostile work environment,


a plaintiff must establish "by the totality of the circumstances, the existence of a hostile [*27] or abusive working environment which is severe enough to affect the psychological stability of a minority employee."


Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990) (quoting Vance v. Southern Bell Tel. & Tel. Co., 863 F.2d 1503, 1510 (11th Cir. 1989). Specifically, *HN13* a plaintiff must demonstrate that: