proximity to each other." Harris v. SmithKline Beecham, 27 F. Supp. 2d 569, 580 (E.D. Pa. 1988), aff'd 203 F.3d 816 (3d Cir. 1999). In the present case, Plaintiff relies on the close temporal proximity between her leave and her termination to demonstrate a causal connection. See Pl.'s Resp. at 33. Panto notes that she was fired approximately two weeks after her return from leave in March 2000, indicating that Defendant fired her in retaliation of Panto exercising her FMLA rights. See id.

The problem with Panto's argument is that this assumes that her leave in March 2000 was FMLA leave. This, however, is not the case as the March 2000 leave was not protected under the FMLA. The Court has already determined that Panto exhausted her FMLA leave during the May 18, 1999 to August 10, 1999 period. Panto admits that she was not eligible for **[*23]** leave under the FMLA on March 1, 2000 because she had already used 12 weeks of FMLA leave during the summer of 1999. See Def.'s Mot. Summ. J.-Tab 1, Pl.'s Answers to Def.'s Req. for Admis. at 65; Panto Dep. at 94. Instead of a two week gap, seven months existed between the time Plaintiff returned from her FMLA/extended leave in September 1999 and the termination of her employment in April 2000. A causal connection between Panto taking FMLA leave and her subsequent termination cannot be inferred from a seven month intervening time period. See e.g., Keeshan v. Home Depot, Inc., No. 00-529, 2001 U.S. Dist. LEXIS 3607, at *43-44 (E.D. Pa. Mar. 27, 2001) (stating that "under the facts of this case, a time period of approximately four months with no evidence of discriminatory conduct or animus by the Defendants in connection with [plaintiff's] leave under the FMLA does not establish close temporal proximity").

Finding that Panto cannot establish a prima facie case of retaliation under the FMLA, the Court grants Defendant's motion for summary judgment as to Panto's "retaliation claim."

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary **[*24]** Judgment is granted in part and denied in part. An appropriate Order follows.

## ORDER

**AND NOW**, this 7th day of April, 2003, upon consideration of Defendant Palmer Dialysis Center/Total Renal Care's Motion for Summary Judgment (Docket No. 9), Plaintiff Kimmberly A. Panto's Response (Docket No. 11), and Defendant's Reply (Docket No. 12), it is hereby **ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. More specifically:

1) Defendant's Motion for Summary Judgment as to Plaintiff's ADA claim (Count I) is **DENIED**;

2) Defendant's Motion for Summary Judgment as to Plaintiff's FMLA claim (Count II) is **GRANTED**;

3) Defendant's Motion for Summary Judgment as to Plaintiff's PHRA claim (Count III) is **DENIED**.

Pre-trial memoranda are due within ten (10) days of the date of this Order. Counsel are to contact the Courtroom Deputy, Matthew Higgins, for trial scheduling.

BY THE COURT:

RONALD L. BUCKWALTER, J.

Citation: **2003 U.S. Dist. LEXIS 5663**
View: Full
Date/Time: Monday, May 2, 2005 - 8:17 PM EDT

* Signal Legend:

- Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
Ⓘ - Citation information available

* Click on any *Shepard's* signal to *Shepardize*® that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved

Service: **Get by LEXSEE®**
Citation: **1996 Del Super lexis 86**

*1996 Del. Super. LEXIS 86, ***

BRAD PATTEN, Plaintiff, v. ZENECA, INC., Defendant.

CIVIL ACTION NUMBER 94C-07-180-WTQ

SUPERIOR COURT OF DELAWARE, NEW CASTLE

1996 Del. Super. LEXIS 86

November 22, 1995, Submitted
February 13, 1996, Decided

**NOTICE: [*1]** THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

**DISPOSITION:** Upon Motion of Plaintiff for Reargument - DENIED

**CORE TERMS:** termination, misrepresentation, deceit, accusation, implied covenant, fair dealing, supervisor, at-will, fired, favorable, summary judgment, inappropriate, disrespectful, communicated, deposition, disruption, lying

**COUNSEL:** Michael P. Maguire, Esq., of Wilmington, Delaware, attorney for plaintiff.

Michael P. Kelly, Esq., of Haase & Kelly, attorney for defendant.

**JUDGES:** Jerome O. Herlihy, Judge

**OPINIONBY:** Jerome O. Herlihy

**OPINION:** MEMORANDUM OPINION

HERLIHY, Judge

Plaintiff Brad Patten [Patten] has moved to reargue this Court's bench ruling granting the motion for summary judgment of defendant Zeneca, Inc. [Zeneca].

*FACTUAL BACKGROUND*

Patten went to work for Zeneca in 1972. At the time of the termination at issue in this case, he was eastern business director of national accounts. Prior to that, Patten had been director of marketing.

On October 22, 1993, there was a meeting of a number of management personnel, including Patten. During the meeting, a presentation was made by a Richard Greenhill [Greenhill]. Also in attendance was Patten's immediate supervisor, Jane Hart [Hart].

Mike Rance [Rance] met with Patten on October 28, 1993 and told Patten he was fired. Hart was present during this meeting, too. Rance indicated that **[*2]** the termination was due to Patten's inappropriate conduct toward Greenhill and what Patten describes as Rance saying was a verbal "attack" by Patten on Greenhill.

During a deposition, Patten variously described his meeting with Rance and his views of what happened (or did not happen) at the October 22 meeting.

A. Well, I was sat down and very surprised by a discussion that I had with [Rance] -- as I've tried to document in this -- what you referred to, I guess, as a diary or notes -- primarily because I was informed that I had a performance problem.

And prior to that, I quite honestly can't recall anybody ever sitting me down and talking about any sort of a serious performance problem that I had.

And the reason that I was given in terms of what that performance problem was, I don't think is -- wasn't in my mind what I would consider to be a performance problem.

* * *

Q. Okay.

Now, if you turn to Paragraph 7 of your Complaint, on Page 2, the first clause states. "The accusations made by Zeneca were false."

In what way were the accusations false?

A. Well, the accusation, as I understood it, was that my conduct at this meeting was inappropriate and an attack on the presenter. **[*3]** And I certainly did not perceive it that way, and so I thought it was a false accusation.

Q. Okay.

Are you contending, as part of your lawsuit, that there was some reason for your termination other than what had been communicated to you by [Rance]?

A. I just think that what has been told to me in terms of a performance problem that I had at this meeting didn't seem to me to be a reason to terminate someone, and that was the only reason I was ever given.

Q. Okay.

Let me see if I can be more specific in my question.

You were told by [Rance], as you've related it, that you had a performance problem, which was described as this alleged disruption at the meeting on October 22nd, correct?

A. Yes.

* * *

And as I understand your allegation, you are stating that you did not cause a disruption, from your perception, at this meeting of October 22nd?

A. Yes, that's correct.

Q. Okay.

Get a Document - by Citation - 1996 Del. Super. LEXIS 86

Case 1:04-cv-00285-KAJ    Document 38-7    Filed 05/03/2005    Page 5 of 31 Page 3 of 5

Do you contend that [Rance], when he was communicating to you what his perception was and why he was terminating you, was lying to you about what his perception was?

A. I don't know if he was lying or not. That could be difficult for me to say. He was delivering his perception.

* * *

Q. Okay. **[*4]**

Has anyone other than [Rance], who is in any way connected with Zeneca either now or then, ever told you anything which leads you to believe that there was some other reason for your termination, other than what was communicated to you by [Rance]?

A. I don't believe so, no.

Q. Is there anything that Mr. Bateman may or may not have said to you during your conversations with him which has led you to believe that there was some reason for your termination, other than what [Rance] said to you?

A. I can only -- I can only say the reason I was given for my termination was that I had a performance problem.

And when I asked specifically what the performance problem was, I was told that it was as a result of this categorized inappropriate behavior at this meeting.

Q. And if I understand your allegation correctly, when you say that that accusation was false, what you're saying is that you disagree with the perception of your conduct at that meeting?

A. Yes.

* * *

At the meeting that you held with [Rance] on October 28th -- the meeting that he held with you -- did you believe that you had an opportunity at that time to deny what you were being accused of?

A. I think I said that **[*5]** I didn't conduct myself inappropriately at the meeting. I think I did.

Deposition transcript (June 27, 1995) at 27, 43-44, 45-46, 47-48 and 60. Patten has offered no evidence that there were any other reasons Zeneca fired him.

*CLAIMS*

Patten acknowledges that he was an employee at will. He argues, however, that he was fired for a reason that is a misrepresentation. This, he contends, is a breach of the implied covenant of good faith and fair dealing which an employer owes to an at-will employee.

*APPLICABLE STANDARD*

The Court can only grant summary judgment were there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. _Alabi v. DHL Airways, Del.Super., 583 A.2d 1358 (1990)._ The facts must be examined in a light most favorable to the non-moving party. _McCall v. Village Pizza, Del.Super., 636 A.2d 912, 913 (1994)._

_DISCUSSION_

Patten does not dispute that he was an at-will employee. Such employees can be terminated with or without cause. _Haney v. Laub, Del.Super., 312 A.2d 330, 332,_ (1973); _Heideck v. Kent General Hospital, Del.Supr., 446 A.2d 1095, 1096 (1982)._

However, an at-will employee is employed **[*6]** with an implied covenant of good faith and fair dealing. _Merrill v. Crothall-American, Inc., Del.Super., 606 A.2d 96, 101 (1992)._ To constitute a breach of this covenant, the employer's conduct must constitute an aspect of fraud, deceit or misrepresentation. _Id._

> The lodestar here is candor. An employer acts in bad faith when it induces another to enter into an employment contract through actions, words, or the withholding of information, which is intentionally deceptive in some way material to the contract. Such conduct constitutes "an aspect of fraud, deceit or misrepresentation."

_Merrill,_ 606 A.2d at 101.

The _Merrill_ case involved deceit in _hiring._ This case, of course, involves a termination. Decisions subsequent to _Merrill_ have narrowly interpreted its reach. _Lankford v. Scala,_ Del.Super., C.A.No. 94C-04-023, Lee, J. (February 28, 1995).

Patten states that he was not disruptive at the meeting on October 22, 1993. Further, he disagrees with his supervisor's conclusion that he either was disrespectful to Greenhill or attacked him.

In short, his claim of misrepresentation is a disagreement with his supervisors' opinions and characterizations **[*7]** of his conduct at the meeting. He does not claim, has produced no evidence of and the record is devoid of any other ulterior, sinister motive on Zeneca's part to fire him for reasons unrelated to the reason given. Patten has had more than ample time to supply this information, if it existed, and had the duty to do so to create a genuine issue of material fact. _State v. Regency Group, Inc., Del.Super., 598 A.2d 1123, 1129 (1991)._ While he argues Rance lied to him about the nature of his conduct at the meeting, that allegation rests on Patten's different view of his conduct.

To put this dispute in another way, to classify this dispute under the rubric of "fraud, deceit and misrepresentation" would lead to a factual contest over whether Patten's conduct was disrespectful. Did Zeneca's supervisors reach the correct or incorrect business judgment about Patten's conduct? Such a conflict is one of opinion and is also, in this case, not within the meaning of fraud, deceit or misrepresentation.

Clearly an examination of the facts in a light most favorable to Patten does not state a claim for breach of the implied covenant of good faith and fair dealing.

_CONCLUSION_

For the reasons **[\*8]** stated herein, the motion for reargument of plaintiff Brad Patten is DENIED.

IT IS SO ORDERED.

Jerome O. Herlihy

Service: **Get by LEXSEE®**
Citation: **1996 Del Super lexis 86**
View: Full
Date/Time: Monday, May 2, 2005 - 8:20 PM EDT

\* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc  All rights reserved.

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 23941    Page 1 of 15

Case 1:04-cv-00285-JJF Document 88-3    Filed 05/03/2005    Page 8 of 31

Service: **Get by LEXSEE®**
Citation: **2003 us dist lexis 23941**

*2003 U.S. Dist. LEXIS 23941, \**

PAUL PHILLIPS, Plaintiff v. DAIMLERCHRYSLER CORPORATION, Defendant.

Civil Action No. 01-247-JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2003 U.S. Dist. LEXIS 23941

March 27, 2003, Decided

**SUBSEQUENT HISTORY:** Affirmed by Phillips v. DaimlerChrysler Corp., 2004 U.S. App. LEXIS 21093 (3d Cir. Del., July 15, 2004)

**PRIOR HISTORY:** Phillips v. DaimlerChrysler Corp., 2002 U.S. Dist. LEXIS 13078 (D. Del., July 17, 2002)

**DISPOSITION:** [\*1] Defendant's Motion for Summary Judgment was granted.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff employee sued defendant employer and alleged racial discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C.S. § 2000e et seq., 42 U.S.C.S. § 1981, disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C.S. § 12101 et seq., and retaliation under Title VII and the Family and Medical Leave Act, 29 U.S.C.S. § 2601 et seq. The employer moved for summary judgment.

**OVERVIEW:** The employee was diagnosed with keratoconus, a condition which affected the shape of the cornea and causes vision problems. After he filed charges of discrimination and retaliation with the Equal Employment Opportunity Commission, the employee filed the instant suit. The court found that because there was no allegation of race discrimination in the charge that the employee filed with the Equal Employment Opportunity Commission, the employee had not satisfied Title VII's exhaustion requirement. Because two of the employee's racial discrimination claims under 42 U.S.C.S. § 1981 occurred two years before the employee alleged a claim under 42 U.S.C.S. § 1981, they were time barred under the two year statute of limitations of Del. Code Ann. tit. 10, § 8119. The employee was not disabled since he was not substantially limited in the major life activity of seeing and the employer did not regard him as being disabled. Because the employee was not disabled within the meaning of 42 U.S.C.S. § 12102(2)(A) or (C), the employer was entitled to summary judgment on the employee's claim that the employer failed to provide reasonable accommodations to him based on his disability.

**OUTCOME:** The employer's motion for summary judgment was granted.

**CORE TERMS:** retaliation, disabled, disability, summary judgment, impairment, accommodate, keratoconus, prima facie case, race discrimination, plant, promissory estoppel, questionnaire, designation, temporary, protected activity, causal connection, deposition, assigned, intake, discriminated, seeing, visual, cause of action, non-moving, return to work, air gun, retaliatory,

placement, racially, layoff

## LexisNexis(R) Headnotes ◆ Hide Headnotes

Civil Procedure > Summary Judgment > Summary Judgment Standard
HN1⊥Fed. R. Civ. P. 56(c) provides that a party is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c) . More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard
HN2⊥On a motion for summary judgment, in determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. However, a court should not make credibility determinations or weigh the evidence. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof
HN3⊥To defeat a motion for summary judgment, Fed. R. Civ. P. 56(c) requires the non-moving party to show that there is more than some metaphysical doubt as to the material facts. In the language of the Fed. R. Civ. P. 56, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. More Like This Headnote

Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Time Limitations
Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Exhaustion of Remedies
HN4⊥Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C.S. § 2000e et seq., requires a claimant to file an administrative charge within 300 days of the claimed discriminatory event. 42 U.S.C.S. § 2000e-5(e)(1). The intake questionnaire does not serve the same function as the charge and therefore does not satisfy Title VII's exhaustion requirement. If the courts made allegations in the intake questionnaire part of the charge itself, and therefore permitted the plaintiff to pursue claims made only in the questionnaire and not investigated by the Equal Employment Opportunity Commission (EEOC), the courts would be circumventing the role of the EEOC as well as depriving the defendant of notice of all claims against it. More Like This Headnote

Governments > Legislation > Statutes of Limitations > Time Limitations
Labor & Employment Law > Discrimination > Reconstruction Statutes (secs. 1981, 1983 & 1985)
HN5⊥Claims under 42 U.S.C.S. § 1981 are subject to the two-year statute of limitations of Del. Code Ann. tit. 10, § 8119. More Like This Headnote

Labor & Employment Law > Discrimination > Racial Discrimination > Coverage & Definitions
Labor & Employment Law > Discrimination > Reconstruction Statutes (secs. 1981, 1983 & 1985)
HN6⊥To establish a prima facie case of race discrimination based on a failure to transfer, a plaintiff must demonstrate: (1) that he is a member of a protected class; (2) that he applied for, was qualified for, and was denied the position sought; and (3) circumstances that give rise to an inference of discrimination. More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Qualified Individuals With a Disability
Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions
The Americans with Disabilities Act (ADA), 29 U.S.C.S. § 12101 et seq., mandates that

HN7⬥ employers provide a reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability. 42 U.S.C.S. § 12112(b) (5)(A). To establish a prima facie case of failure to accommodate, a plaintiff must prove: (1) he is an individual with a disability under the ADA; (2) he can perform the essential functions of his position with an accommodation; (3) his employer had notice of the alleged disability; and (4) the employer failed to accommodate him.  More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions 📑
HN8⬥ A disability is defined as a physical or mental impairment that substantially limits one or more of a person's major life activities. 42 U.S.C.S. § 12102(2) (A).  More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions 📑
HN9⬥ Equal Employment Opportunity Commission regulations define the terms "substantially limits" to mean: (1) Unable to perform a major life activity that the average person in the general population can perform; or (2) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform the same major life activity. 29 C.F.R. § 1630.2(j).  More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions 📑
HN10⬥ Generally, courts have held that visual impairments must be severe in order to substantially limit the major life activity of seeing. A visual impairment which hinders, or makes it more difficult for an individual to function at a full visual capacity, does not amount to a substantial limitation on one's ability to see where the evidence suggests the individual can otherwise conduct activities requiring visual acuity.  More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions 📑
HN11⬥ A plaintiff attempting to establish disability on the basis of substantial limitation in the major life activity of working must, at minimum, allege that he or she is unable to work in a broad class of jobs.  More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions 📑
HN12⬥ Under 42 U.S.C.S. § 12102(2), the term "disability" means: (C) being regarded as having such an impairment.  More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions 📑
HN13⬥ A person is "regarded as" having a disability if the person: (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation; (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) Has no such impairment but is treated by a covered entity as having a substantially limiting impairment.  More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions 📑
HN14⬥ To be covered under the regarded as prong of the Americans with Disabilities Act, 42 U.S.C.S. § 12101 et seq., the employer must regard the employee to be suffering from an impairment within the meaning of the statutes, not just that the employer believed the employee to be somehow disabled.  More Like This Headnote

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 7394    Page 11 of 31

Case 1:04-cv-00285-KAJ    Document 38-7    Filed 05/03/2005    Page 4 of 15



Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions
HN15⬆ Temporary conditions or problems are not covered by the Americans with Disabilities Act, 42 U.S.C.S. § 12101 et seq., because, by definition, they do not substantially limit a major life activity. More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions
HN16⬆ The United States Supreme Court has held that the effect of corrective measures must be taken into account when judging whether that person is substantially limited in a major life activity and thus disabled under the Americans with Disabilities Act, 42 U.S.C.S. § 12101 et seq. More Like This Headnote

Labor & Employment Law > Occupational Safety & Health > Civil Liability
HN17⬆ The Occupational Safety and Health Act (OSHA), 29 U.S.C.S. § 651 et seq., prohibits retaliation and provides a statutory procedure for aggrieved parties to pursue; however, there is no private right of action under OSHA for retaliation. 29 U.S.C.S. § 660(c). More Like This Headnote

Labor & Employment Law > Discrimination > Retaliation
HN18⬆ To establish a prima facie case of retaliation under the Americans with Disabilities Act (ADA), 42 U.S.C.S. § 12101 et seq., or the Family and Medical Leave Act, 29 U.S.C.S. § 2601 et seq., a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. If an employee establishes a prima facie case of retaliation under the ADA, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action. If the employer satisfies its burden, the plaintiff must be able to convince the fact finder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action. More Like This Headnote

Labor & Employment Law > Discrimination > Retaliation
Civil Procedure > Summary Judgment > Burdens of Production & Proof
HN19⬆ In the context of a retaliation claim, a plaintiff cannot prevent summary judgment through bare allegations that acts he disagreed with or disliked were retaliatory. More Like This Headnote

Labor & Employment Law > Leaves of Absence > Family & Medical Leave
HN20⬆ 29 U.S.C.S. § 2612(a)(1) allows 12 work weeks of leave during a 12 month period. More Like This Headnote

Labor & Employment Law > Leaves of Absence > Family & Medical Leave
HN21⬆ The Family and Medical Leave Act, 29 U.S.C.S. § 2601 et seq., simply leaves no room for recovery when an employee does not sustain economic loss during the period of his or her employment. More Like This Headnote

Contracts Law > Consideration > Promissory Estoppel
Contracts Law > Formation > Detrimental Reliance
HN22⬆ To succeed on a claim for promissory estoppel, a plaintiff must prove: (1) the making of a promise; (2) with the intent to induce action or forbearance based on the promise; (3) reasonable reliance; and (4) injury. The asserting party must be able to prove the elements of promissory estoppel by clear and convincing evidence. Moreover, the promise, in such a case, must be definite and certain. More Like This Headnote

Contracts Law > Consideration > Promissory Estoppel 🔍
Contracts Law > Formation > Detrimental Reliance 🔍
*HN23* Promissory estoppel cannot be predicated upon a promise to do that which the promisor is already obliged to do.    More Like This Headnote

**COUNSEL:** Paul Phillips, Pro se, Plaintiff.

Richard Pell, Esquire of TYBOUT, REDFEARN & PELL, Wilmington, Delaware.

Of Counsel: Gary M. Smith and Kristine K. Kraft, Esquires of LEWIS, RICH & FINGERSH, L.C., St. Louis, Missouri. Attorneys for Defendant.

**JUDGES:** JOSEPH J. FARNAN, JR., UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** JOSEPH J. FARNAN, JR.

**OPINION: MEMORANDUM OPINION**

Wilmington, Delaware

**FARNAN, District Judge**

Pending before the Court is Defendant DaimlerChrysler Corporation's Motion for Summary Judgment (D.I. 50). For the reasons discussed below, the Motion will be granted.

**I. BACKGROUND**

Plaintiff Paul Phillips is a former hourly employee of DaimlerChrysler who worked at the Newark assembly plant. Plaintiff was a member of Local UAW 1183 throughout his employment at DaimlerChrysler. DaimlerChrysler and Local UAW 1183 have entered into a collective bargaining agreement ("CBA") regarding the terms and conditions of employment at the plant.

In 1991, Plaintiff was diagnosed with keratoconus, a condition which affects the shape of the cornea and causes vision problems. **[*2]** (D.I. 52, Tab 17). Plaintiff notified Defendant that he had been diagnosed with keratoconus and should avoid exposure to volatile solvents. Consequently, Defendant's plant physician gave Plaintiff a medical restriction, called a Physical Qualification Code ("PQX"), of 150, which limits exposure to volatile solvents.

In 1992, Plaintiff had a cornea transplant in his left eye. (D.I. 52, Tab 13). Subsequently, Plaintiff underwent repeated attempts to have rigid gas permeable plastic contact lenses fitted to help correct his vision. (Id.). Plaintiff's uncorrected vision is 20/100 in the right eye and 20/70 in the left eye. (Id. at A42).

On January 19, 1999, Plaintiff filed for leave under the Family Medical Leave Act ("FMLA") to undergo a six month course of treatment to alleviate vision problems related to his keratoconus. (D.I. 52, Tab 3).

On May 7, 1999, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Delaware Department of Labor ("DDOL") alleging that Defendant discriminated against him from February 1999 to April 1999, on the basis of his visual disability. (D.I. 52, Tab 9).

On October 15, 1999, Plaintiff filed **[*3]** a Charge of Discrimination with the EEOC and the DDOL alleging that Defendant retaliated against him for filing the May 7, 1999, Charge of

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 7394    Page 6 of 15

Case 1:04-cv-00285-KAJ   Document 38-7   Filed 05/03/2005   Page 13 of 31

Discrimination. (D.I. 52, Tab 13).

On June 19, 2001, Plaintiff filed a six-count Second Amended Complaint (D.I. 13) alleging racial discrimination in violation of the <u>Civil Rights Act of 1964</u> ("Title VII") (Count I) and <u>42 U.S.C. § 1981</u> (Count II), disability discrimination in violation of the <u>Americans with Disabilities Act</u> ("ADA") (Count III), retaliation under Title VII, the <u>Occupational Safety and Health Act ("OSHA")</u>, and the FMLA (Count IV), violation of the FMLA (Count V), and a common law claim of detrimental reliance (Count VI). Defendant now moves for summary judgment on all counts.

## II. STANDARD OF REVIEW

<u>Federal Rule of Civil Procedure 56(c)</u> *HN1* provides that a party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." <u>Fed. R. Civ. P. 56(c)</u> **[\*4]** .

*HN2* In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. <u>Valhal Corp. v. Sullivan Assocs., Inc., 44 F.3d 195, 200 (3d Cir. 1995)</u>. However, a court should not make credibility determinations or weigh the evidence. <u>Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000)</u>.

*HN3* To defeat a motion for summary judgment, <u>Rule 56(c)</u> requires the non-moving party to show that there is more than:

> some metaphysical doubt as to the material facts ... In the language of the Rule, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial ... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.

<u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)</u> (citations and punctuation omitted). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court **[\*5]** to deny summary judgment. <u>Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)</u>.

## III. DISCUSSION

### A. COUNT I: TITLE VII

Plaintiff, a black male, contends Defendant racially discriminated against him in violation of Title VII; he contends he was denied three job assignments that were given to white employees.

In response, Defendant first contends that Plaintiff failed to exhaust his race discrimination claim under Title VII because he never filed an administrative charge with the EEOC regarding race discrimination. Defendant also contends Plaintiff has not established a prima facie case of disparate treatment under Title VII. Even assuming he did, Defendant contends it denied Plaintiff the three job assignments for legitimate nondiscriminatory reasons: PQX placement requirements and seniority requirements under the CBA.

Title VII *HN4* requires a claimant to file an administrative charge within 300 days of the claimed discriminatory event. <u>42 U.S.C. § 2000e-5(e)(1)</u>. Plaintiff filed two charges with the DDOL and

EEOC, one for disability discrimination and one for retaliation. (D.I. 52, Tab 9, 13). Neither contained **[*6]** any reference to racial discrimination. Id. However, Plaintiff did check the "race" box on DDOL's intake questionnaire, (D.I. 58, Ex. G), and now argues that the intake questionnaire satisfies Title VII's exhaustion requirement. As Defendant points out in its Reply Brief (D.I. 61), the intake questionnaire does not serve the same function as the charge and therefore does not satisfy Title VII's exhaustion requirement. The Court finds the reasoning in Rogan v. Giant Eagle, Inc., persuasive:

> If we made the allegations in the intake questionnaire part of the charge itself, and therefore permitted the plaintiff to pursue claims made only in the questionnaire and not investigated by the EEOC, we would be circumventing the role of the Commission as well as depriving the defendant of notice of all claims against it.

113 F. Supp. 2d 777, 788 (W.D. Pa. 2000) (concluding plaintiff failed to exhaust her administrative remedies where claims of harassment and retaliation were included in intake questionnaire but omitted from charge); see also Park v. Howard Univ., 315 U.S. App. D.C. 196, 71 F.3d 904, 909 (D.C. Cir. 1995).

In the instant case, **[*7]** Plaintiff reviewed and signed both charges, and neither charge contained any reference to race discrimination. Therefore, until the filing of this lawsuit, Defendant received no notice that Plaintiff had made allegations of race discrimination. Moreover, because neither charge mentioned race discrimination, the EEOC did not investigate whether race discrimination occurred. See EEOC Determination Re: Charge 17C990322 & 17CA00024. Because of the omission of any allegation of race discrimination from the charge, neither purpose served by the charge was achieved. For these reasons, the Court concludes that Plaintiff has not satisfied Title VII's exhaustion requirement, and therefore, the Court will grant summary judgment as to Count I.

## B. COUNT II: SECTION 1981

Plaintiff contends Defendant racially discriminated against him in violation of 42 U.S.C. § 1981; he contends he was denied three job assignments that were given to white employees. Plaintiff also contends that Defendant's racial discrimination caused his constructive discharge.

Plaintiff has admitted that two of the denied transfers - involving the window bailey job (July 1998) and the park **[*8]** brake grommet job (March 1999) - occurred before April 30, 1999, (D.I. 62 at Cll.1-11.2, C16-17) or two years before Plaintiff first alleged a Section 1981 claim in his first Amended Complaint (D.I. 5). The Court therefore concludes that Plaintiff's Section 1981 claim as to these two events is time barred. See Hall v. Bell Atlantic Corp., 152 F. Supp. 2d 543, 552 (D. Del. 2001)$^{HN5}$(noting that Section 1981 claims are subject to the two-year statute of limitations of 10 Del. C. § 1981).

The third assignment denied to Plaintiff was the wiring harness job, which was filled by Edda Clayton in July 1999. $^{HN6}$To establish a prima facie case of race discrimination based on a failure to transfer, a plaintiff must demonstrate: 1) that he is a member of a protected class; 2) that he applied for, was qualified for, and was denied the position sought; and 3) circumstances that give rise to an inference of discrimination. Stewart v. Rutgers, The State Univ., 120 F.3d 426, 432 (3d Cir. 1997); Walker v. Pepsi-Cola Bottling Co., 2000 U.S. Dist. LEXIS 12635, No. 898-225-SLR, 2000 WL 1251906, at *14 (D. Del. Aug. 10, 2000).

Defendant contends Plaintiff has not established a prima **[*9]** facie case, and even if he has, advances a legitimate, non-discriminatory reason for not placing Plaintiff in the wiring harness job. Defendant contends it was complying with specific placement procedures set for in the CBA for employees with PQX restrictions when it denied Plaintiff's assignment request.

Paragraph Fifteen of Defendant's Statement of Undisputed Facts asserts, "an employee with PQX restrictions never has the right to select their job and the PQX committee does not consult with the employee about potential job assignments before assigning the employee to a job that is consistent with the employee's restrictions." (D.I. 51 at 5). In Paragraph Fifteen of his Affidavit, Plaintiff responds, "I do agree with the statements made in paragraph 15 of the Statement of Undisputed Facts." (D.I. 58, Ex. C at 9). Therefore, it is uncontested that Plaintiff, who is an employee with PQX restrictions, never had the right to select his job. Defendant denied Plaintiff's request because he had no right to make such a request under the PQX assignment procedures of the CBA. Accordingly, the Court concludes that Defendant had a legitimate, non-discriminatory reason for denying Plaintiff's **[*10]** assignment request. n1 Because Plaintiff has not, as a matter of law, demonstrated that Defendant racially discriminated against him, Plaintiff's claim that he was constructively discharged because of Defendant's racially discriminatory acts must also fail. See e.g., Gaul v. Lucent Technologies, Inc., 134 F.3d 576, 581 (3d Cir. 1998) (holding that because disability discrimination claim failed, constructive discharge claim based on same events must necessarily fails). Therefore, the Court will grant summary judgment as to Count II.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Despite the fact that Plaintiff had no right to select his job, and even though he asserts his request for transfer was denied in July 1999, he was transferred to the wire transfer job in August 1999. See Deposition of Paul Phillips (D.I. 52, Tab 20 at A115-17) (Plaintiff testified that he worked the wire harness job from August 1999 to November 1999).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## C. COUNT III: ADA

In Plaintiff's Second Amended Complaint, he alleges that "Defendant failed to provide **[*11]** reasonable accommodations to plaintiff based on plaintiff's disability." (D.I. 13, P 49). The ADA *HN7*⚓mandates that employers provide "a reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5) (A). To establish a prima facie case of failure to accommodate, Plaintiff must prove: (1) he is an individual with a disability under the ADA; (2) he can perform the essential functions of his position with an accommodation; (3) his employer had notice of the alleged disability; and (4) the employer failed to accommodate him. Conneen v. MBNA America Bank, 182 F. Supp. 2d 370, 378-9 (D. Del. 2002).

In Defendant's Opening Brief (D.I. 51), it contends Plaintiff cannot establish elements one and four of the prima facie case. Specifically, as to element one, Defendant contends that Plaintiff is not disabled because he does not have *HN8*⚓"a physical or mental impairment that substantially limits one or more of [his] major life activities." 42 U.S.C. § 12102(2)(A).

There is no dispute that Plaintiff's keratoconus is a "physical impairment" and that **[*12]** seeing is a "major life activity." The issue is whether Plaintiff's keratoconus "substantially limits" his ability to see. *HN9*⚓EEOC regulations define the terms "substantially limits" to mean:

> i. Unable to perform a major life activity that the average person in the general population can perform; or

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 23941    Page 9 of 15

Case 1:04-cv-00285-KAJ    Document 38-7    Filed 05/03/2005    Page 16 of 31

ii. Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform the same major life activity.

29 CFR § 1630.2(j). *HN10* Generally, courts have held that visual impairments must be severe in order to substantially limit the major life activity of seeing. See e.g., Overturf v. Penn Ventilator Co., Inc., 929 F. Supp. 895, 898 (E.D. Penn. 1996) (holding plaintiff was not substantially limited in seeing despite double vision and lack of peripheral vision where he was able to drive a car, watch television, read, and work).

A visual impairment which hinders, or makes it more difficult for an individual to function at a full visual capacity, does [*13] not amount to a substantial limitation on one's ability to see where the evidence suggests the individual can otherwise conduct activities requiring visual acuity.

Person v. Wal-Mart Stores Inc., 65 F. Supp. 2d 361, 364 (E.D.N.C. 1999) (quoting Cline v. Fort Howard Corp., 963 F. Supp. 1075, 1080 (E.D. Okla. 1997).

In the instant case, Plaintiff's keratoconus does not prevent him from attending college classes (D.I. 52 at A46-47), working a veriety of jobs (Id. at A48-64), caring for himself (Id. at A71-74), or driving (Id. at A74-75). Therefore, the Court concludes that Plaintiff is not substantially limited in the major life activity of seeing.

*HN11* "A plaintiff attempting to establish disability on the basis of substantial limitation in the major life activity of working must, at minimum, allege that he or she is unable to work in a broad class of jobs." Tice v. Centre Area Transp. Authority, 247 F.3d 506, 512 (3d Cir. 2001) (quoting Sutton v. United Air Lines, Inc., 527 U.S. 471, 492-93, 144 L. Ed. 2d 450, 119 S. Ct. 2139 (1999)). In the instant case, Plaintiff's keratoconus prevents him only from working around [*14] volatile solvents. Plaintiff has performed many different jobs at DaimlerChrysler and has also been employed as a teacher, computer technician, mail sorter, furniture delivery person, United States Census Bureau enumerator, electrician, and salesperson (D.I. 52 at A48-64). Because Plaintiff's keratoconus does not prevent him from working in a broad class of jobs, the Court concludes Plaintiff is not substantially limited in the major life activity of working and, accordingly, also concludes that Plaintiff is not disabled within the meaning of 42 U.S.C. § 12102 (2)(A).

Plaintiff, in his Answer Brief (D.I. 58), abandons the allegation that he is disabled within the meaning of 42 U.S.C. § 12102(2)(A); rather, for the first time in the litigation, n2 he contends that he is disabled under the "regarded as" prong of the ADA's definition of disabled. See 42 U.S.C. § 12102(2)(*HN12* "The term "disability" means ... (C) being regarded as having such an impairment.). Plaintiff contends that Defendant twice assigned him a PQX of 190, meaning that he was physically unable to work anywhere in the plant for safety reasons. Plaintiff [*15] contends these designations were unwarranted and demonstrate that Defendant regarded him as disabled.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - - -

n2 Defendant, relying on Krouse v. American Sterilizer Co., 126 F.3d 494 (3d Cir. 1997), contends that the Court should bar Plaintiff from asserting this new argument because it was not alleged in his Complaint. In Krouse, the court stated that, "although a complaint's allegations are to be construed favorably to the pleader, we will not read causes of action into a complaint when they are not present. The ADA is one statutory scheme, but it provides more than one cause of action. Where, as here, a plaintiff asserts a cause of action for retaliation ... we will not find an implicit cause of action for failure to accommodate." Id. at 499. In Plaintiff's Complaint, he alleged that Defendant failed to accommodate him. Plaintiff's new argument asserts a different definition of disabled but is to a new, unpled cause of action. If employers are not required to provide reasonable accommodation to employees regarded as disabled, which is currently an open question in the Third Circuit, see Deane v. Pocono Med. Ctr., 142 F.3d 138, 148-49 n.12 (3d Cir. 1998) (en banc), then Plaintiff's failure to allege in his Complaint that he was discriminated against because he was "regarded as" disabled could bar him from raising such an argument at this late stage of the proceedings. However, because employers may be required to reasonably accommodate employees regarded as disabled, see Katz v. City Metal Co., 87 F.3d 26 (1st Cir. 1996), and because the issue arises on summary judgment, the Court concludes that Plaintiff will be permitted to raise the new argument.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*16]**

Defendant contends it temporarily assigned Plaintiff a PQX of 190 in response to complaints by Plaintiff that he was having problems seeing. Defendant further contends that the PQX 190 designations indicated that Plaintiff could not work until he received medical treatment that would allow him to safely return to work. (D.I. 52 at A112.1). Defendant asserts that it did not regard Plaintiff as disabled within the meaning of the ADA; instead, it perceived Plaintiff as being temporarily unable to perform the essential functions of his job. Defendant contends that temporary impairments are not cognizable disabilities under the ADA, and thus, it did not violate the statute.

HN13 A person is "regarded as" having a disability if the person:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation;
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
> (3) Has [no such impairment] but is treated by a covered entity as having a substantially limiting impairment.

Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 187 (3d Cir.1999) **[*17]** (quoting 29 C.F.R. § 1630.2(l)) (brackets in original).

HN14 "To be covered under the regarded as prong of the ADA the employer must regard the employee to be suffering from an impairment within the meaning of the statutes, not just that the employer believed the employee to be somehow disabled." Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 381 (3d Cir. 2002)(internal quotation marks and citations omitted).

Viewing the facts in the light most favorable to Plaintiff, the Court concludes that Defendant did

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 23941

Case 1:04-cv-00285-KAJ    Document 38-7    Filed 05/03/2005    Page 18 of 31    Page 11 of 15

not regard Plaintiff as disabled within the meaning of the ADA. Plaintiff's diagnosis of keratoconus is not what caused Defendant to assign Plaintiff the PQX 190 code. After being diagnosed with keratoconus, Plaintiff worked for Defendant in a wide variety of jobs over the course of several years. In 1999, Defendant regarded Plaintiff's visual problems resulting from ill-fitting remedial contacts as a safety issue and accordingly assigned him a temporary PQX 190 code that prevented him from returning to work until he had the problem corrected. _HN15_ ⚓Temporary conditions or problems are not covered by the ADA because, by definition, they do not substantially **[*18]** limit a major life activity. Rhett v. Carnegie Ctr. Assocs.(In re Carnegie Ctr. Assocs.), 129 F.3d 290, 303 (3d Cir. 1997)(collecting cases). Defendant did not regard Plaintiff as substantially limited in a major life activity because it viewed Plaintiff's condition as temporary and correctable. In fact, Defendant removed the first PQX 190 designation after Plaintiff was treated by his doctor, and Plaintiff was able to return to work. (D.I. 52 at A113-14). Following the second PQX 190 designation, Defendant's physicians examined Plaintiff several times to assess his ability to return to work. (Id. at A124-125). These facts demonstrate the temporary nature of the PQX 190 designation. Rinehimer explains that for an employee to be regarded as disabled, an employer must believe not just that he has an impairment, but that he has an impairment that rises to the level of a cognizable disability under the ADA. Because the PQX 190 designation was temporary, the Court concludes that Defendant's actions do not demonstrate that it regarded Plaintiff as disabled under the ADA.

The Court further concludes that Defendant did not regard Plaintiff as disabled under the ADA because it viewed Plaintiff's **[*19]** problem as correctable. _HN16_⚓The United States Supreme Court has held that the effect of corrective measures "must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act." Sutton v. United Air Lines, Inc., 527 U.S. 471, 482, 144 L. Ed. 2d 450, 119 S. Ct. 2139 (1999). Plaintiff's medical records indicate that properly fitted contact lenses increased his visual acuity, but that he had problems wearing them because of irritation. (D.I. 52 at A30-33). At no point prior to Plaintiff's resignation from Defendant did he provide Defendant with documentation that he could not be fitted with contact lenses. (Id. at A219). Therefore, the Court concludes that Defendant regarded Plaintiff as having vision problems that could be alleviated with contacts and thus did not regard Plaintiff as having an impairment that rose to the level of a disability under the ADA.

Because the Court concludes that Plaintiff is not disabled within the meaning of 42 U.S.C. § 12102(2)(A) or (C), the Court will grant summary judgment as to Count III.

## D. COUNT IV: RETALIATION

By his Second Amended Complaint, **[*20]** Plaintiff alleges Defendant unlawfully retaliated against him for filing a complaint with OSHA, for filing a charge of discrimination with the EEOC, and for filing for leave under the FMLA.

OSHA _HN17_⚓prohibits retaliation and provides a statutory procedure for aggrieved parties to pursue; however, there is no private right of action under OSHA for retaliation. 29 U.S.C. § 660 (c); Taylor v. Brighton Corp., 616 F.2d 256, 257 (6th Cir. 1980). Therefore, the Court will grant summary judgment as to Plaintiff's OSHA retaliation claim.

_HN18_⚓To establish a prima facie case of retaliation under the ADA or the FMLA, Plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. Krouse v. American Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997). "If an employee establishes a prima facie case of retaliation under the ADA, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action." Id. **[*21]** "If the employer satisfies its burden, the plaintiff must be able to convince the fact finder both that the employer's proffered

Case 1:04-cv-00285-KAJ   Document 38-7   Filed 05/03/2005   Page 19 of 31

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 23941                    Page 12 of 15

explanation was false, and that retaliation was the real reason for the adverse employment action." Id. at 501.

After examining all of Plaintiff's submissions, which are not a model of clarity, the Court has attempted to extract what it believes are the retaliatory acts complained of by Plaintiff. First, Plaintiff contends he was placed in the A/C Bolt-down job in retaliation for "making claims of racial and disability discrimination." (D.I. 58, Ex. C, P 12). Plaintiff was assigned to the A/C Bolt-down job in February/March 1999. (D.I. 52 at A20, A215). Plaintiff filed his first charge of discrimination in April 1999. (D.I. 52, Tab 13). Thus, the alleged retaliation occurred before the protected activity of filing a charge of discrimination. The Court concludes that Plaintiff's contention regarding his assignment to the A/C Bolt-down job does not satisfy element two of the prima facie case, which requires that the retaliation occur after the protected activity.

Second, Plaintiff contends he was placed in the A/C Bolt-down job in retaliation **[*22]** for filing for leave under the FMLA on January 19, 1999. Defendant contends that Plaintiff was placed in the A/C Bolt-down job in February/March 1999 through the PQX placement procedures set forth in the CBA. (D.I. 52 at A92, A215)("Q: And you understood at the time that you were placed in the A/C Bolt-down job based on your PQX restrictions; right? A: [by Plaintiff] Yes."). The Court finds that the following facts regarding Plaintiff's placement in the A/C Bolt-down job are uncontested. The A/C Bolt-down job involved bolting air conditioners onto vehicles with an air gun. (Id. at A93-94). The internal components of the air gun are lubricated with Tribol ATO 100 LS lubricating oil. (Id. at 215-16). While working the A/C Bolt-down job, Plaintiff complained that oil mist from the air gun irritated his eyes. In response to Plaintiff's complaints, Defendant issued Plaintiff safety goggles and a cloth to wrap around the handle of the air gun. (Id. at A10, A99). Plaintiff subsequently informed Defendant that the goggles were insufficient, and Defendant provided Plaintiff with a full face shield to wear, which enabled Plaintiff to perform the job. (Id. at A101-02). Also **[*23]** in response to Plaintiff's complaints about the A/C Bolt-down job, Defendant's plant physician and Director of Safety physically examined the requirements of the A/C Bolt-down job and confirmed the job was within Plaintiff's PQX restrictions. (Id. at A217). Additionally, Defendant had an industrial hygienist take air samples while Plaintiff was working on the A/C Bolt-down job. The tests confirmed that the hydrocarbons in the air were within permissible exposure limits. (Id. at A218, A239-41). After further complaints about the A/C Bolt-down job by Plaintiff, Defendant transferred him to the Wire Harness job in August 1999. (Id. at A118). Plaintiff admitted in his deposition that he had no difficulty performing the Wire Harness job. (Id.). Based on the fact that the assignment comported with Plaintiff's PQX restrictions, the Court is unconvinced that Plaintiff's transfer to the A/C Bolt-down job was an adverse employment action and, even if it was, is also unconvinced that there was a causal connection between Plaintiff's application for FMLA leave and the transfer. Plaintiff relies solely on the temporal proximity between his application and the transfer, which is **[*24]** insufficient to establish a causal connection, particularly in light of Defendant's repeated attempts to accommodate Plaintiff's complaints about the position. The Court concludes that Plaintiff has not demonstrated that Defendant's proffered reason for the transfer was pretextual or animated by a retaliatory motive.

Third, Plaintiff contends that he was laid off on June 17, 1999, in retaliation for filing a charge of discrimination with the EEOC on April 19, 1999. (D.I. 52, Tab 13). In response, Defendant contends that there is no causal connection between the two events and that Plaintiff elected lay-off after being assigned a PQX of 190 for vision problems. Other than temporal proximity, Plaintiff offers no facts to demonstrate that there was causal connection between the filing of the charge and his layoff. Moreover, Defendant's legitimate, non-discriminatory reason for the layoff is confirmed by Plaintiff in his deposition. Plaintiff testified that the plant physician noticed he was having eye problems, assigned him a PQX 190 code, which barred him from working in the plant for safety reasons, and sent him for medical treatment. (D.I. 52 at A112.1). Plaintiff's private doctor **[*25]** treated him for corneal graph rejection. (Id. at A113). During treatment, Plaintiff was unable to work and elected layoff rather than disability. (Id. at A114). Once treatment was complete, the plant physician removed the PQX 190 code and allowed him to

Case 1:04-cv-00285-KAJ    Document 38-7    Filed 05/03/2005    Page 20 of 31

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 23941    Page 13 of 15

return to work on July 14, 1999. (Id.). Because the uncontroverted facts show that Plaintiff's June 17, 1999, layoff was not pretextual, the Court concludes that Plaintiff's retaliation claim must fail.

In addition to the specific actions addressed above, Plaintiff also suggests many times throughout his affidavit that Defendant's actions or inactions were retaliatory. However, Plaintiff, in the two-paragraph retaliation section of his brief (filed through counsel), submits only that "if anything comes through the facts set forth by both parties in their briefs, it is the concept of retaliation." (D.I. 58 at 8). Plaintiff's brief does not address how any specific acts of Defendant satisfy the elements of the prima facie case to establish retaliation. It is unclear to the Court what protected activity, if any, the alleged acts were in retaliation for and what connection, if any, the alleged acts had to such activity. *HN19* Plaintiff **[*26]** cannot prevent summary judgment through bare allegations that acts he disagreed with or disliked were retaliatory. See e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). For all of the above reasons, the Court will grant summary judgment as to Count IV.

## E. COUNT V: FMLA

Plaintiff alleges that Defendant violated the FMLA by refusing to grant him continuous leave instead of intermittent leave. (D.I. 13, P 57). Plaintiff applied for leave to accommodate a six month course of treatment related to his contact lenses. (D.I. 52, Tab 3). Plaintiff was aware that the FMLA would only allow him to take approximately three months of continuous leave, which was insufficient for the required treatment. (D.I. 52 at A89-90); see also 29 U.S.C. § 2612 (a)(1)(*HN20* allowing twelve work weeks of leave during twelve-month period). Thus, if Defendant granted Plaintiff continuous leave, he would not have been able to complete his treatment.

Plaintiff's contention that Defendant violated the FMLA by granting him intermittent leave is without merit for three reasons: (1) Plaintiff accepted the intermittent leave and now unreasonably **[*27]** complains it was unacceptable; (2) Plaintiff did not address the FMLA issue in his Response Brief (D.I. 58) and thus is resting on the bare allegations in the Second Amended Complaint (D.I. 13); and (3) Plaintiff suffered no wage loss during his employment with Defendant due to the alleged FMLA violation and thus is not entitled to any relief. 29 U.S.C. § 2617(a)(1); Lapham v. Vanguard Cellular Sys., Inc., 102 F. Supp. 2d 266, 269-70 (M.D. Pa. 2000) *HN21* (the FMLA "simply leaves no room for recovery when an employee does not sustain economic loss during the period of his or her employment."). Therefore, the Court will grant summary judgment as to Count V.

## F. COUNT VI: DETRIMENTAL RELIANCE

In Plaintiff's Second Amended Complaint, he alleges that he "relied to his detriment upon the many representations of defendant that defendant could and would accommodate his disability" and that these representations "caused him to forego other employment opportunities ...." (D.I. 13 at 11). In his deposition, Plaintiff stated that he was offered a job at General Motors in 1993 (D.I. 52 at A62-62.1) and could have kept working at Info Systems in 1994 ( **[*28]** Id. at A60.1-61).

Although Plaintiff labels his claim as one based on detrimental reliance, it is more appropriately characterized as a claim for promissory estoppel. *HN22* To succeed on a claim for promissory estoppel, "a plaintiff must prove: (1) the making of a promise; (ii) with the intent to induce action or forbearance based on the promise; (iii) reasonable reliance; and (iv) injury." Brooks v. Fiore, 2001 U.S. Dist. LEXIS 16345, 2001 WL 1218448, at *5 (D. Del. Oct. 11, 2001)(citing Scott-Douglas Corp. v. Greyhound Corp., 304 A.2d 309, 319 (Del. Super. 1973)). "The asserting party must be able to prove the[] elements of promissory estoppel by clear and convincing evidence. Moreover, the promise, in such a case, must be definite and certain." Continental Ins.

<u>Co. v. Rutledge & Co., Inc., 750 A.2d 1219, 1233 (Del. Ch. 2000)</u>.

Defendant contends Plaintiff has not pointed to any promise that could support a promissory estoppel claim. Defendant further contends Plaintiff provides no evidence that Defendant intended to induce Plaintiff's reliance or that Plaintiff reasonably relied on Defendant's representations.

The Court concludes that Plaintiff's promissory **[\*29]** estoppel claim fails as a matter of law. Plaintiff, resting on his pleadings, alleges that he detrimentally relied on Defendant's statement that it would accommodate his disability. However, *HN23*"promissory estoppel cannot be predicated upon a promise to do that which the promisor is already obliged to do," and Defendant is legally required to accommodate disabled employees. <u>Brooks, 2001 U.S. Dist. LEXIS 16345, 2001 WL 1218448</u>, at \*6 (citing <u>Danby v. Osteopathic Assn. of Delaware, 34 Del. Ch. 427, 104 A.2d 903, 907 (Del. Super. 1954)</u>). Therefore, Defendant's alleged statement is not an actionable promise. Accordingly, the Court will grant summary judgment as to Count VI.

## IV. CONCLUSION

For the reasons discussed, Defendant DaimlerChrysler Corporation's Motion for Summary Judgment (D.I. 50) will be granted.

An appropriate Order will be entered.

## ORDER

At Wilmington this 27th day of March 2003, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendant DaimlerChrysler Corporation's Motion for Summary Judgment (D.I. 50) is **GRANTED.**

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT **[\*30]** JUDGE

Service: **Get by LEXSEE®**
Citation: **2003 us dist lexis 23941**
View: Full
Date/Time: Monday, May 2, 2005 - 8:18 PM EDT

\* Signal Legend:
- Warning: Negative treatment is indicated
Q - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
A - Citing Refs. With Analysis Available
i - Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case.

Copyright © 2005 LexisNexis. a division of Reed Elsevier Inc  All rights reserved

Service: **Get by LEXSEE®**
Citation: **2004 U.S. Dist. LEXIS 4987**

*2004 U.S. Dist. LEXIS 4987, \**

MAUREEN RICHARDS, Plaintiff, v. THE CITY OF WILMINGTON, Defendant.

Civ. No. 03-106-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2004 U.S. Dist. LEXIS 4987

March 24, 2004, Decided

**DISPOSITION:** [\*1] Defendant's motion for summary judgment regarding plaintiff's sexual harassment claim denied. Defendant's motion for summary judgment regarding plaintiff's retaliation claim granted.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff employee sued defendants, her employer and a co-worker. The co-worker was dismissed. The employer moved for summary judgment on the remaining claims of sexual harassment and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq.

**OVERVIEW:** The court found that prior to July 1999, when the employee first complained about her co-worker to her supervisor, she pointed to no evidence of sexual harassment so "severe or pervasive" that the employer necessarily knew or should have known about the co-worker's conduct. Additionally, after the employee returned from her medical leave of absence on September 21, 2001, she failed to bring forth any concrete evidence to suggest that the co-worker contacted or bothered her in any way. However, the court found that the during the interim period, the employee presented evidence susceptible to differing interpretations regarding the existence of a hostile work environment. During this time, the employee filed a complaint with her manager in which she alleged that the co-worker talked "dirty to her," called her at home, and even went to her home. Lastly, the court found that the employee's retaliation claim failed because she failed to show that the employer took adverse employment action against her. Additionally, after learning about her co-workers' actions following her medical leave, the employer admonished them during a quarterly staff meeting.

**OUTCOME:** The employer's motion for summary judgment regarding the employee's sexual harassment claim was denied for the period of time from July 1999 through September 21, 2001 and granted as to the employee's retaliation claim.

**CORE TERMS:** sexual harassment, retaliation, co-worker, summary judgment, hostile work environment, harassment, hostile, protected activity, nonmoving party, moving party, pervasive, supervisor, Civil Rights Act, privileges of employment, prima facie case, adverse action, requisite, abusive, genuine, sex, sexual harassment claim, work environment, leave of absence, offensive, resumed, ex-wife, unlawful employment practice, issues of material fact, entitled to judgment, employer liability

### LexisNexis(R) Headnotes ♦ Hide Headnotes

Civil Procedure > Summary Judgment > Summary Judgment Standard 

*HN1* A court shall grant summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. Facts that could alter the outcome are material, and disputes are genuine if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct.  More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard
*HN2* For purposes of a motion for summary judgment, facts that could alter the outcome are "material," and disputes are "genuine" if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct.  More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof
Civil Procedure > Summary Judgment > Summary Judgment Standard
*HN3* If the moving party on a motion for summary judgment has demonstrated an absence of material fact, the nonmoving party then must come forward with specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The court will view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion. The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue.  More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof
Civil Procedure > Summary Judgment > Summary Judgment Standard
*HN4* If the nonmoving party on a motion for summary judgment fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, then the moving party is entitled to judgment as a matter of law.  More Like This Headnote

Labor & Employment Law > Discrimination > Title VII
Labor & Employment Law > Discrimination > Sexual Harassment > Coverage & Definitions
*HN5* The sexual harassment section of Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., provides in pertinent part that it is unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C.S. § 2000e-2(a)(1).  More Like This Headnote

Labor & Employment Law > Discrimination > Sexual Harassment > Hostile Work Environment
Labor & Employment Law > Discrimination > Sexual Harassment > Quid Pro Quo
*HN6* A plaintiff who claims that she has been sexually harassed has a cause of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., if the unwelcome sexual conduct was either a quid pro quo arrangement or if the harassment was so pervasive that it had the effect of creating an intimidating, hostile, or offensive work environment.  More Like This Headnote

Labor & Employment Law > Discrimination > Sexual Harassment > Hostile Work Environment
*HN7* To qualify under the hostile work environment category of sexual harassment, the conduct in question must be severe or pervasive enough to create both an objectively hostile or abusive work environment - an environment that a reasonable person would

find hostile, and an environment that the victim-employee subjectively perceives as abusive or hostile.  More Like This Headnote

Labor & Employment Law > Discrimination > Sexual Harassment > Hostile Work Environment

*HN8* A plaintiff must prove five elements to fall within the purview of Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., due to a hostile work environment: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) she was detrimentally affected by the discrimination; (4) the discrimination would detrimentally affect a reasonable person of the same sex in the same position; and (5) respondent superior liability exists.  More Like This Headnote

Labor & Employment Law > Discrimination > Sexual Harassment > Hostile Work Environment

*HN9* A court must examine the totality of the circumstances in deciding a hostile work environment claim, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; whether it unreasonably interferes with an employee's work performance.  More Like This Headnote

Labor & Employment Law > Discrimination > Sexual Harassment > Hostile Work Environment

*HN10* In the instance of co-worker sexual harassment, the standard for employer liability is negligence. The U.S. Supreme Court has defined negligence with respect to sexual harassment as whether the employer knew or should have known about the conduct and failed to stop it.  More Like This Headnote

Labor & Employment Law > Discrimination > Sexual Harassment > Hostile Work Environment

*HN11* Mere offhand comments and isolated incidents are not sufficient to set forth a claim for a hostile work environment.  More Like This Headnote

Labor & Employment Law > Discrimination > Retaliation

*HN12* See 42 U.S.C.S. § 2000e-3(a).

Labor & Employment Law > Discrimination > Retaliation

*HN13* To establish a prima facie case of retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., a plaintiff must first prove: (1) that she engaged in a protected activity; (2) that her employer took adverse action against her either after, or contemporaneously with, her protected activity; and (3) that there is a causal connection between the protected activity and the employer's adverse action. To show the requisite causal link, the plaintiff must present evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action.  More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis

Labor & Employment Law > Discrimination > Retaliation

*HN14* Once a plaintiff succeeds in establishing her prima facie case of retaliation, the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its actions. If the defendant is able to successfully articulate such a reason, then the burden shifts back to the plaintiff to show that the defendant's non-discriminatory reason for the termination was pretextual, and that the real reason for the termination was unlawful discrimination. The plaintiff's ultimate burden in a retaliation case is to convince the factfinder that retaliatory intent had a determinative effect on the employer's decision.  More Like This Headnote

Labor & Employment Law > Discrimination > Retaliation

Case 1:04-cv-00285-KAJ    Document 38-7    Filed 05/03/2005    Page 26 of 31

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 4987                    Page 4 of 9

*HN15* In the context of a claim for retaliation, an "adverse employment action" is defined as an action that alters the employee's compensation, terms, conditions, or privileges of employment. More Like This Headnote

**COUNSEL:** Tiffany Quell Friedman, Esquire, Wilmington, Delaware. Counsel for Plaintiff.

Rosamaria Tassone, Esquire, Wilmington, Delaware. Counsel for Defendant.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION: MEMORANDUM OPINION**

Wilmington, Delaware

**ROBINSON, Chief Judge**

## I. INTRODUCTION

Plaintiff Maureen Richards filed this action on January 22, 2003 against defendants DaRon Mearlon ("Mearlon") and the City of Wilmington (the "City"). (D.I. 1) Plaintiff alleges sexual harassment and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and 19 Del. C. § 711. n1 On April 21, 2003, a stipulation of dismissal was filed dismissing Mearlon with prejudice. (D.I. 10) Currently before the court is the City's motion for summary judgment. (D.I. 39) The court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1331. For the **[*2]** following reasons, defendant's motion is granted in part and denied in part.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Plaintiff concedes in her answering brief to the instant motion that her claim for retaliation pursuant to 19 Del. C. § 711, her state law claim for intentional infliction of emotional distress, and her claim for punitive damages should be dismissed.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## II. BACKGROUND

Plaintiff began working as an account clerk in the Finance Department for the City in 1997. (D.I. 1) Her daily duties included preparing the bank deposits and assisting customers with their inquiries. (D.I. 42 at A-348) In 1998, Mearlon also began working in the Finance Department for the City. (Id. at A-347) Plaintiff and Mearlon worked together on the first floor of the City Building.

Plaintiff claims that Mearlon started to sexually harass her after meeting her on his first day. (D.I. 42 at A-350) She alleges that Mearlon continued this harassment for the next three years. Throughout this time period, plaintiff occasionally asked her co-workers or friends **[*3]** to tell Mearlon to stop bothering her. After receiving these requests, Mearlon initially left plaintiff alone, but eventually resumed his prior behavior. (Id. at A-353)

In July 1999, plaintiff complained about Mearlon to her supervisor, Shayne Williams ("Williams"). Plaintiff said that Mearlon stared at her, expressed a desire to touch her private parts, and called her constantly at her desk. (D.I. 41 at A-354) Plaintiff believed that her conversation with Williams constituted a formal notice of the sexual harassment because Williams was a supervisor. (Id.) Williams spoke to Mearlon about his conduct. After this discussion, he stopped engaging in such behavior with respect to plaintiff. However, he resumed his actions after a few weeks. (Id.)

In December 1999, plaintiff again complained of Mearlon's conduct to the former Director of Personnel, Mary Dees ("Dees"). n2 (Id.) Plaintiff told Dees that Mearlon said that he would not leave her alone and that he made sexual comments to her. She also explained that Mearlon said that she reminded him of his ex-wife. (Id.) In response, Dees informed plaintiff that she would speak to Mearlon. (Id. at A-356) Pursuant to **[*4]** this second discussion about his conduct, Mearlon stopped bothering plaintiff for a short period of time. Thereafter, he resumed his prior behavior. (Id. at A-358)

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n2 Ironically, Dees is Mearlon's sister. (Id. at A-355)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

On July 20, 2001, plaintiff filed a written complaint about Mearlon with her manager, Terry Toliver ("Toliver"). (D.I. 42 at A-232-236) In her complaint, plaintiff alleged that Mearlon repeatedly said that she looked liked his ex-wife and that "faith [sic] had brought them together" because both she and his ex-wife were from the islands. (Id.) Plaintiff also claimed that Mearlon "talk[ed] dirty" to her and told her that he was never going to leave her alone. (Id.) Additionally, plaintiff claimed that Mearlon professed his love for her and told her that he was going to take her to Texas where she would never get away from him. (Id.) Apart from his verbal comments, plaintiff explained that Mearlon stared at her while she worked and called her early in the mornings to ask **[*5]** her what she was wearing and late at night to hear her voice before going to sleep. (Id.) Plaintiff also documented that Mearlon had given her a letter enumerating the reasons why he believed that she loved him and the reasons why he believed she did not love him. (D.I. 41 at A-237) Because plaintiff stopped answering the phone when Mearlon called, she asserted that he called her sister to inquire about her whereabouts. (D.I. 41 at A-237) She further asserted that Mearlon drove to her house on one occasion and waited outside for her to emerge. (D.I. 41 at A-232 to 236) When she did, she immediately got into her car and departed. (Id.) She maintained that Mearlon followed her until she was able to lose him on the road. (Id.) Toliver told plaintiff that she should file a complaint with the police department regarding Mearlon's conduct outside of the workplace. n3 (Id. at A-225, A-230)

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n3 Plaintiff filed a complaint with the police on September 21, 2001. (Id. at A-227-A-231) Mearlon was subsequently arrested and charged with stalking and sexual harassment. (Id.) On October 10, 2001, the police issued a "no-contact" order against Mearlon due to criminal charges pending against him. (D.I. 41 at A-231) The order mandated that Mearlon have no contact, direct or indirect, with plaintiff.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*6]**

In response to plaintiff's complaint, Elinza Cain ("Cain"), the Employee Relations Advisor for the

Case 1:04-cv-00285-KAJ    Document 38-7    Filed 05/03/2005    Page 28 of 31
Page 6 of 9
Get a Document - by Citation - 2004 U.S. Dist. LEXIS 4987

City, investigated Mearlon's conduct within the workplace. (Id. at A-288) Cain substantiated plaintiff's complaint and concluded that Mearlon's actions were offensive. (Id. at A-293) Cain recommended that plaintiff and Mearlon discontinue working in the same area. Additionally, the City issued a written citation to Mearlon and ordered him to attend training about appropriate interaction between friends/co-workers on and off the job. (Id. at A-217)

Subsequent to this investigation, plaintiff asked to be reassigned to a position away from Mearlon. (D.I. 46 at B-90) The City informed plaintiff that only one such opening was available and that it was for a position lower than the one she currently held. (Id.) The City also informed plaintiff that her salary would remain the same in the lower level position, but that her pension benefits would be negatively impacted. (Id.) Plaintiff chose not to accept the opening.

On September 21, 2001, plaintiff began a medical leave of absence due to her problems with Mearlon. She returned to her position in the Finance Department **[*7]** on April 22, 2002. (D.I. 41 at A-300) At that time, she was informed that Mearlon had been transferred from the Finance Department to a vacant position in the Department of Real Estate and Housing. (Id. at A-221) On April 26, 2002, Mearlon was transferred back into the Finance Department. He was located, however, in a different building from where plaintiff worked. (Id. at A-222)

Following her medical leave, plaintiff alleges that her co-workers harassed her in retaliation for filing charges against Mearlon. (Id. at A-300) She filed a complaint with Monica Gonzales-Gillespie ("Gillespie"), Director of Personnel, as a result of this treatment. (D.I. 41 at A-304) In her complaint, plaintiff asserted that her co-workers excluded her professionally and socially during the workday. (Id.) She likewise claimed they often discussed Mearlon in her presence, even asking her directly why she chose to file charges against him. (Id.) Additionally, plaintiff avers that she frequently found business cards of mental health professionals on her desk. (D.I. 1) Pursuant to her complaint about her co-workers, the City distributed a copy of the sexual harassment policy to all employees **[*8]** in the Finance Department at a quarterly staff meeting and reminded employees that no repercussions should occur if harassment is reported. (D.I. 41 at 305-A-306). Since this meeting, plaintiff made no additional complaints about her co-workers.

## III. STANDARD OF REVIEW

*HN1* A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). *HN2* "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations **[*9]** omitted). *HN3* If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). *HN4* If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, then the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

## IV. DISCUSSION [*10]

### A. Sexual Harassment Claim Based on A Hostile Work Environment

Plaintiff alleges that she was subject to sexual harassment in violation of Title VII of the Civil Rights Act of 1964. _HN5_⚓The sexual harassment section of Title VII provides in pertinent part that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(1) (2004). _HN6_⚓A plaintiff who claims that she has been sexually harassed has a cause of action under Title VII if the unwelcome sexual conduct was either a _quid pro quo_ arrangement or if the harassment was so pervasive that it had the effect of creating an intimidating, hostile, or offensive work environment. See Meritor Sav. Bank v. Vinson, 477 U.S. 57, 66, 91 L. Ed. 2d 49, 106 S. Ct. 2399 (1986); see also Kunin v. Sears Roebuck and Co., 175 F.3d 289, 293 (3d Cir. 1999) (stating that it is well established that a plaintiff can prove a violation of Title VII by [*11] establishing that sexual harassment created a hostile or abusive work environment).

_HN7_⚓To qualify under the hostile work environment category, the conduct in question must be severe or pervasive enough to create both an "objectively hostile or abusive work environment - an environment that a reasonable person would find hostile," and an environment that the victim-employee subjectively perceives as abusive or hostile. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993); see also Faragher v. City of Boca Raton, 524 U.S. 775, 783, 141 L. Ed. 2d 662, 118 S. Ct. 2275 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 752, 141 L. Ed. 2d 633, 118 S. Ct. 2257 (1998). In other words, _HN8_⚓a plaintiff must prove five elements to fall within the purview of Title VII due to a hostile work environment: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) she was detrimentally affected by the discrimination; (4) the discrimination would detrimentally affect a reasonable person of the same sex in the same position; and (5) respondent superior liability exists. See Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990); [*12] see also Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001). _HN9_⚓The court must examine the totality of the circumstances in deciding a hostile work environment claim, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23.

With regard to employer liability for sexual harassment, the Supreme Court has distinguished the principles applicable to harassment by co-workers versus the principles applicable to harassment by supervisors. See Faragher, 524 U.S. at 803. Specifically, the Supreme Court has noted that _HN10_⚓in the instance of co-worker sexual harassment, the standard for employer liability is negligence. See id. at 799. The Supreme Court has defined negligence with respect to sexual harassment as whether the employer knew or should have known about the conduct and failed to stop it. See Ellerth, 524 U.S. at 759 (1998); see also 29 C.F.R. § 1604.11(d) (2004).

Viewing the underlying [*13] facts at bar and all reasonable inferences therefrom in the light most favorable to plaintiff, the court finds that genuine issues of material fact exist as to the five elements requisite to a claim for sexual harassment based on a hostile work environment for a limited time period. Prior to July 1999, when plaintiff first complained about Mearlon to her supervisor, plaintiff points to no evidence of sexual harassment so "severe or pervasive" that the City necessarily knew or should have known about Mearlon's conduct. Absent such actual or constructive notice, the City cannot be held liable for Mearlon's behavior from his start date through July 1999. Additionally, after plaintiff returned from her medical leave of absence on September 21, 2001, plaintiff fails to bring forth any concrete evidence to suggest that Mearlon

Case 1:04-cv-00285-KAJ    Document 38-7    Filed 05/03/2005    Page 30 of 31

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 4987

Page 8 of 9

contacted or bothered her in any way. From July 1999 to September 21, 2001, however, the court finds that the present record is susceptible to differing interpretations regarding the existence of a hostile work environment. The court concludes that there are genuine issues of material fact as to the sufficiency of plaintiff's notice to the City and its response thereto, **[*14]** as well as to the frequency of Mearlon's conduct, its severity, whether it was physically threatening or humiliating, and whether it unreasonably interfered with plaintiff's work performance. *HN11* Mere "offhand comments and isolated incidents" are not sufficient to set forth a claim for a hostile work environment. See Faragher, 524 U.S. at 786. Consequently, the court denies the City's motion for summary judgment as to plaintiff's hostile work environment claim for the twenty-seven months defined herein.

## B. Retaliation Claim

Plaintiff alleges that she was subject to retaliation in violation of Title VII of the Civil Rights Act of 1964. The anti-retaliation section of Title VII provides in pertinent part:

> *HN12* It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a) (as amended 1991). **[*15]** *HN13* To establish a prima facie case of retaliation under Title VII, a plaintiff must first prove: (1) that she engaged in a protected activity; (2) that her employer took adverse action against her either after, or contemporaneously with, her protected activity; and (3) that there is a causal connection between the protected activity and the employer's adverse action. Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997). "To show the requisite causal link, the plaintiff must present evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." Ferguson v. E.I. duPont de Nemours & Co., 560 F. Supp 1172, 1200 (D. Del. 1983). *HN14* Once the plaintiff succeeds in establishing her prima facie case, the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its actions. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). If the defendant is able to successfully articulate such a reason, then the burden shifts back to the plaintiff to show that the defendant's non-discriminatory reason for the termination was **[*16]** pretextual, and that the real reason for the termination was unlawful discrimination. Id. at 802-804. The plaintiff's "ultimate burden in a retaliation case is to convince the factfinder that retaliatory intent had a 'determinative effect' on the employer's decision." Shaner v. Synthes (USA), 204 F.3d 494, 501 (3d Cir. 2000).

In the case at bar, the court need not engage in an extensive burden-shifting analysis because plaintiff has not presented facts sufficient to state a prima facie retaliation claim. The court finds that plaintiff has failed to meet the second element of the prima facie case of retaliation, namely, that the City took adverse employment action against plaintiff. The Third Circuit has defined *HN15* an "adverse employment action" as an action that "alters the employee's compensation, terms, conditions, or privileges of employment." See Calloway v. E.I. duPont de Nemours & Co., 2000 U.S. Dist. LEXIS 12642, 2000 WL 1251909 *8 (D. Del. 2000). Plaintiff was not demoted or in any way reprimanded as a result of her multiple complaints against Mearlon. Likewise, she returned to the same position that she held when the alleged misconduct occurred after **[*17]** she returned from her medical leave of absence. The City did not alter her compensation, terms,

conditions or privileges of employment in any way at any time during the course of her employment. Rather, the City investigated plaintiff's complaint, substantiated her allegations, and took corrective actions against Mearlon. Additionally, after learning about her co-workers' actions following her leave, the City admonished the department during a quarterly staff meeting. Since plaintiff cannot establish the second element requisite to a retaliation claim, the court need not consider the remaining two elements. The court, therefore, concludes that plaintiff fails to state a cause of action for retaliation under Title VII and grants the City's motion for summary judgment as to this claim.

## V. CONCLUSION

For the reasons stated, the City's motion for summary judgment is denied as to plaintiff's sexual harassment claim for the period of time from July 1999 through September 21, 2001 and granted as to plaintiff's retaliation claim. An appropriate order shall issue.

## ORDER

At Wilmington, this 24th day of March, 2004, consistent with the memorandum opinion issued this same day; **[*18]**

IT IS ORDERED:

1. Defendant's motion for summary judgment (D.I. 39) regarding plaintiff's sexual harassment claim is denied.

2. Defendant's motion for summary judgment (D.I. 39) regarding plaintiff's retaliation claim is granted.

Sue L. Robinson

United States District Judge

Service: **Get by LEXSEE®**
Citation: **2004 U.S. Dist. LEXIS 4987**
View: Full
Date/Time: Monday, May 2, 2005 - 8:19 PM EDT

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc  All rights reserved