Source: Delaware > Cases > DE Federal & State Cases, Combined
Terms: **"subpoena" and "discovery" w/5 "cut-off"** (Edit Search | Suggest Terms for My Search)

≡Select for FOCUS™ or Delivery

*1995 Del. Super. LEXIS 304, \**

E.I. du PONT de NEMOURS & COMPANY, a Corporation of the State of Delaware, Plaintiff, v. ADMIRAL INSURANCE COMPANY, et al. Defendants.

C.A. No. 89C-AU-99

SUPERIOR COURT OF DELAWARE, NEW CASTLE

1995 Del. Super. LEXIS 304

June 19, 1995, Submitted
July 11, 1995, Decided

**SUBSEQUENT HISTORY:** [\*1]

Released for Publication by the Court August 7, 1995.

**DISPOSITION:** PLAINTIFF'S EXCEPTIONS TO THE SPECIAL DISCOVERY MASTER'S DECISION AND ORDER DATED MAY 18, 1995 (Denied)

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff filed exceptions to the special discovery master's decision and order authorizing defendants' request to depose plaintiff's former employee after the **discovery cut-off** date.

**OVERVIEW:** Nine months after the original **cut-off** date for fact **discovery,** defendants requested an order permitting the deposition of plaintiff's former employee, who defendants did not know was alive prior to the **cut-off** date. The special **discovery** master granted the motion, concluding that the parties' mutual mistake or justifiable lack of knowledge constituted sufficient grounds for "good cause" to take the deposition. The court denied plaintiff's exceptions to that decision. The court held that defendants' lack of knowledge was justified. The court's standing order required the parties to use their "best efforts" to make their former employees available for deposition without the need to serve a **subpoena.** Plaintiff had an obligation to determine, using all reasonable available means, the availability of former employees. Plaintiff mistakenly used the wrong mailing code in its attempts to contact the former employee. When plaintiff did not receive a response, plaintiff suggested that the former employee "may" have died. Defendants reasonably relied on plaintiff's representation and thus demonstrated "good cause" warranting additional **discovery** after the scheduled **discovery cut-off** date.

**OUTCOME:** The court denied plaintiff's exceptions to the special discovery master's decision and order authorizing defendants' request to depose plaintiff's former employee after the **discovery cut-off** date. The court granted defendants' motion to authorize the deposition.

**CORE TERMS:** discovery, deposition, cut-off, alive, justifiable, regulator, former employees, good cause, responded, discover, unknown, requesting, dead, discovery cutoff date,

reasonably relied, mutual mistake, recommendation, duplicative, mistakenly, whereabouts, deceased, confirm, retired, massive, arrange, depose, lived, died

**LexisNexis(R) Headnotes** ◆ Hide Headnotes

Civil Procedure > Trials > Reference
HN1⤴ The court may only set aside a decision of the special discovery master if it is either contrary to law or clearly erroneous.   More Like This Headnote

Civil Procedure > Disclosure & Discovery
HN2⤴ Generally, the court will strictly adhere to a **discovery cut-off** date. To rule otherwise would abrogate the **discovery cut-off** and further would represent inappropriate interference by the court in discovery practice. A party seeking **discovery** after the scheduled **discovery cut-off** date must show "good cause" warranting the additional discovery. Good cause exists when parties have recently discovered facts or circumstances unknown prior to the **discovery cut-off** date. If facts or circumstances are unknown prior to the **discovery cut-off** date, this lack of knowledge must be justifiable.   More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Disclosure & Discovery
HN3⤴ Where the court's standing order obligates the parties to use their "best efforts" to schedule depositions by agreement and also requires the parties to use their "best efforts" to make their present and former employees available for deposition without the need to serve a **subpoena,** the plaintiff has an obligation to determine, using all reasonable available means, the availability of present and former employees. Where the plaintiff mistakenly uses the wrong mailing code in its attempts to contact the former employee and thus the former employee never receives the letters the plaintiff sends, the defendant may reasonably rely on the plaintiff's suggestion that the former employee "may" have died and thus show "good cause" warranting additional **discovery** after the scheduled **discovery cut-off** date.   More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Disclosure & Discovery > Foreign Discovery
HN4⤴ If a plaintiff's best efforts to make a former employee living in Canada available for deposition in compliance with a court order fail, the defendant may petition the court for a letter rogatory to the appropriate Canadian Court under Del. Super. Ct. R. Civ. P. 28(b). Ontario has an Evidence Act specifically permitting the provincial courts to assist American parties in obtaining depositions of Ontario residents. Evidence Act of Ontario § 60. Therefore, granting the defendant's motion that the plaintiff's former employee living in Canada be made available for deposition does not entitle the defendant to relief outside the court's jurisdiction.   More Like This Headnote

**COUNSEL:** Charles S. Crompton, Jr. and Richard Horwitz of Potter Anderson and Corroon, Wilmington, Delaware and Richard Allen Paul and Erin Kelly of E.T. du Pont de Nemours & Company. Attorneys for Plaintiff E.I. du Pont de Nemours & Company.

Peter J. Kalis, Michael J. Lynch, and Carolyn M. Branthoover of Kirkpatrick & Lockhart, Pittsburgh, Pennsylvania. Of Counsel for Plaintiff E.I. du Pont de Nemours & Company.

Anthony G. Flynn of Young, Conaway, Stargatt & Taylor, Wilmington, Delaware. Defense Coordinator.

Donald L. Gouge, Jr. of HEIMAN, ABER & GOLDLUST, Wilmington, Delaware. Attorney for The Aetna Casualty and Surety Company, on behalf of Defendants.

James E. Rocap, III, Stephen L. Braga, Scott L. Nelson and Cynthia Thomas Calvert of MILLER, CASSIDY, LARROCA & LEWIN, Washington, D.C. and Roy L. Reardon and Robert F. Cusumano of SIMPSON, THACHER & BARTLETT, New York, New York. Of Counsel for the Aetna Casualty and Surety Company, on behalf of Defendants.

**JUDGES:** Myron T. Steele, Vice-Chancellor

**OPINIONBY:** Myron T. [*2] Steele

**OPINION:**

**STEELE, Vice-Chancellor**

MEMORANDUM OPINION

Plaintiff E.I. du Pont de Nemours and Company ("Dupont") filed exceptions to the Special Discovery Master's ("SDM") Decision and Order dated May 18, 1995 authorizing the Defendants' request to depose William J. Kilgour ("Kilgour") after the **discovery cut-off** date.

## I. BACKGROUND

This Court's Case Management Order Number 3, as amended, established June 15, 1994 as the **cut-off** date for fact **discovery.** E.I. du Pont de Nemours and Co. v. Admiral Ins. Co., Del. Super., C.A. No. 89C-AU-99, Steele, R.J. (March 30, 1994) (Dkt. No. 1267) (Order) at 1.

On March 29, 1995, nine months after the original cutoff date, Defendants filed a motion requesting an order permitting the deposition of Kilgour, a former DuPont employee responsible for waste disposal and cleanup activities at the Niagara Plant and Necco Park sites. DuPont objected, arguing Defendants failed to establish "good cause" for taking Kilgour's deposition. DuPont also argued the Court cannot provide the relief Defendants seek because Kilgour is not within DuPont's control nor within the Court's jurisdiction.

The SDM granted Defendants' motion, concluding [*3] that the parties' mutual mistake or justifiable lack of knowledge constitute sufficient grounds for "good cause" to take Kilgour's deposition. E.I. du Pont, supra, Rubenstein, SDM (May 18, 1995) (Dkt. No. 2428) Decision and Order at 9. The SDM made the following factual findings:

> (1) On September 1, 1993, Defendants' attorney wrote DuPont's attorney requesting to take the deposition of Kilgour. DuPont's attorney responded on September 14, 1993, stating Kilgour retired from DuPont and relocated in Canada. DuPont's attorney suggested alternates for Kilgour's deposition because DuPont had not been able to contact Kilgour.
>
> (2) On October 1, 1993, Defendants' attorney again wrote DuPont's attorney requesting Kilgour's deposition and proposing possible substitutes. DuPont's attorney replied by telephone stating Kilgour "may" be dead. n1 Dupont's attorney responded to Defendants' October 1, 1993 letter but did not mention Kilgour.
>
> (3) On February 15, 1994, Defendants' attorney asked Quentin D. Wheatley, during his deposition, whether Kilgour was alive. Wheatley told Defendants' attorney he did not know. On March 29, 1994, Defendants' attorney asked J. Taylor Fish, during [*4] his deposition, whether Kilgour was alive. The witness told Defendants' attorney he thought Kilgour was on the west coast but was not

sure.

(4) Defendants submitted interrogatories to DuPont in order to obtain specific information about former employees, including dates of death. DuPont's verified response stated, with respect to Kilgour, the "Date of Death" was "[N/A].

(5) On December 19, 1994, Certain Defendants, in their Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment Regarding Certain "Notice" Provisions of the Policies, argued defendants were prejudiced because Kilgour died before he could be deposed. In January 1995, DuPont determined Kilgour was alive. DuPont's reply disputed Kilgour's death and cited the September 14, 1993 letter.

Id. at 1-4.

- - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 This response was Prompted by a failure of communication between DuPont and Kilgour caused by DuPont mistakenly using the wrong Canadian zip code.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The SDM based his decision on two independent grounds. First, **[*5]** the SDM found Defendants "have made a sufficient showing of facts which recently arose and which were unknown prior to the **discovery cut-off** date and that defendants' lack of knowledge was justifiable." Id. at 9. Second, the SDM found the matter could be considered "a matter of mutual mistake." Id. The SDM decided either ground could be considered sufficient basis for "good cause" to take the deposition. Id.

## II. CONTENTIONS OF THE PARTIES

DuPont argues the SDM's decision is contrary to law. DuPont contends the SDM erred by deciding Defendants did not have a responsibility to independently search for Kilgour. DuPont also argues the SDM's decision is inconsistent with an earlier ruling, E.I. du Pont, supra, Rubenstein, SDM (Jan. 13, 1995) (Dkt. No. 2155) Letter Recommendation, which found DuPont was not allowed to take certain **discovery** after the **discovery cut-off** because DuPont could have discovered the information through more specific discovery at an earlier time. Id. at 12. DuPont also asserts the SDM erred because Kilgour is not within DuPont's control and the Court does not have jurisdiction over Kilgour.

Defendants argue the SDM's decision is not contrary **[*6]** to law. Defendants assert because DuPont did not discover Kilgour was still alive in January 1995, no **discovery** conducted before the **discovery cut-off** would have revealed information that Kilgour was still alive. Defendants also argue DuPont's claim that Kilgour is outside of the Court's control is premature.

## III. LEGAL STANDARD

HN1 The Court may only set aside a decision of the Special Discovery Master if it is either contrary to law or clearly erroneous. E.I. du Pont, supra, Steele, V.C. (Jun. 9, 1994) (Dkt. No. 1520) Mem. Op. at 6; E.I. du Pont, supra, Steele, R.J. (Mar. 4, 1993) (Dkt. No. 839)

Mem. Op. at 3.

## IV. ANALYSIS

### A. Defendants' Lack of Knowledge Was Justified

*HN2* Generally, the Court will strictly adhere to a **discovery cut-off** date. E.I. du Pont, supra, Steele, V.C. (Nov. 17, 1994) (Dkt. No. 1850) Mem. Op. at 7-8. "To rule otherwise would . . . abrogate the **discovery cut-off** and further would represent inappropriate interference by the Court in discovery practice." National Union Fire Ins. Co. of Pittsburgh, PA v. Stauffer Chem. Co., Del. Super., 1991 Del. Super. LEXIS 25, *10, C.A. No. 87C-SE-11, Poppiti, J. (Jan. 15, 1991) (Order).

A party seeking **discovery** after [*7] the scheduled **discovery cut-off** date must show "good cause" warranting the additional discovery. E.I. du Pont, supra, Steele, V.C. (Nov. 17, 1994) (Dkt. No. 1850) Mem. Op. at 8; see Super. Ct. Civ. R. 16(b)(5). Good cause exists when parties have recently discovered facts or circumstances unknown prior to the **discovery cut-off** date. Id. If facts or circumstances are unknown prior to the **discovery cut-off** date, this lack of knowledge must be justifiable. Id.

The focus of the analysis here will be whether Defendants made a sufficient showing of recently-arisen facts or circumstances unknown prior to the discovery cutoff date of June 15, 1994. No one disputes the Defendants did not know Kilgour was alive before the **discovery cut-off** date, therefore, I must also examine whether Defendants' lack of knowledge was justifiable.

*HN3* Standing Order Number 2 obligates the parties to use their "best efforts" to schedule depositions by agreement. E.I. du Pont, supra, Poppiti, J. (Feb. 20, 1990) (Standing Order No. 2) at 12. Standing Order Number 2 also requires the parties to use their "best efforts" to make their present and former employees available for deposition without the [*8] need to serve a **subpoena.** Id. Pursuant to Standing Order Number 2, DuPont had an obligation to determine, using all reasonable available means, the availability of present and former employees. DuPont fully assumed this obligation and even discouraged defendants from proceeding on their own. E.I. du Pont, supra, Rubenstein, SDM (May 18, 1995) (Dkt. No. 2428) Decision and Order at 5.

Defendants first attempted to take the deposition of Kilgour on September 1, 1993, nine months before the June 15, 1993 deadline. DuPont responded on September 14, 1993, indicating Kilgour had retired and moved to Canada. DuPont, attempting to fulfill its obligation under Standing Order No. 2, made efforts to contact Kilgour by letter. However, DuPont mistakenly used the wrong mailing code and Kilgour never received the letters. DuPont did not object to the deposition, and the SDM found if DuPont had been able to contact Kilgour, Defendants would have taken his deposition. E.I. du Pont, supra, Rubenstein, SDM (May 18, 1995) Decision and Order at 5.

On October 1, 1993, Defendants again requested Kilgour's deposition, relying on DuPont's duty to use its best efforts to contact past employees. [*9] DuPont, recognizing that Kilgour had not responded to the letters, suggested Kilgour "may" be dead. Defendants accepted DuPont's representation. Defendants attempted to confirm DuPont's representation by asking two deponents about Kilgour's whereabouts. The answers Defendants received were ambiguous at best, neither confirming nor denying DuPont's suggestion.

In a complex litigation case, such as this one, parties expend an enormous amount of money, time and energy attempting to complete discovery. Standing Order Number 2 constitutes the Court's attempt to minimize the amounts expended by the parties. To accomplish this goal, Standing Order Number 2 imposed obligations on all the parties to,

inter alia, cooperate in all discovery matters to the maximum extent possible and use their best efforts to avoid duplicative discovery. E.I. du Pont, supra, Poppiti, J. (Feb. 20, 1990) (Standing Order No. 2) at 8-9. To further minimize the parties' costs, Standing Order Number 2 imposed an obligation on both parties to use their "best efforts" to make present and former employees available for deposition and schedule depositions by agreement. Consequently, the parties would not have to engage **[*10]** in duplicative measures to find, locate and depose hundreds of employees, saving the parties' resources.

In order for the principles underlying Standing Order Number 2 to lead to an efficient, less expensive discovery process, the parties must be able to reasonably rely on representations, or suggestions, of an opposing party. A contrary finding would force every party to duplicate the efforts of the party making the representation to confirm that the representation is accurate, resulting in the expenditures the Court designed Standing Order Number 2 to avoid. More specifically, this case covers decades, resulting in dozens of deceased employees. If Defendants cannot rely on DuPont's representations, Defendants would have to conduct a massive national investigation to discover whether the represented "deceased" employees are dead. This process would result in a massive waste of resources. Therefore, the SDM did not err as a matter of law by finding Defendants reasonably relied on DuPont's suggestion Kilgour "may" have died.

DuPont argues the SDM's finding that the Defendants' lack of knowledge concerning Kilgour's whereabouts was justifiable conflicts with this Court's February 27, **[*11]** 1995 order adopting the SDM's January 13, 1995 Recommendation denying DuPont additional discovery after the discovery cutoff date. In his January 13, 1995 Letter Recommendation, the SDM recommended the Court deny DuPont's motion to take regulatory depositions after the **discovery cut-off** date. E.I. du Pont, supra, Rubenstein, SDM (Jan 13, 1995) (Dkt. No. 2155) Letter Recommendation at 14-15. This Court adopted the SDM's recommendation by order dated February 28, 1995. E.I. du Pont, supra, Steele, V.C. (Feb. 28, 1995) (Dkt. No. 2306) (Order) at 1.

DuPont had moved, before the **discovery cut-off** date, to discover regulatory information. On August 20, 1992, the SDM deferred DuPont's motion. E.I. du Pont, supra, Rubenstein, SDM (Jan 13, 1995) (Dkt. No. 2155) Letter Recommendation at 2. DuPont failed to pursue its motion before the June 15, 1994 cut-off date. Id. at 2. After the cut-off date, Defendants used two regulator affidavits to cross examine a DuPont witness at a deposition. Id. Only then did DuPont seek the regulator's depositions. Id. at 3. DuPont conceded it knew about 45 regulator affidavits, including the two regulator's depositions used by the Defendants, **[*12]** before the **discovery cut-off** date. Id. at 9-10. However, DuPont argued it did not know the Defendants were going to use the affidavits before the **discovery cut-off.** Id. at 10. The SDM, rejecting DuPont's argument, stated:

> Given DuPont's knowledge of their existence and their use in other litigation, it certainly was reasonable for DuPont to expect the defendants in this litigation to make some use of [the affidavits], whether or not they were produced by the defendants. *By more specific discovery at an earlier time, DuPont could have made an effort to track down that intention.*

Id. at 12.

Seizing on the italicized language, DuPont attempts to argue Defendants could have discovered Kilgour was alive by filing more specific discovery. This argument fails for two reasons. First, in the present factual scenario Defendants reasonably relied on DuPont's representation. Second, in the January 13, 1995 Letter Recommendation, DuPont knew of

the 45 regulator affidavits before the **discovery cut-off** date. DuPont chose not to pursue discovery concerning the affidavits. Here, no party knew or had reason to believe Kilgour still lived until after the **discovery cut-off [*13]** date. Even if Defendants had propounded more specific **discovery** before the **cut-off** date, which it was not obligated to do because of DuPont's representation, Defendants would not have learned Kilgour was alive because DuPont did not discover Kilgour still lived until after the cut-off date in January 1995. Therefore, Defendants' lack of knowledge would not have been cured by more specific discovery.

**B. Defendants' May Obtain A Commission For Kilgour's Deposition Through the Appropriate Mechanisms**

DuPont's second argument is that the relief afforded by virtue of the SDM's granting of Defendants' Motion is outside the power of the Court. This is simply not the case. Defendants' motion requests Kilgour be made available for deposition. In connection with Defendants' request, the SDM ordered DuPont to use its best efforts to arrange for Kilgour's deposition at the earliest convenient time. E.I. du Pont, supra, Rubenstein, SDM (May 18, 1995) (Dkt. No. 2428) Decision and Order at 9. HN4 If DuPont's best efforts fail, Defendants may petition the Court for a letter rogatory to the appropriate Canadian Court under Superior Court Rule 28 (b). Ontario has an Evidence Act specifically **[*14]** permitting the provincial courts to assist American parties in obtaining depositions of Ontario residents. See Evidence Act of Ontario § 60. Therefore, I find granting Defendants' motion does not entitle Defendants to relief outside the Court's jurisdiction.

**VI. CONCLUSION**

For the reasons stated above, I deny E.I. du Pont de Nemours and Company's Exceptions to the Special Discovery Master's Decision and Order Dated May 18, 1995. Defendants' Motion to Authorize the Deposition of William J. Kilgour is *granted.* Consistent with the Decision and Order of the Special Discovery Master, DuPont is expected to use its best efforts to arrange Kilgour's deposition at the earliest possible time.

**IT IS SO ORDERED.**

Myron T. Steele

Vice-Chancellor

Source: Delaware > Cases > DE Federal & State Cases, Combined
Terms: "subpoena" and "discovery" w/5 "cut-off" (Edit Search | Suggest Terms for My Search)
View: Full
Date/Time: Tuesday, October 11, 2005 - 4:32 PM EDT

* Signal Legend:
  - Warning: Negative treatment is indicated
  [Q] - Questioned: Validity questioned by citing refs
  - Caution: Possible negative treatment
  - Positive treatment is indicated
  - Citing Refs. With Analysis Available
  - Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.