# YOUNG CONAWAY STARGATT & TAYLOR, LLP

BRUCE M. STARGATT
BEN T. CASTLE
SHELDON N. SANDLER
RICHARD A. LEVINE
RICHARD A. ZAPPA
FREDERICK W. IOBST
RICHARD H. MORSE
DAVID C. MCBRIDE
JOSEPH M. NICHOLSON
CRAIG A. KARSNITZ
BARRY M. WILLOUGHBY
JOSY W. INGERSOLL
ANTHONY G. FLYNN
JEROME K. GROSSMAN
EUGENE A. DIPRINZIO
JAMES L. PATTON, JR.
ROBERT L. THOMAS
WILLIAM D. JOHNSTON
TIMOTHY J. SNYDER
BRUCE L. SILVERSTEIN
WILLIAM W. BOWSER
LARRY J. TARABICOS
RICHARD A. DILIBERTO, JR.
MELANIE K. SHARP
CASSANDRA F. ROBERTS

RICHARD J.A. POPPER
TERESA A. CHEEK
NEILLI MULLEN WALSH
JANET Z. CHARLTON
ROBERT S. BRADY
JOEL A. WAITE
BRENT C. SHAFFER
DANIEL P. JOHNSON
CRAIG D. GREAR
TIMOTHY JAY HOUSEAL
BRENDAN LINEHAN SHANNON
MARTIN S. LESSNER
PAULINE K. MORGAN
C. BARR FLINN
NATALIE WOLF
LISA B. GOODMAN
JOHN W. SHAW
JAMES P. HUGHES, JR.
EDWIN J. HARRON
MICHAEL R. NESTOR
MAUREEN D. LUKE
ROLIN P. BISSELL
SCOTT A. HOLT
JOHN T. DORSEY
M. BLAKE CLEARY

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(800) 253-2234 (DE ONLY)
FAX: (302) 571-1253

110 WEST PINE STREET
P.O. BOX 594
GEORGETOWN, DELAWARE 19947
(302) 856-3571
(800) 255-2234 (DE ONLY)
FAX: (302) 856-9338

WWW.YOUNGCONAWAY.COM

DIRECT DIAL: 302-571-6673
DIRECT FAX: 302-576-3330
ssandler@ycst.com

ATHANASIOS E. AGELAKOPOULOS
JOSEPH M. BARRY
SEAN M. BEACH
DONALD J. BOWMAN, JR.
TIMOTHY P. CAIRNS
KARA HAMMOND COYLE
CURTIS J. CROWTHER
MARGARET M. DIBIANCA
ERIN EDWARDS
KENNETH J. ENOS
IAN S. FREDERICKS
JAMES J. GALLAGHER
DANIELLE GIBBS
SEAN T. GREECHER
STEPHANIE L. HANSEN
DAWN M. JONES
RICHARD S. JULIE
KAREN E. KELLER
JENNIFER M. KINKUS
EDWARD J. KOSMOWSKI
JOHN C. KUFFEL

TIMOTHY E. LENGKEEK
ANDREW A. LUNDGREN
MATTHEW B. LUNN
JOSEPH A. MALFITANO
ADRIA B. MARTINELLI
MICHAEL W. MCDERMOTT
MARIBETH L. MINELLA
EDMON L. MORTON
D. FON MUTTAMARA-WALKER
JENNIFER R. NOEL
JOHN J. PASCHETTO
ADAM W. POFF
SETH J. REIDENBERG
FRANCIS J. SCHANNE
MICHELE SHERRETTA
MICHAEL P. STAFFORD
JOHN E. TRACEY
MARGARET B. WHITEMAN
CHRISTIAN DOUGLAS WRIGHT
SHARON M. ZIEG

SPECIAL COUNSEL
JOHN D. MCLAUGHLIN, JR.
ELENA C. NORMAN (NY ONLY)
PATRICIA A. WIDDOSS

OF COUNSEL
STUART B. YOUNG
EDWARD B. MAXWELL, 2ND

November 3, 2005

**BY CM/ECF**

The Honorable Kent A. Jordan
Lock Box 10
United States District Court
District of Delaware
Wilmington, DE 19801

      Re:    **Marybeth Farrell v. AstraZeneca Pharmaceuticals, LP**
              **Civil Action No.04-285 KAJ**

Dear Judge Jordan:

      This is in response to Mr. LaRosa's letter of November 2, 2005 requesting that the two scheduled depositions that Your Honor allowed me to take as a result of your ruling on October 19 be vacated. Defendant opposes that request. The 30(b)(6) deposition of an employee of GlaxoSmithKline ("GSK") is scheduled for Monday morning, November 7. It should be noted that GSK has not moved to quash that subpoena, and it is questionable that Plaintiff even has standing to attack it. The Plaintiff's deposition is scheduled for November 11. The Pretrial Order and related documents are due to be submitted to Your Honor on November 23, and it is my understanding that the parties have informally agreed that Defendant's portion, which was due to be sent to Plaintiff on November 7, can be delayed until the pending issue is resolved.

      Mr. LaRosa correctly points to the Third Circuit's holding in <u>Blum v. Witco Chemical Corporation</u>, 829 F.2d 367, 373 (3d Cir. 1987), as binding precedent. In <u>Blum</u>, the Third Circuit held that salary and pension benefits earned from a subsequent employer are "simply another form of earned income, which, of course, may be set off from a front pay award consistent with a plaintiff's duty to mitigate damages."

# YOUNG CONAWAY STARGATT & TAYLOR, LLP

The Honorable Kent A. Jordan
November 3, 2005
Page 2

After her separation from AstraZeneca ("AZ"), Plaintiff was employed by GSK at a higher salary and with an equivalent pension. It was apparent that she would earn a great deal more over her work life at GSK than her claimed pension loss ($750,000.00 more, according to the Defendant's expert). Therefore, while Plaintiff remained employed by GSK, Defendant was content with the evidence that Plaintiff's pension loss claim would be far exceeded by her future earnings at GSK. See Rodriguez v. Taylor, 569 F.2d 1231, 1243 (3d Cir. 1977) (burden is on defendant to prove any set-offs to damages), cert. denied, 436 U.S. 913 (1978).

As Your Honor will recall from the October 19 teleconference, in September, long after the close of discovery, Plaintiff suddenly notified Defendant that she had voluntarily resigned from her position at GSK on September 12, 2005. Upon learning this new information, Defendant concluded that there now existed additional issues as to both damages and liability.

As to damages, while Defendant has asserted from the outset that Ms. Farrell was entitled to no front pay damages because of the set off of her higher earnings at GSK, with the newly acquired evidence of Plaintiff's resignation from employment at GSK, an additional argument became available. If Plaintiff voluntarily resigned her position, that is indisputable evidence of a failure to mitigate. A plaintiff must use reasonable diligence in mitigating her damages, not only by seeking other employment but also by making a reasonable effort to maintain that employment once obtained. EEOC v. Delight Wholesale Co., 973 F.2d 664, 670 (8th Cir. 1992)(plaintiff who voluntarily quit for personal reasons did not mitigate her damages); accord, Brady v. Thurston Motor Lines, 753 F.2d 1269, 1277 (4th Cir. 1985) (holding that a plaintiff has a duty to "make reasonable and good faith efforts to maintain that job once accepted"). Therefore, if the facts obtained from the depositions bear out what has been represented to date, Plaintiff's claim of front pay, i.e., her claim of lost pension money, ceased as of the date of her voluntary resignation. Caufield v. The Center Area School District, 2005 U.S. App. LEXIS 9278, *14 (3d Cir. May 20, 2005)("When an employer successfully proves a failure to mitigate . . . any front-pay award will be foreclosed.")

When Mr. LaRosa raised the issue of a possible stipulation on this issue in the e-mail he mentions in his letter, I responded by asking if the Plaintiff was willing to stipulate that her damages were limited to her claim relating to lost salary for the brief period before she began her new job at GSK and her claim of lost medical expenses, a total of $12,214.70 according to Plaintiff. In his reply email (a copy of the email chain is enclosed) and in his letter to Your Honor, Mr. LaRosa proposes instead that the parties stipulate to a fictional situation. Mr. LaRosa suggested that even though his client quit her job with GSK in September 2005 to accept another job (about which Defendant has virtually no information at present), we should stipulate to the fiction that she would remain at GSK for the balance of her work life and derive numbers based on that imaginary speculation instead of recognizing the actuality that her lost pension claim no longer exists due to her own actions. Of course, Mr. LaRosa's stipulation proposal not only ignores reality but it would also prevent Defendant from making the additional argument referred to above, that any entitlement to front pay ceased when Ms. Farrell quit her job at GSK, making unnecessary the need to go before a jury and have a battle of experts on whether her GSK salary and pension had "zeroed out" any pension loss she might have suffered at AZ.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Kent A. Jordan
November 3, 2005
Page 3

Thus, as stated in my letter to Your Honor of October 14, 2005, additional discovery is relevant to show that as a result of Plaintiff's voluntarily quitting her job at GSK, or perhaps leaving due to misconduct of which we, as yet, are unaware, she is not entitled to any front pay as of the date of her separation from GSK.

Further, the additional discovery is also relevant on the issue of liability. Your Honor will recall that the Plaintiff's primary claim in opposing successfully AZ's summary judgment motion was that the numerous documents questioning her performance that preceded her request for FMLA leave were fabricated, and that her performance had always been stellar before she went on FMLA leave. Ms. Farrell is now on her fourth job in less than two years. If the pending depositions disclose that she had the same sort of performance problems at GSK that Defendant contends she had at AZ, this would be legitimate impeachment evidence and would have a bearing on the issue of liability as well as on damages.

Plaintiff's request to vacate the depositions is a transparent effort to conceal the truth and to attempt to place the burden on Defendant to demonstrate to a jury that she has not mitigated her damages when, as a result of the facts that could be developed through the depositions, Ms. Farrell may be precluded from making any damages claim at all as a matter of law, other than the nominal amount she says she lost in salary and medical expenses.[*] Defendant plans to submit a motion in limine asking the Court to so rule as part of its Pretrial documents. It is submitted that the request to vacate the depositions should be denied.

Respectfully submitted,

Sheldon N. Sandler
Bar I.D. 245

SNS:sde
Attachment
cc:   Clerk, U.S. District Court (by hand delivery)
      Thomas S. Neuberger, Esquire (by CM/ECF)
      John M. LaRosa, Esquire (By CM/ECF)
      John Bogan, Esquire (by U.S. mail)

---

[*] And in light of the grant of summary judgment to Defendant on Plaintiff's COBRA claim, her medical expenses claim may be unavailable to her as well.