Source: Legal > Cases - U.S. > **Federal & State Cases, Combined**
Terms: **tubari and nlrb** (Edit Search)

✔Select for FOCUS ™ or Delivery
☐

*2005 U.S. App. LEXIS 9278, ** 

MARIANNE CAUFIELD, Appellant v. THE CENTER AREA SCHOOL DISTRICT; THE CENTER AREA SCHOOL DISTRICT BOARD OF DIRECTORS

No. 04-2538

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

*2005 U.S. App. LEXIS 9278*

May 3, 2005, Argued
May 20, 2005, Filed

**NOTICE:** **[\*1]** RULES OF THE THIRD CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** On Appeal from the United States District Court for the Western District of Pennsylvania. (D.C. No. 02-cv-02135). District Judge: Honorable Arthur J. Schwab.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff employee appealed from an order of the United States District Court for the Western District of Pennsylvania, that granted summary judgment dismissing her age discrimination suit that alleged violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C.S. § 621 et seq., and the Pennsylvania Human Relations Act (PHRA), 43 Pa. Cons. Stat. § 951 et seq.

**OVERVIEW:** The employee's EEOC claim asserted she was discriminated against between August 1999 and March 2000, and that it was a continuing tort. The employer moved for partial summary judgment, but the district court unilaterally converted it to a motion for complete summary judgment, which it granted. In part, the district court found the employee had failed to mitigate her damages by not taking substitute employment. The court of appeals rejected that logic. There were no cases where mitigation of damages was required as an essential element of a discrimination claim. Mitigation was a claimant's duty that should be considered at the damages stage of a discrimination case. A finding that the employee failed to mitigate her damages may limit her recovery of back pay and completely bar any claim for forward pay, but not other aspects of relief. The grant of summary judgment as to the claims under the ADEA and PHRA was thus erroneous and was reversed. The employer had not met its burden of demonstrating the existence of substantially equivalent employment at other school districts, and there was insufficient evidence the employee removed herself from the job market entirely.

**OUTCOME:** The grant of complete summary judgment and the finding that the employee failed to mitigate her damages were reversed and remanded.

**CORE TERMS:** summary judgment, mitigate, claimant, age discrimination, elementary,

substantially equivalent, mitigation, teacher, back-pay, partial, duty to mitigate, full-time, duty, emotional distress, monetary damages, teaching, monetary, opening, reasonable diligence, prima facie case, matter of law, moving party, job market, dissimilar, proffered, essential element, supplemental jurisdiction, use reasonable diligence, insufficient evidence, manifest injustice

## LexisNexis(R) Headnotes ◆ Hide Headnotes

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction
HN1 ↓ A district court may exercise supplemental jurisdiction over a state law claim under 28 U.S.C.S. § 1367(a), as the state claim had the same factual nucleus as a federal claim so as to form part of the same case or controversy under Article III of the United States Constitution. More Like This Headnote

Civil Procedure > Appeals > Standards of Review > De Novo Review
Civil Procedure > Summary Judgment > Standards of Review
HN2 ↓ Appellate review the of a district court's grant of summary judgment is de novo. When reviewing the propriety of a grant of summary judgment, the appellate court applies the same test a district court should have applied. More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard
HN3 ↓ A grant of summary judgment is appropriate only where the moving party has established that there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof
HN4 ↓ Where a defendant is the party moving for summary judgment, the initial burden is on the defendant to show that the plaintiff has failed to establish one or more essential elements to her case. On a motion for summary judgment, a district court must view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor. More Like This Headnote

Civil Procedure > Appeals > Standards of Review > Standards Generally
HN5 ↓ It is within an appellate court's power to reverse and remand a district court's final order on different grounds, regardless of whether or not they are argued by the parties. Appellate courts may in their discretion consider issues not properly raised in an opening brief if the error is so plain that manifest injustice would otherwise result. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis
HN6 ↓ Under the burden-shifting framework for claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., and Age Discrimination in Employment Act, 29 U.S.C.S. § 621, et seq., claims, a plaintiff must first establish a prima facie case. Then, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for his action. Finally, should the defendant carry that burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. More Like This Headnote

Labor & Employment Law > Discrimination > Age Discrimination > Proof of Discrimination
HN7 ↓ To establish a prima facie case of age discrimination under the Age Discrimination in Employment Act, 29 U.S.C.S. § 621 et seq., a plaintiff must establish that: (1) he or she was over 40 at the time he or she applied for the position in question; (2)

he or she was qualified for the position in question; (3) despite the qualifications, he or she was rejected; and (4) the employer ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination. The same framework is also used to analyze claims under the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951 et seq.  More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis
HN8 ↓ To avoid summary judgment, a plaintiff's evidence rebutting an employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered nondiscriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action; that is, the proffered reason is a pretext.  More Like This Headnote

Labor & Employment Law > Discrimination > Age Discrimination > Defenses & Exceptions
Torts > Damages > Mitigated Damages
HN9 ↓ An unemployed or underemployed claimant is subject to the statutory duty to minimize damages set out in 42 U.S.C.S. § 2000e-5(g). This duty, rooted in an ancient principle of law, requires the claimant to use reasonable diligence in finding other suitable employment. Although the unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning position, he or she forfeits his right to backpay if he or she refuses a job substantially equivalent to the one he or she was denied.  More Like This Headnote

Labor & Employment Law > Discrimination > Age Discrimination > Defenses & Exceptions
Torts > Damages > Mitigated Damages
HN10 ↓ While it is the duty of an employee-discrimination claimant to mitigate losses, it is the employer who has the burden of proving a failure to mitigate. To prove a failure to mitigate, an employer must prove either that other substantially equivalent positions were available to the employee, who failed to use reasonable diligence in attempting to secure those positions, or, alternatively, that the employee withdrew entirely from the employment market. When an employer successfully proves a failure to mitigate, any back pay award to an aggrieved employee will be cut off or reduced beginning at the time of the employee's failure to mitigate and any front-pay award will be foreclosed.  More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Defenses & Exceptions
Torts > Damages > Mitigated Damages
HN11 ↓ The reasonableness of a claimant's diligence in finding substitute employment under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., should be evaluated in light of the individual characteristics of the claimant and the job market generally, a plaintiff may satisfy the reasonable diligence requirement by demonstrating a continuing commitment to be a member of the work force and by remaining ready, willing, and available to accept employment.  More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Defenses & Exceptions
Torts > Damages > Mitigated Damages
HN12 ↓ Discrimination claimants are not required to take lesser or dissimilar work during the pendency of their claims to satisfy their duty to minimize damages. Substantially equivalent employment for purposes of litigation under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., is that employment which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status.  More Like This Headnote

**Labor & Employment Law** > **Discrimination** > **Disparate Treatment** > **Defenses & Exceptions**
**Torts** > **Damages** > **Mitigated Damages**
HN13 ⭐ Although a discrimination claimant's efforts need not be successful, the claimant must exercise good faith in attempting to secure a substitute position. More Like This Headnote

**Labor & Employment Law** > **Discrimination** > **Disparate Treatment** > **Defenses & Exceptions**
**Torts** > **Damages** > **Mitigated Damages**
HN14 ⭐ The plain language of 42 U.S.C.S. § 2000e-5(g)(1) shows that amounts that could have been earned with reasonable diligence should be used to reduce or decrease a back pay award, not to wholly cut off the right to any back pay. More Like This Headnote

**COUNSEL:** Bernard J. Rabik, Esq. (Argued), Reed, Luce, Tosh, Wolford & Douglass, Beaver, Pennsylvania, Counsel for Appellant.

Anthony G. Sanchez, Esq. (Argued), Leslie D. Heller, Esq., Andrews & Price, Pittsburgh, Pennsylvania, Counsel for Appellees.

**JUDGES:** Before: McKEE, VAN ANTWERPEN, and WEIS, Circuit Judges.

**OPINIONBY:** VAN ANTWERPEN

**OPINION:** OPINION OF THE COURT

VAN ANTWERPEN, Circuit Judge.

The case before us presents an appeal of a District Court's grant of summary judgment in an age discrimination suit. For the following reasons, we reverse and remand.

**I. Facts**

The following facts are undisputed. Marianne Caufield ("Appellant") was born on May 10, 1944, and graduated from Duquesne University in 1976 with a Bachelor's degree in education. Appellant is certified to teach elementary education in the Commonwealth of Pennsylvania. She began working as **[*2]** a substitute teacher for Appellees Center Area School District and the Center Area School District Board of Directors (collectively "Center Area") in 1992, and unsuccessfully sought employment as a full-time elementary teacher at Center Area in 1995, 1996, 1997, 1999, and 2002. Between 1997 and 2004, Center Area hired approximately 18 full-time elementary teachers, 15 of whom were on the substitute list.

Appellant deliberately placed herself on the substitute list of only the Center Area School District. She believed this would enhance her opportunity for a teaching position there, as Center Area had hired the majority of its full-time teachers from the substitute list in the past. At all times relevant to this suit, Appellant was "occasionally" aware of openings for full-time elementary teachers at other school districts. She also stated that she had no intention of submitting applications to any other school districts in the future.

On May 24, 2000, Appellant signed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), presenting a case of age discrimination. The Charge indicates that the earliest date of discrimination took place on August 2, 1999, the **[*3]** latest occurred on March 29, 2000, and that this was a continuing action. On December 12, 2002, Appellant filed a complaint in the United States District Court for the Western District

of Pennsylvania alleging age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA"), and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951, et seq. ("PHRA"). In that complaint, Appellant demanded relief in the form of (1) a declaratory judgment that her right to be free of age discrimination both under the ADEA and PHRA had been violated; (2) a mandatory injunction directing Center Area to hire her as a full-time elementary teacher and make her whole with regard to lost earnings, insurance benefits, vacation and personal leave time, and any other emoluments of employment she had been deprived of; (3) compensation for emotional distress; (4) liquidated damages under the ADEA; (5) attorney's fees and costs; and (6) any other appropriate relief, including front pay, punitive and exemplary damages.

Center Area moved to dismiss all claims under Fed. R. Civ. P. 12(b)(6) [*4] . A United States Magistrate Judge issued a Report and Recommendation on August 12, 2003, recommending that the District Court grant Center Area's motion to dismiss only with regard to Appellant's claim for punitive damages. This Report and Recommendation was adopted by the District Court on August 26, 2003. Center Area then moved for partial summary judgment on April 8, 2004, with regard to (1) any claims arising before 1999; (2) all claims for money damages; (3) and all claims for compensation for emotional distress. The District Court unilaterally converted this into a motion for complete summary judgment, which was granted in that Court's Memorandum Opinion of April 30, 2004. The case was subsequently marked closed. This appeal followed.

## II. Jurisdiction and Standard of Review

The District Court had original subject matter jurisdiction over Appellant's ADEA claim under 28 U.S.C. § 1331, and $^{HN1}$ had supplemental jurisdiction over Appellant's state PHRA claim under 28 U.S.C. § 1367(a), as the state claim had the same factual nucleus so as to "form part of the same case or controversy under Article III of the United States Constitution. [*5] " See United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966); Peter Bay Homeowners Ass'n, Inc. v. Stillman, 294 F.3d 524, 533 (3d Cir. 2002). Our jurisdiction is grounded in 28 U.S.C. § 1291, as the District Court's Memorandum Opinion granting Center Area's motion for summary judgment was a final and appealable order.

$^{HN2}$We review the District Court's grant of summary judgment in favor of Center Area *de novo*. Blair v. Scott Specialty Gases, 283 F.3d 595, 602-03 (3d Cir. 2002); Torres v. McLaughlin, 163 F.3d 169, 170 (3d. Cir. 1998). When reviewing the propriety of a grant of summary judgment, we apply the same test a district court should have applied. Bucks County Dep't of Mental Health/Mental Retardation v. Pennsylvania, 379 F.3d 61, 65 (3d Cir. 2004); Morton Intern., Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669, 679 (3d Cir. 2003); Olson v. GE Astrospace, 101 F.3d 947, 951 (3d Cir. 1996). That is, $^{HN3}$ a grant of summary judgment is appropriate only where the moving party has established that there is no [*6] genuine dispute of material fact, and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); Emory v. AstraZeneca Pharms. LP, 401 F.3d 174, 179 (3d Cir. 2005). $^{HN4}$Where the defendant is the moving party, the initial burden is on the defendant to show that the plaintiff has failed to establish one or more essential elements to her case. See Celotex Corp., 477 U.S. at 323-24. On a motion for summary judgment, a district court must view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor. Marzano v. Computer Sci. Corp., 91 F.3d 497, 501 (3d Cir. 1996) (citing Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)).

## III. Discussion

There are two issues presented by this case. The first, whether or not Appellant has satisfied

her duty to mitigate monetary damages, has been briefed by both parties. The second, whether or not the District Court appropriately converted Center Area's motion **[*7]** for partial summary judgment into a motion for complete summary judgment, has not. With due respect to the litigants, we shall first address the issue that was not briefed before moving to the question of mitigation of damages. n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Despite the fact that neither Appellant nor Center Area have devoted any discussion in their briefs to the District Court's grant of complete summary judgment, HN5 it is within our power to reverse and remand the District Court's final order on different grounds, regardless of whether or not they are argued by the parties. See Gambino v. Morris, 134 F.3d 156, 169 (3d Cir. 1998) (noting that "appellate courts may in their discretion consider issues not properly raised in an opening brief . . . if the error is so 'plain' that manifest injustice would otherwise result."); see also Herbert v. Nat'l Acad. of Sciences, 297 U.S. App. D.C. 406, 974 F.2d 192, 196 (D.C.Cir. 1992) (cited in Gambino, 134 F.3d at 169); United States v. Ullah, 976 F.2d 509, 514 (9th Cir. 1992) (considering manifest injustice in the criminal context).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*8]**

A. *The District Court's grant of complete summary judgment.*

Center Area's motion for partial summary judgment addressed only three areas for which they believed summary judgment in their favor was appropriate: (1) Appellant's ADEA and PHRA claims arising prior to 1999; (2) Appellant's failure to mitigate her monetary damages; and (3) Appellant's demand for compensation for emotional damages under the ADEA. The District Court found in favor of Center Area as to each of these areas. It then went a step further, granting complete summary judgment in favor of Center Area as to Appellant's ADEA and PHRA claims. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 With regard to Appellant's PHRA claim, the District Court stated: "...a district court may decline to exercise supplemental jurisdiction over a claim if [it] has dismissed all claims over which it has original jurisdiction . . . therefore, the Court dismisses Plaintiff's claims arising under the PHRA without prejudice." Memorandum Opinion at 6.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The District Court did not explain why this was **[*9]** done. Excluding the charges of discrimination prior to 1999, n3 there is no indication in the record that any essential element of either Appellant's ADEA claim or her PHRA claim was challenged by Center Area's motion for partial summary judgment. As we see it, the District Court first rejected any claim for recovery for emotional distress, and then found that Appellant's failure to mitigate her monetary damages prevented her from recovering any front or back pay under the ADEA and PHRA.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Center Area argued below that Appellant's ADEA and PHRA claims arising before 1999 should have been dismissed because she failed to exhaust her administrative remedies


and/or because she failed to file timely administrative claims. Appellant consented to this dismissal in her Response to Defendants' Motion for Partial Summary Judgment.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The Supreme Court has established [HN6] a burden-shifting framework for claims under Title VII, including ADEA claims. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). [*10] The plaintiff must first establish a *prima facie* case. n4 Id. Then, if the plaintiff is successful in making out a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for his action. Id. Finally, "should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Tex. Dep't of Cmty Affairs v. Burdine, 450 U.S. 248, 252-53, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981); Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 n.3 (3d Cir. 2004); Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999). n5 Our research has not disclosed a case where mitigation of damages has been required as an essential element of a discrimination claim. Rather, mitigation is a claimant's duty that arises at the damage stage of a discrimination case when the amount is determined. See, e.g., Anastasio v. Schering Corp., 838 F.2d 701, 709 (3d Cir. 1988).

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n4 [HN7] To establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must establish that: (1) she was over 40 at the time she applied for the position in question; (2) she was qualified for the position in question; (3) despite her qualifications, she was rejected; and (4) the employer ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination. Narin v. Lower Merion School Dist., 206 F.3d 323, 331 (3d Cir. 2000) (citing Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 330 (3d Cir.1995)); Sempier v. Johnson & Higgins, 45 F.3d 724, 728 (3d Cir.1995). This framework is also used to analyze PHRA claims. Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1084 (3d Cir. 1995). [*11]

n5 We note that [HN8] "to avoid summary judgment, a plaintiff's evidence rebutting an employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) (internal citations, emphasis and footnotes omitted).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Th District Court's Memorandum Opinion did not discuss the McDonnell Douglas framework. It appears that the District Court concluded that, because Appellant could not recover either back and forward pay or monetary damages for emotional distress, all of her claims under the ADEA and PHRA were defective in some manner. This conclusion, however, ignores both that the failure to mitigate is an affirmative defense to a claim for money damages under the ADEA, and that Appellant sought declaratory and injunctive relief in addition to her claims for monetary compensation.

The District Court's reliance on Anastasio [*12] v. Schering Corp. in support of summary judgment is inapposite. In Anastasio, an employer found liable for age discrimination challenged both the conclusion that the employee's age was a determinative factor in his termination and that the employee properly attempted to mitigate his losses. In that case, we first addressed the question of fault and *then* the question of monetary liability. Nowhere did we suggest that a failure to mitigate damages prevents a finding that age discrimination has occurred. Citing Anastasio as holding that mitigation is an essential element of an ADEA or PHRA claim was erroneous.

While a finding that Appellant failed to mitigate her damages may limit her recovery of back-pay, and completely bar any claim for forward pay, it has no bearing on whether or not a claim for discrimination can be proven, or on Appellant's ability to receive declaratory and injunctive relief. The grant of summary judgment as to her claims under the ADEA and PHRA was erroneous and we will reverse.

*B. Appellant's duty to mitigate damages.*

Center Area contends that Appellant failed in her duty to mitigate any damages that may have arisen because of alleged age [*13] discrimination. The Supreme Court has stated:

> HN9 An unemployed or underemployed claimant, like all other Title VII claimants, is subject to the statutory duty to minimize damages set out in [42 U.S.C. § 2000e-5(g)]. This duty, rooted in an ancient principle of law, requires the claimant to use reasonable diligence in finding other suitable employment. Although the unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning position, he forfeits his right to backpay if he refuses a job substantially equivalent to the one he was denied.

Ford Motor Co. v. EEOC, 458 U.S. 219, 231-32, 73 L. Ed. 2d 721, 102 S. Ct. 3057 (1982) (footnotes and internal citations omitted). HN10 While it is the duty of a discrimination claimant to mitigate her losses, it is the employer who has the burden of proving a failure to mitigate. See Robinson v. Southeastern Pa. Transp. Auth., Red Arrow Div., 982 F.2d 892, 897 (3d Cir. 1993); Anastasio, 838 F.2d at 707-08; Goss v. Exxon Office Systems Co., 747 F.2d 885, 889 (3d Cir. 1984). To prove a failure to mitigate, [*14] Center Area had to prove either that other substantially equivalent positions were available to Appellant and she failed to use reasonable diligence in attempting to secure those positions, Anastasio, 838 F.2d at 708, or, alternatively, that Appellant withdrew entirely from the employment market. **Tubari**, Ltd., Inc. v. **NLRB**, 959 F.2d 451, 454 (3d Cir. 1992). When an employer successfully proves a failure to mitigate, any back-pay award to an aggrieved employee will be cut off or reduced beginning at the time of the employee's failure to mitigate and any front-pay award will be foreclosed. Ford Motor Co., 458 U.S. at 233-34.

In their motion for partial summary judgment, Center Area argued that Appellant failed to exercise reasonable diligence to secure substantially equivalent positions and consequently that she had withdrawn from the employment market. This argument was supported by evidence presented by Center Area that a random sampling of four school districts in the area had elementary teacher openings between 1999 and 2004 to which Appellant did not apply. With this evidence in hand, the District Court concluded that there [*15] were substantially equivalent positions available at nearby school districts, and that Appellant failed to demonstrate that she applied for an elementary position at any school district except Center Area. It also concluded that Appellant made no efforts whatsoever to mitigate her damages, suggesting that the District Court believed she had withdrawn completely from the

employment market.

Viewing the evidence in the light most favorable to Appellant, we cannot agree that Center Area has met its burden of demonstrating the existence of substantially equivalent employment at other school districts.

> HN11 "The reasonableness of a Title VII claimant's diligence should be evaluated in light of the individual characteristics of the claimant and the job market . . . .generally, a plaintiff may satisfy the reasonable diligence requirement by demonstrating a continuing commitment to be a member of the work force and by remaining ready, willing, and available to accept employment."

Booker v. Taylor Milk Co., Inc., 64 F.3d 860, 865 (3d Cir. 1995) (internal citations and quotation marks omitted).

The only evidence submitted by Center Area demonstrating that there were [*16] substantially equivalent positions available elsewhere consisted of four affidavits from officials at random school districts in the area indicating that each district had some form of elementary teaching positions open between 1999 and 2004. This, by itself, is insufficient evidence to carry Center Area's burden on summary judgment, as it does not indicate whether those positions were of substantial equivalence to teaching positions at Center Area. HN12 It is well-established that discrimination claimants are not required to take lesser or dissimilar work during the pendency of their claims to satisfy their duty to minimize damages. Ford Motor Co., 458 U.S. at 232 n.14. "Substantially equivalent employment for purposes of Title VII litigation is that employment which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status. . ." Sellers v. Delgado Cmty. College, 839 F.2d 1132, 1138 (5th Cir. 1988)(internal quotation marks omitted). Based on the record before us, we have no idea whether the job positions cited by Center Area were of lesser quality or otherwise dissimilar employment opportunities. [*17] We cannot merely assume that all elementary teaching positions in the area are, by their nature, substantially equivalent. Indeed, it is conceivable that any number of the openings cited by Center Area were in districts with dissimilar classroom sizes, pay scales, or student disciplinary problems, all of which are important factors in a teacher's employment decisions. We know nothing about these positions, except that they are all generically described as elementary teaching positions. Without more, Center Area has not met its burden of demonstrating that there existed substantially equivalent employment in other districts. n6

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 Our holding should not be taken to suggest that a claimant can defend against summary judgment by so circumscribing the workforce to which she is applying such that repeated application only to the job she was denied satisfies her mitigation duties. Indeed, the duty to mitigate would make little sense if we were to allow a discrimination claimant to artificially narrow the workforce in this manner. However, because Center Area did not carry its burden of proof with regard to mitigation, we need not reach such a question.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*18]

Moreover, there is insufficient evidence in the record to conclude that Appellant removed herself from the job market entirely. It is undisputed that she continued to remain on the

substitute teacher list at Center Area, that she taught full time at a parochial school for four months, and that she continued to apply for permanent elementary openings at Center Area as they became available. HN13 Although a discrimination claimant's efforts need not be successful, she must exercise good faith in attempting to secure a position. Taylor Milk, 64 F.3d at 865 (quoting Reilly v. Cisneros, 835 F. Supp. 96, 99-100 (W.D.N.Y. 1993)). Given that Appellant explained at deposition that she applied only in the vicinity of Center Area because she had to raise her daughter, we cannot say as a matter of law that her attempts to secure employment were not in good faith. At the very least, this is a question for a jury.

As we see it, the evidence proffered by Center Area does not demonstrate that, as a matter of law, there was substantially equivalent employment which Appellant did not reasonably discover, or that she left the job market altogether. Therefore, the District [*19] Court erred in granting Center Area's motion for summary judgment with regard to Appellant's mitigation of damages. However, even if the District Court had been correct that Center Area had demonstrated that Appellant had failed in her duty to mitigate, Ford Motor Co. instructs that back-pay for an employee who has failed to mitigate losses will be cut off or reduced beginning *at the time of the employee's failure to mitigate.* Ford Motor Co., 458 U.S. at 233-34. The District Court made no findings with regard to the point in time when Appellant's failure to properly mitigate her monetary losses began to reduce her back-pay recovery. It merely concluded that Appellant's failure to mitigate damages completely barred all monetary relief. We rejected this reasoning in Taylor Milk, holding that:

> HN14 The plain language of section 2000e-5 shows that amounts that could have been earned with reasonable diligence should be used to *reduce or decrease* a back pay award, not to wholly cut off the right to any back pay. See 42 U.S.C. § 2000e-5(g)(1); see also **Tubari** Ltd., Inc., 959 F.2d at 453-54; Anastasio, 838 F.2d at 708-09; [*20] 2 DAN B. DOBBS, LAW OF REMEDIES § 6.10(4), at 221-22 (2d ed. 1993). Furthermore, Defendant's "no-mitigation-no back pay" argument is inconsistent with the "make whole" purpose underlying Title VII.

64 F.3d at 866 (emphasis in original). Similarly, we cannot agree with the District Court that an appellant's failure to mitigate her monetary losses *ipso facto* bars all monetary relief in the form of back-pay. In Taylor Milk, we noted that back-pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of Title VII. Id. On the record before us it is difficult, if not impossible, to conclude whether or not all back pay should have been barred. The ruling adverse to the plaintiff, therefore, was in error.

For these reasons, we reverse both the District Court's conclusion that Appellant failed to mitigate her damages, as well as its grant of complete summary judgment. We remand this case for further proceedings consistent with this Opinion.

Source:  Legal > Cases - U.S. > **Federal & State Cases, Combined**
Terms:  tubari and nlrb  (Edit Search)
View:  Full
Date/Time:  Tuesday, June 7, 2005 - 4:16 PM EDT

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.