# YOUNG CONAWAY STARGATT & TAYLOR, LLP

BRUCE M. STARGATT
BEN T. CASTLE
SHELDON N. SANDLER
RICHARD A. LEVINE
RICHARD A. ZAPPA
FREDERICK W. IOBST
RICHARD H. MORSE
DAVID C. MCBRIDE
JOSEPH M. NICHOLSON
CRAIG A. KARSNITZ
BARRY M. WILLOUGHBY
JOSY W. INGERSOLL
ANTHONY G. FLYNN
JEROME K. GROSSMAN
EUGENE A. DIPRINZIO
JAMES L. PATTON, JR.
ROBERT L. THOMAS
WILLIAM D. JOHNSTON
TIMOTHY J. SNYDER
BRUCE L. SILVERSTEIN
WILLIAM W. BOWSER
LARRY J. TARABICOS
RICHARD A. DILIBERTO, JR.
MELANIE K. SHARP
CASSANDRA F. ROBERTS

RICHARD J.A. POPPER
TERESA A. CHEEK
NEILLI MULLEN WALSH
JANET Z. CHARLTON
ROBERT S. BRADY
JOEL A. WAITE
BRENT C. SHAFFER
DANIEL P. JOHNSON
CRAIG D. GREAR
TIMOTHY JAY HOUSEAL
BRENDAN LINEHAN SHANNON
MARTIN S. LESSNER
PAULINE K. MORGAN
C. BARR FLINN
NATALIE WOLF
LISA B. GOODMAN
JOHN W. SHAW
JAMES P. HUGHES, JR.
EDWIN J. HARRON
MICHAEL R. NESTOR
MAUREEN D. LUKE
ROLIN P. BISSELL
SCOTT A. HOLT
JOHN T. DORSEY
M. BLAKE CLEARY

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(800) 253-2234 (DE ONLY)
FAX: (302) 571-1253

110 WEST PINE STREET
P.O. BOX 594
GEORGETOWN, DELAWARE 19947
(302) 856-3571
(800) 255-2234 (DE ONLY)
FAX: (302) 856-9338

WWW.YOUNGCONAWAY.COM

DIRECT DIAL: 302-571-6673
DIRECT FAX: 302-576-3330
ssandler@ycst.com

ATHANASIOS E. AGELAKOPOULOS
JOSEPH M. BARRY
SEAN M. BEACH
DONALD J. BOWMAN, JR.
TIMOTHY P. CAIRNS
KARA HAMMOND COYLE
CURTIS J. CROWTHER
MARGARET M. DIBIANCA
ERIN EDWARDS
KENNETH J. ENOS
IAN S. FREDERICKS
JAMES J. GALLAGHER
DANIELLE GIBBS
SEAN T. GREECHER
STEPHANIE L. HANSEN
DAWN M. JONES
RICHARD S. JULIE
KAREN E. KELLER
JENNIFER M. KINKUS
EDWARD J. KOSMOWSKI
JOHN C. KUFFEL

TIMOTHY E. LENGKEEK
ANDREW A. LUNDGREN
MATTHEW B. LUNN
JOSEPH A. MALFITANO
ADRIA B. MARTINELLI
MICHAEL W. MCDERMOTT
MARIBETH L. MINELLA
EDMON L. MORTON
D. FON MUTTAMARA-WALKER
JENNIFER R. NOEL
JOHN J. PASCHETTO
ADAM W. POFF
SETH J. REIDENBERG
FRANCIS J. SCHANNE
MICHELE SHERRETTA
MICHAEL P. STAFFORD
JOHN E. TRACEY
MARGARET B. WHITEMAN
CHRISTIAN DOUGLAS WRIGHT
SHARON M. ZIEG

SPECIAL COUNSEL
JOHN D. MCLAUGHLIN, JR.
ELENA C. NORMAN (NY ONLY)
PATRICIA A. WIDDOSS

OF COUNSEL
STUART B. YOUNG
EDWARD B. MAXWELL, 2ND

November 11, 2005

**BY CM/ECF**

The Honorable Kent A. Jordan
Lock Box 10
United States District Court
District of Delaware
Wilmington, DE 19801

      Re:    **Marybeth Farrell v. AstraZeneca Pharmaceuticals, LP**
               **Civil Action No.04-285 KAJ**

Dear Judge Jordan:

      This letter is written in support of a Motion that Defendant has filed today requesting permission to file a second motion for summary judgment and asking that the trial of the case be postponed to permit that Motion to be addressed. I realize that this is an unusual request but it is strongly justified by recent events relating to the case, as described herein.

      As Your Honor knows, Plaintiff's contention has been "that prior to her request for leave, she had never received any negative feedback about her performance." Farrell v. AstraZeneca Pharmaceuticals LP, slip. op. at 3. She contends that "all of AstraZeneca's evidence of problems with her performance in late 2002 and early 2003 was fabricated." Id., n.5. Faced with claims that were "highly disputed," Your Honor denied Defendant's Motion for Summary Judgment on Plaintiff's FMLA and Implied Covenant of Good Faith and Fair Dealing causes of action.

      Since that motion was ruled on, two significant developments have occurred. First, Plaintiff's Implied Covenant of Good Faith claim has been eliminated by the decision of the Third Circuit in Equal Employment Opportunity Commission v. Avecia, Inc., 2005 U.S. App. LEXIS 22157, *7-*10 (3d Cir. Oct. 13, 2005)(copy attached). There, the Third Circuit

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Kent A. Jordan
November 11, 2005
Page 2

accepted the same argument made by the Defendant in this case.  See, Defendant's Opening Brief pages 36-7 and Defendant's Reply Brief, page 19.

Second, and even more significant, on September 12, 2005, Plaintiff voluntarily resigned from her job at GlaxoSmithKline ("GSK"), where she was earning nearly $160,000 a year with an equivalent pension plan.*  Your Honor permitted Defendant to take depositions of a representative of GSK and of the Plaintiff to determine the details regarding Plaintiff's employment at GSK and how and why that employment ended.  As a result of those depositions, it is now clear that the criticisms that were made about Plaintiff's performance at GSK were virtually identical to the pattern and specific criticisms of her performance at AstraZeneca.  The documentary evidence provided by GSK is so strikingly similar to the challenged AstraZeneca documents that any remaining suggestion that AstraZeneca fabricated the preexisting performance problems cannot continue to be viewed as anything other than the product of a fevered imagination that no reasonable jury would believe.  Moreover, Plaintiff's deposition revealed that her habitual responses to the allegations of various performance deficiencies were identical to her responses at AstraZeneca, i.e., deny everything and blame someone else.

To illustrate the remarkable similarities in Plaintiff's experience at the two workplaces, I am attaching what I assure Your Honor are only a few examples of what took place at GSK during Plaintiff's eighteen months of employment.  Glaxo prepares year-end evaluations in the early months of the next year and Ms. Farrell's immediate supervisor, Bernadette Mansi, who was produced in response to Defendant's 30(b)(6) deposition request, also did mid-year evaluations, although this was not required by the company.  Among the comments in Plaintiff's 2004 year-end evaluation were that Ms. Farrell did not "actively listen," did not respond to repeated requests for information in a timely fashion, needed to improve her understanding of the budget and finance process, and needed to avoid conflicts with co-workers, all of which were literally or virtually identical to comments in the AstraZeneca documents that Plaintiff claims were fabricated.  Manager's Development Summary attached.

Subsequent complaints surfaced regarding Ms. Farrell's failure to understand written communications and her lack of product knowledge, again echoing the Defendant's supposedly fabricated documents.  On February 4, 2005, Ms. Mansi discussed with Ms. Farrell her lack of focus, failure to take responsibility, and lack of responsiveness, again mirroring complaints made by Defendant.  A copy of Ms. Mansi's memo is attached.  Following the same modus operandi that she used at AstraZeneca, Ms. Farrell denied any problems and offered inconsistent excuses, such as blaming others or claiming she was too busy.  After that meeting, things continued to go downhill.

Another similar discussion took place with Ms. Mansi on August 2, 2005 involving issues raised by one of Plaintiff's internal customers, A.P. Singh.  A copy of Ms. Mansi's notes of that meeting are attached.  Comments about Plaintiff's problems with listening

---

* Her salary at AstraZeneca was $94,000.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Kent A. Jordan
November 11, 2005
Page 3

skills and budgets are included as well as her problems in conducting meetings and in providing timely responses, all of which were also addressed in Defendant's documents.

A few weeks later, when Plaintiff was told during the mid-year review process that her performance was not in line with the expectations of a person at her classification level, she expressed "shock! (sic)"  At a meeting on August 16, 2005, Plaintiff again followed the same modus operandi as she had at AstraZeneca, denying most of the expressed concerns, offering inconsistent excuses, and insisting that whatever issues existed were limited to complaints from one person, in this case Mr. Singh (at AstraZeneca she had blamed Brian Martin.)  Ms. Mansi again reviewed all of Plaintiff's deficiencies and stressed that she and all of the customers and supervisors had observed and commented on them consistently to Plaintiff during the entire year, but she had not "heard" them.  Most of what Ms. Mansi said mirrored the observed deficiencies discussed in the AstraZeneca documents.

Remarkably, during the meeting Ms. Farrell not only claimed she was an excellent performer, she also represented that **"she had never heard this feedback while working at AZ."**  August 16, 2005 memo, page 2.  Subsequently, while a verbal warning was being prepared and reviewed by Ms. Mansi and the Human Resources Department of GSK, Ms. Farrell submitted a letter voluntarily resigning.  Copy attached.  She had not been told that termination was imminent or asked to resign.  At her deposition, she said she had simply concluded that the position was a bad fit.

In view of this new evidence, Defendant submits that the trial should be postponed and it should be allowed to file a Second Motion for Summary Judgment that addresses this highly relevant and significant new evidence.  The evidence is noteworthy on two fronts.  First, because the sole issue on liability is whether Defendant concocted a series of false documents criticizing Plaintiff's performance, the fact that identical criticisms were made by her subsequent employer and she responded in the very same way is highly relevant.  It demonstrates the unique modus operandi used by Plaintiff to justify her deficiencies.  Gastineau v. Fleet Mortg. Corp., 137 F.3d 490 (7th Cir. 1998) (evidence of other lawsuits admissible as tending to show plaintiff's modus operandi of creating fraudulent documents for litigation purposes).  This evidence is highly probative of the central issue in the case, whether the performance concerns existed before Plaintiff's FMLA leave, since the very same concerns arose a second time and Plaintiff reacted the same way, by denials, excuses and finger-pointing.  When a serious charge like Plaintiff's unsupported claim that Defendant falsified documents is made as the sole justification for her case, such evidence is relevant to refute it.  Her experience at GSK so undermines Plaintiff's credibility in claiming the AZ documents were fabricated that no reasonable jury could conclude that she would be entitled to a verdict.  See Johnson v. Washington M.A.T.A., 883 F.2d 125, 128 (D.C. Cir. 1989).

Second, her voluntary resignation reduces Plaintiff's damages to the vanishing point since she has conceded that under the FMLA, she is not entitled to compensatory damages in the nature of pain and suffering and her sole claim of significance, a loss of pension monies, is now no longer available.  She cut off her entitlement to any continued pension monies by

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Kent A. Jordan
November 11, 2005
Page 4

voluntarily resigning.  Moreover, it is now indisputable based on the testimony of what she was earning at GSK that if she had continued to work there for the balance of her work life, her earnings would have far exceeded any claimed entitlement to lost pension rights.  Additionally, at her deposition, it came to light that at her new employer, a public relations agency in Philadelphia, she continues to earn as much money as at GSK and she also has a 401k plan and a pension, albeit one that she believes but is not certain is less attractive than her former pension.

AstraZeneca has contended from the outset that Plaintiff had ongoing performance problems and that her termination resulted from her adamant refusal to acknowledge that she had any problems and her unwillingness to work to improve those problems.  Plaintiff has claimed that she had no preexisting problems, that the preexisting documentary evidence was fabricated, and that AstraZeneca's claim was a pretext in retaliation for her taking FMLA leave.  Plaintiff's identical experience at GSK underscores her modus operandi, her habitual refusal to realistically accept her performance problems and instead to blame others and offer excuses.  This new evidence disproves Plaintiff's otherwise unsupported charge of fabrication.

In view of these new developments, it is submitted that judicial economy would be far better served by postponing the trial and allowing these issues to be addressed systematically through briefing.  It would be a disservice to the judicial system to require a trial in a case where there is no liability and no damages.  Moreover, since Plaintiff is working and earning substantially more than she was at AstraZeneca and she has conceded that she has no claim for pain and suffering, she is not disadvantaged by the delay.  Therefore, it is respectfully requested that the trial be postponed and that Defendant be permitted the opportunity to file a second Motion for Summary Judgment and a brief schedule be set for that motion.

Respectfully submitted,

/s/   Sheldon N. Sandler
Sheldon N. Sandler, Esquire (No. 245)

SNS:sde
Attachments
cc:    Clerk, U.S. District Court (by hand delivery)
       Thomas S. Neuberger, Esquire (by CM/ECF)
       John M. LaRosa, Esquire (By CM/ECF)
       John J. Bogan, Esquire (by U.S. mail)