Source: Legal > Cases - U.S. > Federal Court Cases, Combined ⓘ
Terms: **bates w/5 capital school**  (Edit Search | Suggest Terms for My Search)

⤶Select for FOCUS™ or Delivery
☐

2000 U.S. Dist. LEXIS 4873, *

DEBRA S. **BATES,** Plaintiff, v. BOARD OF EDUCATION OF THE **CAPITAL** **SCHOOL** DISTRICT, Defendant.

C.A. No. 97-394-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2000 U.S. Dist. LEXIS 4873

March 31, 2000, Decided

**NOTICE: [*1]**   FOR ELECTRONIC PUBLICATION ONLY

**DISPOSITION:** Defendant's renewed motion for JMOL denied, defendant's motion for a new trial denied, and plaintiff's and defendant's motions to amend the judgment granted in part.

## CASE SUMMARY

**PROCEDURAL POSTURE:** The court considered post-trial motions by plaintiff, moving to amend the judgment, and defendant, moving for judgment as a matter of law or for a new trial, in plaintiff's case alleging violations of 42 U.S.C.S. §§ 12111-12117 (1994), 42 U.S.C.S. §§ 2000(e)-2 et seq. (1994), and related state law claims.

**OVERVIEW:** Plaintiff brought an action against defendant board of education, alleging violations of the Americans with Disabilities Act (ADA) and Title VII of the Civil Rights Act of 1964, stemming from the nonrenewal of her contract as elementary school principal, and defendant's retaliation. Plaintiff also alleged related state law claims. The jury rejected plaintiff's gender and disability discrimination claims, but found defendant guilty of retaliation, awarding plaintiff 20 years of front pay and $ 750,000 for mental anguish. The court denied defendant's motion for judgment as a matter of law, holding that defendant failed to offer legitimate, nondiscriminatory reasons for transferring plaintiff to a special education position for which she was not certified and that presented increased risks of reinjuring her back. A new trial was denied, as there was no evidence that the jury's compensatory damages award was the product of passion or prejudice. Remittur was also denied.

**OUTCOME:** Defendant's motions for judgment as a matter of law and new trial were denied, because defendant did not rebut plaintiff's prima facie case with evidence of legitimate, nondiscriminatory reasons for transferring plaintiff to another position. Further, the jury's award was not the product of passion or prejudice.

**CORE TERMS:** front, new trial, retaliation, compensatory damages, cap, school district, special education, prima facie case, mitigation, teacher, teaching, reasonable jury, renewed motion, disability, administrator, harmless, paying, alarm, protected activity, equitable remedy, pecuniary losses, equitable relief, pay damages, remittitur, mitigate, amend, presented evidence, mental anguish, harmless error, matter of law

**LexisNexis(R) Headnotes** ♦ Hide Headnotes

_Civil Procedure_ > _Trials_ > _Judgment as Matter of Law_
_Civil Procedure_ > _Relief From Judgment_ > _Motions for New Trial_
**HN1** By its motion for entry of judgment as a matter of law (JMOL) or, alternatively, for a new trial, a defendant seeks relief from an adverse jury verdict. To prevail on a renewed motion for JMOL following a jury trial, the moving party must show that the evidence and the justifiable inferences therefrom do not afford any rational basis for the verdict.  More Like This Headnote | _Shepardize:_ Restrict By Headnote

_Civil Procedure_ > _Trials_ > _Judgment as Matter of Law_
_Civil Procedure_ > _Relief From Judgment_ > _Motions for New Trial_
**HN2** In considering a motion for entry of judgment as a matter of law (JMOL) or, alternatively, for a new trial, a court assesses the sufficiency of the evidence, viewing the evidence in the light most favorable to the nonmovant and drawing all reasonable inferences in favor of the nonmovant. The appropriate inquiry is whether the record is critically deficient of the minimum quantity of evidence from which the jury might reasonably afford relief.  More Like This Headnote

_Civil Procedure_ > _Trials_ > _Judgment as Matter of Law_
_Civil Procedure_ > _Relief From Judgment_ > _Motions for New Trial_
**HN3** In determining whether a trial record is critically deficient of the minimum quantity of evidence from which the jury might reasonably afford relief, a court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version. While a scintilla of evidence is not enough to sustain a verdict of liability, the question is whether there is evidence upon which the jury could properly find a verdict for that party.  More Like This Headnote

_Civil Procedure_ > _Justiciability_ > _Case or Controversy_
**HN4** Federal courts rule only on matters presenting a case or controversy.  More Like This Headnote

_Civil Procedure_ > _Justiciability_ > _Case or Controversy_
**HN5** The case and controversy requirement limits the business of federal courts to questions presented in an adversary context.  More Like This Headnote

_Labor & Employment Law_ > _Discrimination_ > _Retaliation_
**HN6** The same burden-shifting framework applicable to claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. §§ 2000(e)-2 et seq. (1994), and the Americans with Disabilities Act, 42 U.S.C.S. §§ 12111-12117 (1994) (ADA), applies to retaliation claims. As such, the plaintiff must first establish a prima facie case for retaliation under Title VII and the ADA. To state a prima facie case, a plaintiff must show that (1) she engaged in protected activity, (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity, and (3) that a causal link exists between the employee's protected activity and the employer's adverse action.  More Like This Headnote

_Labor & Employment Law_ > _Discrimination_
**HN7** Under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. §§ 2000(e)-2 et seq. (1994), an employment action is "adverse" if it alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.  More Like This Headnote

Labor & Employment Law > Discrimination > Retaliation 📠

HN8⊥ Once a plaintiff states a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. If the defendant is successful in meeting this burden, the plaintiff must produce evidence from which a reasonable factfinder could conclude either that the defendant's proffered justifications are not worthy of credence or that the true reason for the employer's act was discrimination.  More Like This Headnote

Civil Procedure > Trials > Judgment as Matter of Law 📠
Civil Procedure > Relief From Judgment > Motions for New Trial 📠

HN9⊥ The standard for granting a motion for a new trial is less demanding than that for granting a motion for judgment as a matter of law. A new trial may be granted to all or any of the parties and on all or part of the issues in an action where there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States. Fed. R. Civ. P. 59 (a).  More Like This Headnote

Civil Procedure > Relief From Judgment > Motions for New Trial 📠

HN10⊥ In considering a new trial motion, the court must view all the evidence and inferences reasonably drawn therefrom in the light most favorable to the party with the verdict.  More Like This Headnote

Civil Procedure > Relief From Judgment > Motions for New Trial 📠

HN11⊥ A trial court has broad discretion in ruling on a motion for a new trial on the grounds of improperly admitted or excluded evidence, the court's ruling on points for charge, misconduct of counsel, or newly discovered evidence. The court may consider the credibility of witnesses and weigh the evidence.  More Like This Headnote

Civil Procedure > Relief From Judgment > Motions for New Trial 📠

HN12⊥ In evaluating a motion for a new trial on the basis of trial error, the court's inquiry is twofold: (1) whether an error was in fact committed, and (2) whether that error was so prejudicial that denial of a new trial would be inconsistent with substantial justice. To uphold the verdict, the court need only determine that the record contains the minimum quantum of evidence from which a jury might reasonably afford relief.  More Like This Headnote

Civil Procedure > Relief From Judgment > Motions for New Trial 📠

HN13⊥ The trial court's discretion is more limited in granting a new trial on the ground that the jury's verdict is against the weight of the evidence. The Third Circuit has cautioned that the trial court should grant a new trial on this basis only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience. This more stringent standard is necessary to ensure that the trial court does not substitute its judgment of the facts and the credibility of the witnesses for that of the jury. The trial court is not allowed to substitute its own judgment for that of the jury simply because the court might have come to a different conclusion.  More Like This Headnote

Labor & Employment Law > Discrimination
Torts > Damages > Mitigated Damages 📠
Civil Procedure > Jury Trials > Jury Instructions 📠

HN14⊥ A Title VII plaintiff has a statutory duty to mitigate damages. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable. 42 U.S.C.S.

2000e-5(g)(1). However, a litigant is entitled to an instruction on a theory of its case only if the proffered instruction is supported by the law and the evidence.  More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings
HN15 When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Fed. R. Civ. P. 15(b).  More Like This Headnote

Civil Procedure > Appeals > Standards of Review > Harmless & Invited Errors
HN16 Harmless errors do not warrant a new trial. Only errors so prejudicial that denial of a new trial would be inconsistent with substantial justice require ordering a new trial.  More Like This Headnote

Civil Procedure > Appeals > Standards of Review > Harmless & Invited Errors
Civil Procedure > Jury Trials > Jury Instructions
HN17 The so-called harmless error analysis applies to errors in jury instructions.  More Like This Headnote

Civil Procedure > Appeals > Standards of Review > Harmless & Invited Errors
HN18 "Harmless errors" are technical errors or defects that do not affect the rights of the parties.  More Like This Headnote

Civil Procedure > Appeals > Standards of Review > Harmless & Invited Errors
HN19 In conducting a "harmless error" analysis, a court must consider the record before it and the circumstances of the particular case. If the alleged error affected the substantial rights of a party, a new trial must be ordered; otherwise, the error is harmless and should be disregarded.  More Like This Headnote

Civil Procedure > Appeals > Standards of Review > Harmless & Invited Errors
HN20 A trial court's errors are harmless only if it is highly probable that the errors did not affect the outcome of the case.  More Like This Headnote

Civil Procedure > Appeals > Standards of Review > Harmless & Invited Errors
HN21 Where, in light of the entire record, it is highly probable that the jury would have returned the same verdict even if it had been correctly charged, the error is harmless.  More Like This Headnote

Torts > Damages > Compensatory Damages
Labor & Employment Law > Discrimination
HN22 Back pay is the difference between the actual wages earned and the wages the individual would have earned in the position that, but for discrimination, the individual would have attained.  More Like This Headnote

Torts > Damages > Compensatory Damages
Labor & Employment Law > Discrimination
Torts > Damages > Lost Income
HN23 42 U.S.C.S. § 1981a(b)(2) provides that compensatory damages awarded under that section shall not include backpay, interest on backpay, or any other type of relief authorized under § 706(g) of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e-5(g). Section 2000e-5(g) permits a court to order any other equitable relief it deems appropriate. An award of front pay fits squarely within this list of exclusions because it constitutes "other equitable relief" that the court may grant if deemed appropriate pursuant to § 2000e-5(g).  More Like This Headnote

Labor & Employment Law > Discrimination
Torts > Damages > Lost Income 🔲
*HN24*⚓The Third Circuit has ruled that a front pay award is the monetary equivalent of the equitable remedy of reinstatement, and that equitable relief in Title VII actions may take the form of front pay awards.  More Like This Headnote |
*Shepardize: Restrict By Headnote*

Labor & Employment Law > Discrimination
Torts > Damages > Lost Income 🔲
*HN25*⚓Although reinstatement is the preferred remedy to avoid future lost earnings, it may not be feasible in all cases. Where evidence indicates that the animosity between plaintiff and defendant precludes plaintiff's reinstatement, a front pay award is an appropriate alternative.  More Like This Headnote

Labor & Employment Law > Discrimination
Torts > Damages > Lost Income 🔲
*HN26*⚓Front pay damages are an award for a reasonable future period required for the victim to reestablish her rightful place in the job market. They are appropriate where a victim of employment discrimination will experience a loss of future earnings because he or she cannot be placed in the employment position that was unlawfully denied.  More Like This Headnote

Labor & Employment Law > Discrimination
Torts > Damages > Lost Income 🔲
*HN27*⚓Calculating the amount of front pay damages is left to the jury, and a plaintiff bears the burden of providing the essential data necessary to calculate a reasonably certain front pay award, including the amount of the proposed award, the length of time the plaintiff expected to work for the defendant, and the applicable discount rate.  More Like This Headnote | *Shepardize: Restrict By Headnote*

Torts > Damages > Lost Income 🔲
*HN28*⚓In calculating a front pay award, the jury must consider the expected future damages caused by defendant's wrongful conduct from the date of judgment to retirement.  More Like This Headnote

Civil Procedure > Appeals > Standards of Review
*HN29*⚓In reviewing the propriety of a jury verdict, the court's obligation is to uphold the jury's award if there exists a reasonable basis to do so.  More Like This Headnote

Torts > Damages > Damages Generally 🔲
*HN30*⚓Whether or not a damages award is excessive is a matter left to the sound discretion of the trial judge.  More Like This Headnote | *Shepardize: Restrict By Headnote*

Civil Procedure > Relief From Judgment > Additurs & Remittiturs 🔲
Torts > Damages > Damages Generally 🔲
*HN31*⚓If the damages assessed by the jury shock the judicial conscience and are the product of passion and prejudice, the trial judge may set aside the award and grant a new trial. If the court merely finds the award excessive, but not the product of passion or prejudice, the proper remedy is to order the plaintiff to remit the portion of the verdict in excess of the maximum amount supportable by the evidence or, if the remittitur is refused, to submit to a new trial.  More Like This Headnote

Civil Procedure > Relief From Judgment > Additurs & Remittiturs 🔲
*HN32*⚓The rationalization for, and use of, the remittitur is well established as a device

employed when the trial judge finds that a decision of the jury is clearly unsupported and/or excessive. More Like This Headnote

**COUNSEL:** Michael R. Ippoliti, Esquire, Wilmington, Delaware, for plaintiff.

Alan B. Epstein, Esquire and Scott A. Burr, Esquire, Of counsel, Jablon Epstein, Philadelphia, Pennsylvania, for plaintiff.

Robert K. Pearce, Esquire, and James F. Kipp, Esquire, Trzuskowski, Kipp, Kelleher & Pearce, P.A., Wilmington, Delaware, for Defendant.

**JUDGES:** ROBINSON, District Judge.

**OPINIONBY:** ROBINSON

**OPINION: MEMORANDUM OPINION**

Dated: March 31, 2000
Wilmington, Delaware

**ROBINSON, District Judge**

**I. INTRODUCTION**

Currently before the court are several post-trial motions filed by plaintiff Debra S. **Bates** and by defendant Board of Education of the **Capital School** District. (D.I. 197, 198, 201, 204) Plaintiff initiated this suit on July 3, 1997, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111-12117 (1994), and of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e)-2 et seq. (1994) stemming **[*2]** from the nonrenewal of her contract with defendant as principal of West Dover Elementary School and defendant's retaliation against her for asserting her rights under Title VII and the ADA. In addition to her federal claims, plaintiff alleged state law claims against defendant founded on breach of contract, breach of implied warranty of good faith and fair dealing, and intentional infliction of emotional distress. (D.I. 1 at 7-8) On June 30, 1998, defendant filed a motion for summary judgment (D.I. 38) on all of plaintiff's claims, which the court granted in part and denied in part on September 28, 1998. (D.I. 91-92) In its memorandum opinion, the court granted partial summary judgment in favor of defendant on plaintiff's breach of contract and breach of implied warranty claims. In all other respects, the court denied the motion. The court held a jury trial on the surviving claims that ran from February 16, 1999 to February 25, 1999. n1 After plaintiff had rested her case, defendant moved for judgment as a matter of law. (D.I. 187) On March 1, 1999, the jury returned a verdict, rejecting plaintiff's gender and disability discrimination claims, but finding defendant guilty of retaliation. **[*3]** The jury awarded plaintiff twenty years of front pay and $ 750,000 for mental anguish and embarrassment.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 The court held an earlier trial beginning on October 5, 1998, but it ended in a mistrial after eight days of testimony when one of defendant's witnesses made a highly prejudicial statement to the jury.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

On March 12, 1999, plaintiff filed a motion to amend the judgment. (D.I. 197) Three days later, defendant filed the present renewed motion for judgment as a matter of law ("JMOL") pursuant to Fed. R. Civ. P. 50(b) and an alternative motion for a new trial/amendment of the judgment. (D.I. 198, 201) On March 12, 1999, plaintiff filed its own motion to amend the judgment. (D.I. 197) Plaintiff also filed a motion for attorney's fees and costs (D.I. 204), but the parties have stayed briefing until after the court's decision on the instant post-trial motions. (D.I. 206)

## II. DEFENDANT'S RENEWED MOTION FOR JMOL

### A. Standard of Review

*HN1*⨀By its motion for entry of JMOL or, alternatively, for a new trial, **[*4]** defendant seeks relief from an adverse jury verdict. To prevail on a renewed motion for JMOL following a jury trial, the moving party must show that the evidence and the justifiable inferences therefrom do not afford any rational basis for the verdict. See Delli Santi v. CNA Ins. Cos., 88 F.3d 192, 200 (3d Cir. 1996). *HN2*⨀In assessing the sufficiency of the evidence, the court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in favor of the nonmovant. See Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., 46 F.3d 258, 269-70 (3d Cir. 1995). The appropriate inquiry is whether "'the record is 'critically deficient of the minimum quantity of evidence from which the jury might reasonably afford relief.'" Simone v. Golden Nugget Hotel & Casino, 844 F.2d 1031, 1034 (3d Cir. 1988) (quoting Dawson v. Chrysler Corp., 630 F.2d 950, 959 (3d Cir. 1980)).

*HN3*⨀

In making such a determination, "the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." While a "scintilla of evidence is not enough to **[*5]** sustain a verdict of liability," the question is "whether there is evidence upon which the jury could properly find a verdict for that party."

Jaguar Cars, Inc., 46 F.3d at 269-70 (internal citations omitted) (quoting Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993)).

### B. Discussion

In addition to seeking JMOL on plaintiff's retaliation claim, defendant also asks the court for JMOL on plaintiff's gender and disability discrimination claims, even though defendant prevailed at trial on these issues. It should be obvious to defendant that *HN4*⨀federal courts rule only on matters presenting a case or controversy. See Flast v. Cohen, 392 U.S. 83, 95, 20 L. Ed. 2d 947, 88 S. Ct. 1942 (1965) (explaining that *HN5*⨀the case and controversy requirement "limit[s] the business of federal courts to questions presented in an adversary context"). Here, given the jury's rejection of plaintiff's gender and disability discrimination claims and plaintiff's acquiescence in that verdict, there is no justiciable controversy. Accordingly, the court confines its analysis to the jury's verdict on plaintiff's retaliation claim. **[*6]**

The jury answered in the affirmative the following interrogatory relating to plaintiff's retaliation claim:

Has plaintiff proved, by a preponderance of the evidence, that the fact that she filed charges of disability or gender-based discrimination with the Delaware Department of Labor and the United States Equal Employment Opportunity Commission was a determinative factor in the decision of defendant to not consider or to not reassign her to an administrative position prior to the expiration of her contract, or to assign her to the special education teacher position at Dover High School, or to reject her for administrative, teaching, and counseling positions?

( D.I. 188 P 4) In reviewing that verdict, it is helpful to keep in mind plaintiff's evidentiary burden.

*HN6*✛The same burden-shifting framework applicable to Title VII and ADA claims applies to retaliation claims. See Krouse v. American Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997). As such, the plaintiff must first establish a prima facie case for retaliation under Title VII and the ADA. To state a prima facie case, a plaintiff must show that (1) she engaged in protected **[*7]** activity, n2 (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity, and (3) that a causal link exists between the employee's protected activity and the employer's adverse action. n3 See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279, 2000 WL 236418, at *6 (3d Cir. 2000). *HN7* ✛An employment action is "adverse" if it "'alters the employee's compensation, terms, conditions, or privileges of employment,' deprives him or her of 'employment opportunities,' or 'adversely affect[s] his [or her] status as an employee.'" Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997) (citing Title VII, 42 U.S.C. § 2000e-2(a)). *HN8*✛Once plaintiff states a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. See, e.g., McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). If the defendant is successful in meeting this burden, "the plaintiff must produce evidence from which a reasonable factfinder could conclude either that **[*8]** the defendant's proffered justifications are not worthy of credence or that the true reason for the employer's act was discrimination." Bray v. Marriott Hotels, 110 F.3d 986, 990 (3d Cir. 1997) (citations omitted); see also Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1067 (3d Cir. 1996).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Both the ADA and Title VII use substantially the same language to prohibit retaliation against an employee when that employee "has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation . . . under this Act."

Service: Get by LEXSEE®
Citation: 2005 us app lexis 9278

*133 Fed. Appx. 4, *; 2005 U.S. App. LEXIS 9278, ***

MARIANNE CAUFIELD, Appellant v. THE CENTER AREA SCHOOL DISTRICT; THE CENTER AREA SCHOOL DISTRICT BOARD OF DIRECTORS

No. 04-2538

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

133 Fed. Appx. 4; 2005 U.S. App. LEXIS 9278

May 3, 2005, Argued
May 20, 2005, Filed

**NOTICE: [**1]** RULES OF THE THIRD CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** On Appeal from the United States District Court for the Western District of Pennsylvania. (D.C. No. 02-cv-02135). District Judge: Honorable Arthur J. Schwab.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff employee appealed from an order of the United States District Court for the Western District of Pennsylvania, that granted summary judgment dismissing her age discrimination suit that alleged violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C.S. § 621 et seq., and the Pennsylvania Human Relations Act (PHRA), 43 Pa. Cons. Stat. § 951 et seq.

**OVERVIEW:** The employee's EEOC claim asserted she was discriminated against between August 1999 and March 2000, and that it was a continuing tort. The employer moved for partial summary judgment, but the district court unilaterally converted it to a motion for complete summary judgment, which it granted. In part, the district court found the employee had failed to mitigate her damages by not taking substitute employment. The court of appeals rejected that logic. There were no cases where mitigation of damages was required as an essential element of a discrimination claim. Mitigation was a claimant's duty that should be considered at the damages stage of a discrimination case. A finding that the employee failed to mitigate her damages may limit her recovery of back pay and completely bar any claim for forward pay, but not other aspects of relief. The grant of summary judgment as to the claims under the ADEA and PHRA was thus erroneous and was reversed. The employer had not met its burden of demonstrating the existence of substantially equivalent employment at other school districts, and there was insufficient evidence the employee removed herself from the job market entirely.

**OUTCOME:** The grant of complete summary judgment and the finding that the employee failed to mitigate her damages were reversed and remanded.

**CORE TERMS:** summary judgment, mitigate, claimant, age discrimination, elementary, substantially equivalent, mitigation, teacher, back-pay, partial, duty to mitigate, full-time, duty, emotional distress, monetary damages, teaching, monetary, opening, reasonable diligence, prima facie case, matter of law, moving party, job market, dissimilar, proffered, essential element, supplemental jurisdiction, use reasonable diligence, insufficient evidence,

manifest injustice

## LexisNexis(R) Headnotes ♦ Hide Headnotes

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction

*HN1* A district court may exercise supplemental jurisdiction over a state law claim under 28 U.S.C.S. § 1367(a), as the state claim had the same factual nucleus as a federal claim so as to form part of the same case or controversy under Article III of the United States Constitution.  More Like This Headnote

Civil Procedure > Appeals > Standards of Review > De Novo Review
Civil Procedure > Summary Judgment > Standards of Review

*HN2* Appellate review the of a district court's grant of summary judgment is de novo. When reviewing the propriety of a grant of summary judgment, the appellate court applies the same test a district court should have applied.  More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard

*HN3* A grant of summary judgment is appropriate only where the moving party has established that there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof

*HN4* Where a defendant is the party moving for summary judgment, the initial burden is on the defendant to show that the plaintiff has failed to establish one or more essential elements to her case. On a motion for summary judgment, a district court must view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor.  More Like This Headnote

Civil Procedure > Appeals > Standards of Review > Standards Generally

*HN5* It is within an appellate court's power to reverse and remand a district court's final order on different grounds, regardless of whether or not they are argued by the parties. Appellate courts may in their discretion consider issues not properly raised in an opening brief if the error is so plain that manifest injustice would otherwise result.  More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis

*HN6* Under the burden-shifting framework for claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., and Age Discrimination in Employment Act, 29 U.S.C.S. § 621, et seq., claims, a plaintiff must first establish a prima facie case. Then, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for his action. Finally, should the defendant carry that burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.  More Like This Headnote

Labor & Employment Law > Discrimination > Age Discrimination > Proof of Discrimination

*HN7* To establish a prima facie case of age discrimination under the Age Discrimination in Employment Act, 29 U.S.C.S. § 621 et seq., a plaintiff must establish that: (1) he or she was over 40 at the time he or she applied for the position in question; (2) he or she was qualified for the position in question; (3) despite the qualifications, he or she was rejected; and (4) the employer ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination. The same framework is also used to analyze claims under the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951 et seq.  More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis
HN8 ⚓ To avoid summary judgment, a plaintiff's evidence rebutting an employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered nondiscriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action; that is, the proffered reason is a pretext. More Like This Headnote

Labor & Employment Law > Discrimination > Age Discrimination > Defenses & Exceptions
Torts > Damages > Mitigated Damages
HN9 ⚓ An unemployed or underemployed claimant is subject to the statutory duty to minimize damages set out in 42 U.S.C.S. § 2000e-5(g). This duty, rooted in an ancient principle of law, requires the claimant to use reasonable diligence in finding other suitable employment. Although the unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning position, he or she forfeits his right to backpay if he or she refuses a job substantially equivalent to the one he or she was denied. More Like This Headnote

Labor & Employment Law > Discrimination > Age Discrimination > Defenses & Exceptions
Torts > Damages > Mitigated Damages
HN10 ⚓ While it is the duty of an employee-discrimination claimant to mitigate losses, it is the employer who has the burden of proving a failure to mitigate. To prove a failure to mitigate, an employer must prove either that other substantially equivalent positions were available to the employee, who failed to use reasonable diligence in attempting to secure those positions, or, alternatively, that the employee withdrew entirely from the employment market. When an employer successfully proves a failure to mitigate, any back pay award to an aggrieved employee will be cut off or reduced beginning at the time of the employee's failure to mitigate and any front-pay award will be foreclosed. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Defenses & Exceptions
Torts > Damages > Mitigated Damages
HN11 ⚓ The reasonableness of a claimant's diligence in finding substitute employment under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., should be evaluated in light of the individual characteristics of the claimant and the job market generally, a plaintiff may satisfy the reasonable diligence requirement by demonstrating a continuing commitment to be a member of the work force and by remaining ready, willing, and available to accept employment. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Defenses & Exceptions
Torts > Damages > Mitigated Damages
HN12 ⚓ Discrimination claimants are not required to take lesser or dissimilar work during the pendency of their claims to satisfy their duty to minimize damages. Substantially equivalent employment for purposes of litigation under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., is that employment which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Defenses & Exceptions
Torts > Damages > Mitigated Damages
HN13 ⚓ Although a discrimination claimant's efforts need not be successful, the claimant must exercise good faith in attempting to secure a substitute position. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Defenses & Exceptions 🗐
Torts > Damages > Mitigated Damages 🗐
*HN14* The plain language of 42 U.S.C.S. § 2000e-5(g)(1) shows that amounts that could
have been earned with reasonable diligence should be used to reduce or decrease a
back pay award, not to wholly cut off the right to any back
pay. More Like This Headnote

**COUNSEL:** Bernard J. Rabik, Esq. (Argued), Reed, Luce, Tosh, Wolford & Douglass, Beaver,
Pennsylvania, Counsel for Appellant.

Anthony G. Sanchez, Esq. (Argued), Leslie D. Heller, Esq., Andrews & Price, Pittsburgh,
Pennsylvania, Counsel for Appellees.

**JUDGES:** Before: McKEE, VAN ANTWERPEN, and WEIS, Circuit Judges.

**OPINIONBY:** VAN ANTWERPEN

**OPINION:** [*7] OPINION OF THE COURT

VAN ANTWERPEN, Circuit Judge.

The case before us presents an appeal of a District Court's grant of summary judgment in an
age discrimination suit. For the following reasons, we reverse and remand.

**I. Facts**

The following facts are undisputed. Marianne Caufield ("Appellant") was born on May 10,
1944, and graduated from Duquesne University in 1976 with a Bachelor's degree in
education. Appellant is certified to teach elementary education in the Commonwealth of
Pennsylvania. She began working as **[**2]** a substitute teacher for Appellees Center Area
School District and the Center Area School District Board of Directors (collectively "Center
Area") in 1992, and unsuccessfully sought employment as a full-time elementary teacher at
Center Area in 1995, 1996, 1997, 1999, and 2002. Between 1997 and 2004, Center Area
hired approximately 18 full-time elementary teachers, 15 of whom were on the substitute
list.

Appellant deliberately placed herself on the substitute list of only the Center Area School
District. She believed this would enhance her opportunity for a teaching position there, as
Center Area had hired the majority of its full-time teachers from the substitute list in the
past. At all times relevant to this suit, Appellant was "occasionally" aware of openings for full-
time elementary teachers at other school districts. She also stated that she had no intention
of submitting applications to any other school districts in the future.

On May 24, 2000, Appellant signed a Charge of Discrimination with the Equal Employment
Opportunity Commission ("EEOC"), presenting a case of age discrimination. The Charge
indicates that the earliest date of discrimination took place on August 2, 1999, the **[**3]**
latest occurred on March 29, 2000, and that this was a continuing action. On December 12,
2002, Appellant filed a complaint in the United States District Court for the Western District
of Pennsylvania alleging age discrimination in violation of the Age Discrimination in
Employment Act, 29 U.S.C. § 621, et seq. ("ADEA"), and the Pennsylvania Human Relations
Act, 43 Pa. Cons. Stat. § 951, et seq. ("PHRA"). In that complaint, Appellant demanded relief
in the form of (1) a declaratory judgment that her right to be free of age discrimination both
under the ADEA and PHRA had been violated; (2) a mandatory injunction directing Center
Area to hire her as a full-time elementary teacher and make her whole with regard to lost

earnings, insurance benefits, vacation and personal leave time, and any other emoluments of employment she had been deprived of; (3) compensation for emotional distress; (4) liquidated damages under the ADEA; (5) attorney's fees and costs; and (6) any other appropriate relief, including front pay, punitive and exemplary damages.

Center Area moved to dismiss all claims under Fed. R. Civ. P. 12(b)(6) [**4]  . A United States Magistrate Judge issued a Report and Recommendation on August 12, 2003, recommending that the District Court grant Center Area's motion to dismiss only with regard to Appellant's claim for punitive damages. This Report and Recommendation was adopted by the District Court on August 26, 2003. Center Area then moved for partial summary judgment on April 8, 2004, with regard to (1) any claims arising before 1999; (2) all claims for money damages; and (3) all claims for compensation for emotional distress. The District Court unilaterally converted this into a motion for complete summary judgment, which was granted in that Court's Memorandum Opinion of April 30, 2004. [*8]  The case was subsequently marked closed. This appeal followed.

## II. Jurisdiction and Standard of Review

The District Court had original subject matter jurisdiction over Appellant's ADEA claim under 28 U.S.C. § 1331, and$^{HN1}$ had supplemental jurisdiction over Appellant's state PHRA claim under 28 U.S.C. § 1367(a), as the state claim had the same factual nucleus so as to "form part of the same case or controversy under Article III of the United States Constitution. [**5]  " See United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966); Peter Bay Homeowners Ass'n, Inc. v. Stillman, 294 F.3d 524, 533 (3d Cir. 2002). Our jurisdiction is grounded in 28 U.S.C. § 1291, as the District Court's Memorandum Opinion granting Center Area's motion for summary judgment was a final and appealable order.

$^{HN2}$We review the District Court's grant of summary judgment in favor of Center Area de novo. Blair v. Scott Specialty Gases, 283 F.3d 595, 602-03 (3d Cir. 2002); Torres v. McLaughlin, 163 F.3d 169, 170 (3d. Cir. 1998). When reviewing the propriety of a grant of summary judgment, we apply the same test a district court should have applied. Bucks County Dep't of Mental Health/Mental Retardation v. Pennsylvania, 379 F.3d 61, 65 (3d Cir. 2004); Morton Intern., Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669, 679 (3d Cir. 2003); Olson v. GE Astrospace, 101 F.3d 947, 951 (3d Cir. 1996). That is,$^{HN3}$ a grant of summary judgment is appropriate only where the moving party has established that there is no [**6] genuine dispute of material fact, and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); Emory v. AstraZeneca Pharms. LP, 401 F.3d 174, 179 (3d Cir. 2005). $^{HN4}$Where the defendant is the moving party, the initial burden is on the defendant to show that the plaintiff has failed to establish one or more essential elements to her case. See Celotex Corp., 477 U.S. at 323-24. On a motion for summary judgment, a district court must view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor. Marzano v. Computer Sci. Corp., 91 F.3d 497, 501 (3d Cir. 1996) (citing Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)).

## III. Discussion

There are two issues presented by this case. The first, whether or not Appellant has satisfied her duty to mitigate monetary damages, has been briefed by both parties. The second, whether or not the District Court appropriately converted Center Area's motion [**7]  for partial summary judgment into a motion for complete summary judgment, has not. With due respect to the litigants, we shall first address the issue that was not briefed before moving to the question of mitigation of damages. n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Despite the fact that neither Appellant nor Center Area have devoted any discussion in their briefs to the District Court's grant of complete summary judgment, *HN5* it is within our power to reverse and remand the District Court's final order on different grounds, regardless of whether or not they are argued by the parties. See Gambino v. Morris, 134 F.3d 156, 169 (3d Cir. 1998) (noting that "appellate courts may in their discretion consider issues not properly raised in an opening brief . . . if the error is so 'plain' that manifest injustice would otherwise result."); see also Herbert v. Nat'l Acad. of Sciences, 297 U.S. App. D.C. 406, 974 F.2d 192, 196 (D.C.Cir. 1992) (cited in Gambino, 134 F.3d at 169); United States v. Ullah, 976 F.2d 509, 514 (9th Cir. 1992) (considering manifest injustice in the criminal context).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

[**8]

[*9] A. The District Court's grant of complete summary judgment.

Center Area's motion for partial summary judgment addressed only three areas for which they believed summary judgment in their favor was appropriate: (1) Appellant's ADEA and PHRA claims arising prior to 1999; (2) Appellant's failure to mitigate her monetary damages; and (3) Appellant's demand for compensation for emotional damages under the ADEA. The District Court found in favor of Center Area as to each of these areas. It then went a step further, granting complete summary judgment in favor of Center Area as to Appellant's ADEA and PHRA claims. n2

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 With regard to Appellant's PHRA claim, the District Court stated: "...a district court may decline to exercise supplemental jurisdiction over a claim if [it] has dismissed all claims over which it has original jurisdiction . . . therefore, the Court dismisses Plaintiff's claims arising under the PHRA without prejudice." Memorandum Opinion at 6.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

The District Court did not explain why this was [**9] done. Excluding the charges of discrimination prior to 1999, n3 there is no indication in the record that any essential element of either Appellant's ADEA claim or her PHRA claim was challenged by Center Area's motion for partial summary judgment. As we see it, the District Court first rejected any claim for recovery for emotional distress, and then found that Appellant's failure to mitigate her monetary damages prevented her from recovering any front or back pay under the ADEA and PHRA.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Center Area argued below that Appellant's ADEA and PHRA claims arising before 1999 should have been dismissed because she failed to exhaust her administrative remedies and/or because she failed to file timely administrative claims. Appellant consented to this dismissal in her Response to Defendants' Motion for Partial Summary Judgment.

Get a Document - by Citation - 133 Fed. Appx. 4
Case 1:04-cv-00285-KAJ    Document 83-2    Filed 12/07/2005    Page 15 of 35
Page 9 of 11

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

The Supreme Court has established ᴴᴺ⁶✦a burden-shifting framework for claims under Title VII, including ADEA claims. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). [**10] The plaintiff must first establish a *prima facie* case. n4 Id. Then, if the plaintiff is successful in making out a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for his action. Id. Finally, "should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Tex. Dep't of Cmty Affairs v. Burdine, 450 U.S. 248, 252-53, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981); Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 n.3 (3d Cir. 2004); Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999). n5 Our [*10] research has not disclosed a case where mitigation of damages has been required as an essential element of a discrimination claim. Rather, mitigation is a claimant's duty that arises at the damage stage of a discrimination case when the amount is determined. See, e.g., Anastasio v. Schering Corp., 838 F.2d 701, 709 (3d Cir. 1988).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 ᴴᴺ⁷✦To establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must establish that: (1) she was over 40 at the time she applied for the position in question; (2) she was qualified for the position in question; (3) despite her qualifications, she was rejected; and (4) the employer ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination. Narin v. Lower Merion School Dist., 206 F.3d 323, 331 (3d Cir. 2000) (citing Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 330 (3d Cir.1995)); Sempier v. Johnson & Higgins, 45 F.3d 724, 728 (3d Cir.1995). This framework is also used to analyze PHRA claims. Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1084 (3d Cir. 1995). [**11]

n5 We note that ᴴᴺ⁸✦"to avoid summary judgment, a plaintiff's evidence rebutting an employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) (internal citations, emphasis and footnotes omitted).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Th District Court's Memorandum Opinion did not discuss the McDonnell Douglas framework. It appears that the District Court concluded that, because Appellant could not recover either back and forward pay or monetary damages for emotional distress, all of her claims under the ADEA and PHRA were defective in some manner. This conclusion, however, ignores both that the failure to mitigate is an affirmative defense to a claim for money damages under the ADEA, and that Appellant sought declaratory and injunctive relief in addition to her claims for monetary compensation.

The District Court's reliance on Anastasio [**12] v. Schering Corp. in support of summary judgment is inapposite. In Anastasio, an employer found liable for age discrimination challenged both the conclusion that the employee's age was a determinative factor in his termination and that the employee properly attempted to mitigate his losses. In that case,

we first addressed the question of fault and *then* the question of monetary liability. Nowhere did we suggest that a failure to mitigate damages prevents a finding that age discrimination has occurred. Citing Anastasio as holding that mitigation is an essential element of an ADEA or PHRA claim was erroneous.

While a finding that Appellant failed to mitigate her damages may limit her recovery of back-pay, and completely bar any claim for forward pay, it has no bearing on whether or not a claim for discrimination can be proven, or on Appellant's ability to receive declaratory and injunctive relief. The grant of summary judgment as to her claims under the ADEA and PHRA was erroneous and we will reverse.

*B. Appellant's duty to mitigate damages.*

Center Area contends that Appellant failed in her duty to mitigate any damages that may have arisen because of alleged age **[**13]** discrimination. The Supreme Court has stated:

> *HN9*An unemployed or underemployed claimant, like all other Title VII claimants, is subject to the statutory duty to minimize damages set out in [42 U.S.C. § 2000e-5(g)]. This duty, rooted in an ancient principle of law, requires the claimant to use reasonable diligence in finding other suitable employment. Although the unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning position, he forfeits his right to backpay if he refuses a job substantially equivalent to the one he was denied.

Ford Motor Co. v. EEOC, 458 U.S. 219, 231-32, 73 L. Ed. 2d 721, 102 S. Ct. 3057 (1982) (footnotes and internal citations omitted). *HN10*While it is the duty of a discrimination claimant to mitigate her losses, it is the employer who has the burden of proving a failure to mitigate. See Robinson v. Southeastern Pa. Transp. Auth., Red Arrow Div., 982 F.2d 892, 897 (3d Cir. 1993); Anastasio, 838 F.2d at 707-08; Goss v. Exxon Office Systems Co., 747 F.2d 885, 889 (3d Cir. 1984). To prove a failure to mitigate, **[**14]** Center Area had to prove either that other substantially equivalent positions were available to Appellant and she **[*11]** failed to use reasonable diligence in attempting to secure those positions, Anastasio, 838 F.2d at 708, or, alternatively, that Appellant withdrew entirely from the employment market. Tubari, Ltd., Inc. v. NLRB, 959 F.2d 451, 454 (3d Cir. 1992). When an employer successfully proves a failure to mitigate, any back-pay award to an aggrieved employee will be cut off or reduced beginning at the time of the employee's failure to mitigate and any front-pay award will be foreclosed. Ford Motor Co., 458 U.S. at 233-34.

In their motion for partial summary judgment, Center Area argued that Appellant failed to exercise reasonable diligence to secure substantially equivalent positions and consequently that she had withdrawn from the employment market. This argument was supported by evidence presented by Center Area that a random sampling of four school districts in the area had elementary teacher openings between 1999 and 2004 to which Appellant did not apply. With this evidence in hand, the District Court concluded that there **[**15]** were substantially equivalent positions available at nearby school districts, and that Appellant failed to demonstrate that she applied for an elementary position at any school district except Center Area. It also concluded that Appellant made no efforts whatsoever to mitigate her damages, suggesting that the District Court believed she had withdrawn completely from the employment market.

Viewing the evidence in the light most favorable to Appellant, we cannot agree that Center

Area has met its burden of demonstrating the existence of substantially equivalent employment at other school districts.

> *HN11*⌖"The reasonableness of a Title VII claimant's diligence should be evaluated in light of the individual characteristics of the claimant and the job market . . .generally, a plaintiff may satisfy the reasonable diligence requirement by demonstrating a continuing commitment to be a member of the work force and by remaining ready, willing, and available to accept employment."

<u>Booker v. Taylor Milk Co., Inc., 64 F.3d 860, 865 (3d Cir. 1995)</u> (internal citations and quotation marks omitted).

The only evidence submitted by Center Area demonstrating that there were **[**16]** substantially equivalent positions available elsewhere consisted of four affidavits from officials at random school districts in the area indicating that each district had some form of elementary teaching positions open between 1999 and 2004. This, by itself, is insufficient evidence to carry Center Area's burden on summary judgment, as it does not indicate whether those positions were of substantial equivalence to teaching positions at Center Area. *HN12*⌖It is well-established that discrimination claimants are not required to take lesser or dissimilar work during the pendency of their claims to satisfy their duty to minimize damages. <u>Ford Motor Co., 458 U.S. at 232 n.14</u>. "Substantially equivalent employment for purposes of Title VII litigation is that employment which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status. . ." <u>Sellers v. Delgado Cmty. College, 839 F.2d 1132, 1138 (5th Cir. 1988)</u>(internal quotation marks omitted). Based on the record before us, we have no idea whether the job positions cited by Center Area were of lesser quality or otherwise dissimilar employment opportunities. **[**17]** We cannot merely assume that all elementary teaching positions in the area are, by their nature, substantially equivalent. Indeed, it is conceivable that any number of the openings cited by Center Area **[*12]** were in districts with dissimilar classroom sizes, pay scales, or student disciplinary problems, all of which are important factors in a teacher's employment decisions. We know nothing about these positions, except that they are all generically described as elementary teaching positions. Without more, Center Area has not met its burden of demonstrating that there existed substantially equivalent employment in other districts. n6

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 Our holding should not be taken to suggest that a claimant can defend against summary judgment by so circumscribing the workforce to which she is applying such that repeated application only to the job she was denied satisfies her mitigation duties. Indeed, the duty to mitigate would make little sense if we were to allow a discrimination claimant to artificially narrow the workforce in this manner. However, because Center Area did not carry its burden of proof with regard to mitigation, we need not reach such a question.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[**18]**

Moreover, there is insufficient evidence in the record to conclude that Appellant removed herself from the job market entirely. It is undisputed that she continued to remain on the

substitute teacher list at Center Area, that she taught full time at a parochial school for four months, and that she continued to apply for permanent elementary openings at Center Area as they became available. *HN13* Although a discrimination claimant's efforts need not be successful, she must exercise good faith in attempting to secure a position. Taylor Milk, 64 F.3d at 865 (quoting Reilly v. Cisneros, 835 F. Supp. 96, 99-100 (W.D.N.Y. 1993)). Given that Appellant explained at deposition that she applied only in the vicinity of Center Area because she had to raise her daughter, we cannot say as a matter of law that her attempts to secure employment were not in good faith. At the very least, this is a question for a jury.

As we see it, the evidence proffered by Center Area does not demonstrate that, as a matter of law, there was substantially equivalent employment which Appellant did not reasonably discover, or that she left the job market altogether. Therefore, the District **[**19]** Court erred in granting Center Area's motion for summary judgment with regard to Appellant's mitigation of damages. However, even if the District Court had been correct that Center Area had demonstrated that Appellant had failed in her duty to mitigate, Ford Motor Co. instructs that back-pay for an employee who has failed to mitigate losses will be cut off or reduced beginning *at the time of the employee's failure to mitigate.* Ford Motor Co., 458 U.S. at 233-34. The District Court made no findings with regard to the point in time when Appellant's failure to properly mitigate her monetary losses began to reduce her back-pay recovery. It merely concluded that Appellant's failure to mitigate damages completely barred all monetary relief. We rejected this reasoning in Taylor Milk, holding that:

> *HN14* The plain language of section 2000e-5 shows that amounts that could have been earned with reasonable diligence should be used to *reduce or decrease* a back pay award, not to wholly cut off the right to any back pay. See 42 U.S.C. § 2000e-5(g)(1); see also Tubari Ltd., Inc., 959 F.2d at 453-54; Anastasio, 838 F.2d at 708-09; **[**20]** 2 DAN B. DOBBS, LAW OF REMEDIES § 6.10(4), at 221-22 (2d ed. 1993). Furthermore, Defendant's "no-mitigation-no back pay" argument is inconsistent with the "make whole" purpose underlying Title VII.

64 F.3d at 866 (emphasis in original). Similarly, we cannot agree with the District Court that an appellant's failure to mitigate her monetary losses *ipso facto* bars all monetary relief in the form of back-pay. In Taylor Milk, we noted that **[*13]** back-pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of Title VII. Id. On the record before us it is difficult, if not impossible, to conclude whether or not all back pay should have been barred. The ruling adverse to the plaintiff, therefore, was in error.

For these reasons, we reverse both the District Court's conclusion that Appellant failed to mitigate her damages, as well as its grant of complete summary judgment. We remand this case for further proceedings consistent with this Opinion.

Service:   Get by LEXSEE®
Citation:   2005 us app lexis 9278
View:   Full
Date/Time:   Tuesday, November 22, 2005 - 2:34 PM EST

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc  All rights reserved.

Service:  **Get by LEXSEE®**
Citation:  **2005 us dist lexis 6262**

*2005 U.S. Dist. LEXIS 6262, \*; 10 Wage & Hour Cas. 2d (BNA) 1192;*
*16 Am. Disabilities Act Man. Newsl. (BNA) 1319*

MICHELLE COLLIER, Plaintiff, v. TARGET STORES CORPORATION, Defendant.

Civ. No. 03-1144-SLR, Consolidated

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2005 U.S. Dist. LEXIS 6262; 10 Wage & Hour Cas. 2d (BNA) 1192; 16 Am. Disabilities Act
Man. Newsl. (BNA) 1319

April 13, 2005, Decided

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant employer filed a motion for summary judgment on
plaintiff employee's claims that alleged: (1) violation of the Family and Medical Leave Act
(FMLA); (2) breach of the implied covenant of good faith and fair dealing; (3) violation of
19 Del. Code § 709; (4) slander; and (5) a violation of the Americans with Disabilities Act
(ADA).

**OVERVIEW:** The employee was hired as a head pharmacist. She sought FMLA leave for
migraine headaches, and eventually returned to work. She took another leave of absence,
and returned to work on a reduced work schedule, which continued up until the employee
ceased working for the employer. The employee submitted her two weeks' notice. With
respect to the FMLA, the employee only alleged a retaliation claim against the employer.
There was no dispute that the first element of a prima facie case of retaliation had been
established. Having found that the employee had demonstrated a prima facie case of
retaliation under the FMLA, the court noted it was the employer's burden to articulate a
legitimate, nondiscriminatory reason for the employment action. The court examined the
reasons provided by the employer, finding that there were genuine issues of material fact
that precluded the entry of a summary judgment in favor of the employer. However,
under the ADA, the court found that the employee's claims were not supported, and
neither were her claims under the implied covenant of good faith and fair dealing, or state
statute.

**OUTCOME:** The court granted the employer's motion for summary judgment against the
employee's 's ADA, breach of implied covenant of good faith and fair dealing, slander, and
state statute claims. However, the court denied the employer's motion for summary
judgment against the employee's FMLA claim.

**CORE TERMS:** pharmacy, summary judgment, retaliation, fair dealing, slander, implied
covenant, impairment, mental impairment, prima facie case, prescription, medication,
harassment, email, causation, reprimands, tangible, constructive discharge, disability,
pharmacist, protected activity, nonmoving party, moving party, derogatory, male, psycho,
lunch, genuine issue of material fact, privileges of employment, burden of proof, termination

**LexisNexis(R) Headnotes** ♦ Hide Headnotes

Civil Procedure > Summary Judgment > Burdens of Production & Proof

Civil Procedure > Summary Judgment > Summary Judgment Standard 🗒

*HN1* A court shall grant summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. Facts that could alter the outcome are material, and disputes are genuine if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct. If the moving party has demonstrated an absence of material fact, the nonmoving party then must come forward with specific facts showing that there is a genuine issue for trial. The court will view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion. The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue.  More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof 🗒
Civil Procedure > Summary Judgment > Summary Judgment Standard 🗒

*HN2* If the nonmoving party in a motion for summary judgment fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law.  More Like This Headnote

Labor & Employment Law > Leaves of Absence > Family & Medical Leave 🗒

*HN3* The Family and Medical Leave Act (FMLA) provides that an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following: (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee. 29 U.S.C.S. § 2612. The FMLA also provides for intermittent leave, which allows an employee to take such leave intermittently when medically necessary. 29 U.S.C.S. § 2612(b). There are two types of claims an employee can bring against an employer under the FMLA, interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the FMLA, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the FMLA.  More Like This Headnote

Labor & Employment Law > Discrimination > Retaliation 🗒
Labor & Employment Law > Leaves of Absence > Family & Medical Leave 🗒

*HN4* Retaliation claims under the Family and Medical Leave Act (FMLA) are analyzed under the burden shifting framework of McDonnell Douglas Corp. v. Green. McDonnell Douglas sets forth a three-step analysis for retaliation claims. First, the plaintiff must establish a prima facie case of retaliation. A prima facie case of retaliation under the FMLA is established by showing: (1) plaintiff availed herself of a protected right under the FMLA; (2) plaintiff suffered an adverse employment action; and (3) there was a causal connection between the employee's protected activity and the employer's adverse employment action. After establishing a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action. Finally, if a legitimate non-discriminatory reason is provided, the plaintiff must present evidence to show that the defendant's proffered reasons were not its true reasons, but were merely a pretext for its illegal action.  More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard

Labor & Employment Law > Discrimination > Retaliation
HN5 In order to survive summary judgment, a plaintiff must either (i) discredit the defendant's proffered reasons, or (ii) adduce evidence that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.  More Like This Headnote

Labor & Employment Law > Discrimination > Actionable Discrimination
Labor & Employment Law > Leaves of Absence > Family & Medical Leave
HN6 The United States Court of Appeals for the Third Circuit opinions that have dealt with the Family and Medical Leave Act have only involved termination of the plaintiff. Thus, the Third Circuit has not had the opportunity to explain what constitutes an adverse employment action under the FMLA. However, several Third Circuit opinions have examined the meaning of adverse employment actions under Title VII, the Americans with Disabilities Act, and the Age Discrimination in Employment Act.  More Like This Headnote

Labor & Employment Law > Discrimination > Retaliation
HN7 In order for retaliatory conduct to rise to the level of an adverse employment action under Title VII, it must be serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment. An adverse employment action necessarily encompasses all tangible employment actions such as hiring, firing, failing to promote, reassignment or a decision causing a significant change in benefits.  More Like This Headnote

Labor & Employment Law > Wrongful Termination > Constructive Discharge
HN8 Constructive discharge is an adverse employment action.  More Like This Headnote

Labor & Employment Law > Wrongful Termination > Public Policy
HN9 Paying an individual a lower salary for discriminatory reasons can be an adverse employment action.  More Like This Headnote

Labor & Employment Law > Wrongful Termination > Public Policy
HN10 Job transfers, even without loss of pay or benefits, may, in some circumstances, constitute an adverse employment action.  More Like This Headnote

Labor & Employment Law > Discrimination > Title VII
Labor & Employment Law > Wrongful Termination > Constructive Discharge
HN11 Under Title VII, an employer constructively discharges an employee if the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.  More Like This Headnote

Labor & Employment Law > Discrimination > Actionable Discrimination
HN12 The United States Court of Appeals for the Third Circuit has found that oral and written reprimands are insufficient to establish an adverse employment action. Furthermore, unnecessary derogatory comments do not amount to adverse employment actions.  More Like This Headnote

Labor & Employment Law > Discrimination > Actionable Discrimination
Labor & Employment Law > Leaves of Absence > Family & Medical Leave
HN13 The United States Court of Appeals for the Third Circuit also has not had the opportunity to discuss causation, the third step in the McDonnell Douglas burden shifting framework, for a Family and Medical Leave Act claim. Once again, the Third

Case 1:04-cv-00285-KAJ    Document 83-2    Filed 12/07/2005    Page 23 of 35

Circuit's analysis of causation under Title VII, the Americans with Disabilities Act (ADA), and the Age Discrimination in Employment Act (ADEA) provides helpful guidance. Cases examining causation under Title VII, the ADA, and the ADEA have often focused on the temporal proximity between the employee's protected activity and the adverse employment action, because this is an obvious method by which a plaintiff can proffer circumstantial evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action.  <u>More Like This Headnote</u>

<u>Labor & Employment Law</u> > <u>Discrimination</u> > <u>Actionable Discrimination</u>
*HN14* The United States Court of Appeals for the Third Circuit caselaw indicates that derogatory statements and verbal reprimands do not amount to adverse employment actions.  <u>More Like This Headnote</u>

<u>Labor & Employment Law</u> > <u>Discrimination</u> > <u>Disability Discrimination</u> > <u>Coverage & Definitions</u>
<u>Labor & Employment Law</u> > <u>Discrimination</u> > <u>Disability Discrimination</u> > <u>Proof of Discrimination</u>
*HN15* The Americans with Disabilities Act prohibits discrimination by an employer against a qualified individual. <u>42 U.S.C.S. § 1112.</u> To establish a prima facie case, a plaintiff must demonstrate that: (1) she has a disability within the meaning of the statute; (2) she is otherwise qualified to perform the essential functions of the job, with or without accommodations by the employer; and (3) as a result of her disability, she has suffered an adverse employment action.  <u>More Like This Headnote</u>

<u>Labor & Employment Law</u> > <u>Discrimination</u> > <u>Disability Discrimination</u> > <u>Proof of Discrimination</u>
*HN16* The Americans with Disabilities Act (ADA) defines a disability as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (c) being regarded as having such an impairment. <u>42 U.S.C.S. § 12102</u>(2). In the present case, plaintiff claims relief under the third classification of covered individuals, namely, those who are regarded as having a substantially limiting impairment. To be disabled under the regarded as portion of the ADA's definition of disability, plaintiff must demonstrate either that: (1) although she had no impairment at all, defendant erroneously believed that she had an impairment that substantially limited major life activities; or (2) she had a non-limiting impairment that the defendant mistakenly believed limited a major life activity.  <u>More Like This Headnote</u>

<u>Labor & Employment Law</u> > <u>Employment Relationships</u> > <u>At-Will Employment</u>
*HN17* Under the common law, an employee is considered "at-will" and may be dismissed from employment at any time without cause and regardless of motive. Delaware law, however, has evolved from the harshness of the "employment-at-will" doctrine. It now recognizes a limited implied covenant of good faith and fair dealing exception to protect at-will employees from wrongful termination. Nevertheless, the Delaware Supreme Court has limited the application of this exception to four narrowly defined categories: (1) where the termination violated public policy; (2) where the employer misrepresented an important fact and the employee relied thereon either to accept a new position or to remain in her present one; (3) where the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation related to the employee's past services; and (4) where the employer falsified or manipulated employment records to create fictitious grounds for termination. Plaintiff's breach of implied covenant of good faith and fair dealing claim rests squarely under the first category, the public policy exception. The court, therefore, focuses its analysis solely on whether defendant's alleged constructive discharge of plaintiff violated public policy.  <u>More Like This Headnote</u>

<u>Labor & Employment Law</u> > <u>Employment Relationships</u> > <u>At-Will Employment</u>

Labor & Employment Law > Wrongful Termination > Public Policy 🔲
*HN18* ⚲ To demonstrate a breach of the covenant of good faith and fair dealing under the public policy category, an employee must satisfy a two-part test: (1) the employee must assert a public interest recognized by some legislative, administrative, or judicial authority; and (2) the employee must occupy a position with responsibility for advancing or sustaining that particular interest. More Like This Headnote

Labor & Employment Law > Wrongful Termination > Public Policy 🔲
*HN19* ⚲ According to 19 Del. Code § 709: An employer or any person employed by the employer who discloses information about a current or former employee's job performance to a prospective employer is presumed to be acting in good faith; and unless a lack of good faith is shown, is immune from civil liability for such disclosure or its consequences the presumption of good faith may be rebutted upon a showing that the information of good faith by such employer was knowingly false, was deliberately misleading or was rendered with malicious purpose. More Like This Headnote

**COUNSEL: [*1]** William D. Fletcher, Esquire and Noel E. Primos, Esquire of Schmittinger & Rodrigues, P.A., Dover, Delaware, for Plaintiff.

Sherry Ruggiero Fallon, Esquire of Tybout, Redfearn & Pell, Wilmington, Delaware, for Defendant.; Of Counsel: Abbey G. Hairston, Esquire of Seyfarth Shaw, L.L.P., Washington, District of Columbia.

**JUDGES:** ROBINSON, Chief Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION: MEMORANDUM OPINION**

Dated: April 13, 2005

Wilmington, Delaware

**ROBINSON, Chief Judge**

## I. INTRODUCTION

On December 17, 2003 plaintiff Michele Collier instituted this litigation against defendant Target Stores Corporation, alleging in her complaint: (1) violation of the Family and Medical Leave Act ("FMLA"); (2) breach of the implied covenant of good faith and fair dealing; (3) violation of 19 Del. C. § 709; and (4) slander. (D.I.1) On July 12, 2004, plaintiff filed a second lawsuit against defendant, alleging the same set of facts as in the first lawsuit, but including a new claim for alleged violation of the Americans with Disabilities Act ("ADA"). Based on a stipulation by the parties (D.I. 30), this court consolidated the two lawsuits, thereby adding **[*2]** plaintiff's ADA claim to the present matter. This court has jurisdiction over plaintiff's FMLA and ADA claims under 28 U.S.C. § 1331 and over plaintiff's breach of the implied covenant of good faith and fair dealing, violation of 19 Del. C. § 709, and slander claims under 28 U.S.C. § 1367(a). Presently before the court is defendant's motion for summary judgment. (D.I. 46) For the reasons set forth below, the court grants defendant's motion for summary judgment against plaintiff's ADA, breach of implied covenant of good faith and fair dealing, slander, and 19 Del. C. § 709 claims, but denies defendant's motion for summary judgment against plaintiff's FMLA claim.

## II. BACKGROUND

In March 2001, defendant opened a new store in Dover, Delaware (the "Dover Store"). (D.I. 48, ex. 1 at A3) In addition to selling goods to the general public, the Dover Store also offered a pharmacy. Plaintiff was hired by defendant as Head Pharmacist in the Dover Store in December of 2000. (D.I. 1 at 2; D.I. 47 at 3) At or around the same time, Ellicia Weber ("Weber") was transferred to the Dover Store **[*3]** as a part-time pharmacist. (D.I. 48 at A14-A15, A182) The pharmacy staff at the Dover Store included plaintiff, Weber, and pharmacy technicians. (D.I. 47 at 4-5; D.I. 48 at A8-A9) At all times relevant to this action, plaintiff was supervised by Area Pharmacy Manager Michael Thomas ("Thomas"), Store Team Leader James Bellamy ("Bellamy"), and Regional Human Resources Director Todd Landis ("Landis"). (D.I. 48 at A4, A172, A282-A283)

During 2001, Bellamy and Thomas noted that plaintiff and Weber were having problems getting along. (D.I. 48 at A6-A14, A187-A189) On February 26, 2002, plaintiff submitted her resignation to Bellamy and Thomas. (D.I. 48 at A208-A270) Thomas asked plaintiff to withdraw her resignation and she agreed. (D.I. 48 at A208-A270)

In March 2002, plaintiff became aware that Weber had incorrectly filed a Class II narcotic prescription. (D.I. 48 at A18-A20, A191) Specifically, a customer received a generic prescription but did not like the medication and returned it to the pharmacy. Weber accepted the medication, which was a violation of Delaware law. (D.I. 46 at A18-A20, A192) Plaintiff reported the misfiling of the prescription to the Delaware State Board of Pharmacy **[*4]** (the "State Board"). (D.I. 48 at A298) Despite investigating the complaint, the State Board took no formal action against either Weber or defendant regarding this incident. (D.I. 48 at A196-A197)

In late March of 2002, plaintiff experienced migraine headaches and sought FMLA leave from April 3 through April 22. (D.I. 48 at A127-A128, A207) Neither Bellamy nor Landis were aware of the reason why plaintiff sought leave. (D.I. 48 at A39-A43, A301-A302) Thomas was aware that plaintiff's leave was taken due to stress, but was not told that the stress was work related. (D.I. 48 at A207-A208) Plaintiff sought an extension of her FMLA leave up through May 13, 2002, which defendant approved. (D.I. 48 at A271-A272) In seeking the extended period of leave, plaintiff released her medical history to defendant. (D.I. 48 at A273) Plaintiff's physician filled out a statement indicating that plaintiff suffered from "major depression" and "generalized anxiety." (D.I. 48 at A274) Plaintiff's physician had begun treating her for anxiety attacks in May 1998. (D.I. 48 at A275)

While plaintiff was on leave, Thomas telephoned her at home. (D.I. 48 at A211-A212, A277) Since defendant had a policy of not **[*5]** contacting employees on leave, plaintiff filed a complaint regarding this call. (D.I. 48 at A214, A277-A278; D.I. 53 at B37)

Although plaintiff was scheduled to return to work on May 13, 2002, she did not report for work or provide notice from her doctor of the need for additional leave. On May 13, Thomas sent an email to Landis inquiring whether he could "act fast and consider [plaintiff] a no show and abandoned her job[.]" (D.I. 53 at B1) Defendant contacted plaintiff and requested that she provide additional information to support her need for more leave.

On May 16, 2002, while plaintiff was still on leave, Thomas sent an email to Landis inquiring whether he could remove plaintiff from the Pharmacy Third Party Committee (the "Committee"), n1 "as she has been unavailable to the team for many weeks." (D.I. 48 at A280) On May 18, 2002, Landis responded by indicating that he supported removing plaintiff's Committee responsibilities. (D.I. 48 at A279)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The Pharmacy Third Party Committee was responsible for marketing to help drive pharmacy sales, and to help pharmacists at other stores with third-party (i.e., insurance) billing questions. (D.I. 47 at 8; D.I. 52 at 7)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*6]**

On May 24, 2002, plaintiff sent an email to Thomas confirming that she would not be back to work until June 24, 2002. (D.I. 48 at A335; D.I. 53 at B38) On June 7, 2002, defendant issued a new policy on pharmacy lunch breaks. The policy required that pharmacists remain in the store during their lunch period. (D.I. 48 at A340-A349) This policy was published on defendant's intranet and Weber informed plaintiff of the policy change when plaintiff returned to work on June 24, 2002. (D.I. 48 at A136)

On July 23, 2002, Thomas verbally reprimanded plaintiff for allegedly not using "FFF" ("Fast, Fun, and Friendly") communications with Weber. (D.I. 48 at A350) In an August 17, 2002 email, plaintiff confirmed that she was still having trouble communicating with Weber. (D.I. 48 at A351-A352)

In October 2002, plaintiff closed the pharmacy during her lunch break in order to fill a prescription at another pharmacy. n2 In so doing, plaintiff violated defendant's policy on pharmacy lunch breaks. When plaintiff returned to the pharmacy, she was questioned by Rod Rodriguez ("Rodriguez"), Assets Protection Team Leader. (D.I. 48 at A232-A235) Thomas was present when Rodriguez confronted plaintiff about **[*7]** violating the store's policy. (D.I. 48 at A232)

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n2 Defendant had a policy forbidding pharmacists from filling their own prescriptions. (D.I. 53 at B41)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Before any final decision was made regarding possible sanctions for plaintiff's violation of the pharmacy lunch break policy, plaintiff sought and obtained a second FMLA leave of absence. On October 10, 2002, plaintiff's doctor provided defendant with a note indicating that plaintiff needed two weeks of leave due to the "situation and stress work represents." (D.I. 48 at A355) On October 14, 2002 Thomas sent an email to Landis stating plaintiff's leave of absence would "take her up to [her requested] vacation [time] (convenient)[.] It will be forever before we can address her!" (D.I. 53 at B3) On October 23, 2002, plaintiff's doctor provided additional information to support her request for leave extended beyond October 26, 2002 to November 23, 2002. (D.I. 48 at A356) Plaintiff then sought leave through January 1, 2003. (D.I. 48 at A358) Defendant approved **[*8]** these requests. (D.I. 48 at A357-A358)

During plaintiff's second FMLA leave, Landis contacted her concerning certain checks she had presented to defendant which allegedly were returned for insufficient funds. (D.I. 48 at A376) Defendant classifies an employee's issuance of a dishonored check as a minor offense. (D.I. 48 at A373-A374) When plaintiff investigated the matter, she found that two of the checks were not accepted by defendant's bank because they had been presented electronically. (D.I. 48 at A376)

Plaintiff returned to work on January 6, 2003, on a reduced work schedule of four hours per

day for three to four days per week. (D.I. 48 at A377) Even though this reduced work schedule continued up until plaintiff ceased working for defendant, she continued to be paid as a full-time employee. n3 (D.I. 48 at A321-A322; A377-A381)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Plaintiff contests this statement, alleging that she returned to full-time status before she ceased working for defendant. However, plaintiff fails to point to any evidence to support her position. In contrast, defendant points to several notes from plaintiff's psychiatrist from January 27, 2003 through plaintiff's last day working for defendant which only allowed plaintiff to work part-time. (D.I. 48 at A378-A381)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[\*9]**

Sometime after plaintiff's return from her second FMLA leave, defendant installed a camera over the pharmacy so that activities of the pharmacy employees could be observed. (D.I. 48 at A64-A82, A147, A388-390; D.I. 53 at B14)

On January 24, 2003, Bellamy and Landis met with plaintiff and provided her with two final warnings - one related to the passing of bad checks and the other related to violation of the policy regarding pharmacy lunch breaks. (D.I. 48 at A382-A384)

In February 2003, defendant issued an evaluation of plaintiff's 2002 work performance (the "2003 Evaluation"). (D.I. 52 at 13; D.I. 53 at B6-B12) Plaintiff received an overall score of sixty-nine, which translated to "Satisfactory." (D.I. 53 at B7) In plaintiff's only previous evaluation (the "2002 Evaluation"), she received a score in the eighties, which corresponded to "Excellent." (D.I. 53 at B7 , B98)

In May 2003 plaintiff filed an incident report on Weber when Weber issued a medication with an improperly high dosage. (D.I. 48 at A82-A83, A151-A154)

While plaintiff continued to work on a reduced schedule, Weber was charged with creating the work schedule for the pharmacy technicians. (D.I. 48 at A95, A157-A159, **[\*10]** A245) One of the technicians complained to plaintiff about her schedule and plaintiff changed the schedule without consulting with Weber. (D.I. 48 at A157) On May 12, 2003, Thomas met with plaintiff and informed her that she was to leave the scheduling to Weber. (D.I. 48 at A391)

On June 2, 2003, plaintiff submitted her two weeks' notice. (D.I. 48 at A394-A395) Bellamy accepted her resignation and advised her that she need not report to work, but would be paid for the two weeks. (D.I. 48 at A97-A98, A161-A162, A328)

## III. STANDARD OF REVIEW

HN1 A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence **[\*11]** exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence

of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). *HN2*If the nonmoving party fails to make a sufficient showing on an essential element [*12] of its case on which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

## IV. DISCUSSION

### A. The Family and Medical Leave Act

Congress enacted the FMLA to help working men and women balance the conflicting demands of work and personal life. 29 U.S.C. § 2601(b)(1). *HN3*The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following: . . . (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612. The FMLA also provides for "intermittent" leave, which allows an employee to take such leave intermittently when medically necessary. 29 U.S.C. § 2612(b).

There are two types of claims an employee can bring against an employer under the FMLA, "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, see 29 U.S.C. § 2615 [*13] (a)(1), and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act, see 29 U.S.C. § 2615(a) (1) & (2); 29 C.F.R. § 825.220(c) ('An employer is prohibited from discriminating against employees . . . who have used FMLA leave.')." Strickland v. Water Works & Sewer Bd., 239 F.3d 1199, 1206-07 (11th Cir. 2001); see also Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1122 (9th Cir. 2001); Thomas v. Pearle Vision, Inc., 251 F.3d 1132, 1139 (7th Cir. 2001); Peter v. Lincoln Technical Inst., Inc., 255 F. Supp. 2d 417, 438 (E.D. Pa. 2002); Marrero v. Camden County. Bd. of Social Servs., 164 F. Supp. 2d 455, 463 (D.N.J. 2001).

*HN4*Retaliation claims under the FMLA are analyzed under the burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). Bearley v. Friendly Ice Cream Corp., 322 F. Supp. 2d 563, 571 (M.D. Pa. 2004); Baltuskonis v. US Airways, Inc., 60 F. Supp. 2d 445, 448 (E.D. Pa. 1999); [*14] Lepore v. LanVision Sys., Inc., 113 Fed. Appx. 449, No. 03-3619, 2004 WL 2360994, at *3 (3d Cir. 2004). McDonnell Douglas sets forth a three-step analysis for retaliation claims. First, the plaintiff must establish a prima facie case of retaliation. A prima facie case of retaliation under the FMLA is established by showing: (1) plaintiff availed herself of a protected right under the FMLA; (2) plaintiff suffered an adverse employment action; and (3) there was a causal connection between the employee's protected activity and the employer's adverse employment action. Conoshenti v. Pub. Serv. Elec & Gas Co., 364 F.3d 135 (3d Cir. 2004); Bearley, 322 F. Supp. 2d at 571; Baltuskonis, 60 F. Supp. 2d at 448. "After establishing a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action." Bearley, 322 F. Supp. 2d at 571; see also Baltuskonis, 60 F. Supp. 2d at 448. "Finally, if a legitimate non-discriminatory reason is provided, the plaintiff must present evidence to show that the defendant's proffered reasons were not its true [*15] reasons, but were merely a pretext for its illegal action." Baltuskonis, 60 F. Supp. 2d at 448; see also Bearley, 322 F. Supp. 2d at 571. *HN5*In order

to survive summary judgment, a plaintiff must "either (i) discredit[] the [defendant's] proffered reasons . . . , or (ii) adduce evidence . . . that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Torre v. Casio, 42 F.3d 825, 830 (3d Cir. 1994) (discussing McDonnell Douglas shifting burden in an Age Discrimination in Employment Act ("ADEA") case).

*HN6* Third Circuit opinions that have dealt with the FMLA have only involved termination of the plaintiff. Conoshenti v. Pub. Serv. Elec & Gas Co., 364 F.3d 135 (3d Cir. 2004); Rinehimer v. Cemcolift, Inc., 292 F.3d 375 (3d Cir. 2002); Chittister v. Dep't of Cmty. & Econ. Dev., 226 F.3d 223 (3d Cir. 2000); Churchill v. Star Enters., 183 F.3d 184 (3d Cir. 1999); Victorelli v. Shadyside Hosp., 128 F.3d 184 (3d Cir. 1997); Lepore v. LanVision Sys., Inc., 113 Fed. Appx. 449, No. 03-3619, 2004 WL 2360994, **[*16]** at *3 (3d Cir. 2004); Conroy v. Twp. of Lower Merion, 77 Fed. Appx. 556, No. 02-3217, 2003 WL 22121002 (3d Cir. 2003); Katekovich v. Team Rent a Car of Pittsburgh, Inc., 36 Fed. Appx. 688, No. 00-2389, 2002 WL 1288766 (3d Cir. 2002); Barcola v. Interim Healthcare Servs., 31 Fed. Appx. 791, No. 01-1993, 2002 WL 463286 (3d Cir. 2002). Thus, the Third Circuit has not had the opportunity to explain what constitutes an adverse employment action under the FMLA. However, several Third Circuit opinions have examined the meaning of "adverse employment actions" under Title VII, the ADA, and the ADEA.

*HN7* In order for retaliatory conduct to rise to the level of an adverse employment action under Title VII, it "must be serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment . . . ." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300-01 (3d Cir. 1997). "An adverse employment action necessarily encompasses all tangible employment actions such as 'hiring, firing, failing to promote, reassignment or a decision causing a significant change in benefits.'" Sherrod v. Phila. Gas Works, 57 Fed. Appx. 68, No. 02-2153, 2003 WL 230709, *4 (3d Cir. 2003) **[*17]** (citing Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 141 L. Ed. 2d 633, 118 S. Ct. 2257 (1998)); see also Abramson v. William Paterson Coll., 260 F.3d 265, 288 (3d Cir. 2001) (finding termination of employment is clearly an adverse employment action). *HN8* Constructive discharge is also an adverse employment action. n4 Goss v. Exxon Office Sys. Co., 747 F.2d 885 (3d Cir. 1984). *HN9* Paying an individual a lower salary for discriminatory reasons can also be an adverse employment action. Sherrod, 57 Fed. Appx. 68, 2003 WL 230709 at *4 (citing Stanziale v. Jargowsky, 200 F.3d 101, 105 (3d Cir. 2000)). *HN10* Job transfers, even without loss of pay or benefits, may, in some circumstances, constitute an adverse employment action. Jones v. Sch. Dist. of Phila., 198 F.3d 403, 412 (3d Cir. 1999) (finding that each of two separate transfers, the first depriving a teacher of the opportunity to teach physics and the second placing the teacher in a "difficult school," constituted adverse employment actions); DiIenno v. Goodwill Indus., 162 F.3d 235, 236 (3d Cir. 1998) ("Transfer to a job that an employer knows an employee cannot do may constitute **[*18]** adverse employment action for purposes of Title VII retaliation action."); Torre, 42 F.3d at 831 n.7 (finding that transfer to a dead end job because of age may constitute an adverse employment action for ADEA claim); see also McGrenaghan v. St. Denis Sch., 979 F. Supp. 323 (E.D. Pa. 1997) (finding an adverse employment action under the ADA where transfer resulted in "significantly diminished job responsibilities.").

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 *HN11* Under Title VII, an employer constructively discharges an employee if "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." Goss v. Exxon Office Sys. Co., 747 F.2d 885, 888 (3d Cir. 1984).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

*HN12* The Third Circuit has found that oral and written reprimands are insufficient to establish an adverse employment action. Robinson, 120 F.3d at 1300 (finding that oral reprimands did not rise to the level of what Third Circuit cases have described as [*19] adverse employment action); Weston v. Pennsylvania, 251 F.3d 420, 431 (3d Cir. 2001) ("Weston failed to establish how these two [written] reprimands effect a material change in the terms or conditions of his employment. We cannot, therefore, characterize them as adverse employment actions."). Furthermore, "unnecessary derogatory comments" do not amount to adverse employment actions. Robinson, 120 F.3d at 1300 (3d Cir. 1997) (finding that "unnecessary derogatory comments" do not rise to the level of what Third Circuit cases have described as adverse employment actions).

*HN13* The Third Circuit also has not had the opportunity to discuss causation, the third step in the McDonnell Douglas burden shifting framework, for a FMLA claim. Once again, the Third Circuit's analysis of causation under Title VII, the ADA, and the ADEA provides helpful guidance. Cases examining causation under Title VII, the ADA, and the ADEA have often focused on the "temporal proximity between the employee's protected activity and the adverse employment action, because this is an obvious method by which a plaintiff can proffer circumstantial evidence 'sufficient to raise the inference [*20] that her protected activity was the likely reason for the adverse action.'" Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997) (citing Zanders v. Nat'l R.R. Passenger Corp., 898 F.2d 1127, 1135 (6th Cir.1990)). In Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989), the Third Circuit found that where an alleged retaliatory action occurred two days after the plaintiff engaged in a protected activity, the plaintiff demonstrated a causal link. However, the Third Circuit has subsequently limited the applicability of Jalil:

> We believe that, if Jalil is to be interpreted as holding that timing alone can be sufficient [to establish causation], that holding must be confined to the unusually suggestive facts of Jalil. Thus, even if timing alone can prove causation where the discharge follows only two days after the complaint, the mere fact that the adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events.

Robinson, 120 F.3d at 1302; see also Weston, 251 F.3d at 431 n.5. [*21]

## B. FMLA Analysis

With respect to the FMLA, plaintiff only alleges a retaliation claim against defendant. (D.I. 1 at 6; D.I. 52 at 16) There is no dispute that the first element of a prima facie case of retaliation has been established. Plaintiff and defendant are in agreement that on two separate occasions, plaintiff took leave under the FMLA. (D.I. 47 at 7, 11; D.I. 52 at 7, 9).

Plaintiff has identified the following adverse employment actions: (1) Bellamy's "constant" harassment of plaintiff n5 (D.I. 52 at 18); (2) Bellamy's reference to plaintiff as "psycho" and "mental" in conversations with management level employees and a temporary pharmacist (id.); (3) Bellamy's "invasion of plaintiff's privacy" by having a camera installed to surveil plaintiff's work (id.); (4) the final warnings that plaintiff received (id. at 19); (5) the 2003 Evaluation, which was lower than the 2002 Evaluation (id.); (6) relieving plaintiff of her

Case 1:04-cv-00285-KAJ    Document 83-2    Filed 12/07/2005    Page 31 of 35

scheduling duties and her Committee position (id.); (7) instigation of a false incident report filed by Weber against plaintiff (id. at 19); n6 (8) plaintiff's constructive discharge (id.); (9) Thomas' call to plaintiff's home [*22] while she was on leave (id. at 20); and (10) verbal reprimands for alleged negative communications with Weber (id.).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 Plaintiff described "constant" harassment as including "a two and one-half hour meeting in January 2003 (soon after plaintiff had returned from taking her second FMLA leave), when Bellamy called plaintiff a 'b--ch' and told plaintiff that she was "nasty" and ruined [Bellamy's] life and career, as well as instructed other employees to ostracize plaintiff." (D.I. 52 at 18)

n6 The court finds this allegation is not supported by the record. See D.I. 53 at B54.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Of the adverse employment actions identified by plaintiff, only her claim of being constructively discharged is "serious and tangible enough" to be considered as altering plaintiff's terms, conditions or privileges of employment. Robinson, 120 F.3d at 1300-01. n7 Moreover, the court finds that plaintiff has adduced minimally sufficient evidence n8 to support the inference that she was in fact constructively [*23] discharged and that there is a causal connection between her discharge and her FMLA leave, when considering the totality of the circumstances described by plaintiff during her employment in 2002-2003.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 HN14 Third Circuit caselaw indicates that derogatory statements and verbal reprimands do not amount to adverse employment actions. Robinson, 120 F.3d at 1300; Weston, 251 F.3d at 431. Similarly, such conduct as a single telephone call in violation of company policy and the installation of surveillance cameras in the general work place do not constitute tangible alterations in plaintiff's conditions or privileges of employment. There is no evidence of record that plaintiff's 2003 Evaluation had a tangible effect on her compensation. Finally, there is no convincing evidence of record that the scheduling duty and the Committee position were significant enough responsibilities among those plaintiff held as Head Pharmacist that relieving her of these duties while she was on leave constituted an adverse employment action. Of course, this conduct may be considered in evaluating plaintiff's claim of constructive discharge. [*24]

n8 In addition to her allegations in this regard, plaintiff has presented two affidavits of Joan Siler, a former Target employee, in support of her allegations. (D.I. 57, 59) To the extent that Ms. Siler avers to her knowledge of facts, the affidavits shall be considered by the court for purposes of the motion practice. To the extent Ms. Siler draws legal conclusions from these facts, the court has not considered such. Defendant's motion to strike (D.I. 60) is granted in this regard, but otherwise denied, as Ms. Siler was sufficiently identified through discovery. Plaintiff's motion for leave to file (D.I. 64) is granted, consistent with the above.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Having demonstrated a prima facie case of retaliation under the FMLA, it is defendant's

burden to articulate a legitimate, nondiscriminatory reason for the employment action. In this regard, defendant denies the allegations that derogatory comments were made and argues in large measure that it was justified in its responses to plaintiff's job performance as Head Pharmacist. Especially in light of defendant's arguments that plaintiff's 2003 Evaluation **[\*25]** and the change in her job responsibilities were due, at least in part, to her long absences from work (when she happened to be on FMLA leave), the court declines to make the credibility determinations a jury should make under these circumstances, and concludes that there are genuine issues of material fact that preclude the entry of a summary judgment in favor of defendant.

## C. Americans with Disabilities Act

*HN15* The ADA prohibits discrimination by an employer against a "qualified individual." 42 U.S.C. § 11112 (2003). To establish a prima facie case, a plaintiff must demonstrate that: (1) she has a disability within the meaning of the statute; (2) she is otherwise qualified to perform the essential functions of the job, with or without accommodations by the employer; and (3) as a result of her disability, she has suffered an adverse employment action. See Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751 (3d Cir. 2004); Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000); Deane v. Pocono Med. Ctr., 142 F.3d 138, 142 (3d Cir. 1998).

*HN16* The ADA defines a disability as: "(A) a physical or mental impairment **[\*26]** that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (c) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (2003). In the present case, plaintiff claims relief under the third classification of covered individuals, namely, those who are regarded as having a substantially limiting impairment. n9 (D.I. 52 at 24) To be "disabled" under the "regarded as" portion of the ADA's definition of disability, plaintiff must demonstrate either that: (1) although she had no impairment at all, defendant erroneously believed that she had an impairment that substantially limited major life activities; or (2) she had a non-limiting impairment that the defendant mistakenly believed limited a major life activity. See Sutton v. United Air Lines, Inc., 527 U.S. 471, 489, 144 L. Ed. 2d 450, 119 S. Ct. 2139 (1999); Tice v. Ctr. Area Transp. Auth., 247 F.3d 506, 514 (3d Cir. 2001).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n9 Plaintiff concedes that, given the current state of ADA law, it would be difficult for her to establish that she has a physical or mental impairment that substantially limits one or more of her major life activities. (D.I. 52 at 24) According to plaintiff, her "life history since her constructive discharge by defendant has exhibited an improvement of her mental health. Thus, given the apparent non-permanence of her mental impairment, it is unlikely that she could establish an actual substantial limitation of one or more of her major life activities due to the impairment." (Id.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*27]**

Plaintiff claims that defendant, through its agent Bellamy, regarded plaintiff as having a disability. (Id.) Specifically, plaintiff states, "Bellamy constantly referred to plaintiff as 'psycho' and 'mental' both with management-level employees and with those assigned to substitute for plaintiff during her periods of leave." n10 (Id.) Plaintiff claims that "it is certainly plausible that Bellamy regarded plaintiff as having a severe mental impairment, and that this constituted at least a partial and substantial motivation in the numerous and adverse employment actions . . . that Bellamy took against plaintiff." (D.I. 52 at 24)

Get a Document - by Citation - 10 Wage & Hour Cas. 2d (BNA) 1192
Case 1:04-cv-00285-KAJ    Document 83-2    Filed 12/07/2005    Page 33 of 35
Page 14 of 16

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n10 Bellamy, however, denies having ever made such statements. (D.I. 53 at B100-B101) Furthermore, Jane Webb testified in her deposition that she never heard Bellamy refer to plaintiff as "psycho" or "mental." (D.I. 57, ex. 23)

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The record does not support plaintiff's position in this regard. The Siler affidavits, plaintiff's sole source of evidence that Bellamy made these statements **[*28]** (D.I. 52 at 10), classified Bellamy's statements as "derogatory," suggesting that Bellamy did not genuinely believe that plaintiff suffered a mental impairment. (D.I. 53 at B13) Indeed, the record, seen in a light most favorable to plaintiff, indicates that Bellamy expressed frustration and anger over plaintiff's FMLA leave, that plaintiff was getting paid to sit at home during the holidays while other employees were working, and that plaintiff was abusing the system for reasons that had nothing to do with a valid medical condition. (D.I. 59) Consequently, the record demonstrates that if Bellamy did refer to plaintiff as "psycho" and "mental," he did so disparagingly, and did not believe that plaintiff suffered a serious mental impairment. As a result, the court grants defendant's motion for summary judgment with respect to plaintiff's ADA claim.

## D. Implied Covenant of Good Faith and Fair Dealing

*HN17*Under the common law, an employee is considered "at-will" and may be dismissed from employment at any time without cause and regardless of motive. See Merrill v. Crothall-Am., Inc., 606 A.2d 96 (Del. Super. 1992). Delaware law, however, has evolved from the harshness **[*29]** of the "employment-at-will" doctrine. It now recognizes a limited implied covenant of good faith and fair dealing exception to protect at-will employees from wrongful termination. Id. Nevertheless, the Delaware Supreme Court has limited the application of this exception to four narrowly defined categories: (1) where the termination violated public policy; (2) where the employer misrepresented an important fact and the employee relied thereon either to accept a new position or to remain in her present one; (3) where the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation related to the employee's past services; and (4) where the employer falsified or manipulated employment records to create fictitious grounds for termination. Lord v. Souder, 748 A.2d 393, 400 (Del. 2000) (citing E.I. Dupont de Nemours & Co. v. Pressman, 679 A.2d 436, 442-44 (Del. Super. 1996)). "Plaintiff's breach [of implied covenant of good faith and fair dealing] claim rests squarely under the first category, the public policy exception." (D.I. 52 at 25) The court, therefore, focuses its analysis solely on whether defendant's **[*30]** alleged constructive discharge of plaintiff violated public policy.

*HN18*To demonstrate a breach of the covenant of good faith and fair dealing under the public policy category, an employee must satisfy a two-part test: (1) the employee must assert a public interest recognized by some legislative, administrative, or judicial authority; and (2) the employee must occupy a position with responsibility for advancing or sustaining that particular interest. Lord, 748 A.2d at 401 (citing Pressman, 679 A.2d at 441-42). The parties agree for purposes of this motion that plaintiff was in a position with responsibility for ensuring that defendant's pharmacy operated in compliance with Delaware law, thereby satisfying the second prong of the two-part test. (D.I. 47 at 28; D.I. 52 at 26) Consequently, the court need only decide the first prong, namely, whether defendant terminated plaintiff's employment in violation of a clearly mandated public policy recognized by some legislative, administrative or judicial authority. (D.I. 47 at 28-29; D.I. 2 at 26)

Plaintiff claims she was subjected to severe harassment in retaliation for reporting to the

State Board that Weber **[*31]** accepted a returned generic narcotic medication and substituted a brand-name narcotic medication without contacting the physician for the issuance of a new prescription. (D.I. 52 at 26) Plaintiff claims the following acts were harassment: (1) Thomas telling her that she should have pushed the medication to the back of the safe rather than reporting the problem to the State Board (D.I. 53 at B33-B34); (2) Thomas telling plaintiff that she handled the situation improperly (id. at 835); (3) Thomas telling plaintiff that he was not disturbed by Weber's failure to know all of Delaware's pharmacy laws (id. at B86); (4) Thomas removing plaintiff from the Committee (id. at B38-B39); (5) Thomas verbally reprimanding plaintiff for negative communications with Weber (id. at B2, B88-B89); (6) Thomas' email expressing a desire to "act fast and consider [plaintiff] a no show and abandoned her job[]" (id. at B1). Plaintiff claims these activities amounted to constructive discharge in violation of public policy. Even assuming that these acts amount to harassment, plaintiff has not produced any evidence that she experienced this harassment because she fulfilled her responsibilities **[*32]** pursuant to Delaware law. Consequently, plaintiff has failed to show she was terminated in violation of public policy.

## E. Slander and 19 Del. C. § 709

Plaintiff claims that defendant violated 19 Del. C. § 709 n11 by providing false and misleading information to prospective employers of plaintiff. (D.I. 1 at 8) Plaintiff also claims that defendant slandered plaintiff by making false oral statements to plaintiff's potential employers. (D.I. 1 at 9; D.I. 52 at 28)

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n11[HN19] According to 19 Del. C. § 709:

> An employer or any person employed by the employer who discloses information about a current or former employee's job performance to a prospective employer is presumed to be acting in good faith; and unless a lack of good faith is shown, is immune from civil liability for such disclosure or its consequences . . . the presumption of good faith may be rebutted upon a showing that the information of good faith by such employer was knowingly false, was deliberately misleading or was rendered with malicious purpose . . . .

Plaintiff does not provide, and the court is unaware of, any precedent applying 19 Del. C. § 709. Consequently, it remains unclear what plaintiff's burden of proof is under 19 Del. C. § 709.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*33]**

After plaintiff ceased working for defendant, she completed two rounds of interviews with a prospective employer, the Delaware Hospital for the Chronically Ill ("DHCI"). (D.I. 53 at B56) According to plaintiff, DHCI initially expressed interest in hiring plaintiff, but this interest abruptly ended after representatives of DHCI spoke with a male member of management at the Dover Store. (Id.) Plaintiff claims to have subsequently spoken with two male managers at the Dover Store other than Bellamy, and each of these male managers stated they had not been contacted by a representative of DHCI. (Id.) Plaintiff surmises that "Bellamy was likely the only other male manager at the Dover Store." (D.I. 52 at 28) However, plaintiff admits that she is not certain, one way or the other, whether Bellamy provided any information to DHCI and, if he did, what information was provided. (D.I. 53 at B56) Consequently, plaintiff has failed to establish a genuine issue of material fact for both her slander and her 19 Del. C.

§ 709 claims. See, e.g., Layfield v. Beebe Med. Ctr., Inc., 1997 Del. Super. LEXIS 472, No. 95C-12-007, 1997 WL 716900, *7 (Del. Super. Ct. 1997) ("Plaintiff **[\*34]** fails to identify a specific false or defamatory communication made by any Beebe employee to a third party. . . . Simply alleging that there is circumstantial evidence of defamation is insufficient to overcome Beebe's motion for summary judgment, because plaintiff must allege specific facts which demonstrate a genuine issue of material fact."). Defendant's motion to dismiss plaintiff's slander and 19 Del. C. § 709 claims is granted.

## V. CONCLUSION

For the reasons set forth above, the court grants defendant's motion for summary judgment against plaintiff's ADA, breach of implied covenant of good faith and fair dealing, slander, and 19 Del. C. § 709 claims. The court denies defendant's motion for summary judgment against plaintiff's FMLA claim. An appropriate order shall issue.

## ORDER

At Wilmington this 13th day of April, 2005, consistent with the memorandum opinion issued this same date;

IT IS ORDERED that:

1. Defendant's motion for summary judgment against plaintiff's ADA, breach of implied covenant of good faith and fair dealing, slander, and 19 Del. C. § 709 claims (D.I. 46) is granted. **[\*35]**

2. Defendant's motion for summary judgment against plaintiff's FMLA claim (D.I. 46) is denied.

United States District Judge

Service: **Get by LEXSEE®**
Citation: **2005 us dist lexis 6262**
View: Full
Date/Time: Tuesday, November 22, 2005 - 2:48 PM EST

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc  All rights reserved.