Case 1:04-cv-00285-KAJ    Document 83-5    Filed 12/07/2005    Page 1 of 5
Page 1 of 5
Search - 23 Results - "nominal damages" and "FMLA"

Source: Legal > Area of Law - By Topic > Labor & Employment > Cases > Labor & Employment Cases, Federal and State [i]
Terms: "nominal damages" and "fmla" (Edit Search | Suggest Terms for My Search)

↰Select for FOCUS™ or Delivery

☐

*72 Fed. Appx. 17, \*; 2003 U.S. App. LEXIS 15068, \*\**

SHEILA K. MONTGOMERY, Plaintiff-Appellant, v. THE STATE OF MARYLAND; DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES, Division of Corrections; ROBERT KUPEC, Warden; GEORGE KALOROUMAKIS, Deputy Warden, Defendants-Appellees.

No. 02-1998

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

72 Fed. Appx. 17; 2003 U.S. App. LEXIS 15068

June 30, 2003, Submitted
July 30, 2003, Decided

**NOTICE:** **[\*\*1]** RULES OF THE FOURTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** Appeal from the United States District Court for the District of Maryland, at Baltimore. (CA-00-1019-S). Frederic N. Smalkin, Senior District Judge.

Montgomery v. Maryland, 266 F.3d 334, 2001 U.S. App. LEXIS 20974 (4th Cir. Md., 2001)

**DISPOSITION:** Affirmed as modified

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff employee sued defendants, State, employer, and two supervisors, alleging claims under 42 U.S.C.S. § 1983 and the Family Medical Leave Act (**FMLA**), 29 U.S.C.S. §§ 2601-2619. The United States District Court for the District of Maryland dismissed the claims, and the court affirmed. The case was remanded to the district court for reconsideration, which reaffirmed its decision. The employee challenged the dismissal of the **FMLA** claim.

**OVERVIEW:** The district court originally dismissed the employee's claims on sovereign immunity grounds. On remand, the district court dismissed the 42 U.S.C.S. § 1983 claim for failure to state a claim and the **FMLA** claim for lack of subject matter jurisdiction. The employee only appealed the ruling on the **FMLA** claim. The court held that sovereign immunity did not protect the states in **FMLA** actions. In affirming on different grounds, the court held that dismissal was appropriate under Fed. R. 12(b)(6) because the employee failed to show she was entitled to relief and did not seek relief that was recoverable under **FMLA.** Specifically, the complaint focused on damages for emotional distress, which were not covered under **FMLA.** Also, the employee's request for injunctive relief was based on de minimis and unmeasurable parts of her new assignment to which the equivalency requirement of 29 U.S.C.S. § 2614(a)(1)(A), (B) did not apply. The district court did not err in failing to act on the employee's motion to amend because she failed to make a written motion to amend, and her sentence at the end of a memorandum opposing a

motion to dismiss did not satisfy the requirements of Fed. R. Civ. P. 7(b).

**OUTCOME:** The court modified the district court's judgment to reflect that the complaint was subject to dismissal for failure to state a claim and affirmed the judgment as modified.

**CORE TERMS:** failure to state a claim, sovereign immunity, immunity, wages, subject to dismissal, entitled to relief, motion to amend, prior decision, reconsideration, unmeasurable, recoverable, accepting, minimis, vacated, salary

### LexisNexis(R) Headnotes + Hide Headnotes

Civil Procedure > State & Federal Interrelationships > Amendment 11
Labor & Employment Law > Leaves of Absence > Family & Medical Leave
Constitutional Law > State Autonomy
*HN1* Congress effectively abrogated the states' Eleventh Amendment immunity against causes of action based on the Family Medical Leave Act, 29 U.S.C.S. §§ 2601-2619. More Like This Headnote | *Shepardize: Restrict By Headnote*

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action
*HN2* A complaint should not be dismissed for failure to state a claim unless after accepting all well-pleaded allegations in a plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. More Like This Headnote

Labor & Employment Law > Leaves of Absence > Family & Medical Leave
*HN3* Damages under the Family Medical Leave Act, 29 U.S.C.S. §§ 2601-2619, are limited to lost or denied wages, salary, benefits, or other compensation. 29 U.S.C.S. § 2617 (a)(1)(A)(i)(I). If there have been no such losses, damages are limited to actual monetary losses such as the cost of care. 29 U.S.C.S. § 2617(a)(1)(A)(i) (II). More Like This Headnote | *Shepardize: Restrict By Headnote*

Labor & Employment Law > Leaves of Absence > Family & Medical Leave
*HN4* Emotional distress, along with nominal and consequential damages, is not covered under the Family Medical Leave Act, 29 U.S.C.S. §§ 2601-2619. More Like This Headnote | *Shepardize: Restrict By Headnote*

Labor & Employment Law > Leaves of Absence > Family & Medical Leave
*HN5* Under the Family Medical Leave Act, 29 U.S.C.S. §§ 2601-2619, an employer must restore an employee to the same or an equivalent position with equivalent benefits, pay and other conditions of employment. 29 U.S.C.S. § 2614 (a)(1)(A), (B). Under 29 C.F.R. § 825.215(a) (2003), an equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. The equivalency requirement does not extend to de minimis or intangible, unmeasurable aspects of the job. 29 C.F.R. § 825.215(f). More Like This Headnote | *Shepardize: Restrict By Headnote*

Civil Procedure > Pleading & Practice > Pleadings > Interpretation
*HN6* Under Fed. R. Civ. P. 8(a), a pleading must contain: (1) a short, plain statement of the grounds for jurisdiction; (2) a short, plain statement of the claim, showing plaintiff is entitled to relief; and (3) a demand for judgment for the relief the pleader seeks. More Like This Headnote

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion
Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings
*HN7* A federal appeals court reviews a district court's denial of a motion to amend for abuse of discretion. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Interpretation
Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings
*HN8* Where a plaintiff failed to make a written motion to amend in the district court, a sentence at the end of a memorandum opposing a motion to dismiss does not satisfy the requirements of Fed. R. Civ. P. 7(b), governing the form of motions. More Like This Headnote

**COUNSEL:** Jonathan R. Siegel, Washington, D.C.; Robin R. Cockey, COCKEY, BRENNAN & MALONEY, P.C., Salisbury, Maryland, for Appellant.

J. Joseph Curran, Jr., Attorney General of Maryland, Andrew H. Baida, Solicitor General, Scott S. Oakley, Assistant Attorney General, Baltimore, Maryland, for Appellees.

**JUDGES:** Before WILKINS, Chief Judge, and WILKINSON and LUTTIG, Circuit Judges.

**OPINION:** [*18] PER CURIAM:

In 2000, Sheila K. Montgomery filed this action against the State of Maryland, the Department of Public Safety and Correctional Services, and the Warden and Deputy Warden at Eastern Correctional Institution, in their official and individual capacities, alleging claims under 42 U.S.C. § 1983 (2000), and the Family Medical Leave Act ("**FMLA**" or "the Act"), 29 U.S.C.A. §§ 2601-2619 (West 1999 & Supp. 2003). Although [**2] Defendants withdrew their assertion of Eleventh Amendment immunity, the district court dismissed both counts on sovereign immunity grounds.

On appeal, the State reasserted its Eleventh Amendment immunity. This court held that the Eleventh Amendment barred all claims against the State and the Department of Public Safety, the Warden, and the Deputy Warden except the claim for reinstatement under the **FMLA** against the individual administrators in their official capacities. That claim, we held, was properly dismissed for failure to state a claim on which relief could be granted. *Montgomery v. Maryland, 266 F.3d 334 (4th Cir. 2001).*

The Supreme Court granted Montgomery's petition for certiorari. The Court vacated our decision and remanded the case for reconsideration in light of *Lapides v. Board of Regents of Univ. Sys. of Georgia, 535 U.S. 613, 152 L. Ed. 2d 806, 122 S. Ct. 1640 (2002).* We remanded the case to the district court for reconsideration in light of *Lapides.*

On remand, the district court concluded that *Lapides* did not affect its holding, and reinstated its order dismissing the § 1983 claim for failure to state a claim and the [*19] **FMLA** [**3] claim for lack of subject matter jurisdiction. The latter ruling was based on the court's conclusion that the **FMLA** did not validly abrogate the State's sovereign immunity. Montgomery appeals, raising issues only as to the **FMLA** claim. She therefore has abandoned the § 1983 claim. See *Edwards v. City of Goldsboro, 178 F.3d 231, 241 n.6 (4th Cir. 1999).*

In a recent decision, the Supreme Court held that *HN1* Congress effectively abrogated the states' Eleventh Amendment immunity against causes of action based on the **FMLA**. *Nevada Dep't of Human Resources v. Hibbs, 538 U.S. 721, 155 L. Ed. 2d 953, 123 S. Ct. 1972 (2003).* Thus, the issue of whether the State can waive the immunity and then withdraw the waiver is moot in this case, as sovereign immunity does not protect the states in **FMLA**

actions. Unless the complaint is subject to dismissal on other grounds, we must remand the case to the district court for consideration on the merits.

In our prior decision, we stated, "even if Montgomery's claim for damages could somehow survive the sovereign immunity defense, dismissal would still be proper because she has failed to state a claim upon which relief can be granted." *Montgomery*, 266 F.3d at 341. [**4] *HN2* A complaint should not be dismissed for failure to state a claim unless "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

Montgomery argues that, as the Supreme Court vacated that decision, our holding is not binding. While that may be so, *see Johnson v. Bd. of Educ. of City of Chicago*, 457 U.S. 52, 53-54, 72 L. Ed. 2d 668, 102 S. Ct. 2223 (1982), we are persuaded that our reasoning remains valid.

*HN3* Damages under the **FMLA** are limited to lost or denied wages, salary, benefits, or other compensation. 29 U.S.C. § 2617(a)(1)(A)(i)(I). If there have been no such losses, damages are limited to actual monetary losses such as the cost of care. § 2617(a)(1)(A)(i)(II). Montgomery alleged no lost wages or cost of care, focusing instead on *HN4* emotional distress, which, along with nominal and consequential damages, is not covered under the [**5] Act. *See Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1277 (10th Cir. 2001) (no actual damages suffered, no grounds for equitable relief; plaintiff sought only **nominal damages**); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1284 (11th Cir. 1999) (plaintiff failed to show adverse employment action or damages; damages not recoverable for mental distress); *Nero v. Industrial Molding Corp.*, 167 F.3d 921, 930 (5th Cir. 1999) (**FMLA** damages limited to lost salary or wages, employment benefits, or any other compensation that shows quid pro quo between employer, employee--not out-of-pocket expenses and damages for mental anguish); *Cianci v. Pettibone Corp.*, 152 F.3d 723, 728 (7th Cir. 1998) (inmate fired before **FMLA** leave scheduled suffered no damages recoverable under the Act).

As to Montgomery's request for injunctive relief, we addressed this issue as well in our prior decision and remain persuaded by that reasoning. *HN5* Under the **FMLA**, an employer must restore an employee to the same or an equivalent position with equivalent benefits, pay and other conditions of employment. 29 U.S.C. § 2614 [**6] (a)(1)(A), (B). Under 29 C.F.R. § 825.215(a) (2003), an equivalent position is "one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including [*20] privileges, perquisites and status." The equivalency requirement does not extend to "de minimis or intangible, unmeasurable aspects of the job." 29 C.F.R. § 825.215(f). As we stated previously, Montgomery's complaints are based on these de minimis and unmeasurable parts of her new assignment as compared with her old. The jobs are at the same pay grade and increment level, her classification is the same, and she received a significant raise within two months of the transfer.

Montgomery alleges that, under the notice pleading requirements of the federal system, her complaint was adequate and she should not be held to any factual allegations in her complaint. However, *HN6* under Fed. R. Civ. P. 8(a), a pleading must contain: (1) a short, plain statement of the grounds for jurisdiction; (2) a short, plain statement of the claim, showing plaintiff is entitled to relief; and (3) "a demand for judgment for the relief the pleader seeks." Fed. [**7] R. Civ. P. 8(a). Montgomery fails to show that she is entitled to relief, and her demand for judgment does not seek relief that is recoverable under the Act. Therefore, we conclude that dismissal under Fed. R. Civ. P. 12(b)(6), for failure to state a claim on which relief can be granted, is appropriate.

Her allegation that the district court erred in denying her motion to amend also lacks merit. [HN7] We review the district court's denial of a motion to amend for abuse of discretion. _Deasy v. Hill_, 833 F.2d 38, 40 (4th Cir. 1987). [HN8] Montgomery failed to make a written motion to amend in the district court; her sentence at the end of a memorandum opposing a motion to dismiss does not satisfy the requirements of Fed. R. Civ. P. 7(b), governing the form of motions. See _Ramsgate Court Townhome Assoc. v. West Chester Borough_, 313 F.3d 157, 161 (3d Cir. 2002); _Calderon v. Kansas Dep't of Soc. and Rehab. Serv._, 181 F.3d 1180, 1185-87 (10th Cir. 1999). Therefore, the district court did not err in failing to act on such a motion.

Accepting all Montgomery's allegations as true and making all inferences in her favor, it is clear that she cannot prove [**8] any set of facts in support of her claim that would entitle her to relief. _Edwards_, 178 F.3d at 244. Therefore, although the district court erred in dismissing for lack of jurisdiction, the complaint is subject to dismissal for failure to state a claim on which relief can be granted. We affirm the decision of the district court dismissing her claim under the **FMLA**, for the reasons stated above. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

_AFFIRMED AS MODIFIED_

Source:  Legal > Area of Law - By Topic > Labor & Employment > Cases > Labor & Employment Cases, Federal and
         State ⁱ ⁱ
Terms:  "nominal damages" and "fmla"  (Edit Search | Suggest Terms for My Search)
View:  Full
Date/Time:  Friday, November 18, 2005 - 3:02 PM EST

* Signal Legend:
🚫 -  Warning: Negative treatment is indicated
[Q] -  Questioned: Validity questioned by citing refs
⚠ -  Caution: Possible negative treatment
◈ -  Positive treatment is indicated
Ⓐ -  Citing Refs. With Analysis Available
Ⓘ -  Citation information available
* Click on any _Shepard's_ signal to _Shepardize_® that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Service: **Get by LEXSEE®**
Citation: **2003 us dist lexis 5663**

*2003 U.S. Dist. LEXIS 5663, \*; 148 Lab. Cas. (CCH) P34,718;*
*84 Empl. Prac. Dec. (CCH) P41,433; 14 Am. Disabilities Cas. (BNA) 522*

KIMMBERLY A. PANTO, Plaintiff, v. PALMER DIALYSIS CENTER/TOTAL RENAL CARE,
Defendant.

CIVIL ACTION NO. 01-6013

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2003 U.S. Dist. LEXIS 5663; 148 Lab. Cas. (CCH) P34,718; 84 Empl. Prac. Dec. (CCH)
P41,433; 14 Am. Disabilities Cas. (BNA) 522; 8 Wage & Hour Cas. 2d (BNA) 1072

April 7, 2003, Decided
April 7, 2003, Filed

**DISPOSITION:** Motion for summary judgment granted in part and denied in part.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff employee filed an action against defendant employer
and alleged violations of the Americans with Disabilities Act (ADA), 42 U.S.C.S. § 12101 et
seq., the Family and Medical Leave Act (FMLA), 29 U.S.C.S. § 2601 et seq., and the
Pennsylvania Human Relations Act (PHRA), 43 Pa. Cons. Stat. § 951 et seq. The employer
filed a motion for summary judgment.

**OVERVIEW:** The employee suffered from lupus and rheumatoid arthritis when she was
hired. Thereafter, she was also seen for anxiety and depression. After being given many
warnings, the employee was terminated based on her excessive absences. She then filed
this discrimination action. The court denied the employer's motion for summary judgment
regarding the employee's claims under the PHRA and under 42 U.S.C.S. § 12115(a) and
(b)(5)(A) of the ADA. The employee presented sufficient evidence that a reasonable jury
could have found that she was disabled within the meaning of the ADA and that she was a
"qualified individual." Fact issues existed regarding whether the employer discriminated
against the employee based on her disability. Because the employee was not eligible for
FMLA leave at the time her employment was terminated, she failed to establish her claim
under 29 U.S.C.S. § 2612(a)(1). Furthermore, because there was no causal connection
between when the employee took her FMLA leave and when she was terminated, she
failed to establish a prima facie case of retaliation under 29 U.S.C.S. § 2615(a)(2). Thus,
the employer was granted summary judgment on the employee's FMLA claim.

**OUTCOME:** The court granted the employer's summary judgment motion regarding the
employee's FMLA claim. The court denied the motion regarding the employee's ADA and
PHRA claims.

**CORE TERMS:** summary judgment, disability, accommodation, termination, eligible, leave of
absence, absenteeism, reasonable accommodation, prima facie case, retaliation,
probationary period, causal connection, terminated, excessive, month period, return to work,
attendance, warned, lupus, Medical Leave Act, temporal proximity, protected activity, undue
hardship, warning, discriminated, preponderance, accommodate, interactive, prior approval,
immune system

## LexisNexis(R) Headnotes ✦ Hide Headnotes

Civil Procedure > Summary Judgment > <u>Summary Judgment Standard</u> 🔳

*HN1* ⚡A motion for summary judgment will be granted where all of the evidence demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Since a grant of summary judgment will deny a party its chance in court, all inferences must be drawn in the light most favorable to the party opposing the motion. The ultimate question in determining whether a motion for summary judgment should be granted is whether reasonable minds may differ as to the verdict. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. <u>More Like This Headnote</u>

Labor & Employment Law > Discrimination > Disability Discrimination > <u>Coverage & Definitions</u> 🔳

*HN2* ⚡The Americans with Disabilities Act, <u>42 U.S.C.S. § 12101</u> et seq., prohibits employment discrimination against a qualified individual with a disability because of the disability of such individual. <u>42 U.S.C.S. § 12112</u>(a). Employers are prohibited from discriminating against such individuals with regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. The term "discriminate" includes not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity. <u>42 U.S.C.S. § 12112</u>(b)(5)(A). <u>More Like This Headnote</u>

Labor & Employment Law > Discrimination > Disability Discrimination > <u>Other Laws</u> 🔳
Labor & Employment Law > Discrimination > Disability Discrimination > <u>Coverage & Definitions</u> 🔳

*HN3* ⚡Pennsylvania courts have interpreted the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951 et seq., using the same legal standards as the Americans with Disabilities Act, <u>42 U.S.C.S. § 12101</u> et seq. <u>More Like This Headnote</u>

Labor & Employment Law > Discrimination > Disability Discrimination > <u>Proof of Discrimination</u> 🔳

*HN4* ⚡The court follows the burden-shifting framework when analyzing claims under the Americans with Disabilities Act, <u>42 U.S.C.S. § 12101</u> et seq. Under this framework, plaintiff/employee must show, by a preponderance of the evidence, a prima facie case of discrimination. If the employee is able to do this, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions against the employee. If the employer can meet this burden, then the burden shifts back to the employee to prove, by a preponderance of the evidence, that the reasons articulated by the defendant were actually pretext for discriminatory practices. Although the burden of production may shift, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. <u>More Like This Headnote</u>

Labor & Employment Law > Discrimination > Disability Discrimination > <u>Proof of Discrimination</u> 🔳

*HN5* ⚡To establish a prima facie case of discrimination under the Americans with Disabilities Act (ADA), <u>42 U.S.C.S. § 12101</u> et seq., a plaintiff must demonstrate that: (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered an adverse

employment action because of that disability.   More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Employment Practices
*HN6* An employer who fails to provide reasonable accommodation to the known physical or mental limitations of a qualified individual with a disability commits unlawful discrimination unless the accommodation can be shown to impose undue hardship. See 42 U.S.C.S. § 12112(b)(5)(A). The term "reasonable accommodation" may include (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities. 42 U.S.C.S. § 12111(9).   More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Proof of Discrimination
*HN7* To establish a prima facie case of failure to accommodate under the Americans with Disabilities Act (ADA), 42 U.S.C.S. § 12101 et seq., plaintiff must show that: (1) the defendant is a covered employer; (2) she is disabled within the meaning of the statute; (3) she can perform the essential functions of the job with or without reasonable accommodation; and (4) the defendant knew of her disability and failed to provide her with a reasonable accommodation. The employer's duty to provide reasonable accommodations does not extend, however, to accommodations that would impose an undue hardship on the operation of the business. 42 U.S.C.S. § 12112(b)(5)(A).   More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Proof of Discrimination
Labor & Employment Law > Discrimination > Disability Discrimination > Employment Practices
*HN8* To determine the appropriate reasonable accommodation it may be necessary for the employer to initiate an informal, interactive process with the employee with a disability in need of accommodation. 29 C.F.R. § 1630.2(o)(3) (2002). This process should identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations. In turn, both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith. To show that an employer failed to participate in the interactive process, an employee must demonstrate: (1) the employer knew about the employee's disability; (2) the employee requested reasonable accommodations or assistance for her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith.   More Like This Headnote

Labor & Employment Law > Leaves of Absence > Family & Medical Leave
*HN9* The Family and Medical Leave Act (FMLA) entitles employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition. 29 U.S.C.S. § 2601(b)(2). The FMLA contains two distinct types of rights. The first type, labeled as prescriptive or substantive rights, relates to the ability to take 12 weeks of unpaid leave. The second type, called proscriptive rights, includes protection in the event that an employee is discriminated against for exercising the prescriptive rights as set forth in the statute.   More Like This Headnote | *Shepardize: Restrict By Headnote*

Labor & Employment Law > Leaves of Absence > Family & Medical Leave
*HN10* The Family Medical Leave Act, 29 U.S.C.S. § 2601 et seq., entitles "eligible

employees" to a total of 12 workweeks of leave during any 12-month period for certain, specified reasons set forth in the Act. 29 U.S.C.S. § 2612(a)(1). The employer, however, is permitted to choose the method for determining the "12-month period" in which the 12 weeks of leave entitlement occurs. 29 C.F.R. § 825.200(b).  More Like This Headnote | *Shepardize: Restrict By Headnote*

Labor & Employment Law > Leaves of Absence > Family & Medical Leave
*HN11* The term "eligible employee" for purposes of the Family Medical Leave Act, 29 U.S.C.S. § 2601 et seq., means an employee who has been employed (i) for at least 12 months by the employer with respect to whom leave is requested under 29 U.S.C.S. § 2612; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period. 29 U.S.C.S. § 2611(2) (A).  More Like This Headnote | *Shepardize: Restrict By Headnote*

Labor & Employment Law > Leaves of Absence > Family & Medical Leave
*HN12* The Family Medical Leave Act (FMLA), 29 U.S.C.S. § 2601 et seq., does not create a federal cause of action to enforce the voluntary employer policies of providing benefits that exceed those required by the FMLA.  More Like This Headnote | *Shepardize: Restrict By Headnote*

Labor & Employment Law > Leaves of Absence > Family & Medical Leave
*HN13* See 29 C.F.R. § 825.700(a) (2002).

Labor & Employment Law > Leaves of Absence > Family & Medical Leave
*HN14* The Family Medical Leave Act (FMLA), 29 U.S.C.S. § 2601 et seq., makes it unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by the subchapter. 29 U.S.C.S. § 2615(a)(2). This portion of the FMLA prohibits retaliation by an employer for the employee's exercise of rights under the FMLA. As with other retaliation claims, the court utilizes the burden-shifting framework in analyzing such a claim under the FMLA.  More Like This Headnote | *Shepardize: Restrict By Headnote*

Labor & Employment Law > Leaves of Absence > Family & Medical Leave
*HN15* To establish a prima facie case of retaliation under the Family Medical Leave Act (FMLA), 29 U.S.C.S. § 2601 et seq., a plaintiff must show that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the adverse action and the plaintiff's exercise of her FMLA rights. It is established that a causal connection between an employee's protected activity and an adverse action by her employer may be inferred if the events occurred close in temporal proximity to each other.  More Like This Headnote | *Shepardize: Restrict By Headnote*

**COUNSEL:**  **[*1]**  For Kimberly A Panto, PLAINTIFF: Donald P Russo, Attorney at Law, Bethlehem, PA USA. Vanessa M Nenni, Bethlehem, PA USA.

For Renal Treatment Center Northeast, Inc, DEFENDANT: Joseph J Centeno, Obermayer, Rebmann, Maxwell & Hippel, LLP, Philadelphia, PA USA. Lori E Halber, Obermayer Rebmann Maxwell & Hippel, LLP, Philadelphia, PA USA.

**JUDGES:** RONALD L. BUCKWALTER, J.

**OPINIONBY:** RONALD L. BUCKWALTER

## OPINION: MEMORANDUM

BUCKWALTER, J.

April 7, 2003

Presently before the Court is Defendant Palmer Dialysis Center/Total Renal Care's Motion for Summary Judgment, Plaintiff Kimmberly A. Panto's Response, and Defendant's Reply. For the reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

Kimmberly A. Panto (hereinafter referred to as "Panto" or "Plaintiff") was diagnosed with rheumatoid arthritis in 1988 and systemic lupus erythmatosis ("lupus") n1 in 1990. See Pl.'s Resp.-Ex. I, Panto Dep. (hereinafter referred to as "Panto Dep.") at 36-37.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Plaintiff's lupus affects her immune system. Plaintiff stated that "my immune system does not shut down after a cold or a virus. What happens is my immune system still produces antibodies, and these antibodies attack my soft tissue organs like my joints, my liver, my spleen . . . ." Panto Dep. at 36.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*2]**

In March 1997, Defendant Renal Treatment Center Northeast, Inc. d/b/a Palmer Dialysis Center n2 (hereinafter referred to as "Defendant" or "Palmer Dialysis" or the "Company") hired Panto to serve as a dialysis technician. As with other companies, Palmer Dialysis had policies regarding leave under the <u>Family and Medical Leave Act</u> ("FMLA"), Paid Time Off ("PTO") leave n3, and extended illness leave. See Pl.'s Mot. Summ. J.-Ex. E, Mary Baker Dep. (hereinafter referred to as "Baker Dep.") at 9-10. Palmer Dialysis' Director of Nursing, Barbara Danko ("Danko"), felt Panto "deserved a chance," even though she had been terminated from her prior employer for excessive absenteeism. Defendant knew upon hiring Panto that she was diagnosed with lupus. n4 See Def.'s Mot. Summ. J.-Ex. B, Verbal Warning Report.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Defendant was misnamed in the Complaint as Palmer Dialysis Center/Total Renal Care. Palmer Dialysis is a renal treatment clinic located in Easton, Pennsylvania.

n3 The PTO policy is based on time worked. If an employee works the requisite number of hours, it is possible for the employee to accrue a maximum of 176 hours of PTO in the first year, 192 hours in the second year, and 200 hours in the third year. See Pl.'s Mot. Summ. J.-Ex. F, Susan Wright Dep. (hereinafter referred to as "Wright Dep.") at 11-12. **[*3]**

n4 During her employment with Palmer Dialysis, Panto was also treated for anxiety, depression, irritable bowl, and asthma. See Pl.'s Mot. Summ. J.-Ex. H, Zoe Caruso Dep. (hereinafter referred to as "Caruso Dep.") at 49-50.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Panto generally performed well at work, though the effects of her ailments often caused her to miss work. This was particularly true when her illness would "flare-up," confining Panto to her couch for two or three days a month solely to rest. See Panto Dep. at 41. All of Panto's absences were noted in her personnel file, see Baker Dep. at 13, and Danko testified that she did not question whether or not Panto was out due to real health problems. See Danko Dep. at 16.

Within the first ninety days of Panto's employment with Palmer Dialysis, on May 12, 1997, Panto received a verbal warning for frequent absenteeism. Def.'s Mot. Summ. J.-Ex. B, Verbal Warning Report. Panto received an "Unsatisfactory" rating with respect to "Availability" on her Introductory Period Performance Appraisal. Danko warned Panto that continued absences could result in termination. See [*4] Danko Dep. at 19.

A year after her hire, Panto continued to perform unsatisfactorily with regard to meeting the Company's attendance standards. On March 31, 1998, Danko issued Panto an Employee Performance Planning and Review. Panto received a 2 rating--"performance needs improvement"--under the section "Personal Development and Professionalism," which includes, among other things, the extent to which the employee meets attendance standards.

In the spring of 1998, Total Renal Care bought Palmer Dialysis. Total Renal Care's handbook, which it distributed to all employees including Panto, stressed the importance of attendance: "Regular attendance is a necessary condition of employment. Frequent absences or lateness disrupts patient care, puts a burden on other employees and affects departmental performance." See Panto Dep. at 108.

The record indicates multiple absences in late 1998 and early 1999. Specifically, Panto was absent from work on October 21, 22 and December 28, 1998, and January 15, 16, and February 2, 1999. On February 3, 1999, Panto's supervisor, Mary Baker ("Baker"), who became the Director of Nursing at Palmer Dialysis after Danko left, issued Panto a verbal warning [*5] for excessive absenteeism. Baker informed Panto that her excessive absences were creating a hardship on the unit.

On May 18, 1999, Panto took FMLA leave for her pregnancy and subsequent birth of her daughter. The Company's FMLA policy provided twelve weeks leave in a 12-month period. Panto's FMLA leave expired on August 10, 1999, but Panto could not return to work because she was still restricted from working by her physician. Total Renal Care granted Panto additional leave.

When Panto's physician cleared her to return to work on September 13, 1999, Total Renal Care reinstated Panto as a dialysis technician with the same hours and same shifts at the same rate of pay. Id. at 25. The only change in Panto's employment was that she floated through three Total Renal Care dialysis clinics rather than reporting to one.

When Panto returned from leave, or shortly thereafter, Zoe Caruso ("Caruso") replaced Baker as the Director of Nursing at Palmer Dialysis. Panto recorded additional absences on October 1, 21, November 12, 13, 14, 15, and 17, 1999.

Recognizing that her absenteeism was a problem, Panto wrote a letter to the administrator's at Total Renal Care's Whitehouse Dialysis Unit [*6] on November 18, 1999. In the letter, Panto wrote: "I realize I have been absent from your unit too much. I am working to correct the problem and will." Id. at 83-84. Panto wrote that she did not "see any other absences in the future." Id. at 84

Caruso placed Panto on a Performance Management Plan on November 24, 1999. The Performance Management Plan provided for a ninety-day probationary period, from November 24, 1999 to February 21, 2000. Panto was warned that two absences during the probationary period would result in a three-day suspension.

Despite her assurances that she would correct the problem, Panto was absent on December 4, 1999, for which she received another warning, and on January 10, 2000, for which she received the suspension set forth in the Performance Management Plan. After Panto's January 10, 2000 absence, Caruso warned Panto that if she were absent again during the probationary period, her employment would be terminated.

Panto's probation expired on February 21, 2000. Just four days later, on February 25, 2000, Panto was absent from work once again. In accordance with Total Renal Care's progressive discipline policy, Caruso suspended Panto for three days **[*7]** without pay.

On February 29, 2000, Caruso placed Panto on another Performance Management Plan. The terms of the plan provided for a six-month probationary period and warned that Panto's first absence during the probationary period would result in the termination of her employment.

The following day, on March 1, 2000, Panto requested a leave of absence from March 4, 2000 to March 28, 2000, because her doctor wanted Panto to adjust to the medications for her anxiety and depression. Caruso granted Panto's request for leave of absence.

As a condition to Panto's leave of absence, Panto agreed that upon her return to work, she would begin the six-month probationary period set forth in the February 29, 2000 Performance Management Plan. Panto agreed to the terms of the plan, which included that "any infraction of the probation would result in termination."

Panto returned to work from her leave of absence on or about March 27, 2000. Upon her return to work, Panto requested that she be put on a thirty hours per week schedule. Caruso granted Panto's request to be placed on a thirty hours per week work schedule.

Panto never had the opportunity to work thirty hours per week because, **[*8]** on April 13, 2000, she was absent once again. Panto's absence on this day was an infraction of the terms of the February Performance Management Plan, and, as a result, Total Renal Care terminated Panto. It is not known whether Panto had any PTO available at the time of termination. See Wright Dep. at 21.

Panto filed the instant action alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 et seq. Palmer Dialysis filed a motion for summary judgment, to which Panto responds.

## II. STANDARD OF REVIEW

*HN1* A motion for summary judgment will be granted where all of the evidence demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). **[*9]** Since a grant of summary judgment will deny a party its chance in court, all inferences must be drawn in the light most favorable to the party opposing the motion. U.S. v. Diebold, Inc., 369 U.S. 654, 655, 8 L. Ed. 2d 176, 82 S. Ct. 993 (1962).

The ultimate question in determining whether a motion for summary judgment should be

granted is "whether reasonable minds may differ as to the verdict." Schoonejongen v. Curtiss-Wright Corp., 143 F.3d 120, 129 (3d Cir. 1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

## III. DISCUSSION

### A. ADA/PHRA

*HN2* The ADA n5 prohibits employment discrimination "against a qualified individual with a disability because of the disability of such individual . . . ." 42 U.S.C. § 12112(a). Employers are prohibited from discriminating against such individuals with regard to "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. **[*10]** " Id. The term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 It is well-established that the *HN3* Pennsylvania courts have interpreted the PHRA using the same legal standards as the ADA. Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996); Alifano v. Merck & Co., 175 F. Supp. 2d 792, 796 (E.D. Pa. 2001). Therefore, the Court's analysis of the ADA claim applies equally to Panto's PHRA claim.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

*HN4* The Court follows the burden-shifting framework first set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), when analyzing claims under the ADA. Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000). **[*11]** Under this framework, Plaintiff/employee must show, by a preponderance of the evidence, a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. If the employee is able to do this, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions against the employee. Id. If the employer can meet this burden, then the burden shifts back to the employee to prove, by a preponderance of the evidence, that the reasons articulated by the defendant were actually pretext for discriminatory practices. Id. 411 U.S. 792 at 804, 36 L. Ed. 2d 668, 93 S. Ct. 1817. Although "the burden of production may shift, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Shaner, 204 F.3d at 500-01 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981)).

*HN5* To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate that: (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the **[*12]** essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered an adverse employment action because of that disability. See Deane v. Pocono Med. Ctr., 142 F.3d 138, 142 (3d Cir. 1998). In the present case, Panto has presented sufficient evidence that a reasonable jury could find that she is disabled within the meaning of the ADA and that she is a "qualified individual." As such, Plaintiff may be able to prove, by a preponderance of the evidence, a prima facie case of disability discrimination.

Defendant, however, presents a legitimate, non-discriminatory reason for Panto's termination--excessive absenteeism. In support of her argument that Defendant's reason is merely a pretext for discrimination, Panto simply states that "where an employer asserts excessive absenteeism as a non-discriminatory justification for an employee's termination, that justification cannot analytically be considered apart from the alleged disability causing the absenteeism." Barnett v. Revere Smelting & Ref. Corp., 67 F. Supp. 2d 378, 392 (S.D.N.Y. 1999). The Court finds this argument persuasive and reserves the issue for [*13] a jury to decide whether Defendant's proffered motive was pretextual.

Plaintiff also alleges that Defendant violated the ADA by failing to provide her with reasonable accommodations. _HN6_ An employer who fails to provide reasonable accommodation to the known physical or mental limitations of a qualified individual with a disability commits unlawful discrimination unless the accommodation can be shown to impose undue hardship. See 42 U.S.C. § 12112(b)(5)(A). The term "reasonable accommodation" may include-

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities. 42 U.S.C. § 12111(9).

_HN7_ To establish a prima facie case of failure to accommodate under the ADA, Plaintiff must show that: (1) the defendant is a [*14] covered employer; (2) she is disabled within the meaning of the statute; (3) she can perform the essential functions of the job with or without reasonable accommodation; and (4) the defendant knew of her disability and failed to provide her with a reasonable accommodation. See Kralik v. Durbin, 130 F.3d 76, 78 (3d Cir. 1997). The employer's duty to provide reasonable accommodations does not extend, however, to accommodations that "would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A).

Additionally, _HN8_ "to determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the [employee] with a disability in need of accommodation." 29 C.F.R. § 1630.2(o)(3) (2002). "This process should identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations." Id. In turn, "both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith." Mengine v. Runyon, 114 F.3d 415, 419-20 (3d Cir. 1997). [*15]

To show that an employer failed to participate in the interactive process, an employee must demonstrate: (1) the employer knew about the employee's disability; (2) the employee requested reasonable accommodations or assistance for her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith. Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 319-20 (3d Cir. 1999).

Plaintiff argues that Defendant did not earnestly engage in the interactive process as required by the ADA. Specifically, Panto argues that Defendant did not accommodate her when it placed her on a six month probationary program where she would be terminated as soon as she missed one day of work. In light of the Court's finding that there are genuine issues of

material fact as to whether Defendant discriminated against her based on her disability, the Court also reserves to a jury the issue of whether Defendant failed to reasonably accommodate Panto.

Accordingly, Defendant's motion for summary judgment as to Plaintiff's ADA and PHRA claims is denied. **[*16]**

## B. FMLA

*HN9*⊼The Family and Medical Leave Act ("FMLA") entitles "employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." 29 U.S.C. § 2601(b)(2).

The FMLA contains two distinct types of rights. See Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 159 (1st Cir. 1998). The first type, labeled as prescriptive or substantive rights, relates to the ability to take twelve weeks of unpaid leave. Id. The second type, called proscriptive rights, includes protection in the event that an employee is discriminated against for exercising the prescriptive rights as set forth in the statute. Id. 144 F.3d 151 at 159-60.

Plaintiff contends that Defendant violated both her substantive and proscriptive rights under the FMLA. The Court will address each argument in turn.

1. Prescriptive/Substantive Rights

*HN10*⊼The FMLA entitles "eligible employees" n6 "to a total of 12 workweeks of leave during any 12-month period" for certain, specified reasons set forth in the act. 29 U.S.C. § 2612(a)(1). The employer, however, **[*17]** is permitted to choose the method for determining the "12-month period" in which the 12 weeks of leave entitlement occurs. See 29 C.F.R. § 825.200(b).

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 *HN11*⊼The term "eligible employee" means an employee who has been employed "(i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). Defendant contends that Panto is not an "eligible employee" under the FMLA because she did not work the requisite 1,250 hours. See Def.'s Mot. Summ. J. at 8. Panto, however, contends that Defendant erroneously calculated her eligibility time, and, as such, that she is an "eligible employee." See Pl.'s Resp. at 28. Drawing all inferences in the light most favorable to Plaintiff, the Court will assume, for purposes of the present Motion for Summary Judgment, that Plaintiff is an "eligible employee." The Court can then address the arguments based on the amount of leave Plaintiff actually took from work.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*18]**

It is undisputed that Panto was not entitled to FMLA leave at the time of her termination from employment on April 13, 2000. Panto admits that she was not eligible for leave under the FMLA on March 1, 2000 because she had already used 12 weeks of FMLA leave during the summer of 1999. See Def.'s Mot. Summ. J.-Tab 1, Pl.'s Answers to Def.'s Req. for Admis. at 65; Panto Dep. at 94. Under Total Renal Care's policy, in accordance with 29 C.F.R. § 825.200(d), "the 12-month period is measured backward from the date an employee requests an FMLA leave." Panto had already used all her FMLA leave from May 18, 1999 to

August 10, 1999. Accordingly, Panto did not begin to reacquire FMLA leave time until after May 18, 2000.

Plaintiff argues, however, that Defendant is estopped from asserting that Panto's leave was confined to twelve weeks because Defendant's Employee Policy allowed for up to six months medical leave under the FMLA. See Pl.'s Resp. at 30. The Company's policy states:

The Company recognizes there may be times when you are required to be away from your job an extended period of time. Leaves of absence will be administered in compliance with the Family and Medical Leave **[*19]** Act "FMLA". . . Additionally, a qualified leave of absence, upon prior approval, may be extended for an additional three (3) months (not to exceed a total of six months).

Id. at Ex. C-Def.'s Extended Illness Leave Policy.

Despite the existence of additional leave in the policy, the Court finds that Defendant correctly asserted the affirmative defense that Panto exhausted her twelve weeks of FMLA leave to which she was entitled. Defendant's policy provides a more generous benefit, but it does not convert this leave to an entitlement under the FMLA. Defendant's FMLA policy clearly provides only twelve weeks leave. See Def.'s Mot. Summ. J.-Ex. F, Family and Med. Leave of Absence. The Company's policy provides additional leave, but this grant of additional leave is within the discretion of the Company. See Pl.'s Resp.-Ex. C, Def.'s Extended Illness Leave Policy (stating that "a qualified leave of absence, upon prior approval, *may* be extended for an additional three months") (emphasis added). The employee must also obtain prior approval before being granted extended leave. Although Defendant's policy contemplates an additional three months "qualified leave of absence, **[*20]** " *HN12*🔑the FMLA does not create a federal cause of action to enforce the voluntary employer policies of providing benefits that exceed those required by the FMLA. See Rich v. Delta Air Lines, Inc., 921 F. Supp. 767, 773 (N.D. Ga. 1996) (stating that "section 825.700 n7 does not, and could not, however, create a federal cause of action under the FMLA to enforce the voluntary employer policies of providing benefits that exceed those required by the FMLA").

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 Section 825.700 provides, in part, that *HN13*🔑"an employer must observe any employment benefit program or plan that provides greater family or medical leave rights to employees than the rights established by the FMLA." 29 C.F.R. § 825.700(a) (2002).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Because Panto was not eligible for FMLA leave at the time her employment was terminated, she cannot establish an interference claim under the FMLA. As such, Defendant Palmer Dialysis' Motion for Summary Judgment is granted.

2. Proscriptive Rights

*HN14*🔑The FMLA also makes it unlawful **[*21]** "for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). This portion of the FMLA prohibits retaliation by an employer for the employee's exercise of rights under the FMLA. As with other retaliation claims, the Court utilizes the burden-shifting framework set forth by the United States Supreme Court in McDonnell Douglas in analyzing such a claim under the FMLA. See Sherrod v. Philadelphia Gas Works, 209 F. Supp. 2d 443, 451 (E.D. Pa. 2002).

HN15⭐To establish a prima facie case of retaliation under the FMLA, Plaintiff must show that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the adverse action and Plaintiff's exercise of her FMLA rights. Alifano, 175 F. Supp. 2d at 795; Baltuskonis v. U.S. Airways, Inc., 60 F. Supp. 2d 445, 448 (E.D. Pa. 1999). Although Defendant concedes that Panto engaged in a statutorily protected activity and that her termination was an adverse employment action, see Def. [*22] 's Mot. Summ. J. at 11, Defendant argues that Plaintiff cannot establish a causal connection between her discharge and her FMLA leave.

It is established that "[a] causal connection between an employee's protected activity and an adverse action by her employer may be inferred if the events occurred close in temporal proximity to each other." Harris v. SmithKline Beecham, 27 F. Supp. 2d 569, 580 (E.D. Pa. 1988), aff'd 203 F.3d 816 (3d Cir. 1999). In the present case, Plaintiff relies on the close temporal proximity between her leave and her termination to demonstrate a causal connection. See Pl.'s Resp. at 33. Panto notes that she was fired approximately two weeks after her return from leave in March 2000, indicating that Defendant fired her in retaliation of Panto exercising her FMLA rights. See id.

The problem with Panto's argument is that this assumes that her leave in March 2000 was FMLA leave. This, however, is not the case as the March 2000 leave was not protected under the FMLA. The Court has already determined that Panto exhausted her FMLA leave during the May 18, 1999 to August 10, 1999 period. Panto admits that she was not eligible for [*23] leave under the FMLA on March 1, 2000 because she had already used 12 weeks of FMLA leave during the summer of 1999. See Def.'s Mot. Summ. J.-Tab 1, Pl.'s Answers to Def.'s Req. for Admis. at 65; Panto Dep. at 94. Instead of a two week gap, seven months existed between the time Plaintiff returned from her FMLA/extended leave in September 1999 and the termination of her employment in April 2000. A causal connection between Panto taking FMLA leave and her subsequent termination cannot be inferred from a seven month intervening time period. See e.g., Keeshan v. Home Depot, Inc., No. 00-529, 2001 U.S. Dist. LEXIS 3607, at *43-44 (E.D. Pa. Mar. 27, 2001) (stating that "under the facts of this case, a time period of approximately four months with no evidence of discriminatory conduct or animus by the Defendants in connection with [plaintiff's] leave under the FMLA does not establish close temporal proximity").

Finding that Panto cannot establish a prima facie case of retaliation under the FMLA, the Court grants Defendant's motion for summary judgment as to Panto's "retaliation claim."

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary [*24] Judgment is granted in part and denied in part. An appropriate Order follows.

## ORDER

**AND NOW**, this 7th day of April, 2003, upon consideration of Defendant Palmer Dialysis Center/Total Renal Care's Motion for Summary Judgment (Docket No. 9), Plaintiff Kimmberly A. Panto's Response (Docket No. 11), and Defendant's Reply (Docket No. 12), it is hereby **ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. More specifically:

1) Defendant's Motion for Summary Judgment as to Plaintiff's ADA claim (Count I) is **DENIED**;

2) Defendant's Motion for Summary Judgment as to Plaintiff's FMLA claim (Count II) is **GRANTED**;

3) Defendant's Motion for Summary Judgment as to Plaintiff's PHRA claim (Count III) is **DENIED**.

Pre-trial memoranda are due within ten (10) days of the date of this Order. Counsel are to contact the Courtroom Deputy, Matthew Higgins, for trial scheduling.

BY THE COURT:

RONALD L. BUCKWALTER, J.

Service: **Get by LEXSEE®**
Citation: **2003 us dist lexis 5663**
View: Full
Date/Time: Tuesday, November 22, 2005 - 2:43 PM EST

* Signal Legend:
- Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
✦ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved

Service: **Get by LEXSEE®**
Citation: **1996 del super lexis 86**

*1996 Del. Super. LEXIS 86, \**

BRAD PATTEN, Plaintiff, v. ZENECA, INC., Defendant.

CIVIL ACTION NUMBER 94C-07-180-WTQ

SUPERIOR COURT OF DELAWARE, NEW CASTLE

1996 Del. Super. LEXIS 86

November 22, 1995, Submitted
February 13, 1996, Decided

**NOTICE: [\*1]** THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

**DISPOSITION:** Upon Motion of Plaintiff for Reargument - DENIED

**CORE TERMS:** termination, misrepresentation, deceit, accusation, implied covenant, fair dealing, supervisor, at-will, fired, favorable, summary judgment, inappropriate, disrespectful, communicated, deposition, disruption, lying

**COUNSEL:** Michael P. Maguire, Esq., of Wilmington, Delaware, attorney for plaintiff.

Michael P. Kelly, Esq., of Haase & Kelly, attorney for defendant.

**JUDGES:** Jerome O. Herlihy, Judge

**OPINIONBY:** Jerome O. Herlihy

**OPINION:** MEMORANDUM OPINION

HERLIHY, Judge

Plaintiff Brad Patten [Patten] has moved to reargue this Court's bench ruling granting the motion for summary judgment of defendant Zeneca, Inc. [Zeneca].

*FACTUAL BACKGROUND*

Patten went to work for Zeneca in 1972. At the time of the termination at issue in this case, he was eastern business director of national accounts. Prior to that, Patten had been director of marketing.

On October 22, 1993, there was a meeting of a number of management personnel, including Patten. During the meeting, a presentation was made by a Richard Greenhill [Greenhill]. Also in attendance was Patten's immediate supervisor, Jane Hart [Hart].

Mike Rance [Rance] met with Patten on October 28, 1993 and told Patten he was fired. Hart was present during this meeting, too. Rance indicated that **[\*2]** the termination was due to Patten's inappropriate conduct toward Greenhill and what Patten describes as Rance saying was a verbal "attack" by Patten on Greenhill.

During a deposition, Patten variously described his meeting with Rance and his views of what happened (or did not happen) at the October 22 meeting.

A. Well, I was sat down and very surprised by a discussion that I had with [Rance] -- as I've tried to document in this -- what you referred to, I guess, as a diary or notes -- primarily because I was informed that I had a performance problem.

And prior to that, I quite honestly can't recall anybody ever sitting me down and talking about any sort of a serious performance problem that I had.

And the reason that I was given in terms of what that performance problem was, I don't think is -- wasn't in my mind what I would consider to be a performance problem.

* * *

Q. Okay.

Now, if you turn to Paragraph 7 of your Complaint, on Page 2, the first clause states. "The accusations made by Zeneca were false."

In what way were the accusations false?

A. Well, the accusation, as I understood it, was that my conduct at this meeting was inappropriate and an attack on the presenter. **[*3]** And I certainly did not perceive it that way, and so I thought it was a false accusation.

Q. Okay.

Are you contending, as part of your lawsuit, that there was some reason for your termination other than what had been communicated to you by [Rance]?

A. I just think that what has been told to me in terms of a performance problem that I had at this meeting didn't seem to me to be a reason to terminate someone, and that was the only reason I was ever given.

Q. Okay.

Let me see if I can be more specific in my question.

You were told by [Rance], as you've related it, that you had a performance problem, which was described as this alleged disruption at the meeting on October 22nd, correct?

A. Yes.

* * *

And as I understand your allegation, you are stating that you did not cause a disruption, from your perception, at this meeting of October 22nd?

A. Yes, that's correct.

Q. Okay.

Do you contend that [Rance], when he was communicating to you what his perception was and why he was terminating you, was lying to you about what his perception was?

A. I don't know if he was lying or not. That could be difficult for me to say. He was delivering his perception.

* * *

Q. Okay. **[*4]**

Has anyone other than [Rance], who is in any way connected with Zeneca either now or then, ever told you anything which leads you to believe that there was some other reason for your termination, other than what was communicated to you by [Rance]?

A. I don't believe so, no.

Q. Is there anything that Mr. Bateman may or may not have said to you during your conversations with him which has led you to believe that there was some reason for your termination, other than what [Rance] said to you?

A. I can only -- I can only say the reason I was given for my termination was that I had a performance problem.

And when I asked specifically what the performance problem was, I was told that it was as a result of this categorized inappropriate behavior at this meeting.

Q. And if I understand your allegation correctly, when you say that that accusation was false, what you're saying is that you disagree with the perception of your conduct at that meeting?

A. Yes.

* * *

At the meeting that you held with [Rance] on October 28th -- the meeting that he held with you -- did you believe that you had an opportunity at that time to deny what you were being accused of?

A. I think I said that **[*5]** I didn't conduct myself inappropriately at the meeting. I think I did.


Deposition transcript (June 27, 1995) at 27, 43-44, 45-46, 47-48 and 60. Patten has offered no evidence that there were any other reasons Zeneca fired him.

*CLAIMS*

Patten acknowledges that he was an employee at will. He argues, however, that he was fired for a reason that is a misrepresentation. This, he contends, is a breach of the implied covenant of good faith and fair dealing which an employer owes to an at-will employee.

APPLICABLE STANDARD

The Court can only grant summary judgment were there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. _Alabi v. DHL Airways, Del.Super., 583 A.2d 1358 (1990)._ The facts must be examined in a light most favorable to the non-moving party. _McCall v. Village Pizza, Del.Supr., 636 A.2d 912, 913 (1994)._

DISCUSSION

Patten does not dispute that he was an at-will employee. Such employees can be terminated with or without cause. _Haney v. Laub, Del.Super., 312 A.2d 330, 332,_ (1973); _Heideck v. Kent General Hospital, Del.Supr., 446 A.2d 1095, 1096 (1982)._

However, an at-will employee is employed **[*6]** with an implied covenant of good faith and fair dealing. _Merrill v. Crothall-American, Inc., Del.Supr., 606 A.2d 96, 101 (1992)._ To constitute a breach of this covenant, the employer's conduct must constitute an aspect of fraud, deceit or misrepresentation. _Id._

> The lodestar here is candor. An employer acts in bad faith when it induces another to enter into an employment contract through actions, words, or the withholding of information, which is intentionally deceptive in some way material to the contract. Such conduct constitutes "an aspect of fraud, deceit or misrepresentation."

_Merrill,_ 606 A.2d at 101.

The _Merrill_ case involved deceit in _hiring._ This case, of course, involves a termination. Decisions subsequent to _Merrill_ have narrowly interpreted its reach. _Lankford v. Scala, Del.Super., C.A.No. 94C-04-023, Lee, J._ (February 28, 1995).

Patten states that he was not disruptive at the meeting on October 22, 1993. Further, he disagrees with his supervisor's conclusion that he either was disrespectful to Greenhill or attacked him.

In short, his claim of misrepresentation is a disagreement with his supervisors' opinions and characterizations **[*7]** of his conduct at the meeting. He does not claim, has produced no evidence of and the record is devoid of any other ulterior, sinister motive on Zeneca's part to fire him for reasons unrelated to the reason given. Patten has had more than ample time to supply this information, if it existed, and had the duty to do so to create a genuine issue of material fact. _State v. Regency Group, Inc., Del.Super., 598 A.2d 1123, 1129 (1991)._ While he argues Rance lied to him about the nature of his conduct at the meeting, that allegation rests on Patten's different view of his conduct.

To put this dispute in another way, to classify this dispute under the rubric of "fraud, deceit and misrepresentation" would lead to a factual contest over whether Patten's conduct was disrespectful. Did Zeneca's supervisors reach the correct or incorrect business judgment about Patten's conduct? Such a conflict is one of opinion and is also, in this case, not within the meaning of fraud, deceit or misrepresentation.

Clearly an examination of the facts in a light most favorable to Patten does not state a claim

Get a Document - by Citation - 1996 Del. Super. LEXIS 86

Case 1:04-cv-00285-KAJ    Document 83-5    Filed 12/07/2005    Page 23 of 38

Page 3 of 5

for breach of the implied covenant of good faith and fair dealing.

*CONCLUSION*

For the reasons **[*8]** stated herein, the motion for reargument of plaintiff Brad Patten is DENIED.

IT IS SO ORDERED.

Jerome O. Herlihy

Service: **Get by LEXSEE®**
Citation: **1996 del super lexis 86**
View: Full
Date/Time: Tuesday, November 22, 2005 - 2:44 PM EST

* Signal Legend:
- Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
✛ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
Ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved

Case 1:04-cv-00285-KAJ    Document 83-5    Filed 12/07/2005    Page 24 of 38

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 23941                    Page 1 of 15

Service: **Get by LEXSEE®**
Citation: **2003 us dist lexis 23941**

2003 U.S. Dist. LEXIS 23941, *

PAUL PHILLIPS, Plaintiff v. DAIMLERCHRYSLER CORPORATION, Defendant.

Civil Action No. 01-247-JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2003 U.S. Dist. LEXIS 23941

March 27, 2003, Decided

**SUBSEQUENT HISTORY:** Affirmed by Phillips v. DaimlerChrysler Corp., 2004 U.S. App. LEXIS 21093 (3d Cir. Del., July 15, 2004)

**PRIOR HISTORY:** Phillips v. DaimlerChrysler Corp., 2002 U.S. Dist. LEXIS 13078 (D. Del., July 17, 2002)

**DISPOSITION:** [*1] Defendant's Motion for Summary Judgment was granted.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff employee sued defendant employer and alleged racial discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C.S. § 2000e et seq., 42 U.S.C.S. § 1981, disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C.S. § 12101 et seq., and retaliation under Title VII and the Family and Medical Leave Act, 29 U.S.C.S. § 2601 et seq. The employer moved for summary judgment.

**OVERVIEW:** The employee was diagnosed with keratoconus, a condition which affected the shape of the cornea and causes vision problems. After he filed charges of discrimination and retaliation with the Equal Employment Opportunity Commission, the employee filed the instant suit. The court found that because there was no allegation of race discrimination in the charge that the employee filed with the Equal Employment Opportunity Commission, the employee had not satisfied Title VII's exhaustion requirement. Because two of the employee's racial discrimination claims under 42 U.S.C.S. § 1981 occurred two years before the employee alleged a claim under 42 U.S.C.S. § 1981, they were time barred under the two year statute of limitations of Del. Code Ann. tit. 10, § 8119. The employee was not disabled since he was not substantially limited in the major life activity of seeing and the employer did not regard him as being disabled. Because the employee was not disabled within the meaning of 42 U.S.C.S. § 12102(2)(A) or (C), the employer was entitled to summary judgment on the employee's claim that the employer failed to provide reasonable accommodations to him based on his disability.

**OUTCOME:** The employer's motion for summary judgment was granted.

**CORE TERMS:** retaliation, disabled, disability, summary judgment, impairment, accommodate, keratoconus, prima facie case, race discrimination, plant, promissory estoppel, questionnaire, designation, temporary, protected activity, causal connection, deposition, assigned, intake, discriminated, seeing, visual, cause of action, non-moving,

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 23941
Case 1:04-cv-00285-KAJ    Document 83-5    Filed 12/07/2005    Page 25 of 38
Page 2 of 15

return to work, air gun, retaliatory, placement, racially, layoff

**LexisNexis(R) Headnotes** ✦ Hide Headnotes

Civil Procedure > Summary Judgment > Summary Judgment Standard 🗒
*HN1*⚓Fed. R. Civ. P. 56(c) provides that a party is entitled to summary judgment where
the pleadings, depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no genuine issue of material
fact and that the moving party is entitled to judgment as a matter of law. Fed. R.
Civ. P. 56(c) . More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard 🗒
*HN2*⚓On a motion for summary judgment, in determining whether there is a triable
dispute of material fact, a court must review all of the evidence and construe all
inferences in the light most favorable to the non-moving party. However, a court
should not make credibility determinations or weigh the
evidence. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof 🗒
*HN3*⚓To defeat a motion for summary judgment, Fed. R. Civ. P. 56(c) requires the non-
moving party to show that there is more than some metaphysical doubt as to the
material facts. In the language of the Fed. R. Civ. P. 56, the nonmoving party must
come forward with specific facts showing that there is a genuine issue for trial.
Where the record taken as a whole could not lead a rational trier of fact to find for
the non-moving party, there is no genuine issue for trial. Accordingly, a mere
scintilla of evidence in support of the non-moving party is insufficient for a court to
deny summary judgment. More Like This Headnote

Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Time Limitations 🗒
Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Exhaustion of Remedies 🗒
*HN4*⚓Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C.S. § 2000e et seq.,
requires a claimant to file an administrative charge within 300 days of the claimed
discriminatory event. 42 U.S.C.S. § 2000e-5(e)(1). The intake questionnaire does
not serve the same function as the charge and therefore does not satisfy Title VII's
exhaustion requirement. If the courts made allegations in the intake questionnaire
part of the charge itself, and therefore permitted the plaintiff to pursue claims made
only in the questionnaire and not investigated by the Equal Employment Opportunity
Commission (EEOC), the courts would be circumventing the role of the EEOC as well
as depriving the defendant of notice of all claims against it. More Like This Headnote |
*Shepardize: Restrict By Headnote*

Governments > Legislation > Statutes of Limitations > Time Limitations 🗒
Labor & Employment Law > Discrimination > Reconstruction Statutes (secs. 1981, 1983 & 1985) 🗒
*HN5*⚓Claims under 42 U.S.C.S. § 1981 are subject to the two-year statute of limitations of
Del. Code Ann. tit. 10, § 8119. More Like This Headnote

Labor & Employment Law > Discrimination > Racial Discrimination > Coverage & Definitions 🗒
Labor & Employment Law > Discrimination > Reconstruction Statutes (secs. 1981, 1983 & 1985) 🗒
*HN6*⚓To establish a prima facie case of race discrimination based on a failure to transfer, a
plaintiff must demonstrate: (1) that he is a member of a protected class; (2) that he
applied for, was qualified for, and was denied the position sought; and (3)
circumstances that give rise to an inference of discrimination. More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Qualified Individuals With a Disability 🗒

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 23941

Case 1:04-cv-00285-KAJ   Document 83-5   Filed 12/07/2005   Page 26 of 38

Page 3 of 15

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions

*HN7* ±The Americans with Disabilities Act (ADA), 29 U.S.C.S. § 12101 et seq., mandates that employers provide a reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability. 42 U.S.C.S. § 12112(b)(5)(A). To establish a prima facie case of failure to accommodate, a plaintiff must prove: (1) he is an individual with a disability under the ADA; (2) he can perform the essential functions of his position with an accommodation; (3) his employer had notice of the alleged disability; and (4) the employer failed to accommodate him. More Like This Headnote | *Shepardize*: Restrict By Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions

*HN8* ±A disability is defined as a physical or mental impairment that substantially limits one or more of a person's major life activities. 42 U.S.C.S. § 12102(2)(A). More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions

*HN9* ±Equal Employment Opportunity Commission regulations define the terms "substantially limits" to mean: (1) Unable to perform a major life activity that the average person in the general population can perform; or (2) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform the same major life activity. 29 C.F.R. § 1630.2(j). More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions

*HN10* ±Generally, courts have held that visual impairments must be severe in order to substantially limit the major life activity of seeing. A visual impairment which hinders, or makes it more difficult for an individual to function at a full visual capacity, does not amount to a substantial limitation on one's ability to see where the evidence suggests the individual can otherwise conduct activities requiring visual acuity. More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions

*HN11* ±A plaintiff attempting to establish disability on the basis of substantial limitation in the major life activity of working must, at minimum, allege that he or she is unable to work in a broad class of jobs. More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions

*HN12* ±Under 42 U.S.C.S. § 12102(2), the term "disability" means: (C) being regarded as having such an impairment. More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions

*HN13* ±A person is "regarded as" having a disability if the person: (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation; (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) Has no such impairment but is treated by a covered entity as having a substantially limiting impairment. More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions

*HN14* ±To be covered under the regarded as prong of the Americans with Disabilities Act, 42 U.S.C.S. § 12101 et seq., the employer must regard the employee to be suffering from an impairment within the meaning of the statutes, not just that the

employer believed the employee to be somehow disabled.  More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions 🗐
*HN15*⊥Temporary conditions or problems are not covered by the Americans with
    Disabilities Act, 42 U.S.C.S. § 12101 et seq., because, by definition, they do not
    substantially limit a major life activity.  More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions 🗐
*HN16*⊥The United States Supreme Court has held that the effect of corrective measures
    must be taken into account when judging whether that person is substantially
    limited in a major life activity and thus disabled under the Americans with
    Disabilities Act, 42 U.S.C.S. § 12101 et seq.  More Like This Headnote

Labor & Employment Law > Occupational Safety & Health > Civil Liability 🗐
*HN17*⊥The Occupational Safety and Health Act (OSHA), 29 U.S.C.S. § 651 et seq.,
    prohibits retaliation and provides a statutory procedure for aggrieved parties to
    pursue; however, there is no private right of action under OSHA for retaliation. 29
    U.S.C.S. § 660(c).  More Like This Headnote

Labor & Employment Law > Discrimination > Retaliation 🗐
*HN18*⊥To establish a prima facie case of retaliation under the Americans with Disabilities
    Act (ADA), 42 U.S.C.S. § 12101 et seq., or the Family and Medical Leave Act, 29
    U.S.C.S. § 2601 et seq., a plaintiff must show: (1) protected employee activity; (2)
    adverse action by the employer either after or contemporaneous with the
    employee's protected activity; and (3) a causal connection between the employee's
    protected activity and the employer's adverse action. If an employee establishes a
    prima facie case of retaliation under the ADA, the burden shifts to the employer to
    advance a legitimate, non-retaliatory reason for its adverse employment action. If
    the employer satisfies its burden, the plaintiff must be able to convince the fact
    finder both that the employer's proffered explanation was false, and that retaliation
    was the real reason for the adverse employment action.  More Like This Headnote |
    *Shepardize: Restrict By Headnote*

Labor & Employment Law > Discrimination > Retaliation 🗐
Civil Procedure > Summary Judgment > Burdens of Production & Proof 🗐
*HN19*⊥In the context of a retaliation claim, a plaintiff cannot prevent summary judgment
    through bare allegations that acts he disagreed with or disliked were
    retaliatory.  More Like This Headnote

Labor & Employment Law > Leaves of Absence > Family & Medical Leave 🗐
*HN20*⊥29 U.S.C.S. § 2612(a)(1) allows 12 work weeks of leave during a 12 month
    period.  More Like This Headnote

Labor & Employment Law > Leaves of Absence > Family & Medical Leave 🗐
*HN21*⊥The Family and Medical Leave Act, 29 U.S.C.S. § 2601 et seq., simply leaves no
    room for recovery when an employee does not sustain economic loss during the
    period of his or her employment.  More Like This Headnote

Contracts Law > Consideration > Promissory Estoppel 🗐
Contracts Law > Formation > Detrimental Reliance 🗐
*HN22*⊥To succeed on a claim for promissory estoppel, a plaintiff must prove: (1) the
    making of a promise; (2) with the intent to induce action or forbearance based on
    the promise; (3) reasonable reliance; and (4) injury. The asserting party must be
    able to prove the elements of promissory estoppel by clear and convincing

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 23941

Case 1:04-cv-00285-KAJ    Document 83-5    Filed 12/07/2005    Page 28 of 38

Page 5 of 15

evidence. Moreover, the promise, in such a case, must be definite and certain. More Like This Headnote

Contracts Law > Consideration > Promissory Estoppel 🔊
Contracts Law > Formation > Detrimental Reliance 🔊
HN23⤓Promissory estoppel cannot be predicated upon a promise to do that which the promisor is already obliged to do. More Like This Headnote

**COUNSEL:** Paul Phillips, Pro se, Plaintiff.

Richard Pell, Esquire of TYBOUT, REDFEARN & PELL, Wilmington, Delaware.

Of Counsel: Gary M. Smith and Kristine K. Kraft, Esquires of LEWIS, RICH & FINGERSH, L.C., St. Louis, Missouri. Attorneys for Defendant.

**JUDGES:** JOSEPH J. FARNAN, JR., UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** JOSEPH J. FARNAN, JR.

**OPINION: MEMORANDUM OPINION**

Wilmington, Delaware

**FARNAN, District Judge**

Pending before the Court is Defendant DaimlerChrysler Corporation's Motion for Summary Judgment (D.I. 50). For the reasons discussed below, the Motion will be granted.

**I. BACKGROUND**

Plaintiff Paul Phillips is a former hourly employee of DaimlerChrysler who worked at the Newark assembly plant. Plaintiff was a member of Local UAW 1183 throughout his employment at DaimlerChrysler. DaimlerChrysler and Local UAW 1183 have entered into a collective bargaining agreement ("CBA") regarding the terms and conditions of employment at the plant.

In 1991, Plaintiff was diagnosed with keratoconus, a condition which affects the shape of the cornea and causes vision problems. **[*2]** (D.I. 52, Tab 17). Plaintiff notified Defendant that he had been diagnosed with keratoconus and should avoid exposure to volatile solvents. Consequently, Defendant's plant physician gave Plaintiff a medical restriction, called a Physical Qualification Code ("PQX"), of 150, which limits exposure to volatile solvents.

In 1992, Plaintiff had a cornea transplant in his left eye. (D.I. 52, Tab 13). Subsequently, Plaintiff underwent repeated attempts to have rigid gas permeable plastic contact lenses fitted to help correct his vision. (Id.). Plaintiff's uncorrected vision is 20/100 in the right eye and 20/70 in the left eye. (Id. at A42).

On January 19, 1999, Plaintiff filed for leave under the Family Medical Leave Act ("FMLA") to undergo a six month course of treatment to alleviate vision problems related to his keratoconus. (D.I. 52, Tab 3).

On May 7, 1999, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Delaware Department of Labor ("DDOL") alleging that Defendant discriminated against him from February 1999 to April 1999, on the basis of

Case 1:04-cv-00285-KAJ   Document 83-5   Filed 12/07/2005   Page 29 of 38

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 23941   Page 6 of 15

his visual disability. (D.I. 52, Tab 9).

On October 15, 1999, Plaintiff filed **[*3]** a Charge of Discrimination with the EEOC and the DDOL alleging that Defendant retaliated against him for filing the May 7, 1999, Charge of Discrimination. (D.I. 52, Tab 13).

On June 19, 2001, Plaintiff filed a six-count Second Amended Complaint (D.I. 13) alleging racial discrimination in violation of the Civil Rights Act of 1964 ("Title VII") (Count I) and 42 U.S.C. § 1981 (Count II), disability discrimination in violation of the Americans with Disabilities Act ("ADA") (Count III), retaliation under Title VII, the Occupational Safety and Health Act ("OSHA"), and the FMLA (Count IV), violation of the FMLA (Count V), and a common law claim of detrimental reliance (Count VI). Defendant now moves for summary judgment on all counts.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) *HN1*⚓provides that a party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c) **[*4]** .

*HN2*⚓In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. Valhal Corp. v. Sullivan Assocs., Inc., 44 F.3d 195, 200 (3d Cir. 1995). However, a court should not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000).

*HN3*⚓To defeat a motion for summary judgment, Rule 56(c) requires the non-moving party to show that there is more than:

> some metaphysical doubt as to the material facts ... In the language of the Rule, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial ... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986) (citations and punctuation omitted). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court **[*5]** to deny summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

## III. DISCUSSION

## A. COUNT I: TITLE VII

Plaintiff, a black male, contends Defendant racially discriminated against him in violation of Title VII; he contends he was denied three job assignments that were given to white employees.

In response, Defendant first contends that Plaintiff failed to exhaust his race discrimination

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 23941

Case 1:04-cv-00285-KAJ    Document 83-5    Filed 12/07/2005    Page 30 of 38

Page 7 of 15

claim under Title VII because he never filed an administrative charge with the EEOC regarding race discrimination. Defendant also contends Plaintiff has not established a prima facie case of disparate treatment under Title VII. Even assuming he did, Defendant contends it denied Plaintiff the three job assignments for legitimate nondiscriminatory reasons: PQX placement requirements and seniority requirements under the CBA.

Title VII *HN4* requires a claimant to file an administrative charge within 300 days of the claimed discriminatory event. 42 U.S.C. § 2000e-5(e)(1). Plaintiff filed two charges with the DDOL and EEOC, one for disability discrimination and one for retaliation. (D.I. 52, Tab 9, 13). Neither contained **[*6]** any reference to racial discrimination. Id. However, Plaintiff did check the "race" box on DDOL's intake questionnaire, (D.I. 58, Ex. G), and now argues that the intake questionnaire satisfies Title VII's exhaustion requirement. As Defendant points out in its Reply Brief (D.I. 61), the intake questionnaire does not serve the same function as the charge and therefore does not satisfy Title VII's exhaustion requirement. The Court finds the reasoning in Rogan v. Giant Eagle, Inc., persuasive:

> If we made the allegations in the intake questionnaire part of the charge itself, and therefore permitted the plaintiff to pursue claims made only in the questionnaire and not investigated by the EEOC, we would be circumventing the role of the Commission as well as depriving the defendant of notice of all claims against it.

113 F. Supp. 2d 777, 788 (W.D. Pa. 2000) (concluding plaintiff failed to exhaust her administrative remedies where claims of harassment and retaliation were included in intake questionnaire but omitted from charge); see also Park v. Howard Univ., 315 U.S. App. D.C. 196, 71 F.3d 904, 909 (D.C. Cir. 1995).

In the instant case, **[*7]** Plaintiff reviewed and signed both charges, and neither charge contained any reference to race discrimination. Therefore, until the filing of this lawsuit, Defendant received no notice that Plaintiff had made allegations of race discrimination. Moreover, because neither charge mentioned race discrimination, the EEOC did not investigate whether race discrimination occurred. See EEOC Determination Re: Charge 17C990322 & 17CA00024. Because of the omission of any allegation of race discrimination from the charge, neither purpose served by the charge was achieved. For these reasons, the Court concludes that Plaintiff has not satisfied Title VII's exhaustion requirement, and therefore, the Court will grant summary judgment as to Count I.

## B. COUNT II: SECTION 1981

Plaintiff contends Defendant racially discriminated against him in violation of 42 U.S.C. § 1981; he contends he was denied three job assignments that were given to white employees. Plaintiff also contends that Defendant's racial discrimination caused his constructive discharge.

Plaintiff has admitted that two of the denied transfers - involving the window bailey job (July 1998) and the park **[*8]** brake grommet job (March 1999) - occurred before April 30, 1999, (D.I. 62 at Cll.1-11.2, C16-17) or two years before Plaintiff first alleged a Section 1981 claim in his first Amended Complaint (D.I. 5). The Court therefore concludes that Plaintiff's Section 1981 claim as to these two events is time barred. See Hall v. Bell Atlantic Corp., 152 F. Supp. 2d 543, 552 (D. Del. 2001) *HN5* (noting that Section 1981 claims are subject to the

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 23941

Case 1:04-cv-00285-KAJ    Document 83-5    Filed 12/07/2005    Page 31 of 38
Page 8 of 15

two-year statute of limitations of 10 Del. C. § 1981).

The third assignment denied to Plaintiff was the wiring harness job, which was filled by Edda Clayton in July 1999. *HN6* To establish a prima facie case of race discrimination based on a failure to transfer, a plaintiff must demonstrate: 1) that he is a member of a protected class; 2) that he applied for, was qualified for, and was denied the position sought; and 3) circumstances that give rise to an inference of discrimination. Stewart v. Rutgers, The State Univ., 120 F.3d 426, 432 (3d Cir. 1997); Walker v. Pepsi-Cola Bottling Co., 2000 U.S. Dist. LEXIS 12635, No. 898-225-SLR, 2000 WL 1251906, at *14 (D. Del. Aug. 10, 2000).

Defendant contends Plaintiff has not established a prima **[*9]** facie case, and even if he has, advances a legitimate, non-discriminatory reason for not placing Plaintiff in the wiring harness job. Defendant contends it was complying with specific placement procedures set for in the CBA for employees with PQX restrictions when it denied Plaintiff's assignment request.

Paragraph Fifteen of Defendant's Statement of Undisputed Facts asserts, "an employee with PQX restrictions never has the right to select their job and the PQX committee does not consult with the employee about potential job assignments before assigning the employee to a job that is consistent with the employee's restrictions." (D.I. 51 at 5). In Paragraph Fifteen of his Affidavit, Plaintiff responds, "I do agree with the statements made in paragraph 15 of the Statement of Undisputed Facts." (D.I. 58, Ex. C at 9). Therefore, it is uncontested that Plaintiff, who is an employee with PQX restrictions, never had the right to select his job. Defendant denied Plaintiff's request because he had no right to make such a request under the PQX assignment procedures of the CBA. Accordingly, the Court concludes that Defendant had a legitimate, non-discriminatory reason for denying Plaintiff's **[*10]** assignment request. n1 Because Plaintiff has not, as a matter of law, demonstrated that Defendant racially discriminated against him, Plaintiff's claim that he was constructively discharged because of Defendant's racially discriminatory acts must also fail. See e.g., Gaul v. Lucent Technologies, Inc., 134 F.3d 576, 581 (3d Cir. 1998) (holding that because disability discrimination claim failed, constructive discharge claim based on same events must necessarily fails). Therefore, the Court will grant summary judgment as to Count II.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Despite the fact that Plaintiff had no right to select his job, and even though he asserts his request for transfer was denied in July 1999, he was transferred to the wire transfer job in August 1999. See Deposition of Paul Phillips (D.I. 52, Tab 20 at A115-17) (Plaintiff testified that he worked the wire harness job from August 1999 to November 1999).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## C. COUNT III: ADA

In Plaintiff's Second Amended Complaint, he alleges that "Defendant failed to provide **[*11]** reasonable accommodations to plaintiff based on plaintiff's disability." (D.I. 13, P 49). The ADA *HN7* mandates that employers provide "a reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). To establish a prima facie case of failure to accommodate, Plaintiff must prove: (1) he is an individual with a disability under the ADA; (2) he can perform the essential functions of his position with an accommodation; (3) his employer had notice of the alleged disability; and (4) the employer failed to accommodate him. Conneen v. MBNA America Bank, 182 F. Supp. 2d 370, 378-9 (D. Del. 2002).

In Defendant's Opening Brief (D.I. 51), it contends Plaintiff cannot establish elements one

and four of the prima facie case. Specifically, as to element one, Defendant contends that Plaintiff is not disabled because he does not have $^{HN8}$"a physical or mental impairment that substantially limits one or more of [his] major life activities." 42 U.S.C. § 12102(2)(A).

There is no dispute that Plaintiff's keratoconus is a "physical impairment" and that [*12] seeing is a "major life activity." The issue is whether Plaintiff's keratoconus "substantially limits" his ability to see. $^{HN9}$"EEOC regulations define the terms "substantially limits" to mean:

> i. Unable to perform a major life activity that the average person in the general population can perform; or
> ii. Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform the same major life activity.

29 CFR § 1630.2(j). $^{HN10}$"Generally, courts have held that visual impairments must be severe in order to substantially limit the major life activity of seeing. See e.g., Overturf v. Penn Ventilator Co., Inc., 929 F. Supp. 895, 898 (E.D. Penn. 1996) (holding plaintiff was not substantially limited in seeing despite double vision and lack of peripheral vision where he was able to drive a car, watch television, read, and work).

> A visual impairment which hinders, or makes it more difficult for an individual to function at a full visual capacity, does [*13] not amount to a substantial limitation on one's ability to see where the evidence suggests the individual can otherwise conduct activities requiring visual acuity.

Person v. Wal-Mart Stores Inc., 65 F. Supp. 2d 361, 364 (E.D.N.C. 1999) (quoting Cline v. Fort Howard Corp., 963 F. Supp. 1075, 1080 (E.D. Okla. 1997).

In the instant case, Plaintiff's keratoconus does not prevent him from attending college classes (D.I. 52 at A46-47), working a veriety of jobs (Id. at A48-64), caring for himself (Id. at A71-74), or driving (Id. at A74-75). Therefore, the Court concludes that Plaintiff is not substantially limited in the major life activity of seeing.

$^{HN11}$"A plaintiff attempting to establish disability on the basis of substantial limitation in the major life activity of working must, at minimum, allege that he or she is unable to work in a broad class of jobs." Tice v. Centre Area Transp. Authority, 247 F.3d 506, 512 (3d Cir. 2001) (quoting Sutton v. United Air Lines, Inc., 527 U.S. 471, 492-93, 144 L. Ed. 2d 450, 119 S. Ct. 2139 (1999)). In the instant case, Plaintiff's keratoconus prevents him only from working around [*14] volatile solvents. Plaintiff has performed many different jobs at DaimlerChrysler and has also been employed as a teacher, computer technician, mail sorter, furniture delivery person, United States Census Bureau enumerator, electrician, and salesperson (D.I. 52 at A48-64). Because Plaintiff's keratoconus does not prevent him from working in a broad class of jobs, the Court concludes Plaintiff is not substantially limited in the major life activity of working and, accordingly, also concludes that Plaintiff is not disabled within the meaning of 42 U.S.C. § 12102(2)(A).

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 23941

Case 1:04-cv-00285-KAJ    Document 83-5    Filed 12/07/2005    Page 33 of 38

Page 10 of 15

Plaintiff, in his Answer Brief (D.I. 58), abandons the allegation that he is disabled within the meaning of 42 U.S.C. § 12102(2)(A); rather, for the first time in the litigation, n2 he contends that he is disabled under the "regarded as" prong of the ADA's definition of disabled. See 42 U.S.C. § 12102(2)(^HN12^"The term "disability" means ... (C) being regarded as having such an impairment.). Plaintiff contends that Defendant twice assigned him a PQX of 190, meaning that he was physically unable to work anywhere in the plant for safety reasons. Plaintiff **[\*15]** contends these designations were unwarranted and demonstrate that Defendant regarded him as disabled.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Defendant, relying on Krouse v. American Sterilizer Co., 126 F.3d 494 (3d Cir. 1997), contends that the Court should bar Plaintiff from asserting this new argument because it was not alleged in his Complaint. In Krouse, the court stated that, "although a complaint's allegations are to be construed favorably to the pleader, we will not read causes of action into a complaint when they are not present. The ADA is one statutory scheme, but it provides more than one cause of action. Where, as here, a plaintiff asserts a cause of action for retaliation ... we will not find an implicit cause of action for failure to accommodate." Id. at 499. In Plaintiff's Complaint, he alleged that Defendant failed to accommodate him. Plaintiff's new argument asserts a different definition of disabled but is to a new, unpled cause of action. If employers are not required to provide reasonable accommodation to employees regarded as disabled, which is currently an open question in the Third Circuit, see Deane v. Pocono Med. Ctr., 142 F.3d 138, 148-49 n.12 (3d Cir. 1998) (en banc), then Plaintiff's failure to allege in his Complaint that he was discriminated against because he was "regarded as" disabled could bar him from raising such an argument at this late stage of the proceedings. However, because employers may be required to reasonably accommodate employees regarded as disabled, see Katz v. City Metal Co., 87 F.3d 26 (1st Cir. 1996), and because the issue arises on summary judgment, the Court concludes that Plaintiff will be permitted to raise the new argument.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*16]**

Defendant contends it temporarily assigned Plaintiff a PQX of 190 in response to complaints by Plaintiff that he was having problems seeing. Defendant further contends that the PQX 190 designations indicated that Plaintiff could not work until he received medical treatment that would allow him to safely return to work. (D.I. 52 at A112.1). Defendant asserts that it did not regard Plaintiff as disabled within the meaning of the ADA; instead, it perceived Plaintiff as being temporarily unable to perform the essential functions of his job. Defendant contends that temporary impairments are not cognizable disabilities under the ADA, and thus, it did not violate the statute.

^HN13^A person is "regarded as" having a disability if the person:

(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation; (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) Has [no such impairment] but is treated by a covered entity as having a substantially limiting impairment.

Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 187 (3d Cir.1999) **[\*17]** (quoting 29 C.F.R. § 1630.2(l)) (brackets in original).

HN14🔑"To be covered under the regarded as prong of the ADA the employer must regard the employee to be suffering from an impairment within the meaning of the statutes, not just that the employer believed the employee to be somehow disabled." Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 381 (3d Cir. 2002)(internal quotation marks and citations omitted).

Viewing the facts in the light most favorable to Plaintiff, the Court concludes that Defendant did not regard Plaintiff as disabled within the meaning of the ADA. Plaintiff's diagnosis of keratoconus is not what caused Defendant to assign Plaintiff the PQX 190 code. After being diagnosed with keratoconus, Plaintiff worked for Defendant in a wide variety of jobs over the course of several years. In 1999, Defendant regarded Plaintiff's visual problems resulting from ill-fitting remedial contacts as a safety issue and accordingly assigned him a temporary PQX 190 code that prevented him from returning to work until he had the problem corrected. HN15🔑Temporary conditions or problems are not covered by the ADA because, by definition, they do not substantially **[\*18]** limit a major life activity. Rhett v. Carnegie Ctr. Assocs.(In re Carnegie Ctr. Assocs.), 129 F.3d 290, 303 (3d Cir. 1997)(collecting cases). Defendant did not regard Plaintiff as substantially limited in a major life activity because it viewed Plaintiff's condition as temporary and correctable. In fact, Defendant removed the first PQX 190 designation after Plaintiff was treated by his doctor, and Plaintiff was able to return to work. (D.I. 52 at A113-14). Following the second PQX 190 designation, Defendant's physicians examined Plaintiff several times to assess his ability to return to work. (Id. at A124-125). These facts demonstrate the temporary nature of the PQX 190 designation. Rinehimer explains that for an employee to be regarded as disabled, an employer must believe not just that he has an impairment, but that he has an impairment that rises to the level of a cognizable disability under the ADA. Because the PQX 190 designation was temporary, the Court concludes that Defendant's actions do not demonstrate that it regarded Plaintiff as disabled under the ADA.

The Court further concludes that Defendant did not regard Plaintiff as disabled under the ADA because it viewed Plaintiff's **[\*19]** problem as correctable. HN16🔑The United States Supreme Court has held that the effect of corrective measures "must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act." Sutton v. United Air Lines, Inc., 527 U.S. 471, 482, 144 L. Ed. 2d 450, 119 S. Ct. 2139 (1999). Plaintiff's medical records indicate that properly fitted contact lenses increased his visual acuity, but that he had problems wearing them because of irritation. (D.I. 52 at A30-33). At no point prior to Plaintiff's resignation from Defendant did he provide Defendant with documentation that he could not be fitted with contact lenses. (Id. at A219). Therefore, the Court concludes that Defendant regarded Plaintiff as having vision problems that could be alleviated with contacts and thus did not regard Plaintiff as having an impairment that rose to the level of a disability under the ADA.

Because the Court concludes that Plaintiff is not disabled within the meaning of 42 U.S.C. § 12102(2)(A) or (C), the Court will grant summary judgment as to Count III.

### D. COUNT IV: RETALIATION

By his Second Amended Complaint, **[\*20]** Plaintiff alleges Defendant unlawfully retaliated against him for filing a complaint with OSHA, for filing a charge of discrimination with the EEOC, and for filing for leave under the FMLA.

OSHA [HN17] prohibits retaliation and provides a statutory procedure for aggrieved parties to pursue; however, there is no private right of action under OSHA for retaliation. 29 U.S.C. § 660(c); Taylor v. Brighton Corp., 616 F.2d 256, 257 (6th Cir. 1980). Therefore, the Court will grant summary judgment as to Plaintiff's OSHA retaliation claim.

[HN18] To establish a prima facie case of retaliation under the ADA or the FMLA, Plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. Krouse v. American Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997). "If an employee establishes a prima facie case of retaliation under the ADA, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action." Id. [*21] "If the employer satisfies its burden, the plaintiff must be able to convince the fact finder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." Id. at 501.

After examining all of Plaintiff's submissions, which are not a model of clarity, the Court has attempted to extract what it believes are the retaliatory acts complained of by Plaintiff. First, Plaintiff contends he was placed in the A/C Bolt-down job in retaliation for "making claims of racial and disability discrimination." (D.I. 58, Ex. C, P 12). Plaintiff was assigned to the A/C Bolt-down job in February/March 1999. (D.I. 52 at A20, A215). Plaintiff filed his first charge of discrimination in April 1999. (D.I. 52, Tab 13). Thus, the alleged retaliation occurred before the protected activity of filing a charge of discrimination. The Court concludes that Plaintiff's contention regarding his assignment to the A/C Bolt-down job does not satisfy element two of the prima facie case, which requires that the retaliation occur after the protected activity.

Second, Plaintiff contends he was placed in the A/C Bolt-down job in retaliation [*22] for filing for leave under the FMLA on January 19, 1999. Defendant contends that Plaintiff was placed in the A/C Bolt-down job in February/March 1999 through the PQX placement procedures set forth in the CBA. (D.I. 52 at A92, A215)("Q: And you understood at the time that you were placed in the A/C Bolt-down job based on your PQX restrictions; right? A: [by Plaintiff] Yes."). The Court finds that the following facts regarding Plaintiff's placement in the A/C Bolt-down job are uncontested. The A/C Bolt-down job involved bolting air conditioners onto vehicles with an air gun. (Id. at A93-94). The internal components of the air gun are lubricated with Tribol ATO 100 LS lubricating oil. (Id. at 215-16). While working the A/C Bolt-down job, Plaintiff complained that oil mist from the air gun irritated his eyes. In response to Plaintiff's complaints, Defendant issued Plaintiff safety goggles and a cloth to wrap around the handle of the air gun. (Id. at A10, A99). Plaintiff subsequently informed Defendant that the goggles were insufficient, and Defendant provided Plaintiff with a full face shield to wear, which enabled Plaintiff to perform the job. (Id. at A101-02). Also [*23] in response to Plaintiff's complaints about the A/C Bolt-down job, Defendant's plant physician and Director of Safety physically examined the requirements of the A/C Bolt-down job and confirmed the job was within Plaintiff's PQX restrictions. (Id. at A217). Additionally, Defendant had an industrial hygienist take air samples while Plaintiff was working on the A/C Bolt-down job. The tests confirmed that the hydrocarbons in the air were within permissible exposure limits. (Id. at A218, A239-41). After further complaints about the A/C Bolt-down job by Plaintiff, Defendant transferred him to the Wire Harness job in August 1999. (Id. at A118). Plaintiff admitted in his deposition that he had no difficulty performing the Wire Harness job. (Id.). Based on the fact that the assignment comported with Plaintiff's PQX restrictions, the Court is unconvinced that Plaintiff's transfer to the A/C Bolt-down job was an adverse employment action and, even if it was, is also unconvinced that there was a causal connection between Plaintiff's application for FMLA leave and the transfer. Plaintiff relies solely on the temporal proximity between his application and the transfer, which is [*24] insufficient to establish a causal connection, particularly in light of Defendant's repeated attempts to accommodate Plaintiff's complaints about the position. The Court concludes that Plaintiff has not

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 23941

Case 1:04-cv-00285-KAJ   Document 83-5   Filed 12/07/2005   Page 36 of 38

Page 13 of 15

demonstrated that Defendant's proffered reason for the transfer was pretextual or animated by a retaliatory motive.

Third, Plaintiff contends that he was laid off on June 17, 1999, in retaliation for filing a charge of discrimination with the EEOC on April 19, 1999. (D.I. 52, Tab 13). In response, Defendant contends that there is no causal connection between the two events and that Plaintiff elected lay-off after being assigned a PQX of 190 for vision problems. Other than temporal proximity, Plaintiff offers no facts to demonstrate that there was causal connection between the filing of the charge and his layoff. Moreover, Defendant's legitimate, non-discriminatory reason for the layoff is confirmed by Plaintiff in his deposition. Plaintiff testified that the plant physician noticed he was having eye problems, assigned him a PQX 190 code, which barred him from working in the plant for safety reasons, and sent him for medical treatment. (D.I. 52 at A112.1). Plaintiff's private doctor [*25] treated him for corneal graph rejection. (Id. at A113). During treatment, Plaintiff was unable to work and elected layoff rather than disability. (Id. at A114). Once treatment was complete, the plant physician removed the PQX 190 code and allowed him to return to work on July 14, 1999. (Id.). Because the uncontroverted facts show that Plaintiff's June 17, 1999, layoff was not pretextual, the Court concludes that Plaintiff's retaliation claim must fail.

In addition to the specific actions addressed above, Plaintiff also suggests many times throughout his affidavit that Defendant's actions or inactions were retaliatory. However, Plaintiff, in the two-paragraph retaliation section of his brief (filed through counsel), submits only that "if anything comes through the facts set forth by both parties in their briefs, it is the concept of retaliation." (D.I. 58 at 8). Plaintiff's brief does not address how any specific acts of Defendant satisfy the elements of the prima facie case to establish retaliation. It is unclear to the Court what protected activity, if any, the alleged acts were in retaliation for and what connection, if any, the alleged acts had to such activity. HN19⊤Plaintiff [*26] cannot prevent summary judgment through bare allegations that acts he disagreed with or disliked were retaliatory. See e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). For all of the above reasons, the Court will grant summary judgment as to Count IV.

### E. COUNT V: FMLA

Plaintiff alleges that Defendant violated the FMLA by refusing to grant him continuous leave instead of intermittent leave. (D.I. 13, P 57). Plaintiff applied for leave to accommodate a six month course of treatment related to his contact lenses. (D.I. 52, Tab 3). Plaintiff was aware that the FMLA would only allow him to take approximately three months of continuous leave, which was insufficient for the required treatment. (D.I. 52 at A89-90); see also 29 U.S.C. § 2612(a)(1)(HN20⊤allowing twelve work weeks of leave during twelve-month period). Thus, if Defendant granted Plaintiff continuous leave, he would not have been able to complete his treatment.

Plaintiff's contention that Defendant violated the FMLA by granting him intermittent leave is without merit for three reasons: (1) Plaintiff accepted the intermittent leave and now unreasonably [*27] complains it was unacceptable; (2) Plaintiff did not address the FMLA issue in his Response Brief (D.I. 58) and thus is resting on the bare allegations in the Second Amended Complaint (D.I. 13); and (3) Plaintiff suffered no wage loss during his employment with Defendant due to the alleged FMLA violation and thus is not entitled to any relief. 29 U.S.C. § 2617(a)(1); Lapham v. Vanguard Cellular Sys., Inc., 102 F. Supp. 2d 266, 269-70 (M.D. Pa. 2000) HN21⊤(the FMLA "simply leaves no room for recovery when an employee does not sustain economic loss during the period of his or her employment."). Therefore, the Court will grant summary judgment as to Count V.

### F. COUNT VI: DETRIMENTAL RELIANCE

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 23941

Case 1:04-cv-00285-KAJ   Document 83-5   Filed 12/07/2005   Page 37 of 38

Page 14 of 15

In Plaintiff's Second Amended Complaint, he alleges that he "relied to his detriment upon the many representations of defendant that defendant could and would accommodate his disability" and that these representations "caused him to forego other employment opportunities ...." (D.I. 13 at 11). In his deposition, Plaintiff stated that he was offered a job at General Motors in 1993 (D.I. 52 at A62-62.1) and could have kept working at Info Systems in 1994 ( **[*28]** Id. at A60.1-61).

Although Plaintiff labels his claim as one based on detrimental reliance, it is more appropriately characterized as a claim for promissory estoppel. *HN22* To succeed on a claim for promissory estoppel, "a plaintiff must prove: (1) the making of a promise; (ii) with the intent to induce action or forbearance based on the promise; (iii) reasonable reliance; and (iv) injury." Brooks v. Fiore, 2001 U.S. Dist. LEXIS 16345, 2001 WL 1218448, at *5 (D. Del. Oct. 11, 2001)(citing Scott-Douglas Corp. v. Greyhound Corp., 304 A.2d 309, 319 (Del. Super. 1973)). "The asserting party must be able to prove the[] elements of promissory estoppel by clear and convincing evidence. Moreover, the promise, in such a case, must be definite and certain." Continental Ins. Co. v. Rutledge & Co., Inc., 750 A.2d 1219, 1233 (Del. Ch. 2000).

Defendant contends Plaintiff has not pointed to any promise that could support a promissory estoppel claim. Defendant further contends Plaintiff provides no evidence that Defendant intended to induce Plaintiff's reliance or that Plaintiff reasonably relied on Defendant's representations.

The Court concludes that Plaintiff's promissory **[*29]** estoppel claim fails as a matter of law. Plaintiff, resting on his pleadings, alleges that he detrimentally relied on Defendant's statement that it would accommodate his disability. However, *HN23* "promissory estoppel cannot be predicated upon a promise to do that which the promisor is already obliged to do," and Defendant is legally required to accommodate disabled employees. Brooks, 2001 U.S. Dist. LEXIS 16345, 2001 WL 1218448, at *6 (citing Danby v. Osteopathic Assn. of Delaware, 34 Del. Ch. 427, 104 A.2d 903, 907 (Del. Super. 1954)). Therefore, Defendant's alleged statement is not an actionable promise. Accordingly, the Court will grant summary judgment as to Count VI.

## IV. CONCLUSION

For the reasons discussed, Defendant DaimlerChrysler Corporation's Motion for Summary Judgment (D.I. 50) will be granted.

An appropriate Order will be entered.

## ORDER

At Wilmington this 27th day of March 2003, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendant DaimlerChrysler Corporation's Motion for Summary Judgment (D.I. 50) is **GRANTED.**

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT **[*30]** JUDGE

Service: **Get by LEXSEE®**

Citation: **2003 us dist lexis 23941**
View: Full
Date/Time: Tuesday, November 22, 2005 - 2:45 PM EST

* Signal Legend:
  - Warning: Negative treatment is indicated
  [Q] - Questioned: Validity questioned by citing refs
  ⚠ - Caution: Possible negative treatment
  ✦ - Positive treatment is indicated
  - Citing Refs. With Analysis Available
  - Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.