Service: **Get by LEXSEE®**
Citation: **2001 us dist lexis 15760**

*2001 U.S. Dist. LEXIS 15760, \**

MILTON RISEMAN v. ADVANTA CORP., et al.

98-CV-6671

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2001 U.S. Dist. LEXIS 15760

September 7, 2001, Decided
September 12, 2001, Filed

**DISPOSITION:  [\*1]** Defendants' Motion for Judgment as a Matter of Law (Docket Entry # 171) DENIED. Defendants' Motion for New Trial (Docket Entry # 172) DENIED. Plaintiff's Motion for New Trial (Docket Entry # 174) DENIED.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff former employee sued defendant employer for age discrimination, retaliation, breach of contract, detrimental reliance, and violation of the state wage payment statute. The jury returned a verdict in favor of the employee except for his age discrimination claim. The employer moved for judgment as a matter of law and for a partial new trial, and the employee moved for a partial new trial.

**OVERVIEW:** The jury found that, although no age discrimination occurred, the employee was terminated from his executive position in retaliation for his complaint of discrimination. The jury also determined that the employer willfully and wrongfully withheld bonus payments due to the employee and awarded substantial damages. The district court held that the evidence permitted inferences supporting each of the jury's findings. The termination of the employee, and the denial of payments, supported the finding of retaliation and, although entitlement to the bonuses was discretionary to some extent, it was permissible to find that the employer breached its contractual duty of good faith in denying the bonuses. Further, evidence that the employee improved his performance in reliance on the bonus promises was sufficient to support a finding of detrimental reliance. Finally, the damages awarded by the jury, including back pay, front pay, and liquidated damages under the state statute were supported by the employer's wrongful withholding of payments and termination of the employee, and the substantial amount awarded did not shock the conscience.

**OUTCOME:** The employer's motions for judgment as a matter of law and for a new trial were denied, and the employee's motion for a new trial was denied.

**CORE TERMS:** bonus, new trial, front, wage, matter of law, bonuses, detrimental reliance, retaliation, breach of contract, age discrimination, contractual, severance, salary, reinstatement, terminated, negligent misrepresentation, mortgage, age-discrimination, fringe benefits, waived, fired, jury awarded, protected activity, fair dealing, communicated, conscience, feasible, shock, equitable remedy, sole discretion

### LexisNexis(R) Headnotes ✦ Hide Headnotes

Civil Procedure > Trials > Judgment as Matter of Law 

*HN1* Failure to move for a directed verdict at the close of all evidence forecloses the
defendant from renewing a Fed. R. Civ. P. 50 motion after the verdict has been
rendered.  More Like This Headnote

Civil Procedure > Trials > Judgment as Matter of Law
*HN2* Failure to move for a directed verdict at the close of all evidence wholly waives the
right to mount any post-trial attack on the sufficiency of the
evidence.  More Like This Headnote

Civil Procedure > Trials > Judgment as Matter of Law
*HN3* Judgment as a matter of law appropriate only where the record is critically
deficient of that minimum quantum of evidence from which a jury might reasonably
afford relief. A court must review the record in the light most favorable to the verdict
winner, resolving all conflicts in the evidence in his favor. After giving the prevailing
party the benefit of every fair and reasonable inference, the motion must be denied
unless the evidence is insufficient to support the verdict.  More Like This Headnote

Contracts Law > Contract Interpretation > Good Faith & Fair Dealing
*HN4* Under the covenant of good faith and fair dealing, every contract imposes upon each
party a duty of good faith and fair dealing in its performance and its enforcement.
This implied duty may be breached where there is interference with or failure to
cooperate in the other party's performance.  More Like This Headnote

Contracts Law > Contract Interpretation > Ambiguities & Contra Proferentem
*HN5* If the relevant terms in a contract are ambiguous, the issue must go to a
jury.  More Like This Headnote

Contracts Law > Contract Interpretation > Ambiguities & Contra Proferentem
*HN6* Written contracts must be construed against the drafter, especially where the drafter
is a sophisticated commercial entity.  More Like This Headnote

Contracts Law > Contract Interpretation > Good Faith & Fair Dealing
*HN7* It is a principle of fundamental justice that if a promisor is himself the cause of the
failure of performance of a condition upon which his own liability depends, he cannot
take advantage of the failure.  More Like This Headnote

Civil Procedure > Relief From Judgment > Motions for New Trial
*HN8* A motion for new trial based upon the weight of the evidence is entitled to great
scrutiny because it invites the court to substitute its judgment for that of the jury.
Such a motion may be granted only if the court, in its discretion, finds that the jury's
verdict represents a miscarriage of justice, or cries out to be overturned because it
shocks the conscience.  More Like This Headnote

Civil Procedure > Relief From Judgment > Motions for New Trial
*HN9* A motion for new trial is imbued with constitutional dimensions. If the verdict winner
sets forth even a minimally plausible or conceivable way of reconciling the jury's
answers, the court is constitutionally bound to deny the motion.  More Like This Headnote

Constitutional Law > Trial by Jury in Civil Actions
*HN10* Because new trials effect a denigration of the jury system and usurp the prime
function of the jury as the trier of the facts, the constitutional guarantees of the
Seventh Amendment have particular force when a losing party attacks the weight of
the evidence.  More Like This Headnote

Civil Procedure > Jury Trials > Province of Court & Jury

*HN11* A damages verdict will be affirmed if there is any view of the case which reconciles the jury's various answers.  More Like This Headnote

Civil Procedure > Jury Trials > Province of Court & Jury

*HN12* In reviewing the jury's verdict in favor of plaintiff, the trial court may not speculate as to what the jurors were really trying to do, or weigh the reasonableness of defendant's view of the evidence against plaintiff's view. If plaintiff's view is conceivable, the jury's verdict may not be disturbed.  More Like This Headnote

Civil Procedure > Jury Trials > Province of Court & Jury

*HN13* The law does not command mathematical precision in ascertaining damages from the evidence. When a jury restores a victim to the economic position he would otherwise have occupied, any imprecision in damages must be borne by the wrongdoer.  More Like This Headnote

Civil Procedure > Jury Trials > Province of Court & Jury

*HN14* A court will not inquire into the calculation methods employed by the jury during its deliberations. Instead, a court must assume that the jury acted rationally, followed the court's instructions and arrived at a verdict based on those instructions.  More Like This Headnote

Civil Procedure > Jury Trials > Province of Court & Jury

*HN15* It is for the court to decide whether reinstatement is feasible and, if not, whether front pay should be awarded in lieu of reinstatement. However, once the court decides that reinstatement is not feasible, the amount of damages to be awarded as front pay becomes a jury question.  More Like This Headnote

Labor & Employment Law > Wrongful Termination > Remedies

*HN16* A monetary substitute for the equitable remedy of reinstatement, front pay is designed to restore the victim of an employer's unlawful conduct to the position he would have otherwise occupied.  More Like This Headnote

Civil Procedure > Jury Trials > Jury Instructions

*HN17* Where an objection to a jury charge has been preserved, the court must ask whether the charge, taken as a whole, properly apprises the jury of the issues and the applicable law.  More Like This Headnote

Labor & Employment Law > Wage & Hour Laws > Wage Payments

*HN18* See 43 Pa. Cons. Stat. § 260.5(a).

Labor & Employment Law > Wage & Hour Laws > Wage Payments

*HN19* The Pennsylvania Wage Payment and Collection Law, 43 Pa. Cons. Stat. § 260.1 et seq., does not create a substantive right to compensation, but rather a statutory remedy for an employer's breach of contractual obligation to pay wages.  More Like This Headnote

Labor & Employment Law > Wage & Hour Laws > Wage Payments

*HN20* Under the Pennsylvania Wage Payment and Collection Law, 43 Pa. Cons. Stat. § 260.1 et seq., the term "wages" includes fringe benefits or wage supplements which, in turn, includes any amount to be paid pursuant to an agreement between the employer and the employee. 43 Pa. Cons. Stat. § 260.2a.  More Like This Headnote

Get a Document - by Citation - 2001 U.S. Dist. LEXIS 18760    Page 4 of 24

Case 1:04-cv-00285-KAJ    Document 83-6    Filed 12/07/2005    Page 4 of 31

Labor & Employment Law > Wage & Hour Laws > Wage Payments 🔳
HN21⤓ The contract between the parties governs in determining whether specific wages are
    earned.  More Like This Headnote

Labor & Employment Law > Wage & Hour Laws > Wage Payments 🔳
HN22⤓ The civil provisions of the Pennsylvania Wage Payment and Collection Law, 43 Pa.
    Cons. Stat. § 260.1 et seq., must be liberally construed to effectuate their remedial
    purpose and promote justice. 1 Pa. Cons. Stat. Ann. § 1928(c).  More Like This Headnote

Labor & Employment Law > Wage & Hour Laws > Wage Payments 🔳
HN23⤓ Where wages remain unpaid for 30 days beyond the regularly scheduled payday, an
    employee can recover liquidated damages equal to 25 percent of the wages due,
    unless there is a good faith contest or dispute about the wage claim. 43 Pa. Cons.
    Stat. § 260.10.  More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Interpretation 🔳
HN24⤓ A party's assertion of fact in a pleading is a judicial admission by which it normally
    is bound throughout the course of the proceeding.  More Like This Headnote

Torts > Business & Employment Torts > Deceit & Fraud 🔳
Torts > Business & Employment Torts > Negligent Misrepresentation 🔳
HN25⤓ To recover for fraud or negligent misrepresentation, a plaintiff is required to
    demonstrate that he justifiably relied upon a false statement or promise, and that
    he suffered damages as a proximate result of this reliance.  More Like This Headnote


**COUNSEL:** For MILTON RISEMAN, PLAINTIFF: JOHN M. ELLIOTT, MARK J. SCHWEMLER,
ADAM B. KRAFCZEK, JR., RAYMOND J. SANTARELLI, PATRICIA C. COLLINS, ELLIOTT,
REIHNER, SIEDZIKOWSKI AND EGAN, P.C., BLUE BELL, PA USA.

For ADVANTA CORP., DEFENDANT: ROBERT M. GOLDICH, WOLF, BLOCK, SCHORR AND
SOLIS-COHEN LLP.

**JUDGES:** ANITA B. BRODY, J.

**OPINIONBY:** ANITA B. BRODY

**OPINION: EXPLANATION AND ORDER**

On December 5, 2000, a jury awarded plaintiff Milton Riseman $ 3,939,126 in damages
against his former employer, Advanta Corporation and Advanta Mortgage Corporation, USA
("Advanta"). The jury determined that Advanta was not liable for age discrimination against
Riseman, a 62 year-old executive, but that it had retaliated against him in violation of the
Age Discrimination in Employment Act. The jury also found Advanta liable for breach of
contract, detrimental reliance, and violation of the Pennsylvania Wage Payment and
Collection Law.

Advanta now moves for judgment as a matter of law and **[*2]** for a partial new trial.
Riseman moves for a partial new trial on other grounds. The motions will be denied.

**I. FACTUAL BACKGROUND**

In 1992, Advanta hired Riseman from Citibank. (11/14/00 at 57-60, 68-69). In 1994,

Riseman was promoted to President and CEO of Advanta Mortgage Corporation, USA ("Advanta Mortgage"). (11/14/00 at 60). n1 From 1992 to 1997, Riseman's performance was well received, and he was credited with having saved, turned around, and built the mortgage unit. (P-51-54; P-116; 11/14/00 at 105-125; 11/17/00 at 64-65; 11/20/00 at 61-63, 87-88; 11/21/00 at 47-65; 11/29/00 at 80).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 At the time of trial, Advanta Mortgage was a wholly-owned subsidiary of Advanta Corporation. (11/14/00 at 68; 12/1/00 at 164-67).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In April 1997, Advanta was examining strategic alternatives, including a potential sale of all or a part of its business. (11/17/00 at 66). To further the strategic initiative, Advanta offered bonus opportunities to more than 50 key management employees. (P-132; 11/17/00 at 123-24). **[*3]** In a letter dated April 28, 1997, Chairman Dennis Alter offered Riseman a bonus equal to 200% of his base salary. This "1997 bonus" would be paid in the event of a "change of control affecting your group." According to the letter, Alter had "sole discretion" to determine whether Riseman satisfied the bonus conditions. Below his signature, Alter wrote: "Milt, Thanks for Being A Total Mench During This Process. D." (P-46; 11/17/00 at 64-66, 118-19). n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 According to Webster's Ninth New Collegiate Dictionary, "mensch" means a "person of integrity and honor." (P-278). During the strategic process, Riseman had helped BT Wolfensohn to evaluate various possible transactions. (11/14/00 at 128-29).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In October 1997, Advanta announced an agreement with Fleet Financial Group, pursuant to which Fleet would acquire Advanta's consumer credit card business. (P-212). When the deal closed in February 1998, Advanta Mortgage emerged as Advanta's most critical business unit, accounting for 85% of the entire corporation's revenues, **[*4]** assets and profits. (P-8; P-251; 11/20/00 at 6, 87-88; 11/21/00 at 47-65). Given the sudden spotlight on the mortgage unit, the "Office of the Chair" exercised closer scrutiny over Riseman and Advanta Mortgage. (11/14/00 at 126, 145-47; 11/17/00 at 138, 142; 11/27/00 at 103; 11/29/00 at 129). n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 The "Office of the Chair" consisted of Advanta Chairman Dennis Alter, Vice-Chairman William Rosoff, and President Olaf Olafsson. Riseman reported to the Office of the Chair. (11/14/00 at 140, 144).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Advanta did not award Riseman the 1997 bonus. (11/17/00 at 65-66). However, Advanta did award the bonus to 54 employees who were transferred to Fleet, and at least 13 employees whose business units did not experience a change of control. (11/14/00 at 132; 11/17/00 at

120, 138-66). Dennis Alter and William Rosoff remained at Advanta and each received $ 5 million bonuses. (11/17/00 at 141-42; 12/1/00 at 61-65). Elizabeth Mai, who also remained at Advanta, received a $ 1.5 million bonus. (11/17/00 at 139; 11/28/00 at 9; 11/29/00 at **[*5]** 226-27).

In March 1998, Alter orally extended Riseman another bonus opportunity, the "1998 bonus." (11/14/00 at 145-51). On May 12, 1998, the verbal promise was memorialized. According to the terms of the memorandum, Riseman would receive $ 400,000 on March 31, 1999, subject to three conditions: (1) exercising "flexibility and cooperation," (2) keeping the arrangement "confidential," and (3) "being here at the time." The Office of the Chair would determine whether Riseman fulfilled these criteria. (P-48).

On a yearly basis, Advanta also awarded Advanta Management Incentive Program ("AMIP") bonuses to key executives, including Riseman. (11/14/00 at 149). These bonuses were for an unliquidated amount, based upon the executive's individual performance and the performance of his business unit. The AMIP bonus could be earned by, and was paid to, executives who did not remain employed for the entire year. (11/17/00 at 14-15).

On August 3, 1998, Advanta informed Riseman that he was being replaced with a 42 year-old as President and CEO, but that he could stay on as "Chairman" of Advanta Mortgage. (11/14/00 at 64-66, 159-61). Advanta promised Riseman the same salary and bonus opportunities **[*6]** he enjoyed as President and CEO. (11/14/00 at 161). Riseman accepted the Chairman position and was relocated to the executive suite of Advanta's corporate headquarters. (11/14/00 at 163-65; 11/16/00 at 10-15).

After three days under the new arrangement, Riseman concluded that the Chairman position was not a "real" job. (11/14/00 at 166-67; 11/16/00 at 15-16). On August 16, 1998, Riseman met with Vice-Chairman William Rosoff to voice his grievances. (11/16/00 at 19-20). On August 17, 1998, Riseman consulted Fred Blume, an attorney with Blank, Rome, Comisky & McCauley LLP. (11/15/00 at 3-6). In a letter of August 17, 1998, Riseman's attorney threatened Advanta with age-discrimination charges. (P-55; 11/15/00 at 7-8). In a letter response dated August 18, 1998, Advanta's counsel denied the charges, but promised that "Mr. Riseman remains employed by the company." (P-56; P-57; 11/15/00 at 9-12). On that same day, Rosoff told Riseman to "go home," and not to report to work. (11/14/00 at 66-67; 11/15/00 at 11-13).

After August 18, 1998, Riseman performed essentially no further services for Advanta. (11/16/00 at 31-32). On August 28, 1998, Advanta published an internal newsletter advising **[*7]** its employees that Riseman had resigned his position as Chairman. (P-58). On September 2, 1998, Riseman filed formal charges of age discrimination with the Equal Employment Opportunity Commission. (11/14/00 at 67). On October 23, 1998, Advanta sent Riseman a letter informing him that he was being separated from the payroll. (P-60).

There was no evidence that Riseman received any alternative offer of employment during or immediately following his separation from Advanta. After approximately eight months without full-time employment, Riseman accepted a new job with lower salary and inferior bonus opportunities. (11/14/00 at 63; 11/15/00 at 90). Riseman never received the 1997 bonus, the 1998 bonus, the 1998 AMIP bonus, or any severance pay from Advanta.

On December 23, 1998, Riseman filed a complaint in federal district court. Among other things, the Complaint and Amended Complaint alleged age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., breach of contract, detrimental reliance, fraud, negligent misrepresentation, and violation of the Pennsylvania Wage Payment and Collection Law ("WPCL"), **[*8]** 43 P.S. § 260.1 et seq. After two years of acrimonious litigation, the case went to trial. From November 14, 2000 to December 4, 2000, an attentive jury evaluated the evidence supporting Riseman's claims.

At the close of plaintiff's evidence, the defendants moved for judgment as a matter of law. The motion was granted in favor of all defendants on Riseman's fraud and negligent misrepresentation claims. With respect to detrimental reliance, judgment was granted to the individual defendants, Dennis Alter, William Rosoff, and Olaf Olafsson. The motion was denied as to all other claims.

On December 5, 2000, the jury returned its verdict. The jury found Advanta liable for retaliation under the ADEA, breach of contract, detrimental reliance and violation of the WPCL, but not liable for age discrimination. In response to special interrogatories, the jury determined that the ADEA violation was "willful," and that Advanta had no "good faith" basis to withhold Riseman's wages. The jury awarded total damages of $ 3,939,126, including $ 1,377,125 in ADEA "back pay" and $ 2,562,001 under the WPCL. Judgment was entered accordingly on December 7, 2000.

## II. DISCUSSION

Advanta moves **[*9]** for judgment as a matter of law and for a new trial with respect to all claims on which the jury found against it at trial. Riseman requests a new trial for all claims on which he did not prevail. The motions will be denied.

As a preliminary matter, there is a strong argument that Advanta waived the right to renew its motion for judgment as a matter of law, or to challenge the sufficiency of the evidence in any way. <sup>HN1</sup>Failure to move for a directed verdict at the close of *all* evidence forecloses the defendant from renewing a Rule 50 motion after the verdict has been rendered. See Greenleaf v. Garlock, Inc., 174 F.3d 352, 364-65 (3d Cir. 1999); Beebe v. Highland Tank & Mfg. Co., 373 F.2d 886, 888 (3d Cir. 1967). In addition, <sup>HN2</sup>failure to move for a directed verdict at the close of all evidence "wholly waives the right to mount any post-trial attack on the sufficiency of the evidence." Yohannon v. Keene Corp., 924 F.2d 1255, 1262 (3d Cir. 1991); see also Gebhardt v. Wilson Freight Forwarding Co., 348 F.2d 129, 132 (3d Cir. 1965).

Advanta moved for judgment as a matter of law after Riseman rested his case, but did not **[*10]** specifically renew that motion at the close of all evidence. However, there is some indication in the record that Riseman's counsel and the Court may have implicitly understood Advanta's counsel to have renewed the motion. (12/4/00 at 129-32). Therefore, I will not find that Advanta has waived its right to mount a post-trial attack. Cf. Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 183-84 (3d Cir. 1992); Keith v. Truck Stops Corp., 909 F.2d 743, 744 (3d Cir. 1990); Acosta v. Honda Motor Co., Ltd., 717 F.2d 828, 831-32 & n.3 (3d Cir. 1983).

## A. ADVANTA'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Pursuant to Federal Rule of Civil Procedure 50, Advanta renews it motion for judgment as a matter of law. <sup>HN3</sup>Judgment as a matter of law is appropriate only where the record is "critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief." Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1095 (3d Cir. 1995); Dunn v. Hovic, 28 V.I. 526, 1 F.3d 1362, 1364 (3d Cir. 1993); Limbach Co. v. Sheet Metal Workers Int'l Ass'n, AFL-CIO, 949 F.2d 1241, 1261 (3d Cir. 1991) **[*11]** (*en banc*). A court must review the record in the light most favorable to the verdict winner, resolving all conflicts in the evidence in his favor. See Williamson v. Consolidated Rail Corp., 926 F.2d 1344, 1348 (3d Cir. 1991). After giving the prevailing party the benefit of every fair and reasonable inference, the motion must be denied unless the evidence is insufficient to support the verdict. See Blum v. Witco Chemical Corp., 829 F.2d 367, 372 (3d Cir. 1987); Laskaris v. Thornburgh, 733 F.2d 260, 264 (3d Cir. 1984).

**(1) ADEA Retaliation**

The jury found Advanta liable for retaliation under the ADEA. See 29 U.S.C. § 623(d). In its motion for judgment as a matter of law, Advanta claims that the jury could not have concluded that Advanta took *any* adverse employment action against Riseman after he had engaged in protected activity. Advanta insists that all adverse employment decisions were made and communicated to Riseman before he asserted an age-discrimination complaint. See Delaware State College v. Ricks, 449 U.S. 250, 258, 66 L. Ed. 2d 431, 101 S. Ct. 498 (1980) (statute **[*12]** of limitations for employment discrimination accrues when decision is "made and communicated" to employee). This is incorrect. There was ample evidence for the jury to conclude that Advanta retaliated against Riseman after he asserted an age-discrimination complaint.

Advanta states that its decision to move Riseman from the position of "President and CEO" to "Chairman" was made and communicated on August 3, 1998, before Riseman engaged in protected activity. However, consistent with its finding on age discrimination, the jury could have concluded that Riseman's shift of positions within Advanta Mortgage was not the relevant retaliation. Instead, the jury could have found retaliation in Advanta's decision to terminate Riseman altogether, as well as to deny him bonuses and severance. These were not inevitable consequences of Riseman's move to the Chairman position, but independent sources of retaliation. See Ricks, 449 U.S. at 257-58 & n.9 (distinguishing between inevitable consequences of earlier action and independent forms of discrimination).

Riseman complained about age discrimination on August 17, 1998 and remained employed with Advanta as of August 18, 1998. (P-55; **[*13]** 11/15/00 at 6-12). At the very least, Advanta "communicated" to Riseman that he was employed as of August 18, 1998. (P-56; P-57). On December 5, 2000, Advanta's counsel confirmed to the Court that Riseman remained employed as of August 18, 1998. (12/5/00 at 74-76, 80).

Thus, the jury had sufficient evidence to conclude that Advanta terminated Riseman, and/or denied him bonuses and severance, after he had engaged in protected activity on August 17, 1998. Viewing the inferences in the light most favorable to the verdict winner, the jury was well within its right to find retaliation under the ADEA. See Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997) (evidence at trial supported causal link between complaints of discrimination and termination); Delli Santi v. CNA Ins. Co., 88 F.3d 192 (3d Cir. 1996) (evidence at trial allowed jury to find retaliation).

**(2) Breach of Contract: 1998 Bonus**

Advanta also contends that the jury should not have been allowed to consider the 1998 bonus under a breach of contract theory because: (1) Advanta's retention of discretion to determine whether Riseman fulfilled the bonus conditions precluded **[*14]** formation of a contract; (2) Advanta's retention of discretion to decide whether or not Riseman fulfilled the bonus conditions was "absolute," and (3) Riseman did not fulfill the contractual condition requiring him to be employed with Advanta on March 31, 1999. These arguments fail.

Advanta claims that the 1998 bonus could not give rise to a contract since, by retaining discretion to evaluate fulfillment of the bonus criteria, Advanta committed itself to nothing. However, Advanta did not strike an "illusory bargain" because Riseman enjoyed a reasonable expectation that Advanta would exercise its discretion in "good faith." See U.S. v. Isaac, 39 V.I. 498, 141 F.3d 477, 482-84 (3d Cir. 1998) (contract could be formed even where one party reserves "sole discretion" to perform its part); Gautney v. Amerigas Propane, Inc., 107 F. Supp. 2d 634, 640, 646-47 (E.D. Pa. 2000) (contract could be formed even where corporate officer has "final discretion" to determine plaintiff's eligibility for bonus under Management Incentive Plan); Kofsky v. Chemical Residential Mortg. Corp., 1999 U.S. Dist.

LEXIS 17386, 1999 WL 1016976 * 3 (E.D. Pa. 1999) (contract for commissions could **[*15]** arise, even where defendant retains discretion over commission program). Thus, a contract could have been formed with respect to the 1998 bonus. n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 The jury was not instructed to assume that a contract existed. Rather, the jury was provided criteria with which to evaluate whether or not one or more contracts had been formed. (12/5/00 at 60-65).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Second, Advanta's discretion to award the 1998 bonus to Riseman was not "absolute." See Goldstein v. Johnson & Johnson, 251 F.3d 433, 444-46 & n.7 (3d Cir. 2001) (even where party has "sole authority" or "final and conclusive" authority to interpret agreement, discretion must be exercised in good faith); Sterling Nat. Mortg. Co., Inc. v. Mortgage Corner, Inc., 97 F.3d 39, 44 (3d Cir. 1996) (even where party has "total discretion" or "unbounded discretion" under contract, discretion must be exercised in good faith"). **HN4** Under the covenant of good faith and fair dealing, "every contract imposes upon each party a duty of good faith and fair **[*16]** dealing in its performance and its enforcement." RESTATEMENT (SECOND) OF CONTRACTS § 205 & Cmt. a. This implied duty may be breached where there is "interference with or failure to cooperate in the other party's performance." Somers v. Somers, 418 Pa. Super. 131, 136-39, 613 A.2d 1211, 1213-15 (1992).

Consistent with its finding that there was no "good faith" basis to withhold Riseman's wages under the WPCL, and that Advanta's violation of the ADEA was "willful," the jury was entitled to conclude that Advanta denied Riseman the 1998 bonus in violation of the covenant of good faith and fair dealing. Accordingly, Advanta is not entitled to judgment as a matter of law on this ground.

Finally, Advanta asserts that under the terms of the May 12, 1998 memorandum, Riseman was required to be employed with Advanta on March 31, 1999. Riseman did not fulfill this condition, argues Advanta, because he was terminated before March 31, 1999. In spite of Advanta's paraphrase, the March 31, 1999 condition requires "being here at the time." (P-48). "It is hornbook law that **HN5** if the relevant terms in a contract are ambiguous, the issue must go to a jury." Emerson Radio Corp. v. Orion Sales, Inc., 253 F.3d 159, 163 (3d Cir. 2001). **[*17]** With respect to the ambiguous phrase, "being here at the time," Riseman testified that he had to agree to stay with Advanta through March 31, 1999. (11/14/00 at 145-51; 11/15/00 at 133-34). n5 The jury could conclude that Riseman's agreement to stay with Advanta during a crucial transition period satisfied this contractual condition. See Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265, 1271-73 (3d Cir. 1979) (en banc). n6

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 "Being here at the time" is ambiguous because it is "capable of more than one reasonable interpretation." Pacitti v. Macy's, 193 F.3d 766, 773-75 (3d Cir. 1999) (despite language reserving "sole discretion" to offeror, contract could have conveyed a definite promise). Considering the words of the contract, the alternative meaning suggested by counsel, and the objective evidence, Riseman offered a "reasonable alternative interpretation" of the phrase. Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 93-96, 100 (3d Cir. 2001) (latent ambiguity requires "contractual hook"). For example, "being here at the time" could incorporate an implicit promise that Advanta would not prevent Riseman from

"being here" in violation of federal law (ADEA). **[\*18]**

n6 Advanta's memorandum of May 12, 1998 purported to reduce to writing an oral agreement reached two months earlier. If Advanta wanted to reserve the right not to pay the 1998 bonus through the simple expedient of terminating Riseman, it should have been more specific in the memorandum. *HN6* Written contracts must be construed against the drafter, especially where the drafter is a sophisticated commercial entity. See Pacitti, 193 F.3d at 775 n.5 (citing Pennsylvania law).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Alternatively, the jury could determine that the condition was excused. For example, the jury could decide that Advanta fired Riseman in violation of the ADEA, thereby preventing him from "being here at the time." See RESTATEMENT (SECOND) OF CONTRACTS § 225, Cmt. b; McDermott v. Party City Corp., 11 F. Supp. 2d 612, 621 (E.D. Pa. 1998) ("If a party acts to hinder the satisfaction of a condition, the condition is excused."); cf. Apalucci v. Agora Syndicate, Inc., 145 F.3d 630, 634 (3d Cir. 1998) ("When one party to a contract unilaterally prevents the performance of a condition **[\*19]** upon which his own liability depends, the culpable party may not then capitalize on that failure."); Anthuis v. Colt Indus. Operating Corp., 971 F.2d 999, 1008 n.8 (3d Cir. 1992) (quoting 5 WILLISTON ON CONTRACTS § 677, at 224 (3d ed. 1961)) ("*HN7* It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance . . . of a condition upon which his own liability depends, he cannot take advantage of the failure.").

Accordingly, judgment as a matter of law is not appropriate with respect to the 1998 bonus.

### (3) Breach of Contract: 1997 Bonus

Advanta contends that Riseman could not recover the 1997 bonus because Advanta Mortgage did not experience a "change of control," and the mere fact that Advanta awarded the bonus to employees whose business units did not experience a change of control does not entitle Riseman to a bonus as well. Judgment as a matter of law is not warranted.

The April 28, 1997 letter provided for a bonus of 200% of Riseman's salary if there were a "change of control affecting your group." (P-46). It is undisputed that the sale of Advanta's consumer credit card division to Fleet constituted a "change **[\*20]** of control." In addition, there was ample evidence for the jury to conclude that this change of control affected Riseman's group, Advanta Mortgage.

In 1998, after Advanta sold its consumer credit card division to Fleet, Advanta Mortgage became the most important and profitable business unit at Advanta, representing 85% of the revenues, assets and profits of the entire corporation. (P-8; P-251; 11/20/00 at 87-88; 11/21/00 at 47-65). As the mortgage group assumed greater prominence within the company, Riseman's business and personal performance came under closer scrutiny from the Office of the Chair. (11/14/00 at 126, 145-47; 11/27/00 at 103; 11/29/00 at 129). The jury could conclude that such enhanced expectations from Advanta Mortgage and Riseman, precipitated by the sale of Advanta's consumer credit card division, was a change of control "affecting" Riseman's group. (11/14/00 at 132; 11/17/00 at 120, 138-66). n7 Judgment as a matter of law will not be granted.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 The fact that Advanta reserved "sole discretion" to determine whether the change of control affected Riseman's group is not dispositive. As with the 1998 bonus, the jury could have found that Advanta failed to exercise its discretion in good faith. See, e.g., Germantown Mfg. Co. v. Rawlinson, 341 Pa. Super. 42, 60-61, 491 A.2d 138, 148 (1985).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*21]**

### (4) Detrimental Reliance

Finally, Advanta argues that a detrimental reliance claim should not have been submitted to the jury because Riseman did not refrain from seeking other employment. This contention fails because there was evidence to support detrimental reliance on other grounds. For instance, the jury could have found that Riseman worked harder, increased his flexibility and cooperation with management, or otherwise was induced into action or forbearance of a definite and substantial character in reliance on a bonus promise. See JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc., 1998 U.S. Dist. LEXIS 5098, 1998 WL 175888 *3 (E.D. Pa. 1998), aff'd, 178 F.3d 1279 (3d Cir. 1999) (table); Robert Mallery Lumber Corp. v. B & F Assocs., Inc., 294 Pa. Super. 503, 511-12, 440 A.2d 579, 582-83 (1982). n8 Accordingly, judgment as a matter of law is inappropriate.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n8 Advanta's fallback position that Riseman could not have "reasonably relied" on a discretionary promise also misses the mark. Riseman could have reasonably relied on Advanta's implicit promise to exercise its discretion in good faith.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*22]**

Advanta has not demonstrated that the record is "critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief." Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1095 (3d Cir. 1995); Williamson v. Consolidated Rail Corp., 926 F.2d 1344, 1348 (3d Cir. 1991). Therefore, I will deny the renewed motion for judgment as a matter of law.

### B. ADVANTA'S MOTION FOR NEW TRIAL

Pursuant to Federal Rule of Civil Procedure 59, Advanta moves for a new trial on Riseman's claims of retaliation under the ADEA, breach of contract, detrimental reliance, and violation of the WPCL. Advanta argues that the damages verdict is against the weight of the evidence, and thus a new trial on damages and liability is warranted. This motion will be denied.

*HN8* A motion for new trial based upon the weight of the evidence is entitled to great scrutiny because it invites the court to substitute its judgment for that of the jury. See Wilburn v. Maritrans Gp. Inc., 139 F.3d 350, 363-64 (3d Cir. 1998); Delli Santi v. CNA Ins. Co., 88 F.3d 192, 201 (3d Cir. 1996). Such a motion may be granted only if **[*23]** the court, in its discretion, finds that the jury's verdict represents a "miscarriage of justice," or cries out to be overturned because it "shocks the conscience." Williamson v. Consolidated Rail Corp., 926 F.2d 1344, 1352-53 (3d Cir. 1991); Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 211 (3d Cir. 1992).

*HN9* A motion for new trial is imbued with constitutional dimensions. See Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 7 L. Ed. 2d 798, 82 S. Ct. 780 (1962) (Seventh Amendment requires jury to resolve disputed fact questions). If the verdict winner

sets forth even a "minimally plausible" or "conceivable" way of reconciling the jury's answers, the court is "*constitutionally bound*" to deny the motion. McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 764-66 (3d Cir. 1990) (emphasis in original). *HN10* Because new trials "effect[] a denigration of the jury system" and "usurp[] the prime function of the jury as the trier of the facts," Lind v. Schenley Indus., Inc., 278 F.2d 79, 88-91 (3d Cir. 1960) (*en banc*), the constitutional guarantees of the Seventh Amendment **[*24]** have "particular force" when a losing party attacks the weight of the evidence. See Williamson, 926 F.2d at 1348.

Advanta's motion for a new trial does not satisfy these procedural and constitutional standards.

## (1) Damages

First, Advanta attacks the jury's damage award as "impossible." *HN11* A damages verdict will be affirmed if "'there is *any view* of the case which reconciles the [jury's] various answers.'" McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 763 (3d Cir. 1990) (emphasis in original) (quoting Bradford-White Corp. v. Ernst & Whinney, 872 F.2d 1153, 1159 (3d Cir. 1989)). *HN12* In reviewing the jury's verdict, I may not speculate as to what the jurors were "really" trying to do. or weigh the reasonableness of Riseman's view of the evidence against Advanta's view. See 896 F.2d at 763-65. If Riseman's view is conceivable, the jury's verdict may not be disturbed. n9

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n9 Cf. Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364, 7 L. Ed. 2d 798, 82 S. Ct. 780 (1962) ("Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way."); McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 764 (3d Cir. 1990) (court is "under a constitutional mandate to search for a view of the case that makes the jury's answers consistent"); Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp., 626 F.2d 280, 293 (3d Cir. 1980) ("[if] there is at least one way to explain the jury's answers to the interrogatories, [court is] bound to affirm them").

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*25]**

The jury awarded $ 3,939,126 in total damages, including $ 1,377,125 in back pay and $ 2,562.001 under the WPCL. The jury's award is consistent with the evidence and certainly does not "shock the conscience." First, the total award of $ 3,939,126 is reasonably close to what the damages expert suggested was appropriate under conservative assumptions. (12/1/00 at 89-95). Advanta presented no contrary damages expert.

Second, the $ 1,377,125 "back pay" award could have been computed under several scenarios. One possible method, suggested by Riseman, is the difference between the salary and AMIP bonus amounts Riseman could have earned at Advanta between October 1998 and December 2000, and the amounts he actually earned during this time. In 1998, Riseman received a 20% merit raise, from $ 325,000 to $ 385,000 in salary. (P-61G; 11/14/00 at 140). Considering the trend in Riseman's salary since 1992, as well as the mortgage unit's pivotal status after 1998, the jury could have projected similar increases for 1999 and 2000. With such raises, Riseman could earn a 1999 AMIP bonus of $ 462,000, a 2000 AMIP bonus of $ 554,400, and $ 360,725 more in Advanta base salary than he actually earned **[*26]** between October 1998 and December 2000. Alternatively, the jury could have awarded lower AMIP bonuses in 1999 and 2000, and found a higher salary differential between October



1998 and December 2000. In either case, $ 1,377,125. in "back pay" is justifiable. n10

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n10 This "back pay" hypothetical does not even include the 1997 bonus, the 1998 bonus, or the 1998 AMIP bonus. For instance, a bonus may have been denied before Riseman engaged in protected activity or, perhaps, denied in bad faith but not in retaliation for an age-discrimination complaint.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Finally, the WPCL award of $ 2,562,001 could include $ 650,000 from the 1997 bonus, $ 400,000 from the 1998 bonus, plus an unliquidated amount from the 1998 AMIP bonus. n11 Advanta's post-trial position is that Riseman's AMIP bonus for 1998 was capped at double his "target" bonus. However, Advanta points to no evidence establishing a conclusive cap on Riseman's AMIP bonus for that year. Also, while insisting that the jury should receive instructions on the parameters **[*27]** of the 1997 and 1998 bonuses, Advanta did not seek an instruction regarding any damages ceiling on the AMIP bonus. In fact, on December 5, 2000, when the jury asked where it could find Riseman's 1998 AMIP bonus in the evidence, Advanta agreed there was no document defining Riseman's 1998 AMIP bonus, and the jury was so instructed. (12/5/00 at 78-80). Thus, the jury conscientiously considered how much to award for Riseman's 1998 AMIP bonus, and reasonably could have believed there was no *per se* limit on the amount. n12

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n11 Because the verdict is most reasonably read without any overlapping "back pay" or WPCL components, an award of liquidated damages under ADEA and WPCL would not constitute "double recovery."

n12 Advanta did not even mention the AMIP bonus in its closing argument to the jury. (12/4/00 at 192-225).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The jury could award a 1998 AMIP bonus of $ 1,512,001, based upon Riseman's role at Advanta Mortgage and the company's overall performance. There was extensive evidence of how Riseman personally **[*28]** saved, turned around, and built the mortgage unit. (P-51-54; P-116; 11/14/00 at 105-125; 11/17/00 at 64-65; 11/20/00 at 61-63; 11/21/00 at 47-65). The jury learned that, under Riseman's leadership, Advanta Mortgage became the most important and profitable business unit at Advanta. By 1998, Advanta Mortgage alone constituted 85% of the revenues, assets and profits of the entire Advanta Corporation. (P-8; P-251; 11/20/00 at 87-88; 11/21/00 at 47-65). Based upon Advanta's financial performance in 1998, including the undeniable contribution of Riseman and Advanta Mortgage, the jury could have decided that a $ 1.5 million bonus was appropriate. Under the circumstances of this case, the jury's bonus award certainly does not "shock the conscience." See Paolella v. Browning-Ferris, Inc., 158 F.3d 183, 189, 194-95 (3d Cir. 1998) (upholding front pay award that was "more than 17 times" the amount defendant claimed was supported by the evidence). n13

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n13 With respect to Advanta's key corporate executives, the jury was told of numerous instances in which Riseman's colleagues received sizable bonuses. For example, in 1998, executives Dennis Alter and William Rosoff each received $ 5 million bonuses, in addition to other bonuses plus base compensation. (11/17/00 at 141-42; 12/1/00 at 61-65; P-281 at 8-9). Apart from other compensation, Elizabeth Mai received a $ 1.5 million bonus. (11/17/00 at 139; 11/28/00 at 9; 11/29/00 at 226-27).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*29]  HN13

The law does not command mathematical precision in ascertaining damages from the evidence. See Scully v. US Wats, Inc., 238 F.3d 497, 515 (3d Cir. 2001). When a jury restores a victim to the economic position he would otherwise have occupied, any imprecision in damages must be borne by the wrongdoer. See Goss v. Exxon Office Systems Co., 747 F.2d 885, 889 (3d Cir. 1984) ("The risk of lack of certainty with respect to projections of lost income must be borne by the wrongdoer, not the victim."); Young v. Lukens Steel Co., 881 F. Supp. 962, 976 (E.D. Pa. 1994) ("'any ambiguity in what the claimant would have received but for the [retaliation] should be resolved against the [retaliating] employer'") (citations omitted).

Moreover, "it is well accepted that HN14 a court will not inquire into the calculation methods employed by the jury during its deliberations." Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265, 1279 n.19 (3d Cir. 1979) (en banc). Instead, a court "must assume" that the jury acted rationally, "'followed the court's instructions and arrived at a verdict based on those instructions.'" Loughman v. Consol-Pennsylvania Coal Co., 6 F.3d 88, 102, 105 (3d Cir. 1993) [*30]  (citations omitted).

Because the verdict does not represent an "impossible" application of the evidence to the instructions, a new trial will not be granted on this basis.

## (2) Severance

Advanta also seeks a new trial because it believes that the jury may have awarded severance damages. This speculation does not warrant a new trial.

At summary judgment, the Court reserved the issue of severance damages for an ERISA bench trial, but did not state that severance was irrelevant to ADEA liability. Riseman subsequently introduced evidence of disparate severance pay as part of his ADEA case, without asking for severance in his damage calculations or closing argument. (12/4/00 at 191-92). Thus, the jury charge referred to severance as part of Riseman's liability claims, but not as an element of damages. (12/5/00 at 9-11, 54-60). For apparent strategic reasons, Advanta even declined the Court's invitation to instruct the jury not to award severance. (12/5/00 at 13-14). Accordingly, Advanta may not seek a new trial on this ground.

Advanta also argues that none of its former employees who received severance were "similarly situated" to Riseman. At trial, Riseman presented evidence [*31]  that an executive discharged for theft, dishonesty and breach of trust (after only five months of work) had received substantial severance pay, whereas Riseman (who had been with Advanta for over five years) received no severance pay. (11/17/00 at 169-177). Whether such former Advanta employees were "similarly situated" to Riseman was a jury question. The admission of this evidence does not compel a new trial.

### (3) ADEA "Back Pay"

Advanta next contends that the 1997 bonus and 1998 bonus cannot be included in "back pay." I need not address this argument because the jury did not necessarily include either bonus in its "back pay" award. See, e.g., Part II(B)(1), *supra*.

### (4) ADEA "Front Pay"

Advanta moves for a new trial with regard to ADEA "front pay," claiming: (1) Riseman waived his right to seek front pay through a comment at the pre-trial conference, (2) front pay is an equitable remedy that cannot be awarded by a jury, and (3) Riseman was not eligible for front pay because he had reestablished himself in the workforce. These arguments do not entitle Advanta to a new trial. n14

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n14 Because there is a possibility that the jury awarded "front pay," I will address Advanta's arguments.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*32]**

*(i) Waiver*

First, Advanta contends that Riseman waived his right to seek front pay when one of his attorneys stated at the final pretrial conference that Riseman was not seeking reinstatement. In Wehr v. Burroughs Corp., 619 F.2d 276, 283-84 & n.18 (3d Cir. 1980), the plaintiff waived front pay where his attorney specifically disclaimed reinstatement in a letter to the court. n15 However, in Maxfield v. Sinclair Int'l, 766 F.2d 788, 795-97 (3d Cir. 1985), the Third Circuit distinguished Wehr, holding that the issue of front pay was preserved when plaintiff requested future damages in his complaint. Understandably, in this case, Riseman requested front pay rather than reinstatement. n16 Absent an unequivocal disclaimer such as the letter sent to the court in Wehr, Riseman did not waive his right to seek front pay.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n15 In Wehr, the Third Circuit did not hold that it would have been error for the district court to consider front pay, but only that the district court did not abuse its discretion in finding waiver. See 619 F.2d at 284 n.19.

n16 Reinstatement may not be feasible if there is "continuing hostility" and "animosity" between the parties or, alternatively, no position is available at the time of judgment. See Pollard v. E.I. du Pont de Nemours & Co., 150 L. Ed. 2d 62, 121 S. Ct. 1946, 1948 (2001); Starceski, 54 F.3d at 1103; Maxfield, 766 F.2d at 796. It was abundantly evident during this litigation (and in repeated settlement attempts) that there was irreparable animosity between the parties. Moreover, Advanta argued at trial that there would likely not be a position for Riseman because Advanta was contemplating the sale of its mortgage company. Reinstatement was not feasible in this case, and no party has ever argued otherwise.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*33]**

*(ii) Awarded by the Jury*

Advanta goes on to assert that front pay is an equitable remedy which cannot be awarded by the jury. This argument is foreclosed by controlling Third Circuit precedent.

**HN15**☞It is for the court to decide whether reinstatement is feasible and, if not, whether front pay should be awarded in lieu of reinstatement. See Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1103 (3d Cir. 1995); Blum v. Witco Chemical Corp., 829 F.2d 367, 374 (3d Cir. 1987). However, once the court decides that reinstatement is not feasible, the amount of damages to be awarded as front pay becomes a jury question. See Blum, 829 F.2d at 374 n.4; Maxfield, 766 F.2d at 796.

*(iii) Eligibility for Front Pay*

Finally, Advanta claims that Riseman was not eligible for front pay as a matter of law. **HN16**☞A monetary substitute for the equitable remedy of reinstatement, front pay is designed to restore the victim of an employer's unlawful conduct to the position he would have otherwise occupied. See Pollard v. E.I. du Pont de Nemours & Co., 150 L. Ed. 2d 62, 121 S. Ct. 1946, 1950 (2001); Maxfield, 766 F.2d at 795-96. **[*34]** Advanta argues that Riseman was not eligible for this "make-whole" remedy because he reestablished his rightful place in the workforce. See Goss v. Exxon Office Systems Co., 747 F.2d 885, 889-90 (3d Cir. 1984) (in business sales context where plaintiff reestablished herself, district court did not abuse discretion in limiting front pay award to four months). But whether Riseman had reestablished his rightful place in the workforce (and, if so, when) was a jury question. To the extent that the jury awarded front pay, it resolved this issue against Advanta.

Advanta also challenges Riseman's request that he be awarded front pay to age 70 or 75. See Anastasio v. Schering Corp., 838 F.2d 701, 709-10 (3d Cir. 1988) (where jury findings were consistent with decision that plaintiff would have retired before age 70, ADEA did not "guarantee . . . an annuity to age 70"). Given that Riseman was 64 years of age at the time of trial, a front pay award up to age 70 or 75 would not be inappropriate as a matter of law. See Feldman v. Philadelphia Housing Auth., 43 F.3d 823, 832-33, 841 (3d Cir. 1995) (upholding 38 year-old's front pay award to retirement **[*35]** age of 65); Blum, 829 F.2d at 375-76 (failure to award front pay to 63 year-old until normal retirement age could constitute abuse of discretion). n17

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n17 Whether or not Riseman testified about a specific intention to retire on a particular date, there was sufficient evidence for the jury to calculate a reasonable front pay award. See Gorniak v. National R.R. Passenger Corp., 889 F.2d 481, 486-87 (3d Cir. 1989).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

For these reasons, the submission of Riseman's front pay claim to the jury does not merit a new trial.

**(5) Breach of Contract**

Advanta seeks a new trial on Riseman's breach of contract claims for substantially the reasons argued in its motion for judgment as a matter of law. To the extent Advanta relies upon its discretion to deny the 1997 and 1998 bonuses, the retention of discretion did not give Advanta license to act in bad faith. In view of the substantial evidence that Advanta had been satisfied with Riseman's performance from 1992 to 1997, the jury could **[*36]** have concluded that Advanta's purported dissatisfaction with Riseman in 1998 was not genuine.

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 65760    Filed 12/07/2005    Page 17 Page 31 of 24

Case 1:04-cv-00285-KAJ    U.S. Document 23-5    65760

There was also sufficient evidence for the jury to decide that all contractual conditions were satisfied or excused.

Advanta's only other basis for seeking a new trial on breach of contract is that the jury charge did not enumerate the specific conditions applicable to each of the contracts. *HN17* ⩓Where an objection to a jury charge has been preserved, the court must ask whether the charge, "'taken as a whole, properly apprises the jury of the issues and the applicable law.'" Watson v. Southeastern Pennsylvania Transp. Auth., 207 F.3d 207, 212 (3d Cir. 2000), cert. denied, 121 S. Ct. 1086 (2001), Smith v. Borough of Wilkinsburg, 147 F.3d 272, 275 (3d Cir. 1998); Limbach Co. v. Sheet Metal Workers Int'l Ass'n, AFL-CIO, 949 F.2d 1241, 1259 n.15 (3d Cir. 1991) (en banc).

The Court's charge met that standard. The jury instructions avoided reciting either parties' characterizations of the facts, but informed the jury of the issues and applicable law. Advanta had every opportunity to explain the contractual conditions, as it viewed **[*37]** them, to the jury. A new trial on breach of contract is not required.

## (6) WPCL

With respect to the WPCL, Advanta moves for a new trial on three grounds: (1) Riseman's bonuses were not "earned" within the meaning of the WPCL, (2) the jury was not given a specific instruction on the definition of "good faith," and (3) the jury was not instructed that Riseman had the burden to prove lack of good faith by "clear and convincing" evidence. None of these assertions compel a new trial.

### (i) Riseman's Bonuses Were "Earned"

Advanta argues that Riseman's 1998 bonus and 1998 AMIP bonus were not "earned" within the meaning of the WPCL. Under the WPCL, "*HN18*⩓whenever an employer separates an employe from the payroll, or whenever an employe quits or resigns his employment, the wages or compensation earned shall become due and payable not later than the next regular payday of his employer on which such wages would otherwise be due and payable." 43 P.S. § 260.5(a). *HN19*⩓The WPCL does not create a substantive right to compensation, but rather a statutory remedy for an employer's breach of contractual obligation to pay wages. See Weldon v. Kraft, Inc., 896 F.2d 793, 801 (3d Cir. 1990); **[*38]** Kafando v. Erie Ceramic Arts Co., 2000 PA Super 377, 764 A.2d 59, 61 (Pa. Super. 2000).

*HN20*⩓The term "wages" includes "fringe benefits or wage supplements" which, in turn, includes any amount to be paid pursuant to an agreement between the employer and the employee. See 43 P.S. § 260.2a. To the extent Riseman's bonuses were to be paid pursuant to an agreement with Advanta, they were statutory "wages" (as well as "fringe benefits or wage supplements") under the WPCL. Although several courts have determined that "wages" must be "earned" to be recoverable under section 260.5(a), at least one district court in this Circuit has held that "fringe benefits or wage supplements" need not be "earned." See Bowers v. NETI Technologies, Inc., 690 F. Supp. 349, 353 n.5 (E.D. Pa. 1988) ("earned" requirement significantly absent from 43 P.S. § 260.3(b)). n18 Under this WPCL interpretation, Riseman need not have "earned" any bonuses that fit the definition of "fringe benefits or wage supplements."

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n18 In two of its most recent cases interpreting the WPCL, the Pennsylvania Superior Court recognized Bowers specifically. See Kafando v. Erie Ceramic Arts Co., 2000 PA Super 377, 764 A.2d 59, 63 (Pa. Super. 2000); Hartman v. Baker, 2000 PA Super 140, 766 A.2d 347,



353 (Pa. Super. 2000), appeal denied, 764 A.2d 1070 (2000).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*39]**

However, assuming that Riseman's bonuses had to be "earned," the jury could have decided that Riseman earned his bonuses. "*HN21*⚓The contract between the parties governs in determining whether specific wages are earned." Weldon, 896 F.2d at 801; Gautney v. Amerigas Propane, Inc., 107 F. Supp. 2d 634, 646 (E.D. Pa. 2000). The jury could conclude that when Advanta unlawfully terminated Riseman under the ADEA and breached its bonus agreements, Riseman had a vested contractual entitlement to bonuses for work already performed -- not merely a contractual expectation to earn wages in the future. See Regier v. Rhone-Poulenc Rorer, Inc., 1995 U.S. Dist. LEXIS 9384, 1995 WL 395948 \*8 (E.D. Pa. 1995), aff'd, 92 F.3d 1172 (3d Cir. 1996) (table) (assuming that "fringe benefits or wage supplements" must be earned, they are "earned" when plaintiff renders sufficient services for contractual rights to vest); see also Kofsky v. Chemical Residential Mortg. Corp., 1999 U.S. Dist. LEXIS 17386, 1999 WL 1016976 \* 4-5 (E.D. Pa. 1999) (viability of contract claim for commissions precluded summary judgment on WPCL claim). n19

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n19 In this case, Riseman did not seek to recover salary and commissions that would have been earned after his separation from Advanta, but rather to recover bonuses for work that was already substantially performed when Advanta breached its part of the bargain. Compare Sendi v. NCR Comten, Inc., 619 F. Supp. 1577 (E.D. Pa. 1985), aff'd, 800 F.2d 1138 (3d Cir. 1986) (table) (since WPCL does not govern wages agreed to be paid in the future for services to be rendered in the future, plaintiff could not recover commissions on sales that would have been consummated after his termination date).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*40]**

This conclusion is reinforced by several factors. First, *HN22*⚓the civil provisions of the WPCL must be liberally construed to effectuate their remedial purpose and "promote justice." See 1 Pa. C.S.A. § 1928(c); Regier, 1995 U.S. Dist. LEXIS 9384, \*18, 1995 WL 395948 \*6; Bowers, 690 F. Supp. at 354. The underlying purpose of the WPCL is to remove some of the obstacles employees face in litigation, by providing them with a statutory remedy to recover contractual wages from an employer. See Barnhart v. Compugraphic Corp., 936 F.2d 131, 133-34 (3d Cir. 1991); Oberneder v. Link Computer Corp., 548 Pa. 201, 206, 696 A.2d 148, 151 (1997); Hartman v. Baker, 2000 PA Super 140, 766 A.2d 347, 352-53 (Pa. Super. 2000), appeal denied, 764 A.2d 1070 (2000). At the same time, the mere fact that Riseman was no longer employed by Advanta after October 1998 is not controlling. See Scully v. US Wats, Inc., 238 F.3d 497, 517-18 (3d Cir. 2001) (where defendant discharged plaintiff and prevented him from exercising stock options while on the payroll, ex-employee had "earned" stock options within the meaning of the WPCL). **[\*41]**

Under the constellation of facts and findings in this case, the jury could have concluded that Riseman "earned" the 1997 bonus, the 1998 bonus and the 1998 AMIP bonus within the meaning of the WPCL.

*(ii) Definition of "Good Faith"*

Advanta alternatively challenges the Court's award of liquidated damages pursuant to the jury's finding that Advanta did not withhold wages in "good faith." *HN23*⚓Where wages

remain unpaid for thirty days beyond the regularly scheduled payday, an employee can recover liquidated damages equal to 25% of the wages due, unless there is a "good faith" contest or dispute" about the wage claim. See 43 P.S. § 260.10. The jury found that Advanta had no "good faith" basis to withhold Riseman's wages under the WPCL. Advanta now argues that the jury was without proper guidance on the meaning of "good faith."

In the first place, Advanta did not submit a proposed jury instruction concerning the "good faith" issue. Advanta did not address the "good faith" issue at all until shortly before the jury was to receive its instructions, after the charging conferences and review of the charge itself had been completed. (12/4/00 at 136-45; 12/5/00 at 37). Moreover, Advanta's **[*42]** argument lacks merit. The WPCL does not provide a statutory definition of "good faith." See 43 P.S. § 260.2a. n20 Because juries are sufficiently equipped to understand and apply this term, the verdict does not represent a "miscarriage of justice."

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n20 As neither the WPCL nor decisional law have defined "good faith," the Pennsylvania Superior Court recently consulted Black's Law Dictionary. See Hartman v. Baker, 2000 PA Super 140, 766 A.2d 347, 354 n.3 (Pa. Super. 2000), appeal denied, 764 A.2d 1070 (2000). Black's definition of "good faith" does not deviate from an ordinary understanding of the term. See, e.g., WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 527 (9th ed. 1984). In addition, Black's definition references the covenant of good faith and fair dealing, about which the jury was instructed. See BLACK'S LAW DICTIONARY 701 (7th ed. 1999).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

*(iii) "Clear and Convincing" Evidence*

Finally, Advanta claims that the Court should have instructed the jury that **[*43]** Riseman was required to prove lack of good faith by "clear and convincing" evidence. For this proposition, Advanta cites Hartman v. Baker, 2000 PA Super 140, 766 A.2d 347 (Pa. Super. 2000), appeal denied, 764 A.2d 1070 (2000). However, Hartman did not place the burden of proof on the employee to prove bad faith. Instead, Hartman assumed that the employer bore the burden to prove good faith by clear and convincing evidence. See id. at 353-54. Advanta could not have been prejudiced by the absence of an instruction requiring *it* to prove good faith by clear and convincing evidence.

Accordingly, none of Advanta's claims concerning the WPCL earn it a new trial.

## (7) Admissions

Advanta argues next that the Court should have prevented Riseman from impeaching its witnesses with "admissions" contained in Advanta's pleadings and in a reply brief. Advanta says its lawyers' statements that Riseman had been "terminated" and "fired" were not judicial admissions. A new trial is not mandated on this basis because no legal error occurred, and it is "highly probable" that the ruling did not "affect the outcome of the case." McQueeney v. Wilmington Trust Co., 779 F.2d 916, 917 (3d Cir. 1985). **[*44]**

"*HN24*'A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding.'" Schott Motorcycle Supply, Inc. v. American Honda Motor Co., Inc., 976 F.2d 58, 61 (1st Cir. 1992) (citing Second, Fifth, Sixth, and Eighth Circuits). While emphasizing that Advanta did not sign its attorneys' Answer to the Complaint and Amended Complaint, Advanta concedes that its Answer is a pleading. The pleading that Riseman was "terminated" can reasonably be construed as an assertion of fact.



See id. at 61 (statement that "contract" existed between the parties construed as "factual" assertion). n21

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n21 In the context of this case, a statement that Riseman was "terminated," or even "fired," is not a legal conclusion. The jury received instructions about Advanta's right to fire Riseman, and no wrongful discharge claim was presented at trial. (12/5/00 at 56). The ultimate legal issue was whether Riseman experienced "discrimination" or "retaliation." Compare Giannone v. U.S. Steel Corp., 238 F.2d 544, 548 (3d Cir. 1956) (affirming exclusion of select language from third-party complaint that charged third-party defendant with "negligence," where third-party plaintiff/defendant did not itself admit any "negligence").

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*45]**

Furthermore, it does not appear that Advanta was pleading a defense "alternately or hypothetically" under Federal Rule of Civil Procedure 8(e)(2). See Charles Alan Wright & Arthur R. Miller, 5 FEDERAL PRACTICE AND PROCEDURE § 1282 at 525 (West, 2d ed. 1990) (alternative pleading drafted in terms of "either-or," and hypothetical pleading formulated as "if-then"). Thus, the admission of Advanta's statements is not in tension with Rule 8(e)(2). See Giannone v. U.S. Steel Corp., 238 F.2d 544, 547-48 (3d Cir. 1956) (noting possible tension between admission of pleadings and Rule 8(e)(2), but declining to resolve the issue). n22

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n22 The parallel statement in Advanta's reply brief was cumulative and otherwise independently admissible. See, e.g., Fed. R. Evid. 801(d)(2); American Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226-27 (9th Cir. 1988); U.S. v. Kattar, 840 F.2d 118, 130-31 (1st Cir. 1988). It would be anomalous to admit statements of corporate employees as substantive evidence, but not to admit statements by the company's attorney, during the instant litigation, for impeachment. See Zipf v. American Tel. & Tel. Co., 799 F.2d 889, 894-95 & n.8 (3d Cir. 1986); U.S. v. Johnson, 752 F.2d 206, 210-11 (6th Cir. 1985). Moreover, through further examination and argument, Advanta had every opportunity to place the alleged "admissions" in context. Cf. Derby & Co., Inc. v. Seaview Petroleum Co., 756 F. Supp. 868, 877 (E.D. Pa. 1991) (inconsistent statement made in other litigation should be weighed along with all other evidence).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*46]**

Accordingly, the factual statements contained in Advanta's pleadings and reply brief were admissible for impeachment purposes. See Giannone, 238 F.2d at 547 (even withdrawn or superseded pleadings are admissible); Johnson v. Goldstein, 864 F. Supp. 490, 492-93 (E.D. Pa. 1994), aff'd, 66 F.3d 311 (3d Cir. 1995) (table); Gerlach v. Volvo Cars of North America, 1997 U.S. Dist. LEXIS 3097, 1997 WL 129004 *4 n.2 (E.D. Pa. 1997) (citing Second and Third Circuits); U.S. v. Owens Contracting Services, Inc., 884 F. Supp. 1095, 1108 (E.D. Mich. 1994) (citing Sixth and Ninth Circuits).

In any event, it is highly probable that the outcome of the case did not depend upon this evidence. While the jurors asked for an exhibit number because they were "unable to find letter from Mr. Goldich stating Mr. Riseman was 'fired,'" the Court informed the jury that no such letter existed. (Docket Entry # 161, Question 2). With this response, the jury returned

to its deliberations and did not inquire about the matter further. (12/5/00 at 74-80). Moreover, Advanta was not judicially estopped from arguing that Riseman had "resigned," and any statement **[*47]** that Riseman had been "terminated" or "fired" was not deemed conclusive. Compare Travelers Indem. Co. v. Engel, 1994 U.S. Dist. LEXIS 10539, 1994 WL 398788 * 3-4 (E.D. Pa. 1994) (admission in defendant's Answer deemed conclusive, even though post-pleading affidavit contradicted admission).

Because the challenged evidentiary rulings were correct, and it is highly probable that they did not affect the outcome in any event, a new trial is not warranted.

## (8) Deposition Transcripts

Finally, Advanta complains that it was not allowed to read excerpts from certain deposition transcripts showing that Riseman had explored potential employment with Providian Financial Corporation. Advanta claims that if the jury had heard these excerpts, it might have found against Riseman on detrimental reliance. However, besides foregoing employment, Riseman could have worked harder at Advanta, increased his flexibility and cooperation with management, or otherwise incurred substantial detriment in reliance on a bonus promise. Given the slight probative value of the deposition excerpts and the late hour at which Advanta proposed to read them to the jury, it was a permissible exercise of discretion to exclude **[*48]** this evidence.

None of Advanta's grounds for a new trial meet the procedural and constitutional standards governing this motion. Because I do not find that the jury's verdict represents a "miscarriage of justice," or "shocks the conscience," the motion for a new trial will be denied. Delli Santi v. CNA Ins. Co., 88 F.3d 192, 201-02 (3d Cir. 1996); Olefins Trading, Inc. v. Han Yang Chem Corp., 9 F.3d 282, 289-90 (3d Cir. 1993); Williamson v. Consolidated Rail Corp., 926 F.2d 1344, 1352-54 (3d Cir. 1991); McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 763-66 (3d Cir. 1990); Lind v. Schenley Indus., Inc., 278 F.2d 79, 88-91 (3d Cir. 1960). n23

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n23 Advanta's catch-all argument that the verdict is the product of jury passion and prejudice against a large corporation is without merit. The Court specifically instructed the jury: "All persons, including individuals and corporations, stand equal before the law. Sympathy for any party or prejudice against any party should play no part in your deliberations or in your decision." (12/5/00 at 44). Thus, the jury charge stated, and subsequently reiterated, the need for fair and dispassionate consideration of all evidence. (12/5/00 at 59, 72). Moreover, the jury's finding on age discrimination undercuts Advanta's claim of widespread bias and confusion.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*49]**

## C. RISEMAN'S MOTION FOR NEW TRIAL.

Riseman moves for a new trial on his age-discrimination claim against Advanta, his detrimental reliance claim against the individual defendants, and his fraud and negligent misrepresentation claims against all defendants. This motion will be denied.

The sole basis for Riseman's motion with respect to age discrimination is that he was unable to obtain certain information during discovery. However, Riseman can point to no error in the Court's discovery rulings that would warrant a new trial on age discrimination. See Hewlett v. Davis, 844 F.2d 109, 113-14 (3d Cir. 1988); In re Fine Paper Antitrust Litig., 685 F.2d 810, 817-18 (3d Cir. 1982). n24

Get a Document - by Citation - 2001 U.S. Dist. LEXIS 65760

Case 1:04-cv-00285-KAJ    Document 83-6    Filed 12/07/2005    Page 22    Page 22 of 24

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n24 "In the event of a new trial," Riseman suggests that the jury should be instructed according to the burdens applicable in a "mixed motives" case, as opposed to a "pretext" case. Compare Price Waterhouse v. Hopkins, 490 U.S. 228, 104 L. Ed. 2d 268, 109 S. Ct. 1775 (1989), with McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). However, Riseman has not moved for a new trial on this basis (nor would such a motion succeed, see, e.g., 12/1/00 at 170-75), and I need not decide whether a "mixed motives" instruction would be appropriate in the context of a new trial. See generally Walden v. Georgia-Pacific Corp., 126 F.3d 506, 512-16 (3d Cir. 1997).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*50]**

Riseman also moves for a new trial on his detrimental reliance claim against the individual defendants. A detrimental reliance claim was submitted to the jury against the corporate defendants, but not the individual defendants, because Riseman's claim sounded in contract. See RESTATEMENT (SECOND) OF CONTRACTS § 90(1) & Cmt. d. (12/4/00 at 3, 8-9). As determined at summary judgment, the individual defendants could not be held liable for Advanta's contractual damages. See, e.g., American Guarantee and Liability Ins. Co. v. Fojanini, 90 F. Supp. 2d 615, 623 n.14 (E.D. Pa. 2000) (corporate officers liable for corporate contracts if they are signatories in an individual capacity, or can be reached under veil-piercing or participation theories); Harris v. Madison, 1998 U.S. Dist. LEXIS 11398, 1998 WL 518181 *2 (E.D. Pa. 1998); B & L Asphalt Indus., Inc. v. Fusco, 2000 PA Super 148, 753 A.2d 264, 270 (Pa. Super. 2000). Riseman's argument that detrimental reliance is an "equitable remedy" does not suffice to make the individual defendants liable for contractual damages of the corporation.

Finally, Riseman moves for a new trial on his fraud and negligent misrepresentation **[*51]** claims. *HN25* To recover for fraud or negligent misrepresentation, Riseman was required to demonstrate that he justifiably relied upon a false statement or promise, and that he suffered damages as a proximate result of this reliance. See Gibbs v. Ernst, 538 Pa. 193, 207-10, 647 A.2d 882, 889-90 (1994); Delahanty v. First Penn. Bank, N.A., 318 Pa. Super. 90, 108, 464 A.2d 1243, 1252 (1983). Riseman argues that he refrained from looking for another job because of Advanta's bonus promises, and thus suitable alternative employment was not available for eight months after he was terminated.

However, Riseman failed to produce any evidence of a job that would have been offered to him, and which he would have accepted, in or around October 1998. Indeed, after resting his case, Riseman could point to no evidence of alternative employment that he could and would have obtained. (12/4/00 at 4-7). Nor was there evidence that Advanta's bonus promises proximately caused an eight month period of unemployment. The jury should not have been invited to guess whether some unidentified position existed that Riseman could have accepted in October 1998, and to surmise that Advanta's **[*52]** bonus offers caused Riseman's subsequent unemployment. See Yerger v. Landis Mfg. Systems, Inc., 1989 U.S. Dist. LEXIS 8473, 1989 WL 66443 *6 (E.D. Pa. 1989), aff'd, 924 F.2d 1050 (3d Cir. 1990) (table) ("jury cannot be allowed to speculate on whether there were available to plaintiff other suitable employment opportunities, whether he would have obtained some unidentified position, and if so, how much he would have been paid").

Wholly apart from the issues of justifiable reliance and proximate causation, Riseman did not introduce evidence of the difference between the amounts he earned at Advanta and what he would have earned at a position commencing in or around October 1998. Since Riseman earned more at Advanta than he has earned elsewhere, the mere fact that Riseman remained

with Advanta for an additional period of time cannot constitute financial injury. See <u>Surovcik v. D & K Optical, Inc., 702 F. Supp. 1171, 1177-78 (M.D. Pa. 1988)</u> (delay of employment search lacked sufficient nexus to alleged misrepresentation and did not establish actual pecuniary loss); <u>Engstrom v. John Nuveen & Co., Inc., 668 F. Supp. 953, 963 (E.D. Pa. 1987)</u> (remaining **[\*53]** with employer who promised excellent salaries, bonuses and promotions, without evidence that plaintiff refused offers of comparable work, cannot constitute financial detriment).

Given the wealth of evidence presented to the jury, there can be no basis for a new trial on Riseman's age-discrimination claim. Moreover, judgment as a matter of law was properly granted with respect to Riseman's detrimental reliance claim against the individual defendants, and fraud and negligent misrepresentation claims. Riseman was fully heard on the issues, and there was no legally sufficient evidentiary basis for a reasonable jury to have found in his favor. See <u>Fed. R. Civ. P. 50(a)(1)</u>; <u>Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 88 (3d Cir. 2000)</u>; <u>Marinelli v. City of Erie, 216 F.3d 354, 359 (3d Cir. 2000).</u> Accordingly, Riseman's motion for a new trial will be denied.

An appropriate Order follows.

## ORDER

**AND NOW**, this 7th day of September 2001, it is **ORDERED** that:

> (1) Defendants' Motion for Judgment as a Matter of Law (Docket Entry # 171) is **DENIED**.
>
> (2) Defendants' Motion for New Trial (Docket Entry # 172)  **[\*54]**  is **DENIED**.
>
> (3) Plaintiff's Motion for New Trial (Docket Entry # 174) is **DENIED**.

ANITA B. BRODY, J.

Service: **Get by LEXSEE®**
Citation: **2001 us dist lexis 15760**
View: Full
Date/Time: Wednesday, December 7, 2005 - 12:53 PM EST

\* Signal Legend:
⊕ -  Warning: Negative treatment is indicated
[Q] -  Questioned: Validity questioned by citing refs
⚠ -  Caution: Possible negative treatment
◆ -  Positive treatment is indicated
Ⓐ -  Citing Refs. With Analysis Available
ⓘ -  Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved

LEXSEE 2005 U.S. DIST. LEXIS 4373

**LILY SPENCER Plaintiff, Plaintiff, v. WAL-MART STORES, INC., Defendant.**

**Civil Action No. 03-104-KAJ**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2005 U.S. Dist. LEXIS 4373; 16 Am. Disabilities Cas. (BNA) 1010*

**March 11, 2005, Decided**

**PRIOR HISTORY:** *Spencer v. Wal-Mart Stores, Inc., 2004 U.S. Dist. LEXIS 19744 (D. Del., Sept. 29, 2004)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former employee sued defendant employer, alleging a hostile work environment and failure to reasonably accommodate her disability, in violation of the Americans with Disabilities Act. A jury awarded the employee $ 12,000 for emotional distress and $ 15,000 for lost wages. The employer moved for judgment as a matter of law. The employee moved to amend the judgment to include injunctive relief and moved for attorney's fees and costs.

**OVERVIEW:** In its motion for judgment as a matter of law, the employer argued that the employee failed to prove that she was subjected to a hostile work environment and that, even if she had been subjected to a hostile work environment, she was not entitled to lost wages. Under *42 U.S.C.S. §§ 1981a* and 2000e-5, the court determined that the lost wages/back pay issue should not have been submitted to the jury because the employee did not make out a case for constructive discharge; she could not collect lost wages that accrued after what the employer characterized as a voluntary termination of her employment. Regarding the hostile work environment claim, the court determined that there was sufficient evidence to conclude that many of the harassing behavior of co-workers and her supervisor was directed at the employee because of her deafness, based upon evidence that, inter alia, she was more closely supervised than other employees and a co-worker made an obscene gesture at her. The court found that an award of attorney's fees for the employee was inappropriate because the litigation did not benefit her in any way due to the offset of the settlement of a worker's compensation claim.

**OUTCOME:** The court granted the employer's motion for judgment as a matter of law to the extent that the court vacated the award of lost wages. The court denied the employer's motion for judgment as a matter of law in all other respects. The court denied the employee's motions for amendment of the judgment and reimbursement of attorney fees.

**LexisNexis(R) Headnotes**

*Civil Procedure > Trials > Judgment as Matter of Law*
[HN1] To prevail on a renewed motion for judgment as a matter of law following a jury trial, a party must show that the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief. The court is not free to weigh the evidence, pass on the credibility of witnesses, or substitute its own judgment of the facts for that of the jury.

*Civil Procedure > Trials > Judgment as Matter of Law*
[HN2] *Fed. R. Civ. P. 50(a)* empowers a court during trial to rule against a party as a matter of law after the moving party is fully heard on an issue, if there is no legally sufficient evidentiary basis for a reasonable jury to find for that

2005 U.S. Dist. LEXIS 4373, *; 16 Am. Disabilities Cas. (BNA) 1010

party on that issue. If the court denies a motion for judgment as a matter of law during trial, a party may renew the motion within 10 days of entry of judgment in the case. *Fed. R. Civ. P. 50(b)*.

*Labor & Employment Law > Discrimination > Disability Discrimination > Remedies*
[HN3] The appropriate standard for the measurement of a back pay award is to take the difference between the actual wages earned and the wages the individual would have earned in the position that, but for discrimination, the individual would have attained.

*Labor & Employment Law > Discrimination > Title VII*
[HN4] Historically in Title VII cases, compensatory damages were not permitted. Rather, all relief was governed by *42 U.S.C.S. § 2000e-5*(g), which states: if the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay. *42 U.S.C.S. § 2000e-5*(g). After the enactment of the Civil Rights Act of 1991, however, compensatory damages were also allowed in cases involving intentional employment discrimination. *42 U.S.C.S. § 1981a*(a)(2). Nevertheless, § 1981a states that compensatory damages awarded under this section shall not include backpay, interest on backpay, or any other type of relief authorized under § 706(g) *(42 U.S.C.S. § 2000e-5*(g)) of the Civil Rights Act of 1964. *42 U.S.C.S. § 1981a*(b)(2).

*Labor & Employment Law > Discrimination > Title VII*
[HN5] Although back pay is not allowed as compensatory damages, it is still available through *42 U.S.C.S. § 2000e-5*(g)(1). Title VII authorizes, inter alia, a back pay award. Moreover, as stated in *42 U.S.C.S. § 2000e,* the determination of back pay is for the court and, therefore, equitable in nature.

*Labor & Employment Law > Discrimination > Disability Discrimination > Remedies*
*Labor & Employment Law > Discrimination > Title VII*
[HN6] A victim of discrimination that leaves his or her employment as a result of the discrimination must show either an actual or constructive discharge in order to receive the equitable remedy of reinstatement, or back and front pay in lieu of reinstatement.

*Civil Procedure > Injunctions > Permanent Injunctions*
*Labor & Employment Law > Discrimination > Disability Discrimination > Remedies*
[HN7] General injunctive relief will not be granted where there will be no benefit to the plaintiff.

*Civil Procedure > Costs & Attorney Fees > Attorney Fees*
*Labor & Employment Law > Discrimination > Title VII*
[HN8] See *42 U.S.C.S. § 2000e-5*(k).

*Civil Procedure > Costs & Attorney Fees > Attorney Fees*
*Labor & Employment Law > Discrimination > Title VII*
[HN9] The United States Court of Appeals for the Third Circuit has established a test to determine whether a party qualifies for an award of attorney's fees: First, the plaintiff must be a "prevailing party"; i.e., the plaintiff must essentially succeed in obtaining the relief sought on the merits. Second, the circumstances under which the plaintiff obtained the relief sought must be causally linked to the prosecution of the Title VII complaint, in the sense that the Title VII proceedings constituted a material contributing factor in bringing about the events that resulted in the obtaining of the desired relief. Further, a prevailing party is entitled to recover its reasonable attorney's fees unless special circumstances would render such an award unjust. The United States Supreme Court has held that a plaintiff who seeks compensatory

2005 U.S. Dist. LEXIS 4373, *; 16 Am. Disabilities Cas. (BNA) 1010

damages but receives no more than nominal damages often represents one of the circumstances where attorney's fees are not appropriate.

*Civil Procedure > Costs & Attorney Fees > Attorney Fees*
[HN10] The United States Supreme Court has stated that damage awards are designed to compensate injuries caused by the actions in question, but they were never intended to produce windfalls to attorneys.

**COUNSEL:** [*1] James S. Green, Esq., Seitz VanOgtrop & Green, P.C., Wilmington, Delaware, for Plaintiff, Of Counsel: Alan B. Epstein, Esquire, Nancy Abrams, Esquire, Spector Gadon & Rosen, P.C., Philadelphia, Pennsylvania.

William M. Kelleher, Esquire, Ballard Spahr Andrews & Ingersoll, Wilmington, Delaware, for Defendant. Of Counsel: David S. Fryman, Esquire, Farrah I. Gold, Esquire, Ballard Spahr Andrews & Ingersoll, LLP, Philadelphia, Pennsylvania.

**JUDGES:** JORDAN, District Judge.

**OPINIONBY:** Kent A. Jordan

**OPINION:**

   **MEMORANDUM OPINION**

March 11, 2005
Wilmington, Delaware

**JORDAN, District Judge**

**I. INTRODUCTION**

    From October 4 to October 7, 2004, this disability discrimination case was tried to a jury, resulting in a verdict of $ 27,000 for Lily Spencer ("Plaintiff") and against Wal-Mart Stores, Inc. ("Wal-Mart"), that sum consisting of the jury's award of $ 12,000 for emotional distress and $ 15,000 for lost wages. (Docket Item ["D.I."] 68.) Plaintiff claimed that she was subjected to a hostile work environment at Wal-Mart and that Wal-Mart failed to reasonably accommodate her disability, in violation of the *Americans with Disabilities Act*. (D.I. 1.) Currently before me is a [*2] post-trial motion for judgment as a matter of law ("JMOL") (D.I. 80) filed by Wal-Mart for a finding that Plaintiff failed to prove that she was subjected to a hostile work environment and that, even if she had been subjected to a hostile work environment, she is not entitled to lost wages. Also before me is Plaintiff's motion to amend the judgment to include injunctive relief to prevent Wal-Mart from further engaging in discriminatory practices (D.I. 76) and a motion for reimbursement of attorney's fees and costs (D.I. 78). For the reasons stated herein, the JMOL motion will be granted in part and denied in part and Plaintiff's motions will be denied.

**II. PROCEDURAL BACKGROUND**

    On August 26, 2004, Wal-Mart and Plaintiff filed a proposed joint pre-trial order, in which Wal-Mart made a motion *in limine* to preclude Plaintiff from seeking an award of front and back pay. (D.I. 47 at 24-26.) In a September 29, 2004 Order, I denied that motion. (D.I. 58.) Later, at the jury instruction conference during the trial, Wal-Mart again voiced its objection to the inclusion of a space for an award of back pay on the verdict sheet to be used by the jury. (D.I. 74 at 116-20.) I again [*3] overruled their objection and allowed both sides to make their respective arguments to the jury. (*Id.*) The jury verdict form provided for possible findings as to both lost wages and emotional distress. (D.I. 68.)

    In a prior settlement of Plaintiff's worker's compensation claim against Wal-Mart, the parties agreed that at least $ 12,000 of that settlement would be credited against any recovery in this litigation. *See infra,* Section V pg. 8-10.

**III. MOTION FOR JUDGMENT AS A MATTER OF LAW**

    A. Standard of Review

Case 1:04-cv-00285-KAJ    Document 83-6    Filed 12/07/2005    Page 28 of 31

Page 4
2005 U.S. Dist. LEXIS 4373, *; 16 Am. Disabilities Cas. (BNA) 1010

[HN1] To prevail on a renewed motion for JMOL following a jury trial, n1 a party must show that "the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief." *Walter v. Holiday Inns, Inc., 985 F.2d 1232, 1238 (3d Cir. 1993).* "The Court is not free to weigh the evidence, pass on the credibility of witnesses, or substitute its own judgment of the facts for that of the jury." *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc., No. 81-471, 1983 U.S. Dist. LEXIS 14075 at \*9 (D. Del. 1983).*

n1 [HN2] *Rule 50(a) of the Federal Rules of Civil Procedure* empowers a court during trial to rule against a party as a matter of law after the moving party is fully heard on an issue, if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Walter v. Holiday Inns, Inc., 985 F.2d 1232, 1238 (3d Cir. 1993)* (citation omitted). If the court denies a motion for JMOL during trial, a party may renew the motion within ten days of entry of judgment in the case. *Fed. R. Civ. P. 50(b).* Wal-Mart properly preserved its right to make the present motion.

[*4]

B. Discussion

i. Lost wages

Wal-Mart argues that it was improper to allow the jury to include "lost wages" in its calculation of compensatory damages. (D.I. 81 at 8-9.) The term "lost wages" as used in this case has the same meaning as the term "backpay" used generally in employment discrimination cases. *See Gunby v. Pennsylvania Electric Co., 840 F.2d 1108, 1119 (3d Cir. 1988)* (stating that [HN3] "the appropriate standard for the measurement of a back pay award is to take the difference between the actual wages earned and the wages the individual would have earned in the position that, but for discrimination, the individual would have attained").

[HN4] Historically in Title VII cases, compensatory damages were not permitted. Rather, all relief was governed by *42 USCS § 2000e-5(g)*, which states:

if the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, [*5] reinstatement or hiring of employees, with or without back pay...

*42 U.S.C. § 2000e-5(g).* After the enactment of the *Civil Rights Act of 1991*, however, compensatory damages were also allowed in cases involving intentional employment discrimination. *42 U.S.C. § 1981a(a)(2).* Nevertheless, *Section 1981a* states that "compensatory damages awarded under this section shall not include backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964 [*42 U.S.C. § 2000e-5(g)*]." *42 U.S.C. § 1981a(b)(2).*

[HN5] Although back pay is not allowed as compensatory damages, it is still available through *42 U.S.C. § 2000e-5(g)(1). See Booker v. Taylor Milk Co., 64 F.3d 860, 864 (3d Cir. 1995)* (stating that "VII authorizes, *inter alia*, a back pay award"). Moreover, as stated in *Section 2000e*, the determination of back pay is for the court and, therefore, equitable in nature. *See Bates v. Board of Educ., C.A. No. 97-394-SLR, 2000 U.S. Dist. LEXIS 4873, 24-25 (D. Del. 2000)* (stating [*6] that "back pay is intended as an equitable remedy").

As already noted (*supra* at 1-2), during consideration of the *in limine* motions, Wal-Mart argued that I should not permit Plaintiff to seek lost wages. (D.I. 47 at 24-26.) It argued that because Plaintiff had not made out a case for constructive discharge, she should not be permitted to collect lost wages that accrued after what Wal-Mart characterized as a voluntary termination of her employment. (*Id.*) In my order denying that motion (D.I. 58), I concluded that "whether damages are appropriate in this case is ... a matter to be determined at trial." n2 (*Id.* at 2-3.) Wal-Mart raised the subject briefly again during the jury instruction conference, and its objection to the inclusion of lost wages on the verdict sheet was noted. (D.I. 74 at 116-20.)

Case 1:04-cv-00285-KAJ    Document 83-6    Filed 12/07/2005    Page 29 of 31

Page 5
2005 U.S. Dist. LEXIS 4373, *; 16 Am. Disabilities Cas. (BNA) 1010

n2 Because neither party addressed the equitable nature of back pay in their briefing, I did not address it in that Memorandum Order.

With the lost wages/back pay issue now before me once more, I conclude [*7] that the issue was not one properly put to the jury and is solely within the province of the court. See Bates v. Board of Educ., C.A. No. 97-394-SLR 2000 U.S. Dist. LEXIS 4873, 24, 25 (D. Del. 2000). Accordingly, as the issue of back pay should not have been submitted to the jury, I must grant Wal-Mart's JMOL motion to vacate the jury verdict of $ 15,000 in lost profits.

Plaintiff has not requested that I grant equitable relief in the form back pay. Even if she had, however, I would not find it appropriate in this case, as she has not alleged constructive discharge. In fact, her attorney specifically disclaimed any constructive discharge claim during the jury instruction conference, and there was no evidence or argument about constructive discharge given at trial. (D.I. 65 at 117 (stating that "she is out on medical leave ... [those sums] the amount of money that she lost ... are compensable damages that don't amount to constructive discharge").) Therefore, any post-trial attempt by Plaintiff to make out a case for constructive discharge would be unpersuasive. Back pay is thus not a remedy available to Plaintiff. See Hertzberg v. SRAM Corp., 261 F.3d 651, 659 (7th Cir. 2001) [*8] (holding that [HN6] "[a] victim of discrimination that leaves his or her employment as a result of the discrimination must show either an actual or constructive discharge in order to receive the equitable remedy of reinstatement, or back and front pay in lieu of reinstatement").

ii. Hostile Work Environment

Wal-Mart argues that the evidence presented at trial did not demonstrate harassment based on Plaintiff's disability and, even if there had been such harassment, there was insufficient evidence to show that the harassment was so severe or pervasive as to render the store a hostile work environment. (D.I. 81 at 3-7.) Wal-Mart does, however, list six incidents that Plaintiff relied on at trial to show the existence of a hostile work environment, and Plaintiff cited numerous others from the record. (Id. at 4; D.I. 84 at 4-9.) Although Wal-Mart argues that these incidents were not motivated by or the result of Plaintiff's disability, the testimony of Plaintiff, along with the testimony of her son, was enough for a jury to conclude that many, if not all, of the harassing behavior was directed at Plaintiff because of her deafness. (D.I. 84, Ex. 1 at 150-53, 157-58, 163, 167.)

Plaintiff [*9] testified that Wal-Mart created a hostile work environment through the lack of properly trained interpreters and that her supervisor, Mr. Tran, was hostile towards her whenever qualified interpreters were requested. (Id. at 144-49, 153, 159, 157-58.) On one occasion, Mr. Tran yelled at Plaintiff for requesting an interpreter and threw a book on the table, which greatly upset Plaintiff. (Id. at 153.) Mr. Tran and other employees refused to write notes to aid in communication with Plaintiff. (Id.) Plaintiff was also more closely supervised than other employees, her supervisor going so far as to follow her to the rest room, for example. (See id. at 157-58.) Her son also testified that her boss called her stupid and ignored her complaints about the poor treatment that she was receiving at Wal-Mart. (Id., Ex. 2 at 203.)

Additionally, Plaintiff testified that, while working in the cash office at Wal-Mart, she was met with hostility when she asked simple questions or tried to teach other employees simple signs to help them communicate with her. (Id. at B-160-62.) As an example, Plaintiff testified that one Wal-Mart employee tapped her on the shoulder, held up her [*10] middle finger, and asked what it meant. (Id. at B-163.) Plaintiff said that, after ignoring the obscene gesture, the same employee again proceeded to tap her on the shoulder and hold up her middle finger. (Id.)

Timothy Miller, a hearing-impaired co-worker of Plaintiff's, testified that a hearing co-worker, "was very mean and not friendly", to Plaintiff, and that he felt that the co-worker in question "was [either] an evil woman, or hated deaf people." (Id., Ex. 3. at C-56.) Mr. Miller testified that certain hearing employees treated Plaintiff and other deaf employees differently and that those hearing employees were not social towards or friendly with the deaf employees. (Id. at C-52.) He also testified that another manager, constantly watched Plaintiff and made her feel uncomfortable, and that the manager did not treat hearing employees in the same manner. (Id. at C-57.) Further, when Plaintiff was assigned to a specific department, she was never given an assistant; however, when "the new hearing person took over that department, he, that person had an assistant." (Id. at C-58.) Another hearing-impaired witness, Christy Hennessey, testified that, while visiting [*11] Plaintiff, a hearing employee signed or gestured a "dirty word" to her. (Id., Ex. 4 at C-74.) The jury could fairly have considered all this as lending credibility to Plaintiff's contention that employees at Wal-Mart were routinely hostile towards her because of her disability.

Given the evidence presented, considered in the light most favorable to Plaintiff, I cannot say that the jury erred in finding the actions of Wal-Mart and its employees created a hostile work environment.

2005 U.S. Dist. LEXIS 4373, *; 16 Am. Disabilities Cas. (BNA) 1010

## IV. MOTION TO AMEND JUDGMENT TO INCLUDE INJUNCTIVE RELIEF

Plaintiff has also filed a motion pursuant to *Federal Rule of Civil Procedure 59*, asking the Court to alter or amend the jury's judgment to include injunctive relief. (D.I. 76.) Plaintiff's motion is not well founded and fails to meet the "high standard" required for motions under *Rule 59. See Price v. Delaware Department of Correction, 40 F. Supp.2d 544, 550 (D. Del. 1999).* The evidence at trial did not show a pattern of discrimination by Wal-Mart that would require a permanent injunction, and there was also evidence that Wal-Mart had specific ADA policies designed and utilized [*12] to prevent any future discrimination. (See, e.g., D.I. 73 at A-91, 98-100, 105, 107-110, 116-20; D.I. 70 at B-10, 15, 23-27, 142-43, 210-11.) Most significantly, injunctive relief is inappropriate in this context because Plaintiff is no longer an employee at Wal-Mart. Consequently any injunctive relief would not benefit her. *See Fesel v. Masonic Home, 447 F. Supp. 1346, 1354 (D. Del. 1978)* (holding [HN7] "general injunctive relief will not be granted where there will be no benefit to the plaintiff").

## V. MOTION FOR REIMBURSEMENT OF ATTORNEY'S FEES

Title VII provides, in relevant part: [HN8] "in any action or proceeding under this title, the court, in its discretion, may allow the prevailing party... a reasonable attorney's fee ... as part of the costs ...." *42 U.S.C. § 2000e-5(k).* [HN9] The United States Court of Appeals for the Third Circuit has established a test to determine whether a party qualifies for an award of attorney's fees:

> First, the plaintiff must be a "prevailing party"; i.e., the plaintiff must essentially succeed in obtaining the relief sought on the merits. Second, the circumstances under which the plaintiff obtained [*13] the relief sought must be causally linked to the prosecution of the Title VII complaint, in the sense that the Title VII proceedings constituted a material contributing factor in bringing about the events that resulted in the obtaining of the desired relief.

*Blackshear v. City of Wilmington, 15 F. Supp. 2d 417, 432 (D. Del. 1998)* (quoting *Sullivan v. Commonwealth of Pennsylvania Dept. of Labor and Indus., 663 F.2d 443, 452 (3d Cir. 1981)).* Further, "[a] prevailing party is entitled to recover its reasonable attorney's fees unless special circumstances would render such an award unjust." *Torres v. Metropolitan Life Ins. Co., 189 F.3d 331, 332 (3d Cir. 1999)* (citing *42 U.S.C. § 2000e-5(k) (West Supp. 1999)); Independent Fed'n of Flight Attendants v. Zipes, 491 U.S. 754, 761, 105 L. Ed. 2d 639, 109 S. Ct. 2732 (1989); Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402, 19 L. Ed. 2d 1263, 88 S. Ct. 964 (1968).* The Supreme Court has held that "[a] plaintiff who seeks compensatory damages but receives no more than nominal damages" often represents one of the circumstances where attorney's fees are not appropriate. *Farrar v. Hobby, 506 U.S. 103, 115, 121 L. Ed. 2d 494, 113 S. Ct. 566 (1992).* [*14]

In the case at bar, Plaintiff was awarded $ 12,000 as compensatory damages for emotional distress and $ 15,000 as lost wages. (D.I. 68.) Because I have determined that she is not entitled to the $ 15,000 as lost wages, and because of the offset of the settlement of her worker's compensation claim against the remainder of the jury's award, Plaintiff will not recover any of the sums awarded by the jury. n3 Consequently, Plaintiff will recover no damages in this case. The question then becomes whether Plaintiff's lack of a recovery is akin to nominal damages deserving no award of attorney's fees, or, in the alternative, whether the jury's verdict represents an award that, despite the Defendant's earlier worker's compensation settlement, is sufficient to support granting attorney's fees.

n3 In Wal-Mart's Answering Brief, it notes that any recovery in this case must be offset by the earlier settlement of Plaintiff's worker's compensation claim. (D.I. 86 at 4, fn 2.) Wal-Mart further indicates the settlement was for approximately $ 12,000. (*See id,* (stating that offset of settlement against total jury award of $ 27,000 would leave "at most $ 15,000.").) Defendant did not attach the settlement, citing the confidentiality of the agreement as the reason. (*Id.*) Plaintiff has not refuted Wal-Mart's math, however, and I therefore take it at face value.

[*15]

Case 1:04-cv-00285-KAJ     Document 83-6     Filed 12/07/2005     Page 31 of 31

Page 7

2005 U.S. Dist. LEXIS 4373, *; 16 Am. Disabilities Cas. (BNA) 1010

[HN10] The Supreme Court has stated that damage awards are designed "to compensate injuries caused" by the actions in question, but they were "never intended to produce windfalls to attorneys .... " *Farrar, 506 U.S. at 115* (internal citations omitted). In this case, Plaintiff was already compensated by a settlement payment for harm she suffered at Wal-Mart. (D.I. 86 at 4, fn.2.) Plaintiff litigated this matter in the hopes that she could prove that she sustained damages in excess of the settlement payment, but she did not. Therefore, as a practical matter, this litigation did not benefit Plaintiff in any way, and an award of attorney's fees would be inappropriate. Consequently, Plaintiff's request for attorney's fees is denied. n4

> n4 The awarding of attorney's fees with respect to settlements is permissible and may be necessary in some cases. Plaintiff has not, however, put forth any evidence that such an award would be appropriate in this case with respect to the settlement of the related worker's compensation case.

[*16]

## VI. CONCLUSION

For the reasons stated, I will GRANT Wal-Mart's motion for JMOL to the extent that I will vacate the award of lost wages, and I will DENY that motion in all other respects. (D.I. 80) I will also DENY Plaintiff's motions for amendment of the judgment (D.I. 76), and reimbursement of attorney fees (D.I. 78). An appropriate order will follow.

### ORDER

For the reasons set forth in the Memorandum Opinion issued in this action on this date, the motion filed by Defendant Wal-Mart Stores, Inc. for judgment as a matter of law (D.I. 80; the "JMOL Motion") is GRANTED to the extent that the $ 15,000 award to Plaintiff for lost wages is vacated; in all other respects the JMOL Motion is DENIED. Plaintiff Lily Spencer's motion for amendment of judgment to include injunctive relief (D.I. 76) is DENIED, and Plaintiff's further motion for reimbursement of attorney fees (D.I. 78) is DENIED.

UNITED STATES DISTRICT JUDGE

March 11, 2005
Wilmington, Delaware